UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on February 15, 2022

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 22-cr- |
| | : | |
| v. | : | GRAND JURY ORIGINAL |
| | : | |
| PETER K. NAVARRO, | : | VIOLATIONS: |
| | : | |
| Defendant. | : | Count 1: 2 U.S.C. § 192 |
| | : | (Contempt of Congress—Papers) |
| | : | |
| | : | Count 2: 2 U.S.C. § 192 |
| | : | (Contempt of Congress—Testimony) |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, on or about the dates and at the approximate times stated below:

### BACKGROUND

### The Select Committee

1. On June 30, 2021, the U.S. House of Representatives (the "House") adopted House Resolution 503, which established the Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Select Committee").

2. According to House Resolution 503, the Select Committee's purpose was, in part:

To investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex (hereafter referred to as the "domestic terrorist attack on the Capitol") and relating to the interference with the peaceful transfer of power, including facts and causes relating to the preparedness and response of the United States Capitol Police and other Federal, State, and local law enforcement agencies in the National Capital Region and other instrumentalities of government, as well as the influencing factors

that fomented such an attack on American representative democracy while engaged in a constitutional process.

3. One of the Select Committee's functions, as set forth in House Resolution 503, was to:

> investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol, including facts and circumstances relating to . . . (B) influencing factors that contributed to the domestic terrorist attack on the Capitol and how technology, including online platforms, financing, and malign foreign influence operations and campaigns may have factored into the motivation, organization, and execution of the domestic terrorist attack on the Capitol; and (C) other entities of the public and private sector as determined relevant by the Select Committee for such investigation.

4. House Resolution 503 provided that the Select Committee would issue a final report to the House, which would include recommendations for corrective measures, including possible "changes in law, policy, procedures, rules, or regulations that could be taken" to prevent future similar acts and "to strengthen the security and resilience of the United States and American democratic institutions against violence, domestic terrorism, and domestic violent extremism."

5. To accomplish the Select Committee's purposes and fulfill its functions, House Resolution 503, with reference to the rules of the House, authorized the Select Committee, through the Chair of the Select Committee, "to require, by subpoena or otherwise, the attendance and testimony of such witnesses and the production of such books, records, correspondence, memoranda, papers, and documents as it considers necessary."

### The Select Committee Subpoenas Peter K. Navarro

6. PETER K. NAVARRO was a private citizen. From January 20, 2017, until January 20, 2021, during the administration of former President Donald J. Trump, NAVARRO worked in the Executive Branch as an advisor on various trade and manufacturing policies.

7. On February 9, 2022, the Select Committee served NAVARRO with a subpoena for documents and testimony relating to its inquiry.

8. The cover letter to the subpoena stated:

Based on publicly available information and information produced to the Select Committee, we believe that you have documents and information that are relevant to the Select Committee's investigation. For example, you, then a White House trade advisor, reportedly worked with Steve Bannon and others to develop and implement a plan to delay Congress's certification of, and ultimately change the outcome of, the November 2020 presidential election. In your book, you reportedly described this plan as the "Green Bay Sweep" and stated that it was designed as the "last, best chance to snatch a stolen election from the Democrats' jaws of deceit." In an interview, you reportedly added that former President Trump was "on board with the strategy", as were "more than 100" members of Congress . . . . You also released on your website a three-page report . . . repeating many claims of purported fraud in the election that have been discredited in public reporting, by state officials, and courts. And, because you have already discussed these and other relevant issues in your recently published book, in interviews with reporters, and, among other places, on a podcast, we look forward to discussing them with you, too. Accordingly, the Select Committee seeks documents and a deposition regarding these and other matters that are within the scope of the Select Committee's inquiry.

9. As described further below, the subpoena required NAVARRO to appear and produce documents to the Select Committee on February 23, 2022, and to appear for a deposition before the Select Committee on March 2, 2022.

*The Documents Commanded by the Subpoena*

10. The Select Committee's subpoena commanded NAVARRO to appear on February 23, 2022, at 10:00 a.m., at an office in the U.S. Capitol Complex and "produce the things identified on the attached schedule touching matters of inquiry committed to [the Select Committee]" and "not to depart without leave of [the Select Committee]."

11. The schedule attached to the subpoena identified ten categories of "documents and communications" that NAVARRO was required to produce relevant to the Select Committee's authorized investigation of the January 6th attack on the U.S. Capitol.

12.     The subpoena also included instructions for compliance with the document demand, titled, "DOCUMENT PRODUCTION DEFINITIONS AND INSTRUCTIONS." The instructions directed that, if NAVARRO could not comply fully with the subpoena by the return date, he should comply "to the extent possible by that date" and provide an explanation and date certain for full compliance; that, if NAVARRO withheld any documents and communications, he should provide a detailed log of which records were withheld and why; and that, upon completion of NAVARRO'S response to the subpoena, he should provide a written certification that a diligent search had been completed and all responsive documents had been produced.

*The Deposition Commanded by the Subpoena*

13.     The subpoena also commanded that NAVARRO appear on March 2, 2022, at 10:00 a.m., at the United States Capitol Building or by videoconference and "testify at a deposition touching matters of inquiry committed to [the Select Committee]" and "not to depart without leave of [the Select Committee]."

14.     The subpoena included a copy of the House's "Regulations for Use of Deposition Authority," which provided, in part, that during a deposition:

> The witness may refuse to answer a question only to preserve a privilege. When the witness has refused to answer a question to preserve a privilege, members or staff may (i) proceed with the deposition, or (ii) either at that time or at a subsequent time, seek a ruling from the Chair either by telephone or otherwise. If the Chair overrules any such objection and thereby orders a witness to answer any question to which an objection was lodged, the witness shall be ordered to answer. . . . A deponent who refuses to answer a question after being directed to answer by the chair may be subject to sanction . . . .

### NAVARRO'S Refusal to Comply with the Subpoena

15.     On February 23, 2022, at 10:00 a.m., NAVARRO did not appear before the Select Committee and produce documents and communications or a log of withheld records as required by the subpoena. He also did not request an extension of time or certify that he had conducted a

diligent search for responsive records. In fact, NAVARRO had not communicated with the Select Committee in any way after receiving the subpoena on February 9, 2022.

16. On February 24, 2022, the Select Committee wrote to NAVARRO by email, reminding him that, "[t]he subpoena required you to produce documents to the Select Committee by yesterday, February 23, 2022" and confirming that "[w]e have not received any documents or an indication that you have no documents that are responsive to the subpoena's document schedule." The email also reminded NAVARRO that "the date for your deposition is Wednesday, March 2, 2022, at 10:00 AM, and we will convene in a room in the House office buildings." The Select Committee asked NAVARRO to contact the Select Committee at his earliest convenience to discuss the details of his deposition, or alternatively, to let the Select Committee know if he did not plan to appear on March 2.

17. NAVARRO wrote to the Select Committee by email on February 27, 2022. In the email, NAVARRO wrote, in part, "President Trump has invoked Executive Privilege in this matter . . . . Accordingly, my hands are tied."

18. The Select Committee responded by email the same day, rejecting NAVARRO's stated reason for noncompliance with the subpoena and directing NAVARRO to appear for his deposition as required. The Select Committee stated, in part, "[t]here are topics, including those discussed in the [subpoena's cover letter], that the Select Committee believes it can discuss with you without raising any executive privilege concerns at all. In any event, you must appear to assert any executive privilege objections on a question-by-question basis during the deposition."

19. The next day, on February 28, 2022, NAVARRO emailed the Select Committee, stating that the "privilege is not mine to waive" and that it would be "incumbent on the Committee

5

to directly negotiate with President Trump and his attorneys regarding any and all things related to this matter." In his email, NAVARRO also included a copy of his February 27, 2022, email.

20. In an email response, on March 1, 2022, the Select Committee again rejected NAVARRO's stated reason for noncompliance with the subpoena and informed NAVARRO again that he could assert any objections he may have on the record, on a question-by-question basis. The Select Committee also confirmed that it planned to proceed with the March 2, 2022, deposition and provided NAVARRO with the location to appear.

21. On March 2, 2022, at 10:00 a.m., NAVARRO did not appear before the Select Committee to testify.

## COUNT ONE
### (Contempt of Congress (Papers)—2 U.S.C. § 192)

22. The allegations in paragraphs 1 through 21 are realleged and incorporated as if fully set forth herein.

23. On February 23, 2022, in the District of Columbia and elsewhere, the defendant,

**PETER K. NAVARRO,**

having been summoned as a witness by the authority of the U.S. House of Representatives to produce papers upon a matter under inquiry before a committee of the House, did willfully make default—that is, in a matter under inquiry before the House Select Committee to Investigate the January 6th Attack on the United States Capitol, NAVARRO refused to produce documents and communications, provide a log of any withheld records, certify a diligent search for records, and comply in any way with a subpoena dated February 9, 2022, issued by the Select Committee and commanding NAVARRO to produce, at 10:00 a.m. on February 23, 2022, documents and communications as delineated therein.

(In violation of Title 2, United States Code, Section 192)

## COUNT TWO
### (Contempt of Congress (Testimony)—2 U.S.C. § 192)

24. The allegations in paragraphs 1 through 21 are realleged and incorporated as if fully set forth herein.

25. On March 2, 2022, in the District of Columbia and elsewhere, the defendant,

**PETER K. NAVARRO,**

having been summoned as a witness by the authority of the U.S. House of Representatives to give testimony upon a matter under inquiry before a committee of the House, did willfully make default—that is, in a matter under inquiry before the House Select Committee to Investigate the January 6th Attack on the United States Capitol, NAVARRO refused to appear to give testimony as required by a subpoena dated February 9, 2022, issued by the Select Committee and commanding NAVARRO to appear for a deposition at 10:00 a.m. on March 2, 2022.

(In violation of Title 2, United States Code, Section 192)

A TRUE BILL

FOREPERSON

*Matthew M. Graves* /jps

MATTHEW M. GRAVES
ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA