```
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3     United States of America,      ) Criminal Action
                                      ) No. 22-cr-200
 4                     Plaintiff,     )
                                      ) Return on Arrest Warrant
 5     vs.                            ) Initial Appearance
                                      )
 6     Peter K. Navarro,              ) Washington, DC
                                      ) June 3, 2022
 7                     Defendant.     ) Time:  2:30 p.m.
       _____
 8
                   TRANSCRIPT OF RETURN ON ARREST WARRANT
 9                       AND INITIAL APPEARANCE
                              HELD BEFORE
10               THE HONORABLE JUDGE ZIA M. FARUQUI
                    UNITED STATES MAGISTRATE JUDGE
11     _____

12                      A P P E A R A N C E S

13     For Plaintiff:     Amanda Rose Vaughn
                          U.S. Attorney's Office for D.C.
14                        555 4th Street NW
                          Washington, DC  200014
15                        (202) 252-1793
                          Email:  Amanda.vaughn@usdoj.gov
16
       For Defendant:     Ubong Akpan
17                        Federal Public Defender's Office
                          625 Indiana Avenue, NW
18                        Washington, DC 20004
                          (202) 208-7500
19                        Email:  Ubong.akpan@fd.org

20     _____

21     Court Reporter:         Janice E. Dickman, RMR, CRR, CRC
                               Official Court Reporter
22                             United States Courthouse, Room 6523
                               333 Constitution Avenue, NW
23                             Washington, DC  20001
                               202-354-3267
24

25
```

1              THE COURTROOM DEPUTY:  This is criminal case 22-200,

2      the United States of America versus Peter Navarro.  The

3      defendant is present in the courtroom.  This matter is set for

4      a return on an arrest warrant, initial appearance, and

5      arraignment.  Parties please introduce yourself for the record,

6      starting with the government.

7              MS. VAUGHN:  Good afternoon, Your Honor.  Amanda

8      Vaughn and Elizabeth Aloi for the United States.

9              THE COURT:  Good afternoon.

10             MS. AKPAN:  Good afternoon, Your Honor.  Ubong Akpan

11     on behalf of Mr. Navarro.

12             THE COURT:  Good to see you, not just on a computer

13     screen; in person.

14             MS. AKPAN:  Exactly, Your Honor.

15             PRETRIAL SERVICES:  And Christine Schuck with

16     pretrial services.

17             THE COURT:  All right.  Thanks so much.  Mr. Navarro,

18     if you could please come to the lectern and my courtroom deputy

19     will swear you in.  Ms. Love?

20             THE COURTROOM DEPUTY:  Mr. Navarro please raise your

21     right hand.

22             (Whereupon the defendant was duly sworn.)

23             THE COURT:  Just make sure you talk into the

24     microphone.

25             THE DEFENDANT:  Yes, ma'am (sic).

```
 1              THE COURT:  All right.  There you go.

 2              THE DEFENDANT:  And just so -- so we -- at the

 3    outset, more than happy to have her here as the official

 4    representation, but during the course of this hearing -- I've

 5    been representing myself pro se, and I have some things to

 6    share with the court, with your indulgence.

 7              THE COURT:  Okay.  Great.  So what I'll do -- why

 8    don't you stay up at the lectern for right now.  I'm going to

 9    ask you a couple of questions, and I'm going to let you know

10    sort of the mechanics of what's going to happen today.

11              THE DEFENDANT:  Sure.

12              THE COURT:  Most importantly, I'm going to advise you

13    of your rights, as well as the charges that are pending and

14    then talk to you about the next hearing date, when things are

15    set for.  But there are a couple things that are really

16    important that I want to begin with.

17              The first and most important is rule No. 1, which is

18    my job is to remind you of your presumption of innocence.  You

19    stand before me today as a person -- when I see you, as a

20    person who is presumed innocent.  It does not matter the nature

21    of the charges, where a person is, what they look like, what

22    may have been alleged.  You are a presumed innocent person.  If

23    I could not see you as a presumed innocent person, I would not

24    be fit to have this job, because my job is to follow the law,

25    and that's what the law dictates.  Okay?
```

1          I'm going to talk to you about your rights, including

2     your right to a lawyer.  And I want to be very careful as you

3     talk about things, because we're going to talk about your right

4     to remain silent.  So I want to make sure that you don't say

5     something that -- unless you're sure that you want to say it

6     and you have thought about whether or not it might impact your

7     defense.  So, I understand, that's great, that you absolutely

8     have the right to be pro se and to represent yourself.

9          Ms. Akpan is a very talented lawyer, as I may have

10    implied from -- I'm had many matters with her, although rarely

11    in person.  So I am going to go through and go ahead and

12    appoint her to assist you.  I want to make sure that you have

13    the time to talk to her before you say the things you do, so

14    she can tell you if she thinks it makes sense or not.  But

15    automatically, Mr. Navarro, it is your decision.

16          This case, it is your life, and so you, of course,

17    have to make the decisions that you want to make as you decide

18    on how things are going to go forward.  But it's important that

19    you have advice, and advice from a very experienced attorney

20    when doing.  So before we get into any of the things that you

21    want to share, what I would like to do is go through and inform

22    you of the charges, because, of course, I do that with

23    everybody, they need to know what those charges are, then

24    advise you of your rights and make sure that you understand

25    those rights and then anything that you want to make sure that

1    you get on the record, I'll let you put on the record.  But

2    I'll also give you the opportunity to speak to Ms. Akpan.  Does

3    that make sense?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  I can't do my job, which is my job to

6    protect your rights, unless you tell me if you have a question

7    or concern.  So if there's anything that's confusing,

8    perplexing, frustrating, I may not be able to give you an

9    answer that you like, but I promise you that I will take the

10   time.  I am in no rush.  I tell this to every person in every

11   case:  This is their life, we have take as much time as we need

12   because the system cannot be fair if we don't take the time to

13   make sure that you understand what's going on.  So, any point

14   you have a question or concern, you promise me you'll let me

15   know?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  You've been put under oath by my

18   courtroom deputy, so it's very important that you're truthful

19   in how you answer my questions.  It's human nature to want to

20   answer, particularly when a judge is asking questions, so if at

21   any point you don't understand something, take a minute.  Don't

22   just say the answer.  Make sure you understand the question.

23   Say, Judge I didn't get that, or I need to speak to you and

24   figure out what you mean by that.  You can tell me you don't

25   want to answer a question, that's fine, too.  We'll work around

1    that.  Or you can say I need to speak to Ms. Akpan for a minute

2    here and make sure I understand what's going on before I answer

3    that.

4          If you're not 100 percent truthful, even potentially

5    on accident, you could face contempt or perjury charges, and

6    that's the last thing you want to do, is get any additional

7    charges.  So make sure before you speak, you're certain you're

8    being truthful.  Okay.

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  All right.  Excellent.  And I want to

11    inform you of the charges.  There is a two-count indictment

12    that was returned yesterday evening.  It charges, in Count One,

13    Contempt of Congress, in violation of Title 2, United States

14    Code § 192.  Now, I'm going to tell you the penalties that

15    anyone would face if they were facing these charges.

16          This doesn't mean that's what will happen to you,

17    sir, because, first, as I said, you're presumed innocent.  And,

18    second, any district judge, in this case, Judge Mehta, when he

19    is sentencing any person, looks at that person's history,

20    their -- the facts of the case, the nature and circumstance of

21    it.  They don't make a decision just based on the statutory

22    maximum.  But this is to warn you, like anyone else who would

23    come in my courtroom, as to what the most serious penalty they

24    could face, if found guilty.  Here it is a term of imprisonment

25    of up to one year, a fine of not more than $1,000, nor less

```
 1    than $100.  It is a Class A misdemeanor.

 2            Count two also charges Contempt of Congress,

 3    similarly, in violation of Title 2, United States Code § 192,

 4    the term of imprisonment of up to one year, a fine of not more

 5    than $1,000 nor less than $100, is also a Class A misdemeanor.

 6            MS. VAUGHN:  Your Honor if I could, I want to

 7    clarify, the maximum fine is $100,000.

 8            THE COURT:  So, this came up in our last one, and I

 9    want to make sure that we're right.  So, Ms. Rooney and I were

10    talking about this, and Ms. Rosen.  And I think, from the

11    previous one, although that is the maximum that's listed in one

12    portion, I think the statute says that for this particular

13    one -- last time we said 100,000 and then we were corrected to

14    1,000.  So I believe it is 1,000.

15            MS. VAUGHN:  I think because the § 192 doesn't

16    specifically exempt the offense from 18 U.S.C. 3571, it is a

17    maximum of 100,000, either or.

18            THE COURT:  Okay.  Well, we always want to go with

19    whatever the most serious thing is, for you to be aware of the

20    ceiling of the punishment.  Again, remember, this does not mean

21    that this is what would happen to you.  But at least the

22    government is alleging -- so they are the ones who at

23    sentencing would argue for the penalties -- that the fine could

24    go up to $100,000.  I'm sure your counsel could say that it

25    could be no more than 1,000.
```

1              And I see, Ms. Akpan, you are indicating that you do

2      think it is 1,000.  But it's important you understand what the

3      maximum is.  That would be an issue at sentencing for argument

4      that we don't need to get into the nuts and bolts of here.

5      Ms. Akpan, I think it's fair to just leave it as the government

6      thinks -- they may ask for that, right?  That doesn't mean

7      they'll get it.  But I think it's important that Mr. Navarro

8      understands his ceiling of any potential punishment he faces.

9      Does that make sense?

10             MS. AKPAN:  Yes, Your Honor.

11             THE COURT:  All right.  Thank you, Ms. Akpan.

12             All right.  So those are the charges.  I next want to

13     advise you of your rights, Mr. Navarro.  The first, very

14     important one, is the right to remain silent.  That means you

15     don't have to say anything to any law enforcement officer while

16     these charges are pending against you.  Anything you do say can

17     be used against you in this proceeding or in a future

18     proceeding.  If you've already said something to a law

19     enforcement officer, you need say nothing more.  Do you

20     understand that?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Okay.  Great.  The benefit of having an

23     attorney represent you, in one sense, is that they are able to

24     say things and that isn't used against you.  Ms. Akpan, or

25     whoever attorney you might have, that person can speak on your

1    behalf but it doesn't become evidence that can be used against

2    you.

3              So I want to talk to you about your right to counsel.

4    You have the right to an attorney to represent you in these

5    proceedings.  If you can't afford one, I will appoint one for

6    you at the government's expense.  So, I know we're going to

7    talk a little bit more about this.  But at this time there's no

8    harm of having one there, right?  Ultimately you still get to

9    make the decisions of what you want to do.  No one, no attorney

10   can to say my client wants to do something, but I'm going to

11   overrule them.  It's your choice.

12             But I think it is important that you have counsel.

13   These are unique charges.  They're not -- commonly come through

14   this courthouse.  And as you can see, there's already a legal

15   debate between the defense and the prosecution as to the

16   penalties.  And, so, I think that is important that you have

17   counsel appointed.  And as I understand it, I appreciate it,

18   you are willing to let me appoint counsel for you; is that

19   right?

20             THE DEFENDANT:  For today, yes, sir.

21             THE COURT:  For today.

22             THE DEFENDANT:  To facilitate this hearing.

23             THE COURT:  Absolutely.  That's great.  And, again,

24   Mr. Navarro, at any point if you decide -- and I don't think it

25   would be the case with Ms. Akpan -- but, say it's with any

1    other attorney, at some point you decide, look, I don't like

2    this lawyer, it's not working out.  I need some help from a

3    lawyer, but it's not going to be this lawyer.  We would come

4    back here, we would clear out the courtroom.  It would just be

5    us here in a sealed proceeding and I would talk about those

6    issues, and say is this something we can resolve, or is it a

7    fundamental break in the relationship and the attorney can't

8    represent you, you would get another lawyer.

9            If you have a lawyer that comes forward and you say,

10   I like this lawyer, but I'm going to just do this on my own, in

11   all likelihood I would appoint that person as standby counsel

12   so that they would just be continuing on with you on standby.

13   Because, again, you're a presumed innocent person, the

14   government has a lot of authority, as I'm sure you know, and

15   resources.  I need to make sure there is someone, if possible,

16   out there to protect your rights.  So that's my concern as to

17   why I want to, as much as possible, have a counsel present.

18   But you absolutely have the right to represent yourself and be

19   heard.  Go ahead.

20           THE DEFENDANT:  If I may, I just would like to note

21   for the record that when I was arrested, I was prevented from

22   making a phone call, and I requested the ability to contact

23   people about this and they refused that.  So I found myself in

24   the position of being in a jail cell without ability to have

25   any discussions.  And here we are.  I think that that is the

1    kind of prosecutorial misconduct that is not just the only

2    thing that has happened so far, which we can talk about.

3              THE COURT:  Well, obviously, I take those allegations

4    very seriously, Mr. Navarro.  You could ask Ms. Akpan, we've

5    had other cases -- there are some of the other attorneys in

6    this courtroom -- that I do believe that in all cases,

7    irrespective of who the person is, the government has certain

8    obligations and duties to make sure that people are treated

9    fairly, and not just fairly, but humanely.  Okay?

10             Two important things; it's not just one.  It also is

11   that these are human beings, all of us here, and we have to be

12   treated as such.  If the government has done things, as you

13   allege -- that is absolutely your right to say that -- that may

14   rise to the level of prosecutorial misconduct, that is

15   something that you and your attorney should discuss, and

16   perhaps it would be the subject of motions to then lead to

17   sanctions against the government, including potentially up to

18   dismissal of the case.

19             That is definitely something where you'll want to

20   marshal the facts and get those things together as you do that.

21   It's not something I'll be able to adjudicate upon today, but

22   it's something absolutely you should feel free to make the

23   record known.  And, in addition, to that understand that there

24   are consequences; no one is above judgment, least of all the

25   government, because they have so much power and authority, they

1    must use that fairly and impartially.  Do you understand that?

2              THE DEFENDANT:  I do, sir.  Let me further note for

3    the record that I communicated directly with counsel for the

4    prosecution, Aloi, by email on Wednesday, seeking a modus

5    vivendi, and specifically asked them to contact an attorney.

6    And instead of doing that, and instead of contacting me,

7    instead of coming to my home this morning, they let me get all

8    the way to the airport for a trip I was about to make, and

9    arrested me.

10             I think that that, again, is prosecutorial misconduct

11   because they had, right in their hands, a letter by email that

12   said I'm trying to work with you on this and here's the person

13   I would ask you to call.  So, I just want you, as the

14   magistrate, sir, to understand the kind of hardball that these

15   folks are playing.

16             THE COURT:  I understand, Mr. Navarro.  I hear your

17   concerns and I'll echo again what I stated before, which is

18   that I take very seriously those allegations.  I'm sure Judge

19   Mehta will, as well.  He's the person you will next be before.

20   You'll have the opportunity to make those arguments, in

21   writing.  And that I'm sure the government would have the

22   opportunity to respond, but that he will rule on those.  And I

23   can tell you for sure he will take them very seriously and if

24   the government has acted improperly, we will hold their feet to

25   the fire and make sure there are consequences for that.  Okay?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Okay.  So, Ms. Akpan, as I understand it,

3    Mr. Navarro has asked for you, at least for limited purposes,

4    to be appointed.  I'm going to go ahead and appoint you as

5    counsel.  Any reason that you have concerns about his

6    eligibility for appointment or anything else?

7          MS. AKPAN:  Thank you, Your Honor.  We would just ask

8    to be appointed for today's purposes and allow me the time to

9    provide a financial affidavit if any further -- if our office

10   is further needed for representation.

11         THE COURT:  Okay.  I'm going to make a limited

12   appointment for today's hearing.  Mr. Navarro, that will give

13   you an opportunity both to file a financial affidavit after you

14   speak to Ms. Akpan, to demonstrate that you do need to have

15   counsel appointed.  In addition, I'll give you time to consider

16   if you want to retain your own lawyer or if you would like to

17   just proceed where we only have standby counsel present.  Okay?

18         THE DEFENDANT:  Yes, sir.  Yes, sir.

19         THE COURT:  Again, any questions about that or

20   anything you don't -- it's not like speak now or forever hold

21   your peace.  You always have the opportunity to come back.

22   These are your sacred constitutional rights.  As you go

23   forward, if there's point where you have a concern about them

24   or you feel they're not being respected, you just need to raise

25   it with me or Judge Mehta.  And, again, it's our job to

1    intervene and make sure those rights are protected.  Okay?

2              THE DEFENDANT:  Yes, sir.  And because I don't

3    understand the way this is going to go forward in time, I

4    simply want to state here -- and I've discussed this with my

5    attorney -- that I do want to make the case that the

6    arraignment should be postponed for a number of reasons.

7              THE COURT:  Okay.

8              THE DEFENDANT:  At that point, the appropriate time,

9    I hope you'll allow me to make that case.

10             THE COURT:  Yes.  Well, the good news is, I can tell

11   you already, that I'm not going to arraign you today because

12   the charges standing against you are Class A misdemeanor

13   charges and the rule does allow, one of your rights is you have

14   the right to appear before a district judge, potentially for

15   trial, sentencing, and any other matter in this case.  In this

16   case it's Judge Mehta.

17             However, because your most serious offense is a Class

18   A misdemeanor, the law says that you can only have your

19   arraignment with a magistrate judge if you consent for your

20   case to go forward before a magistrate judge.  So you have the

21   right to have a case before a district judge, and jury trial,

22   just like any other case.  However, because the most serious

23   offense is not a felony, it's a misdemeanor, you also have the

24   right to consent to a magistrate judge to hear your case in

25   this matter.  That's something, again, you should talk to

1    Ms. Akpan.  You don't have to decide now.  This is something

2    you can decide at a later time, if you want to do.  Either way,

3    though, you would not get to choose your judge.  It would be

4    randomly assigned, if it was a magistrate, amongst one of the

5    three magistrate juges.  You already have a district judge.

6           So, something that you can talk about offline with

7    Ms. Akpan is about whether that's something you want to do, is

8    have your case proceed before a magistrate judge.  You will not

9    be able to be arraigned in front of a magistrate judge unless

10   you made that decision to go before a magistrate judge.  So

11   what would happen next -- Ms. Love, do we have a hearing date

12   in front of Judge Mehta.

13          THE COURTROOM DEPUTY:  Yes, Your Honor, June 17th, at

14   10 a.m., by Zoom.

15          THE COURT:  Until June 17th you will not be.  At that

16   hearing Judge Mehta would likely go forward and try to start

17   the arraignment proceeding.  However, if you did not want to,

18   you could make arguments as to why.  If you want to add

19   something to the record now so that it's teed up for him,

20   you're more than welcome to do that as well, if you would like

21   to.  Okay?

22          THE DEFENDANT:  Do you have, yourself, any discretion

23   about that date?

24          THE COURT:  The June -- it can be changed, that's not

25   a big issue.

1           THE DEFENDANT:  Do you have discretion, sir?

2           THE COURT:  No, I can't -- Judge Mehta has already

3    set it, but what you can do is let me know if you have a

4    problem with that date and we can all try to coordinate to try

5    to make it a later date.  Ultimately, however, I couldn't give

6    you an answer right now.

7           THE DEFENDANT:  This, then, would be the time for me

8    to ask for a later date.  Shall I make the argument now or do

9    you --

10          THE COURT:  Sure.  Yeah, now.

11          THE DEFENDANT:  Again, this is the bad faith of the

12   prosecution and the prosecutorial misconduct.  On Tuesday, I

13   filed a civil suit in this building regarding these charges

14   possibly pending against me.  The case itself is a civil suit,

15   and it argues that the subpoena from the congressional

16   committee that was issued is ultra vires, illegal and

17   unenforceable and, therefore, the subpoena that these people

18   are pursuing is the same.

19          Now, the case itself -- I mean, the easy thing, sir,

20   for me would have been to just -- just comply.  But there

21   are -- the prosecution has put me in the untenable position of

22   conflicting constitutional interpretations.  In my lawsuit I

23   argue, number one, that the committee is unduly authorized and

24   not properly constituted and, therefore, its subpoenas are

25   ultra vires, unenforceable, and illegal.  Point one.

1           Point two, I argue that there is a clear separation

2    of powers, based on existing case law, whereby the committee in

3    question is pursuing a punitive judicial function behind the

4    facially valid legislative function.  That is a direct

5    constitutional violation, it also constitutes a bill of

6    attainder.  Most importantly, sir, most importantly, this is

7    something that needs to get to the Supreme Court.

8           In this case the prosecution, the Department of

9    Justice, appears to have colluded with the White House and

10   Congress with respect to having President Joe Biden strip

11   executive privilege from his predecessor, President Donald John

12   Trump, and strip me of what the Justice Department itself,

13   going back to the 1970s, through 12 -- more than 12 memos

14   through the Office of Legal Counsel has said that I have

15   absolute testimonial immunity.

16          Now, that case, which was submitted, deserves to be

17   heard before they did what they did today.  And so I want it on

18   the record that this was a preemptive strike by the prosecution

19   against that lawsuit and it simply flies in the face of good

20   faith and due process.

21          So, I would ask you, sir, as the magistrate, to take

22   this information with you to discuss with Judge Mehta, and

23   however it is this process works.  And I want it very clear, I

24   would like this arraignment postponed from the date -- I think

25   you said June 17.

```
 1                THE COURT:  That's right.

 2                THE DEFENDANT:  -- until that civil suit is allowed

 3     to go forward and I at least have a judge hear my prayer for

 4     relief and decide whether these people should be enjoined from

 5     doing exactly what they did today.

 6                Also, since I'm pro se in this matter, the second

 7     reason is simply that I have to come up with a legal strategy

 8     now, and if I continue pro se -- which I intend to do, because

 9     I don't want to spend my retirement savings on lawyers -- it's

10     going to take me some time.  So I would beg the Court's

11     indulgence on that matter.

12                And then, the -- let me -- let me stop there.

13                THE COURT:  Sure.

14                THE DEFENDANT:  There is a third thing I want to

15     raise.

16                THE COURT:  Take your time.

17                THE DEFENDANT:  Can you get my pen?  Thank you.

18                All right.  Oh, I think I made my point clear here.

19     And, sir, I would ask for your help in this matter because,

20     again, I am -- I am trying to do the honorable thing here.

21     Okay?  I served for four years in the Trump White House.  I

22     literally helped save millions of people's lives, created

23     hundreds of thousands of jobs.  I always acted ethically and

24     honorably.  And what's coming at me now from Congress, a

25     partisan Congress, partisan White House, and the Department of
```

1    Justice -- which doesn't read its own OLC memos -- in my

2    judgment is intended to eliminate two key institutions of this

3    republic, which is executive privilege and testimonial

4    immunity.

5            And I would ask you, sir, in considering this and

6    having your discussions, please read my suit.  Please read that

7    fully.  And there are bigger things at play than whether I go

8    to prison.  And that's why I'm standing here, sir.  Thank you.

9            THE COURT:  Okay.  Thanks so much, Mr. Navarro.

10   There's a couple issues, I want to make sure we take them one

11   at a time.  So your concerns about the sequencing of the

12   criminal case proceeding or not proceeding while your civil

13   case is pending, I hear you on that.  I can relay to Judge

14   Mehta your concerns that you think that that was filed first

15   and that it needs to be --

16           THE DEFENDANT:  Mine was filed first.  I think they

17   moved preemptively on me.  There's no question.  And they did

18   it again; they had a person to call, who would represent me.  I

19   opened the door to some discussions and instead of doing

20   that -- let me just say this, sir:  I mean, I got up this

21   morning at my apartment and I had to go to Nashville today to

22   do a television appearance.  The agent who arrested me today

23   had been to my apartment the previous week.  I spoke to him.

24   He's sitting right there (indicating).  I spoke to him on

25   Wednesday night, by telephone.  I said, hey, if you need

1    anything from me, if you want me to come in, whatever, just

2    call me.  You don't have to kick down my door, like you did the

3    other day.  I'm here.

4           Now, I actually live right next to the FBI.

5    Literally right next to the FBI.  It's like -- it's like a

6    100-yard walk to my door.  Now, what did they do instead of

7    that?  What did they do?  They let me get all the way to the

8    airport, board the plane -- try to board the plane, come at me,

9    put me in handcuffs, not let me use my phone, take me down and

10   put me in a jail cell, when I was more than willing to try to

11   find a modus vivendi.  I'll show you that memo as well, sir.

12          So what -- who are these people?  This is not

13   America.  I mean, I was a distinguished public servant for four

14   years.  Nobody ever questioned my ethics.  And they're treating

15   me in this fashion when they know, reading that lawsuit, they

16   don't have a leg to stand on.  That committee is a sham

17   committee that doesn't have the power to issue subpoenas.  That

18   committee is using -- basically weaponized their investigatory

19   powers in a way which violates separation of powers and

20   constitutes a bill of attainder.  And they're working in

21   collusion with the White House to eliminate executive privilege

22   and testimonial immunity.  This is what I'm dealing with.

23          So, yes, sir, please, talk to Judge Mehta.  And my

24   simple request is postpone that arraignment hearing until such

25   time some of these issues can resolve.  Maybe we can move this

1    civil suit up, get on a more expedited timeline.  But, I'm

2    telling you, this is not the way America is supposed to

3    function.  You've been very generous in your instructions and

4    polite and I appreciate that.  But, up to the point, I got here

5    today, the behavior of these people is unconscionable.  No

6    American should be treated the way that these people treated me

7    today.

8             THE COURT:  I understand.  I hear your frustration,

9    Mr. Navarro.  And, obviously, I understand why you feel that

10   way.  We've got to go through -- as you state, though, the way

11   the rules are set up and the process has been set up.

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  -- there's a civil case pending, and if

14   you're seeking to have the criminal case come after it -- which

15   is absolutely your right, this is something -- a fact that is

16   litigated when people have a civil or criminal case, is that

17   one should be stayed or paused while the other one is ongoing.

18   I will relay to Judge Mehta that that is something that you

19   have requested, your basis why, and understandable basis why.

20   Ultimately, I would imagine -- I can't speak for him -- he's

21   going to ask for you to file some paperwork requesting to stay

22   that case.  And, again, you're going to want to talk to

23   Ms. Akpan about that or an attorney, if you have one retained,

24   to actually go through that process.  Because typically

25   criminal cases do proceed ahead of civil cases, but that's not

1    always the case.  And so you'll just need to get your ducks in

2    a row on that, have the authority to support your request, and

3    then ultimately that will be his decision to make, which, of

4    course, then it can be appealed to the circuit and Supreme

5    Court.

6                THE DEFENDANT:  As you did note for the record, this

7    is a unique case that you rarely, if ever, see and so maybe

8    that --

9                THE COURT:  No, absolutely.

10               THE DEFENDANT:  They're playing hardball.

11               THE COURT:  I think you have your arguments to --

12               THE DEFENDANT:  They know what they're doing.

13               THE COURT:  You have your arguments to marshal.

14               THE DEFENDANT:  It's despicable.

15               THE COURT:  Mr. Navarro, I understand your

16   frustration, but I want to make sure that we focus on what it

17   is that you can do.

18               THE DEFENDANT:  Yes, sir.

19               THE COURT:  And I understand, you have every right to

20   be frustrated, but you want to focus on what are the remedies

21   the law affords you, and there are many.  Right?  I told you,

22   you have motions for prosecutorial misconduct that you could

23   file, up to and including dismissing the indictment, as well

24   as, if you so seek, the right to stay a criminal case.

25               So you've got to figure out kind of how you want to

1    take this going forward.  Those are strategic decisions,

2    ultimately.  I can't offer legal advice, but as I said, you do

3    have very talented counsel with you and that's somebody you

4    should be talking with those issues about.  Okay?

5              THE DEFENDANT:  Yes, sir.  Thank you.

6              THE COURT:  The next thing is I want to -- again, to

7    be clear, to your request that the arraignment be delayed,

8    we're not having an arraignment today.  But at the next hearing

9    it's something, again, I think Judge Mehta would be inclined to

10   do, but you'll have the opportunity again to ask him to delay

11   that, as well as, perhaps, issue a stay in that case.

12             So I think that takes care of the three issues that

13   you raised.  Next I want to warn the government -- you can sit

14   down.  I'm going to speak to the government next.

15             THE DEFENDANT:  Thank you, sir.

16             THE COURT:  The government is reminded, pursuant to

17   Rule 5(f) of the Federal Rules of Criminal Procedure, that they

18   must turn over all exculpatory evidence as that termed is

19   defined in *Brady versus Maryland* and its related cases.

20             Mr. Navarro, what that means -- you can sit down --

21   what exculpatory material means, it means it's evidence

22   generally that's helpful to your case.  As I said, that term is

23   defined in *Brady versus Maryland* and related cases.  If the

24   government fails to turn that over in a timely fashion, Rule

25   5(f) dictates that there may be certain penalties, including

1    exclusion of evidence, adverse jury instructions, dismissal of

2    charges, and possible contempt proceedings against the

3    government.

4            As I understand it, the government -- I can hear from

5    you, Counselor, that you are not asking for detention, but

6    asking for release in this matter, is that right?  You can

7    approach.

8            MS. VAUGHN:  Yes, Your Honor.  We've reviewed the

9    conditions proposed by pretrial services and we agree that

10   those are appropriate.

11           THE COURT:  Okay.  Thanks so much.  Ms. Schuck, are

12   you able to speak to -- are you able to hear us all right?

13           PRETRIAL SERVICES:  Yes, Your Honor.  Good afternoon,

14   Christine Schuck, pretrial services.

15           THE COURT:  Good afternoon, Ms. Schuck.  If you

16   could, as I've asked earlier today, I would appreciate if you

17   could again, in the thorough fashion you always do, go through

18   all of the conditions of release so Mr. Navarro can hear them

19   and make sure that he understands them, and then I'll hear from

20   him, if he has any concerns about those conditions, or

21   Ms. Akpan does.

22           PRETRIAL SERVICES:  Thank you, Your Honor.  Pretrial

23   services is requesting that the defendant report weekly by

24   phone to pretrial services; that he notify pretrial services in

25   advance of all travel within the continental United States, and

1    that the Court approve all other travel; that he contact

2    pretrial services on Monday, the 6th, at about 10 a.m., by

3    telephone, to be interviewed, because we were not able to

4    interview him prior to preparing our report today; that he

5    verify his address with us on Monday; that he surrender any

6    passport he has to our agency and not obtain a passport or

7    other travel documents; that he not use or illegally possess a

8    narcotic drug or other controlled substance defined by 21

9    U.S.C. 802, unless prescribed by a medical -- licensed medical

10   practitioner; that he not possess a firearm, destructive

11   device, or other weapon, and; that he report, as soon as

12   possible, to the pretrial services office every contact with

13   law enforcement personnel, including arrests, questioning, or

14   traffic stops.  Thank you.

15           THE COURT:  Thanks so much.  I'll start with

16   Ms. Akpan and then I'll hear from Mr. Navarro, if you both want

17   to approach again.

18           MS. AKPAN:  Your Honor, if we could just have one

19   moment, because I just saw the report while we were --

20           THE COURT:  Absolutely.  No, no, take your time.

21           (Off-the-record discussion between counsel and

22   defendant.)

23           THE COURT:  Okay.  First, Ms. Akpan, I want to hear

24   from you, then I'll hear from Mr. Navarro.  Do you have any

25   concerns about the conditions of release as stated by the

1    government and pretrial services?

2            MS. AKPAN:  Yes, Your Honor.  In light of the type of

3    case that this is, and the fact that Mr. Navarro had already

4    been in contact with law enforcement, as he said today, we

5    think that these conditions are a bit excessive.  Mr. Navarro,

6    I'm sure, would like to speak and address many of them, but I

7    don't think more than reporting by phone is -- anything more

8    than that I don't believe is necessary.  And Mr. Navarro, I'm

9    sure, he would like to address the court.

10           THE COURT:  Mr. Navarro, go ahead.

11           THE DEFENDANT:  I would concur with that.  I'm not a

12   threat to anybody, not a flight risk.  I'm more than willing to

13   come anytime, anywhere.  And this is just more punitive actions

14   by the judiciary, which -- the Department of Justice, it seems

15   to want to penalize me, which is just -- it's just wrong.

16           THE COURT:  Okay.  I want to go through the

17   conditions as they are.  So the condition is for travel within

18   the continental United States.  You don't have to ask

19   permission, the government is not asking that.  You just simply

20   need to let them know, hey, I'm going to go to Nashville or

21   wherever ahead of time, but you don't have to wait until they

22   say anything.  It's automatic you get to go.  So can you tell

23   me what kind of burden that would put on you?

24           THE DEFENDANT:  It's just an additional burden.  I

25   will tell you that I didn't tell them I was going to Nashville

1    today and they wound up arresting me at the gate door.  I see

2    no need for any of these conditions.  I'm here, I'm not going

3    anywhere.  I'm fighting this the best I can.  Why -- I see

4    everything here as punitive.  I'm more than happy to do a phone

5    call once a week, but I don't see why I should have to do any

6    of these things, it's just more penalties.

7              THE COURT:  Okay.

8              MS. AKPAN:  Your Honor, if I may also add, because

9    these are misdemeanor offenses that Mr. Navarro is looking at,

10   we don't -- surrendering passport we don't believe is

11   necessary.  Possession of drugs, possession of firearms, those

12   are usually what we see in felony offenses and don't believe

13   that it's necessary.  Obviously, Mr. Navarro has every

14   intention in fighting his civil case he's already addressed.  I

15   don't see him being a flight risk at all.

16             THE COURT:  Okay.  Thank you, Ms. Akpan.  Anything to

17   add from pretrial services, particularly about the travel

18   restrictions, the proscription against having a firearm or

19   explosive device, as well as the no narcotics use?  I would

20   say, the narcotics, that simply is no illegal narcotics.  I'm

21   sure you weren't doing drugs before, so --

22             THE DEFENDANT:  Sir, I'll stipulate for the record

23   right here, that's not me.

24             THE COURT:  Right.  So I don't think that's --

25             THE DEFENDANT:  These are -- again, these are just

1    forms of coercion, as I see it.  I'm here.  And if this is like

2    a blanket recipe, please, whoever is listening out there in

3    digital land, it's a White -- to serve with distinction in the

4    White House for four years, what is this kind of thing all

5    about?  One size fits all, I don't think so.

6         THE COURT:  Well, these are the standard conditions

7    that we have, but that's why we go back and forth to try to

8    modify them, to bespoke them to the facts of the case.

9         Ms. Schuck, anything about -- you're welcome to go

10   condition-by-condition, or to explain their reasoning for them,

11   or do you want to group them?  How would you would like to

12   explain, Ms. Schuck?

13        PRETRIAL SERVICES OFFICER:  These are standard

14   conditions that are imposed in cases with similar charges.  And

15   pretrial services will now defer to the Court, as we've stated

16   our recommendation in our report.  Thank you.

17        THE COURT:  Thank you, Ms. Schuck.  And can you just

18   make sure, for one of them, the no explosive or firearm, can

19   you explain the basis of that, just so the record is clear and

20   Mr. Navarro understands why its being requested?

21        THE PROBATION OFFICER:  Do not possess a firearm,

22   destructive device or other weapon, that is a national standard

23   condition that is requested in all cases for officer safety.

24        THE COURT:  Okay.  So it's for the pretrial services

25   officer safety, is that correct?  It has nothing to do with

1      Mr. Navarro?

2                   PRETRIAL SERVICES:  Yes, Your Honor.  And it is a

3      national standard condition that is requested in all cases that

4      come before the Court.

5                   THE COURT:  Okay.  You can be seated.  I want to hear

6      from the government.

7                   THE DEFENDANT:  One last question:  If that's

8      standard conditions, ask if they're ever waived?

9                   THE COURT:  I'm sorry -- well, I don't know if you

10     mean does the government ever waive it?

11                  THE DEFENDANT:  I mean, are we talking about something

12     that can't be waived or does the Court have discretion?

13                  THE COURT:  No, I have the authority.

14                  THE DEFENDANT:  I would beg your indulgence.

15                  THE COURT:  Sure, of course.  Thank you.

16                  If I could hear from the government as to the

17     conditions of release.  We can start with the travel

18     restrictions, as to your basis for them, why you think it's

19     important, noting that it is a two-fold thing; there is the

20     travel restriction, terms of the prior notification for

21     continental travel and permission for outside the continental

22     United States, and then separately the passport.

23                  MS. VAUGHN:  Yes, Your Honor.  So the nature of the

24     charges here are that the defendant is alleged not to have

25     complied with a lawful order to appear at a certain date and to

1    follow certain instructions.  And so we think that it is no

2    greater than necessary, these travel restrictions, to make sure

3    the defendant appears at his proceedings.  And as the Court

4    noted, none of these restrictions bar the defendant from

5    travel, they just require notification, and then in the case of

6    international, permission.

7            And then with respect to the other conditions, again,

8    reporting regularly, and that goes to ensuring that the

9    defendant is going to appear.  And the firearm restrictions are

10   for pretrial services officer safety, and so the government

11   thinks that it's appropriate and necessary.

12           THE COURT:  Okay.  Thank you.

13           Well, Mr. Navarro, I hear what you're saying and I

14   hear your counsel, that these are misdemeanor charges.  And so,

15   you know, it's not a question of does the punishment fit the

16   crime, because you're a presumed innocent person, it's a

17   question of do the conditions of release fit the circumstances

18   of this case.  There is no one size fits all, you're absolutely

19   right; we have to tailor them.

20           Let's start backwards with the -- what we, sort of, I

21   think, the easiest parts to agree upon and then what you're

22   contesting.  I think checking in once by phone as directed by

23   PSA, you're not objecting to that.  Regardless, I think it is

24   necessary.  That is important, as pretrial services can ensure

25   that you are in compliance and that there's no issues.  So

1    once-a-week phone check-in I think is reasonable.

2             I think that the no firearms, as I understand it, as

3    Ms. Schuck indicated, and I do agree with her, is for the

4    officer's safety.  If they make site checks or home visits,

5    that they need to be able to make sure that there isn't a

6    firearm in the place, because someone might get confused or

7    whatever may happen, accidents happen, and it could lead to a

8    firearm being discharged in a home visit or search.  And for

9    that reason I think -- again, it's not an allegation against

10   you, it has nothing to do with you, it's simply for the safety

11   of the court staff.

12            The next request is relating to illicit narcotics

13   use.  I think there's nothing in your history to indicate that

14   you have ever used drugs or will use drugs, and so I don't

15   think the condition of release -- all it's saying is don't

16   break the law, right?  There's also one that says don't commit

17   a federal, state, and local crime.  I mean, we tell that to

18   everybody, but obviously you have to do that, irrespective of

19   whether that box is checked on the form.  So, I think it's fine

20   to have that on there, understanding that there's no reason to

21   think that you'd do it and it places no burden on you.  You're

22   not subjected to drug testing or anything of the like; the

23   government has not asked that.

24            The travel, I think, is the primary burden that I see

25   that you are -- and I hear you on it.  I don't think you need

1      to turn in your passport.  I believe that you've known these
2      issues have been pending for a while and you have not attempted
3      to flee the country.  I do think that prior notification --
4      again, I'm not asking you to get permission, but simply
5      notification, so that if something happens, let's say the
6      government is thinking they want to make some charges or
7      something, they can't say they didn't know where you were.
8             It's also to your benefit, so they can't say, oh,
9      well, we didn't know where Mr. Navarro was, so we had to put
10     out a warrant, Judge, and go find him and track him down and
11     kick down his door and get back in the situation.  They're
12     boxed in also by that.  It may feel like it's a burden to you,
13     but it boxes them in because now they can't say, Well, we
14     didn't know he was in D.C., or we didn't know he was going
15     somewhere.  Well, yeah, all you had to do was pick up the phone
16     and ask the Court, because he has agreed and has been
17     compliant, as I'm sure you will be, to just send an email or
18     phone call.  You don't have to wait for a response.  You can
19     leave a voice mail, as I understand it, and just say, hey, I'm
20     going to Nashville, I'm going to Colorado, wherever it might
21     be, and then there's no confusion on the government's side as
22     to where you are.
23            But, I do not think you need to turn in your
24     passport.  I will also agree, just because I think the
25     condition makes sense, since you're keeping your passport, if

1    you want to travel outside the country, you absolutely have the

2    right to, people do all the time when they are charged.

3    Remember, these requirements are simply to assure your future

4    appearance.  They're not meant to be punitive.  It does feel

5    punitive, and I'm sorry that feels that way, and I will try my

6    best, as will my colleagues, to mitigate that.

7         But if you want to travel outside the continental

8    United States, you just need to ask pretrial services.  And if

9    for some reason -- I have seen in other cases the government

10   has, generally speaking, agreed to that.  If they don't, then

11   you can come back before me or a colleague and if, after

12   several weeks or months you say, look, I'm 100 percent

13   compliant, here's the burden that this is placing on me, can we

14   lift it?  Your continued compliance on that is an argument that

15   can be a basis for stepping back the conditions.

16        But those are the conditions of release I'm going to

17   impose now.  I understand it's over your objection, and I'll

18   note that.  You always have an opportunity with Judge Mehta --

19   you'll be about two weeks out, so you'll even have a chance to

20   tell him then, look, I had no issues, this is burdensome and

21   unnecessary.  I think you make a good argument.  It's not a --

22   you know, it's not a question of it's open and shut, it's a

23   close call because these are, again, misdemeanor charges and

24   you're presumed innocent.

25        So I'm not trying to burden you in ways other than

1    just making sure we're doing our due diligence from the court

2    side; not the executive.  Don't ever let there be any confusion

3    about that, Mr. Navarro.  We're not on the seem team.  There's

4    no teams here.  The court is separate and apart from the

5    executive and not here to serve at its direction.

6            The voice that you hear, Ms. Schuck, she is remote,

7    she is the pretrial services officer, she's part of the court

8    staff.  They don't work for the executive.

9            So those are the conditions of release.  I want to

10   warn you what would happen -- I'm sure this will not be the

11   case, Mr. Navarro -- ut I want to warn you what will happen if

12   you don't follow those conditions of release.  You could face

13   penalties, including your arrest, you could be held pending

14   trial, and you could face contempt if you violate any condition

15   of release.

16           There's two conditions I want to highlight for you

17   that carry additional penalties.  The first is that if you are

18   to fail to appear at a future hearing -- and you can usually do

19   it by Zoom, but you got to talk to Ms. Akpan, or if you don't

20   have counsel, just talk directly to the chambers, the courtroom

21   deputy for Judge Mehta -- if you fail to appear, you could face

22   the penalties I described, as well as a new criminal charge of

23   failure to appear.  Additionally, if you commit a state, local,

24   or federal crime while on release, you can face those penalties

25   I just discussed, but in addition, you could face a harsher

1    sentence here for committing a crime while on release.  I just

2    want to make sure -- you can come back up to the lectern.  I

3    want to make sure you understand the penalties that I've

4    described.  Do you understand those, Mr. Navarro?

5            Ms. Akpan you can talk --

6            THE DEFENDANT:  One moment.

7            THE COURT:  Take your time.  Why don't you go sit

8    down and you can talk.  And just to be clear here, so,

9    Mr. Navarro, you guys can cover whatever --

10            THE DEFENDANT:  I want to get away from that

11    microphone there, it's hot.

12            THE COURT:  That's fine.  Mr. Navarro, just make

13    sure -- the question I'm going to ask you, just so you have an

14    opportunity when you come back up here -- I'm going to ask if

15    you understand my warnings as to what will happen if you

16    violate the conditions of release.  I'm going to ask you --

17    remember, you're under oath -- if you're going to follow the

18    conditions of release and if you have any questions about them.

19    And then, ultimately, if you get past that, I will then swear

20    you in to those conditions of release, and that will be,

21    basically, the end of the hearing.

22            THE DEFENDANT:  Your Honor, if you could, just,

23    please, one-by-one, restate those conditions.  I understand the

24    rest of what you said, I believe.

25            THE COURT:  Sure.  Okay.  So you understood the

1    warnings about what were to happen --

2              THE DEFENDANT:  Let me grab my notepad.

3              THE COURT:  Yeah, of course.

4              THE DEFENDANT:  And my understanding on the travel

5    conditions, is that a phone call or email is sufficient without

6    a return --

7              THE COURT:  That's correct.

8              THE DEFENDANT:  And who am I notifying?

9              THE COURT:  That's a great question.  So one of the

10   conditions of release is that you have your interview with

11   pretrial services, and so they will tell you at that time who

12   your supervising officer is.

13             So, Ms. Schuck, can you please give the phone number

14   and the time that he should call to do his interview.

15             PRETRIAL SERVICES:  Yes, Your Honor.  The main number

16   is (202) 442-1000, and he is going to be connected with the

17   duty officer, which happens to be me on Monday.  And I can also

18   give my office number, (202) 442-1017.  So if there's any

19   trouble getting through on the main line, call my office number

20   and I will conduct the interview on Monday at about 10 a.m.

21             THE DEFENDANT:  So --

22             PRETRIAL SERVICES:  And I will also let you know who

23   your assigned officer is.

24             THE DEFENDANT:  So I will go over -- I don't have to

25   contact them until Monday at 10 a.m., is that correct?

```
1              THE COURT:  That's right.  So Monday at 10 a.m. --
2              THE DEFENDANT:  So if I travel in the meantime, what
3     do I do?
4              THE COURT:  Well, do you have plans --
5              THE DEFENDANT:  I did.  I did have plans, yes.  For
6     the record, that I was arrested at the door of an airplane
7     instead of at my home, okay?  It's unconscionable --
8              THE COURT:  Are you still planning to go?
9              THE DEFENDANT:  -- as I have said.  What's that?
10             THE COURT:  If you're planning to go --
11             THE DEFENDANT:  I have to assess that.  I was
12    supposed to be in Nashville tonight and I was supposed to be in
13    New York City tomorrow and --
14             THE COURT:  Okay.  Well, I think you just gave it.
15    Ms. Schuck now has notification that you have plans,
16    potentially.
17             THE DEFENDANT:  Here we go.
18             THE COURT:  Potentially travel to Nashville and
19    New York.
20             I'm going to remind you, Mr. Navarro -- I have to
21    protect your rights, your constitutional rights.  And talk to
22    Ms. Akpan, it's going to be very difficult, I understand, as
23    I'm sure you do better than anyone, Mr. Navarro, that there's a
24    lot of attention upon you in this case.  Every time you speak,
25    just remember, it could be something that's used against you in
```

1    court.  And it is difficult, I'm sure, because you want for

2    people to see that not only are you presumed innocent, but the

3    reasons why you are innocent.  But every time that you are

4    speaking, you could be potentially putting yourself at risk.

5    And so I'm just telling you, please don't miss the trees for

6    the forest here.  Talk to Ms. Akpan and make sure, before you

7    make any of these appearances or you're talking, that you're

8    doing what's in your best interests long-term, just not

9    short-term.  Okay?

10              THE DEFENDANT:  Thank you, sir.

11              THE COURT:  Absolutely.  All right.  So the

12    conditions of release we first went over is checking in on

13    Monday, as well as then the travel restriction.  The travel

14    restriction is that you'll give just a phone call or, again,

15    you can leave a voicemail or an email for notification.  If

16    you're to leave the continental United States you need to get

17    permission from pretrial services.

18              The next restriction is your residence.  You're not

19    to have -- and, Ms. Schuck, I want to be clear, is the no

20    firearm or destructive device or explosive limited to the

21    residence that he's at or is it broader than that, on his

22    person, also, when he's outside of his residence?

23              PRETRIAL SERVICES:  He is not to have possession at

24    all.  Not on his person, not in his residence.

25              THE COURT:  Okay.  So you're not to have on your

1    person or in your residence at any time a firearm, explosive

2    device, destructive device or any dangerous item of that

3    nature.  Again that is for the officer's safety because they

4    may come and check in and talk to you, or may come to your

5    residence.  They will be in contact with you, for sure, once a

6    week.  But that is the condition of release that I am imposing.

7    I understand, again, these are over your objection.

8              The next condition -- Ms. Schuck, why don't you just

9    go through them, since you have them there.  We'll go one at a

10   time.  What's next?

11             PRETRIAL SERVICES OFFICER:  You're not to use or

12   unlawfully possess a narcotic drug or other controlled

13   substance as defined by 21 U.S.C. 802 unless prescribed by a

14   licensed medical practitioner.

15             You're also to call, as we discussed, our office on

16   Monday, the 6th, at about 10 a.m. to be interviewed by our

17   office because we were unable to interview you prior to today's

18   hearing.

19             We also need to verify your address.  So when you

20   call us on the 6th, we will explain to you how you can go about

21   verifying your address.

22             You're also to report any law enforcement contact --

23   that includes arrests, questioning, or traffic stop -- as soon

24   as possible, preferably within 48 to 72 hours of the event.

25             And you also will be calling once a week --

1          THE DEFENDANT:  Could you repeat that?  That's if

2    something happens going forward?  What is this?

3          THE COURT:  That's just if you have any contacts with

4    law enforcement from an arrest or a stop, you're to let

5    pretrial services know that law enforcement -- so, if someone,

6    law enforcement officer came and questioned you or arrested

7    you, something like that, so the Court knows, because I can't

8    be there.  Again, you've already talked about your concerns

9    about the government acting inappropriately.  I have no way of

10   finding out, if they do something else.

11          So let's say, Mr. Navarro, they come back next week

12   and, as you say, they come into your door and they come in and

13   let's say they do a search warrant or something else, I'm not

14   going to know about that.  The only way I'll know about that is

15   if you call and tell pretrial services.  And so I need to know,

16   both for your safety, as well as to make sure what the

17   government is doing, is that you report any contacts by law

18   enforcement that happen to you, be it arrest -- what are the

19   other circumstances, Ms. Schuck?

20          PRETRIAL SERVICES:  Questioning or just traffic

21   stops.

22          THE COURT:  So a traffic stop, questioning, or

23   arrest.

24          PRETRIAL SERVICES:  Traffic stop, arrest or

25   questioning.  And then we request notification of any travel

1    within the continental United States, and the Court is to

2    approve all other travel.  So if you wish to travel to Hawaii,

3    Alaska, the U.S. Virgin Island, Puerto Rico.  Essentially, if

4    you're crossing an ocean, you need to get court approval.

5    Thank you.

6              THE COURT:  That's just the travel restriction we

7    talked about.  If you want to leave outside the United States,

8    the continental United States, you just need to ask for court

9    permission to do so.  Okay?

10             THE DEFENDANT:  Okay.

11             THE COURT:  We'll give you a copy of the conditions

12   of release, Mr. Navarro, so you have it all in writing.

13             THE DEFENDANT:  Thank you.

14             THE COURT:  Ms. Love, are you going to be able to

15   print it out, do you think?

16             THE COURTROOM DEPUTY:  Yes, Your Honor.  I'm working

17   on it now.

18             THE COURT:  Thank you.  It will take a few minutes,

19   but we're going to print that out for you.  Again, this isn't

20   it's all over, that's that.  As these go, if they start to

21   present burdens, you have a lot of international travel, the

22   Court can make a finding that, you know -- if you say, hey,

23   I've got to go to Canada a bunch in the next three months, I

24   don't want to ask every time, then there have been situations

25   where the Court will say, by order, well, you can go to Canada

1    as much as you need for the next three months.

2              So I understand that you're frustrated by these

3    conditions.  Let just see.  As they start to cause problems,

4    we'll try to continue to narrow them down.  But for now you'll

5    just have to roll with me on this.

6              THE DEFENDANT:  Just to be clear, the word is not

7    "frustration," that the not the word.  I am -- let us say,

8    disappointed in our Republic.

9              THE COURT:  You have every right to be, Mr. Navarro.

10             All right.  So, the -- we'll get you those conditions

11   of release here shortly for you to sign off on those.  I am

12   imposing those.  I'm going to ask Ms. Love to go ahead and

13   swear you in to the conditions of release.

14             Can you do that, please?

15             THE COURTROOM DEPUTY:  Mr. Navarro, can you please

16   raise your right hand?

17             Do you solemnly swear that you will well and truly

18   abide by the conditions of release imposed by the Court, so

19   help you God?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Thank you.  Thank you.  You can put your

22   hand down.  I think that's it, Mr. Navarro.  I'm going to hear

23   from the government, just to talk about the next hearing date,

24   and then I'll come back to talk to you about that as well.  But

25   that's it from my end, mostly, right now.

1          I want to hear from the government.  You've heard the

2     next court date.  Are you requesting any exclusion of time

3     under the Speedy Trial Act?  And, if so, under what basis?

4          MS. VAUGHN:  No, Your Honor.  We don't believe

5     there's a basis to exclude time under the Speedy Trial Act.

6          THE COURT:  Do you have the next date?

7          MS. VAUGHN:  June 17th.

8          THE COURT:  Thank you.  Ms. Akpan, I'll give you and

9     Mr. Navarro an opportunity to confer to see if there's anything

10    else, if there's any questions or concerns.

11         THE DEFENDANT:  Hold on a second.

12         THE COURT:  Yeah, no problem.

13         (Off-the-record discussion between counsel and

14    defendant.)

15         THE COURT:  Okay.  Go ahead, Ms. Akpan.

16         MS. AKPAN:  Thank you, Your Honor.  On the issue of

17    the speedy trial clock, I think Mr. Navarro explained quite

18    elaborately about his civil case is pending.  And so because he

19    wants that to be addressed first, we think it is appropriate

20    for the Court to stop the speedy trial clock while Judge Mehta

21    kind of gets that information, as well as the fact that

22    discovery will be forthcoming, I'm assuming, at some point.  So

23    we would actually ask in this case to ask the Court to exclude

24    time.

25         THE COURT:  Okay.  Great.  Thanks I'm going to hear

1    from the government.  You can sit back down, sir.

2            Does the government have a position?  Either do you

3    object, consent, or have no position at all in terms of

4    exclusion of time between now and the next hearing date?

5            MS. VAUGHN:  Yes, Your Honor.  The public -- in

6    addition to the defendant, the public has an interest in a

7    speedy trial here.  The discovery is not voluminous, it's just

8    a couple hundred pages, if that.  And there's no basis in the

9    Speedy Trial Act to exclude time for a civil case.  This is a

10   criminal matter in which the public also has a right to a

11   speedy trial.  We oppose exclusion.

12           THE COURT:  Thank you.  I'll give you all a moment to

13   talk.

14           (Off-the-record discussion between counsel and

15   defendant.)

16           THE COURT:  Okay.  Go ahead.  Mr. Navarro, do you

17   want to speak?  Or Ms. Akpan?

18           THE DEFENDANT:  Yes, I do.

19           THE COURT:  Okay.

20           THE DEFENDANT:  The -- the intention of the

21   prosecution in moving forward on a speedy trial is

22   disingenuous.  It's based, first of all, on what we discussed

23   earlier, which is to allow my civil suit to move forward.

24           The second thing, which I think is even more relevant

25   here, and I would beg the Court's indulgence on this:  I asked

1    them to contact an attorney a couple days ago, they didn't do

2    that.  I'm without legal representation, other than this fine

3    lawyer for today, and it's going to take me a considerable

4    amount of time in order to find the appropriate legal advice

5    and develop the appropriate strategy to address this.

6            So, I think that stopping the clock now is absolutely

7    the appropriate ruling here based on what you have learned

8    about this case to date, sir.  Thank you.

9            THE COURT:  So, I want to start with the -- a couple

10   of the basis that normally exclude time under the speedy trial

11   clock.  This is a clock in which the government has to take you

12   to trial.  The interests in a speedy trial -- the government is

13   correct, it's not just your interests, I have to weigh the

14   interest of you, but as well as the public's right to a speedy

15   trial.  I do agree with the government that the pendency of a

16   civil trial, that in and of itself is not a basis to exclude

17   time.

18           As the public defender's office frequently will

19   remind me, that production of discovery on its own is not the

20   basis of time.  If it's complex, you have to file a complex

21   case motion.  That's a little more thorough than just that

22   there's voluminous discovery.  But here it doesn't even sound

23   like there's voluminous discovery.  So I don't think, under

24   either of those two basis, there's a basis to exclude time.

25   However, I do think, appointment of counsel gives me some

1     concerns, and so I want to hear from the government.

2          I agree with you on those first two, but I do think

3     that that is of a different measure.  The defendant has stated

4     that he needs some time to find counsel.  He's concerned that

5     the uniqueness, he said of this case earlier, and that he needs

6     time to ascertain his legal defense.  We have to be very

7     careful here with the Sixth Amendment rights.  And I'm

8     concerned that if we don't exclude time, he's going to have an

9     argument that he's not able to prepare a defense, or mount it,

10    because he was rushed and the government wasn't -- or, the

11    Court, ultimately, wasn't willing to exclude time.  So, I think

12    that that is a basis that has some merit to it.  But I would

13    like to hear from you, Counselor.

14          MS. VAUGHN:  Yes, Your Honor.  The arraignment date

15    is two weeks from today, and so in the government's view it's

16    premature to exclude time now for ascertainment of counsel

17    because the defendant has two weeks to find an attorney.  He

18    has already referenced an attorney, as he has said in

19    correspondence with the government.  So we imagine that that's

20    not going to be a difficult hurdle.  And then the government

21    suggests that we can reevaluate at that hearing on June 17th.

22    But right now we think it would be premature.

23          THE DEFENDANT:  May I speak once more?

24          THE COURT:  You don't need to, Mr. Navarro, that's

25    fine.  I think that you are right.  I'm going to rule in your

1  favor on this.  My concern -- I hear the government, that 14

2  days is not a lot of time.  And so, you know, in between now

3  and then the right -- hopefully we'll be able to sort out and

4  ascertain who your attorney will be.  I've only made a

5  limited -- I want the record to be clear, I've only appointed

6  Ms. Akpan for the limited purpose of this hearing today.  After

7  this is over, you can continue to speak with her, if she wants

8  to and you want to, and come to a conclusion.

9         We will need either a financial affidavit or some

10  other showing that you are eligible for the appointment of

11  counsel.  I'm not sure, without any facts today, if you would

12  or not, I can't say.  But, if that is not going to be with the

13  public defender's office and it's somebody else you may have

14  spoken to, you have 14 days.  Just understand, Mr. Navarro,

15  when the 14 days is up and you meet Judge Mehta, essentially, I

16  think that at some point the Court will start to be less

17  patient with you taking the time to find counsel.

18         I'm hopeful now, in this intervening time -- I know

19  there's a lot of other things you've got to do.  You've got to

20  live your life, take care of other things, but this has got to

21  be priority number one, for finding counsel.  So I'm pausing

22  the clock for 14 -- until the next hearing date, such that you

23  can then use that time to find counsel.  You'll want to make

24  sure that if you aren't able to find counsel by then, you're

25  able to then detail to Judge Mehta the reasons why you need

1     additional time and how much that time will be.  You can't just

2     say that I need more time.  If it's two weeks, two days, or two

3     hours or two months, whatever it is, be sure you're very clear

4     and articulate about why and how much time you need to find

5     counsel because your Sixth Amendment right to counsel is sacred

6     and I want to make sure that you are -- in any case a person

7     has an attorney in their corner who is willing to help them and

8     push their case through as they figure out how they want to

9     marshal their defense.  Okay, Mr. Navarro?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  All right.  Anything else on behalf of

12    the Mr. Navarro, Ms. Akpan?

13              (Off-the-record discussion between counsel and

14    defendant.)

15              MS. AKPAN:  Your Honor?

16              THE COURT:  Yes.

17              MS. AKPAN:  If that hearing does get moved, then the

18    question is whether the pausing of the clock will continue

19    until the next hearing date --

20              THE COURT:  No.  Right now it's only set until that

21    date.  So if you want to move the hearing, as you've requested,

22    and if the judge wants to, he may just call a hearing then just

23    to then discuss that issue.  But I'm only going to continue

24    until that next hearing date.  It will be up to you, your

25    attorney, if you have one, and Judge Mehta, if you want to

1    re-discuss those issues.  Okay?

2              MS. VAUGHN:  Nothing further, Your Honor.

3              THE COURT:  Okay.  Ms. Schuck, anything else from

4    pretrial services?

5              PRETRIAL SERVICES OFFICER:  Nothing from pretrial,

6    Your Honor.

7              THE COURT:  Okay.  And nothing else for the

8    government?

9              MS. VAUGHN:  Your Honor, one thing.  The government

10   does have a proposed protective order for discovery.  And so we

11   would inquire whether Ms. Akpan would be handling that or if we

12   just need to --

13             THE COURT:  Yeah, good question.  Thank you.

14             Ms. Akpan, are you able at this time to let me know

15   if you'll be able to assist Mr. Navarro with the review of the

16   proposed protective order and -- I'm not saying that you're

17   going to sign it or not sign it, but at least able to extend

18   your appearance for that limited purpose, at least discuss it

19   with him?

20             MS. AKPAN:  Your Honor, I'm not sure that I can, in

21   light of the fact that Mr. Navarro has made it very clear that

22   he was seeking counsel.  So I prefer to have new counsel have

23   that opportunity to discuss it with him.

24             THE COURT:  Okay.  Go ahead, Mr. Navarro.

25             THE DEFENDANT:  Can you explain what just happened?

1    THE COURT:  Sure.  Yes.  So the government has asked

2    if Ms. Akpan would be -- could represent you, not just for

3    today but -- the next, sort of, hurdle in the case is they have

4    discovery, evidence -- remember, I told you, they have to turn

5    over the evidence that's helpful to your case, anything that's

6    helpful to your defense, but they have to turn everything over

7    to you, as well, not just that.  And in order to do that they

8    have a protective order that they want to put in place.  You

9    can agree to it or disagree to it.  It may say certain things

10   that you can't -- perhaps -- I don't know what it says because

11   I haven't seen it.

12           It's their protective order.  It may say things like

13   don't post certain parts of it on social media, some things

14   might be sensitive and it's only for you and your attorney and

15   any witnesses or your team.  I can't say what is without having

16   seen it.  But generally a protective order is -- there are

17   different classes of information in the discovery they're

18   giving you and they want different things to be treated

19   differently.  And, so, typically the parties agree upon that

20   and then it governs it and the court doesn't have to get

21   involved.  You might not like anything in there, or you might

22   want more protection than that's in there because you feel like

23   it's insufficient, so you might want it to be a higher

24   watermark or lower watermark.

25           Ultimately, what they're asking is can that be

1    discussed with Ms. Akpan or should they wait until you get a

2    lawyer?  Because they can't give you that discovery, they're

3    saying, until that protective order is signed.  Now, that

4    doesn't mean it's right.  You could say, no, I'm not going to

5    sign anything and I want it all without that.  But again, these

6    are all questions that are pretty technical legal issues and it

7    would be real helpful to have a lawyer on.

8              THE DEFENDANT:  I would wait until I resolve my legal

9    issue, and I would ask for them to provide this immediately in

10   the case, in the high probability that I'll do this pro se.  So

11   I want to see what they have now.

12             THE COURT:  Absolutely.  No problem.  Well, I don't

13   think it will be this moment, But they have a way to contact

14   you.

15             THE DEFENDANT:  Metaphorically, yeah.

16             THE COURT:  Okay.  Good.  You can sit down.

17             THE DEFENDANT:  Thank you.

18             THE COURT:  So, Counsel, you can just pass along the

19   protective order, it sounds like.  And hopefully by the next

20   hearing date we'll have some greater clarity on potential shall

21   counsel.

22             MS. VAUGHN:  Thank you, Your Honor.

23             THE COURT:  Anything else from the government?

24             MS. VAUGHN:  Nothing more.

25             THE COURT:  All right.  That's it for today,

1    Mr. Navarro.  You have your next hearing date.  That's the

2    single most important thing, is make sure you keep that.

3    Unless you hear from the Court or anybody else, that's when

4    you'll next have your hearing.

5         The next thing is, remember, ascertain what you want

6    to do about your lawyer.  I understand that you have this

7    desire to be pro se, and that is a very righteous thing that is

8    in fact allowed by the law.  But no matter what, I anticipate

9    if, at a minimum, you decide you're not going to have retained

10   counsel, the Court may still appoint standby counsel.  But

11   either Judge Mehta or I will talk to you about it at a later

12   point.

13         THE DEFENDANT:  With respect to that request that you

14   review my civil case and talk to Judge Mehta about

15   postponing --

16         THE COURT:  Yes?

17         THE DEFENDANT:  -- what kind of communications will

18   you and I or Judge Mehta have, or whoever will have?  And if

19   so, will it -- can it be prior to that day so I have an idea of

20   what is transpiring here?

21         THE COURT:  So what you can do, I'll pass the

22   information from today's hearing on to Judge Mehta.  What you

23   can do is reach out, with government counsel, on an email -- we

24   won't have what's called ex parte communications.  It's got to

25   be both sides now because the case is formally charged.  The

1    government can't talk to Judge Mehta or myself without you on

2    that email thread or on that phone call.  The same goes for

3    you, unless there is something that warrants it.  So if you

4    said, Hey, I got to talk about my lawyer, or there's some issue

5    that there is a privilege that the government could know.  Or,

6    of course, the same goes for them.  If they say there's an

7    issue of privilege or something that you can't know.  Those are

8    very rare.  Those are the only times in which you could

9    communicate directly with the judge, without the other party.

10            But for right now, what I would suggest is that you,

11   as well as the government counsel, should get on an email

12   thread or phone call, reach out to Judge Mehta's courtroom

13   deputy.  You may want to give it a day or two, so I can get

14   this information to him over the weekend.  So early next week

15   you're certainly welcome to reach out and say, is the judge

16   willing to delay the hearing?  I would anticipate -- if I had

17   to guess, and I can't say that, he may just want to have a

18   hearing to hear more himself, further, inquire himself, because

19   it's one thing coming from me.  He's going to want to hear it

20   coming straight from you, I would guess.

21            THE DEFENDANT:  With respect to your reviewing

22   material that you indicated you would do, that will simply be

23   one-way street input to Judge Mehta, and that's it?

24            THE COURT:  Yeah, anything you file goes on the

25   docket and Judge Mehta and I will both see that.

 1          THE DEFENDANT:  But, no, in our discussion earlier

 2     you indicated your willingness to review my civil case and the

 3     other aspects of the case, including the alleged prosecutorial

 4     misconduct.

 5          THE COURT:  Sure.

 6          THE DEFENDANT:  You'll discuss that with Judge Mehta.

 7          THE COURT:  Right, yes.

 8          THE DEFENDANT:  And I'm thinking now of timing.  When

 9     would be best to -- I would prefer to contact Judge Mehta only

10     after you've had time to do your due diligence.

11          THE COURT:  The good thing is, you can contact us as

12     much as you like.  Hopefully you won't find it to be an issue.

13     But, you and the parties can always reach out to the court.

14     We're public servants here.  You understand that better than

15     anybody else, having been one, is that we're here to serve the

16     public.  So if you reach out on Monday and Judge Mehta says --

17     it won't be him, it will likely be his chamber staff, his

18     courtroom deputies who you are supposed to reach out to.  They

19     will let you know when he is available and able to answer

20     questions.

21          THE DEFENDANT:  I guess my question is, I wouldn't

22     want to reach out to him until you've had the opportunity to

23     share --

24          THE COURT:  I'll do that today, don't worry.

25          THE DEFENDANT:  -- share things with him and review

1    the civil suit and review the --

2              THE COURT:  Sure.  I'll reach out to him and share

3    all this information.

4              THE DEFENDANT:  That will be done by Monday?

5              THE COURT:  Yeah, of course.

6              THE DEFENDANT:  Okay.  We call that "in Trump time,"

7    if possible.  Thank you, sir.

8              THE COURT:  All right.  Take care.  The parties are

9    excused.

10             Good luck to you, Mr. Navarro.

11                              *   *   *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, JANICE DICKMAN, do hereby certify that the above and

4      foregoing constitutes a true and accurate transcript of my

5      stenographic notes and is a full, true and complete transcript

6      of the proceedings to the best of my ability.

7                              Dated this 3rd day of June, 2022

8

9

10                      _____

11                      Janice E. Dickman, CRR, CMR, CCR
                        Official Court Reporter
12                      Room 6523
                        333 Constitution Avenue, N.W.
13                      Washington, D.C.  20001

14

15

16

17

18

19

20

21

22

23

24

25
```