UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA

CRIMINAL NO. 22-cr-200

v.


PETER K. NAVARRO,

Defendant.


## MOTION FOR DOCUMENTS PERTAINING TO ARREST

To determine key facts in this case, including facts related to the defendant's motion requesting a continuance, the defendant moves that the prosecution immediately provide: (1) all video and audio recordings of the defendant's arrest from the jetway at Reagan airport to the FBI holding facility, (2) full transcripts of the conversations that took place, (3) all notes that contributed to the report issued on June 6, 2022 by Special Agents Walter Giardina and Special Agent Sebastian Gardner; and (4) signed affidavits from Special Agents Walter Giardina and Sebastian Gardner denying the defendant requested a call for legal advice on the jetway where he was taken and stating that he was read his Miranda rights from a written sheet of paper.

The defendant further moves that the prosecution reveal any role it may have played, and provide any associated documents, in the assignment of a public defender mere minutes before the arraignment in lieu of allowing the defendant to call for legal advice during his hours of incarceration prior to the magistrate's hearing after the defendant specifically requested the ability to do so immediately upon his arrest in the jetway.

**Background**

The prosecution has made it a key point of its opposition to the defendant's request for a continuance that the defendant has consistently indicated pro se representation and no need or desire for outside counsel.  As noted in its motion to opposing the request for continuance:

> *The Defendant bases his request for a continuance, in part, on his accusations that the Government is attempting to deprive him of counsel—for example, by allegedly denying him a call to counsel upon his arrest and filing motions in the normal course of proceeding with this case. The Defendant's claims are false.*

It is the prosecution's claim that is both false and misleading. In their report date of entry June 6, 2022, Special Agents Walter Giardina and Special Agent Sebastian Gardner omit any reference to the fact that the defendant asked immediately at the time of his arrest in the jetway and several times to make a phone call to obtain legal advice.

As soon as the defendant asked to call for legal advice, the agents should have read from a written card the defendant his Miranda rights and done everything within their power to allow him a phone call to seek legal advice as he requested well prior to his court appearance. They did not do so and thereby deprived the defendant of appropriate legal counsel.

Instead of acknowledging in their report that the defendant immediately requested the opportunity to call for legal advice, the report falsely implies that it was Giardina who first raised the issue of whether the defendant wanted to call an attorney. This is a serious form of misdirection.

As further deflection, Giardina and Gardner create the false impression that the only person the defendant wanted to call was a TV producer expecting the defendant to arrive for an interview in Nashville. Requesting a courtesy call to a TV producer that the defendant would not be available does not mean that the defendant did not ask repeatedly to call for legal advice yet that is the impression this report created for the media.

Because Giardina did not act upon the defendant's repeated request at the time of the arrest to make a call for legal advice or arrange for such a call at the jail cell, the defendant spent several hours in that jail cell out of communication with anyone and was surprised when just minutes before his appearance before a magistrate, he was told he could meet with a public defender. At this point, the defendant was concerned that if he refused to agree to a public defender, he might not be released in a timely manner.

While the public defender was a fine person, she had little command of the facts in the case as would be expected. This put the defendant at a far greater disadvantage during the hearing than if he had been able to speak to legal counsel, and it is an open question as to whether that was the prosecution's intent.

The defendant also notes for the record that he provided Deputy Attorney Patricia Aloi <u>two days prior to the arrest</u> with the name of an attorney to call to negotiate with. This document was also read by Agent Giardina so Giardina had both the name and number of that attorney as well.

Aloi chose not to contact that attorney prior to the arrest despite the defendant's good faith efforts at seeking a modus vivendi that might have avoided the need for the arrest (more about that in a separate motion). In addition, Aloi made no effort to alert that attorney of the defendant's arrest and pending appearance before the magistrate, thereby leaving him effectively without counsel.

The defendant does not recall the agents reading his Miranda rights from any written text but rather delivering the notice in a casual and improvisational manner, perhaps designed to lull the defendant into complaceny. It would be useful to have clarity on this matter to determine whether the defendant's Fourth Amendment rights were violated.

With regard to the public release of the FBI report, the defendant finds it necessary now to set the record straight with respect to the false and misleading impressions that report gave and which were seized upon by a left wing media.

Fact: the defendant was in a jail cell in leg irons for several hours at the courthouse after a strip search without access to counsel.  Fact: A request for water was denied.  Fact: There was no food available.  The fact that the defendant was out of FBI custody doesn't mean all this didn't happen; and the media needs to report this accurately.

As a final note in consideration of this motion, the defendant was contacted by a former high-ranking FBI agent who described the way he was taken into custody as "outrageous," "far outside the norms," and yet another example of "the FBI once again allowed themselves to be used as a political pawn by the DOJ."

In the discussion, this former FBI agent indicated that it is common practice for white collar defendants charged with fraud for which flight risk is low <u>to arrange a voluntary surrender</u>.  In cases like the defendant's where there is <u>no fraud alleged</u> but simply a technical violation, it is unheard of to conduct the kind of punitive operation the FBI performed in lieu of a voluntary surrender.

In fact, the defendant called Giardana two days before the arrest and in a cordial conversation indicated clearly to the agent he would be happy to comply with any subpoena or other matter and they did not need to come banging on his door in the early hours of the morning – just call him.

If the defendant had simply been allowed to voluntarily surrender, he would have been able to have access to the legal advice he sought at the time of his arrest and this issue would be moot.  Instead, he became yet another object of the kind of intimidation and humiliation the FBI has gotten into the practice of inflicting on Trump allies, a practice which in this case may also have included a leak to the press of the arrest while the defendant was in solitary confinement.

For the reasons set forth in this motion, the defendant therefore requests that this motion be granted and the information be provided forthwith and well in advance of the scheduled arraignment.

Respectfully submitted,

Peter Navarro, Pro se actively seeking counsel

CERTIFICATE OF SERVICE

I certify that on June10, 2022, I sent this motion to all relevant parties via email.