

**John P. Rowley III**
**jrowley@secillaw.com**
**Office +202 417 8652**
**Mobile +703 402 8800**

July 20, 2022

**VIA Email (amanda.vaughn@usdoj.gov)**

Amanda R. Vaughn
Molly Gaston
Elizabeth Aloi
Assistant United States Attorneys
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530

**Re: United States v. Peter K. Navarro (No. 1:22-cr-00200)**

Mses. Vaughn, Gaston, and Aloi:

We are writing in response to your letter of July 11, 2022, which replied to the discovery requests we made on behalf of Mr. Navarro in our letter of June 27, 2022. We made our discovery requests pursuant to Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419 (1995), and Rule 5.1 of the Local Criminal Rules of the District Court for the District of Columbia and asked that the Government preserve and produce all discoverable information in this case.

Your letter of July 11 states that the Government has already provided all discoverable material that is in the "possession, custody, or control of the prosecution team." As an initial matter, we disagree with what we assume to be the Government's attempt to restrict the definition of "prosecution team" to the prosecutors and agents assigned to this case. We have reason to believe from the discovery provided thus far, as well as from matters in the public realm, that there has been a degree of coordination between the Government, the White House, and the Select Committee that requires a broader definition of "prosecution team" for purposes of the Government's discovery obligations.[1]/ For example, it is extremely unlikely that the

---

[1]/ The Department of Justice Manual, § 9-5.001, provides for a broader view of the "prosecution team" in appropriate cases. "It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all members of the prosecution team." In making that assessment, the prosecutor should consider whether the relationship with another agency is close enough to make it part of the prosecution team for discovery purposes. Factors that should be considered include "[w]hether the prosecutor knows of and has access to discoverable information held by the agency." … "Prosecutors are encouraged to err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes."

decision to prosecute Mr. Navarro did not involve communications between the Department of Justice and others regarding his invocations of Executive Privilege on behalf of President Trump. And, it has been publicly reported that in October 2021, President Biden publicly stated that the Government should criminally prosecute anyone who does not comply with the Select Committee's subpoenas. *See e.g.,* https://www.cnn.com/2021/10/15/politics/biden-doj-prosecute-january-6-subpoenas/index.html

We cannot, of course, yet know the extent of that coordination but the Government's attempts to limit discovery to matters within the possession, custody, or control of the "prosecution team" assigned to this case would unduly and unfairly prejudice Mr. Navarro's discovery rights. "It is well accepted that a prosecutor's lack of knowledge does not render information unknown for Brady purposes." *United States v. Hazel*, 1994 WL 642198, at *7 (4th Cir. Nov. 15, 1994).

The Government has failed to provide all of the discovery materials we requested in our June 27, 2022 letter. Without waiving any of the requests made in that letter, we hereby specifically ask that you produce information for the following categories as referenced in that letter:

A. *Statements of the Defendant*. We requested pursuant to Rule 16(a)(1)(A) & (B) that the Government produce "any written or recorded statement or admission made by Mr. Navarro that is within [its] possession, custody or control, the existence of which is known, or by the exercise of due diligence may become known, to the government. *See* Fed. Crim. P. 16(a)(1)(B)(i)." In addition to any statement that Mr. Navarro may have made to the Select Committee, we believe that the Government is in possession of statements he made to the House Select Committee on the Coronavirus Crisis regarding invocations of Executive Privilege in response to a subpoena issued by that Subcommittee. The Government has not produced that information.

C. *Documents and Tangible Objects.*

(7) All documents, records and reports relating to the Government's arrest of Mr. Navarro on June 3, 2022 including, but not limited to, the decision by the FBI and/or the Department of Justice to arrest Mr. Navarro at Ronald Reagan Washington National Airport and place him in security restraints (*i.e.*, "leg irons").

The Government did not allow Mr. Navarro to self-report after he was indicted for two nonviolent misdemeanor violations. The decision by the FBI and/or the Department of Justice to arrest Mr. Navarro at National Airport and place him in handcuffs (followed by the use of "leg irons" by the US Marshals Service after he arrived at the US Courthouse) discloses a level of animus by the Government that is both unusual and surprising. Mr. Navarro is entitled to discovery of who made these decisions and why.

(9) All documents, records, or reports relating to communications between the Department of Justice and the House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Select Committee") referencing or relating to Mr. Navarro.

Any documents, records, or reports relating to communications between the Department of Justice and the Select Committee are discoverable and relevant to issues such as the decision to deviate from the well-established opinions of the Office of Legal Counsel ("OLC") regarding testimonial immunity for senior advisors to the President, and the decision to prosecute Mr. Navarro while declining prosecution of Mark Meadows and Dan Savino.

(10) To the extent not already included in the above requests, all documents, records, or information provided to the Select Committee by the White House Office of Counsel to the President, including Jonathan C. Su, that reference or relate to Mr. Navarro.

Any communication between the Select Committee and the White House Office of Counsel to President Biden is discoverable and relevant to the possibility of improper political influence regarding the decision to hold Mr. Navarro in contempt of Congress and related issues.

(11) To the extent not already included in the above requests, any documents, records, or information referencing communications between former President Donald J. Trump or his counsel, Justin Clark and/or Alex Cannon, and White House Office of Counsel to President Joseph R. Biden, including Jonathan C. Su, that reference or relate to Mr. Navarro.

All documents, records, or other information regarding communications between President Trump and his counsel, and counsel to President Biden, is discoverable and relevant to issues regarding testimonial immunity for President Trump's senior advisors, including Mr. Navarro, invocations of Executive Privilege, and other issues of significance in this case.

(12) Any communications and/or other evidence related to the application to Mr. Navarro or any other senior advisor to former President Donald J. Trump of the opinions of the Office of Legal Counsel of the Department of Justice including, but not limited to, Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege, 8 Op. O.L.C. 101 (1984); Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena, 38 Op. O.L.C. *5 (July 15, 2014); Assertion of Executive Privilege With Respect to Clemency Decision, 23 Op. O.L.C. 1 (1999); Immunity of the Former Counsel to the President From Compelled Congressional Testimony, 31 Op. O.L.C. 191, 192 (2007); Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena, 38 Op. O.L.C. at *5 (July 15, 2014); and Testimonial Immunity Before

Congress of the Former Counsel to the President, 43 Op. O.L.C. __ (May 20, 2019).

Any documents, records, or reports relating to communications between the Department of Justice and the Select Committee are discoverable and relevant to issues such as the decision to deviate from the well-established opinions of the Office of Legal Counsel ("OLC") regarding testimonial immunity for senior advisors to the President, and the decision to prosecute Mr. Navarro while declining prosecution of Mark Meadows and Dan Savino.

(16) All correspondence between the House Select Committee on the Coronavirus Crisis (and/or any other House Committee or Subcommittee) and Mr. Navarro in which Mr. Navarro claimed, asserted, or invoked Executive Privilege on behalf of President Donald J. Trump.

Correspondence and other information in this category is discoverable and relevant to Mr. Navarro's invocation of Executive Privilege on behalf of President Trump, as well as his understanding that the instructions he received from President Trump required him to not respond to the Select Committee's subpoena.

(17) All correspondence between Representative James E. Clyburn, Chairman of the House Select Committee on the Coronavirus Crisis and Mr. Navarro in which Mr. Navarro claimed, asserted, or invoked Executive Privilege on behalf of President Donald J. Trump.

Correspondence and other information in this category is discoverable and relevant to Mr. Navarro's invocation of Executive Privilege on behalf of President Trump, as well as his understanding that the instructions he received from President Trump required him to not respond to the Select Committee's subpoena.

(18) All documents, including communications, in which Representative James E. Clyburn, Chairman of the House Select Committee on the Coronavirus Crisis, or other members of that Committee discussed, indicated that Mr. Navarro had claimed, asserted, or invocated Executive Privilege on behalf of President Donald J. Trump.

All such documents and other information in this category is discoverable and relevant to Mr. Navarro's invocation of Executive Privilege on behalf of President Trump, as well as his understanding that the instructions he received from President Trump required him to not respond to the Select Committee's subpoena.

D. *Reports of Investigation.* We requested that the Government produce all ROIs related to concerning the Select Committee. The ROIs for matters involving Steve Bannon, Mark

Meadows, and Dan Savino are particularly relevant to the issues in the present case. We again request that the Government produce them.

G. *Brady Materials*. We requested pursuant to the United States Constitution and relevant case law interpreting its protections, including *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giles v. Maryland*, 386 U.S. 66 (1967), the Due Process Protections Act, Rule 5 of the Federal Rules of Criminal Procedure, and Rule 3.8 of the District of Columbia Rules of Professional Conduct, that the Government immediately identify and disclose all documents and information that are favorable to the defense or that would tend to exculpate Mr. Navarro with respect to the charges in the Indictment or that are relevant to the issue of sentencing.

We specifically requested that the Government produce the following evidence that is relevant to Mr. Navarro's defense:

(1) All documents and other evidence establishing that the Select Committee was properly established pursuant to House Resolution 503. *See* Indictment at 1 ¶ 1.

(2) All documents and other evidence establishing that "[o]n February 9, 2022, the Select Committee served NAVARRO with a subpoena for documents and testimony relating to its inquiry." Indictment at 3 ¶ 7.

(3) All documents and other evidence establishing that "the subpoena required NAVARRO to appear and produce documents" and/or "to appear for a deposition" including, but not limited to, all documents and other evidence establishing that the subpoena was, or was reasonably known to be, lawfully issued and otherwise enforceable. Indictment at 3 ¶ 9.

(4) All documents and other evidence establishing that "[t]he Select Committee's subpoena commanded NAVARRO to appear on February 23, 2022, at 10:00 a.m., at an office in the U.S. Capitol Complex," including, but not limited to, documents sufficient to identify the office where Mr. Navarro was allegedly commanded to appear as well as all documents sufficient to support the allegation that such office was part of the U.S. Capitol Complex. *See* Indictment at 3 ¶ 10.

(5) All documents and other evidence sufficient to establish that the categories of "documents and communications" delineated within the Select Committee's subpoena were "relevant" to the Select Committee's investigation. *See* Indictment at 3 ¶ 11.

(6) All documents and other evidence sufficient to establish that the investigation of the Select Committee's investigation was "authorized." Indictment at 3 ¶ 11.

(7) All documents and other evidence sufficient to establish the enforceability of the "instructions for compliance and with document demand" referenced in the Indictment. *Id.* at 4 ¶ 12.

(8) All documents and other evidence sufficient to establish that, "[t]he subpoena also commanded that NAVARRO appear . . . and 'testify at a deposition.'" Indictment at 4 ¶ 13.

(9) All documents and other evidence sufficient to establish that Mr. Navarro was put on notice of the place he was to appear for a deposition pursuant to the Select Committee's subpoena, including, but not limited to, documents sufficient to establish whether Mr. Navarro was to appear personally "or by videoconference." *See* Indictment at 4 ¶ 13.

(10) All documents and other evidence sufficient to establish that the Select Committee subpoena was lawfully issued and otherwise enforceable such that it "required" anything by Mr. Navarro. *See* Indictment at 4-5 ¶ 14.

(11) All documents and other evidence sufficient to establish that Mr. Navarro had any obligation to "certify that he had conducted a diligent search for responsive records" as alleged by the Indictment. *Id.* at 4-5 ¶ 15.

(12) All documents and other evidence sufficient to establish that Mr. Navarro was required to "appear" to "assert any executive privilege objections on a question-by-question basis." Indictment at 5, ¶ 18.

(13) All documents and other evidence sufficient to establish that "[o]n March 2, 2022, at 10:00 a.m., NAVARRO did not appear before the Select Committee to testify," including, but not limited to, all documents sufficient to establish that Mr. Navarro was legally required to appear. Indictment at 21 ¶ 21.

(14) All documents and other evidence sufficient to establish that Mr. Navarro was "summoned as a witness," that the Select Committee had any lawful "authority" to summon Mr. Navarro, and/or that the "papers" Mr. Navarro had been summoned to produce related to a "matter under inquiry" by the Select Committee." Indictment at 6 ¶ 23.

(15) All documents and other evidence sufficient to establish that Mr. Navarro "refused to produce documents and communications, provide a log of any withheld records, certify a diligent search for records, and comply in any way" with the Select Committee subpoena. Indictment at 6 ¶ 23.

(16) To the extent not already provided by a prior request, all documents and other evidence sufficient to establish that Mr. Navarro was “summoned as a witness,” that the Select Committee had any lawful “authority” to summon Mr. Navarro, and/or that the testimony compelled was “upon a matter under inquiry” before the Select Committee. Indictment at 7 ¶ 25.

(17) All documents and other evidence sufficient to establish that Mr. Navarro “did willfully make default” and/or “refused to appear to give testimony” and/or that any such testimony was “required” by the Select Committee subpoena. Indictment at 7 ¶ 25.

The Government has failed to provide this discoverable evidence.

I. *Jencks Materials*. We requested pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3500, the ABA Standards for Criminal Justice, 11-2.2 (Discovery Procedure Before Trial) and the practice enunciated in *United States v. Hinton*, 631 F.2d 769 (D.C. Cir. 1980), the early production of any statements of prospective Government witnesses that are in the Government’s possession and that relate to the subject matter concerning which the witness will testify, so that any issues involving disclosure may be resolved in advance, counsel will have adequate time to review the material, and there will be no delay in court proceedings while counsel reviews the same. *See Jencks v. United States*, 353 U.S. 657 (1957). The Government has not responded to this request.

*Additional Specific Discovery Requests*. In addition to the discovery requested by our June 27, 2022 letter, and this correspondence, Mr. Navarro specifically requests that the Government produce the following materials:





[redacted]

(x). All warrants and subpoenas used by the Government to obtain information in this case.

[redacted]

(xii). All correspondence between the Justice Department and Jonathan Su and/or anyone else with the White House Counsel's Office.

* * *

We hereby reiterate our request that you notify us promptly whether there are any requests set forth in our letter of June 27, 2022, and this correspondence, with which you decline to comply. For each request, we ask that the Government inform us whether: (1) the material exists and will be produced; (2) the material does not exist; or (3) the material exists, but the Government does not believe it is subject to disclosure. We are available to discuss any of the above requests at your convenience. We expressly reserve the right to supplement these requests as we review the discovery information produced and prepare for trial.

Very truly yours,

SECIL LAW PLLC

/s/ John P. Rowley III
John P. Rowley III

E&W LAW LLC

/s/ John S. Irving
John S. Irving