**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | **Criminal No. 1:22-cr-00200-APM** |
| **v.** ) | |
| ) | |
| **PETER K. NAVARRO,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### OPPOSITION TO MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF

Defendant Peter K. Navarro, by and through the undersigned counsel, hereby submits this

Opposition to the Motion by the General Counsel of the U.S. House of Representatives seeking

leave to file an *amicus curiae* brief with the Court.[1]  Put simply, the House here *is no friend of*

*the Court.*  Rather, the House, in the politicization of the criminal contempt process, seeks to jail

Dr. Navarro for asserting former President Donald J. Trump's executive privilege in response to

a subpoena from the Select Committee to Investigate the January 6th Attack on the United States

Capitol.  Even were the House General Counsel's Motion not motivated by political animus, the

Court should deny the House General Counsel's request as the House's interest in this case, and

thus its legislative prerogative, ceased when it made its referral to the Department of Justice.

---

[1] Dr. Navarro acknowledges the possibility that the House General Counsel did not in fact file any motion.  On August 30, 2022, the House General Counsel, through his Law Clerk, emailed the Clerk of the Court's ECF help address, copying the parties, a copy of the motion as well as a proposed order. (*See* Ex. A.)  The motion, however, has not been filed on the docket in this case.  Because the House General Counsel advised in his purported motion that, "[if] this motion has not been acted upon by September 2, 2022, we will nevertheless on that day electronically provide the House's proposed brief to the district court Clerk's office," defense counsel submits this opposition to the House General Counsel's Motion out of an abundance of caution.

Any *post hac* rationalization for its treatment of Dr. Navarro would only serve to further Dr. Navarro's claim that there has been political interference in *this case.*[2]

In his brief, the House General Counsel cites no authority permitting this Court to accept an *amicus curiae* brief in a criminal action.  *See generally* Mot. for Leave to File Amicus Curiae (Aug. 30, 2022) (Ex. A).  However, while neither the Federal Criminal Rules of Procedure nor this Court's Local Criminal Rules expressly authorize the Court to accept brief of amicus curiae in criminal cases, this District's Local Civil Rules include numerous provisions that are applicable in both civil and criminal cases.  *See* LCvR 1.1 ("These Rules govern *all* proceedings in the United States District Court for the District of Columbia.  These Rules supplement the Federal Rules of Civil *and Criminal* Procedure and shall be construed in harmony therewith." (emphasis added)).  *See also* LCvR 16.2(b) ("Actual trials of civil or *criminal* cases in this Court or in the Superior Court will be accorded priority over any nontribal matters in either court." (emphasis added)); LCvR 40.1 ("Unless otherwise provided in these Rules, each civil and *criminal* case shall be assigned to a single judge in the manner provided herein." (emphasis added)); LCvR Rule 40.5(a)(1) ("*Criminal* cases are deemed related when . . . ." (emphasis added)).  Thus, courts in this District have authorized the submission of *amicus curiae* briefs pursuant to Local Rule 7(o).  *See* Minute Order, *United States v. Clinesmith*, No. 20-cr-00165-

---

[2] Of note, immediately after filing its brief in *United States v. Bannon*, the Speaker of the U.S. House of Representatives issued a press release highlighting the proposed *amicus curiae* brief as well as the position taken by the House General Counsel in that brief.  Press Release, Nancy Pelosi, Speaker of the U.S. House of Representatives (May 10, 2022), *available at* https://www.speaker.gov/newsroom/51022-1.  Specifically, Speaker Pelosi advised the public that, "the House filed a motion to submit an *amicus* brief in the D.C. District Court case of *United States v. Bannon*," that through its vote to hold Mr. Bannon in contempt, *see* H. Res. 730, the House, "upheld the genius of our Constitution:  the separation of powers, which safeguards the Congress' authority to conduct necessary and appropriate oversight," and that, "[b]y addressing many of Bannon's baseless arguments before the D.C. District Court, the House continues to defend this Constitutional power as well as its essential prerogative to establish its own rules and practices."  *Id.*  Speaker Pelosi's Press Release reveals the true motive behind the House General Counsel's desire to file an *amicus curiae* brief with this Court, which is to advertise the politization of the House's interference in the criminal prosecution of former Trump administration officials.

JEB (D.D.C. Dec. 22, 2020) (granting motion for leave to file brief of *amicus curiae*, which argued that LCvR 7(o) permitted the same).  Similarly, Courts in this District have routinely requested (and accepted) such briefs.  *See United States v. Caplinger*, No. 21-cr-00342-PLF (D.D.C. Feb. 23, 2022) (ECF No. 53); Minute Order, *United States v. Flynn*, No. 17-cr-00232 (D.D.C. May 12, 2020).  *See also* Mot. for Leave to File Amicus Curiae, *United States v. Clinesmith*, No. 20-cr-00165-JEB (D.D.C. Dec. 17, 2020) (ECF No. 28) (citing examples).  Even apart from these specific rules, "precedent and experience have recognized the authority of courts to appoint an *amicus* to assist their decision-making in similar circumstances, including in criminal cases . . . ."  *In re Flynn*, 973 F.3d 74, 81 (D.C. Cir. 2020).

"An *amicus* brief should normally be allowed . . . when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide."  *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 137 (D.D.C. 2008). Courts allow "parties to file *amicus* briefs where the brief will assist the judges by presenting ideas, arguments, theories, insights, facts or data that are not to be found in the parties' briefs." *In re Search of Info.*, 13 F. Supp. 3d 157, 167 (D.D.C. 2014).  Local Civil Rule 7(o) requires a motion for leave to file an *amicus* brief to, "concisely state the nature of the movant's interest; identify the party or parties supported, if any; and set forth the reasons why the matters asserted are relevant to the disposition of the case."

To that end, the House General Counsel submits that his *amicus curaie* brief on behalf of the House should be permitted because, "a thorough response to [Dr. Navarro's motion to dismiss] requires extensive knowledge and understanding of House Rules, parliamentary precedents, and internal procedures, as well as the details of the Select Committee's structure, formation, and operation[, which information] [t]he House seeks to provide . . . for the Court's

benefit." Ex. A at 4.  Dr. Navarro, however, is confident that the Court will be thoroughly briefed on the relevant Rules, parliamentary precedents, and internal procedures of the House without the House General Counsel's assistance.  Undersigned defense counsel served as the first General Counsel to the House of Representatives under then-Speaker Thomas P. "Tip" O'Neill, Jr. for nearly seven (7) years and since has served as an expert on Congressional practice and procedure[3] in a variety of contexts,[4] including serving as the co-author of the leading textbook on congressional investigations.[5]

And although the House General Counsel purports to have a "strong interest"[6] in "addressing [Dr. Navarro's] challenge to a Congressional committee's subpoena," that interest

---

[3] *See* Press Release, Prof. Stanley Brand Testifies Before House Judiciary Committee, PennState Dickinson Law (March 2021), *available at* https://dickinsonlaw.psu.edu/prof-stanley-brand-testifies-house-judiciary-committee (last visited Sep. 2, 2022).

[4] *See* Jacqueline Thomsen, What It's Like to Leave Big Law and Start a New Firm During a Pandemic, *Law.com* (June 1, 2020), *available at* https://www.law.com/nationallawjournal/2020/06/01/what-its-like-to-leave-big-law-and-start-a-new-firm-during-a-pandemic/?slreturn=20220802124712.

[5] See Lance Cole and Stanley M. Brand, *Congressional Investigations and Oversight* (2011), https://www.amazon.com/Congressional-Investigations-Oversight-Studies-Analysis/dp/1594606226.

[6] The House General Counsel's involvement in this action was authorized by a majority of the House Bipartisan Legal Advisory Group ("BLAG"), which, pursuant to House Rule II.8(b), is exclusively authorized to "speak[] for, and articulate[] the institutional position of, the House in all litigation matters" unless "otherwise provided by the House." The BLAG is composed of the Speaker of the House, the House Majority and Minority Leaders, and the House Majority and Minority Whips. *Id.* Historically, the BLAG has unanimously agreed to intervene or otherwise involve itself in matters that involve the institutional prerogative of the House. *See generally* Mot. Leave File *Amicus Curiae*, *United States v. Collins et al.*, No. 1:18-cr-00567-VSB (S.D.N.Y. Apr. 4, 2019) (ECF No. 76) (addressing privilege of non-disclosure under the Speech or Debate Clause); Mot. Leave Intervene, *Am. Oversight v. U.S. Dep't Treasury, et al.*, No. 1:17-cv-02078-RBW (D.D.C. Apr. 13, 2018) (ECF No. 15) (addressing inapplicability of the Freedom of Information Act to congressional communications with federal agencies); Mot. Leave Intervene, *Am. Oversight v. U.S. Dep't Health Human Servs., et al.*, No. 1:17-cv-00827-EGS, (D.D.C. Sept. 15, 2017) (ECF No. 19) (same).  Recently, BLAG authorization has been partisan, with the Minority Leadership opposing any authorization of the House General Counsel to engage in any particular litigation.  *See* U.S. House *Amicus Curiae* Brief, *State of New York, et al., v. U.S. Dep't Health Human Servs., et al.*, No. 1:20-cv-5583-AKH, (S.D.N.Y. 2020) (ECF No. 72) (one of many cases where BLAG issued amicus briefs relating to the Trump administration's attempt to limit the Affordable Care Act's antidiscrimination section noting, "The Republican Leader and Republican Whip dissented"); U.S. House *Amicus Curiae* Brief, *Ass'n for Cmty. Affiliated Plans, et al. v. U.S. Dep't Treasury, et al.*, No. 19-5212 (D.C. Cir. Nov. 12, 2019) (addressing validity of short-term limited duration insurance plans under the Affordable Care Act noting, "The Republican Leader and Republican Whip dissented"); Mot. Leave Intervene, *Trump, et al. v. Deutsche Bank AG, et al.*, No. 1:19-cv-03826 (S.D.N.Y. May 3, 2019) (ECF No. 25) (addressing validity of subpoenas for incumbent President's financial records noting, "The Republican Leader and the Republican Whip decline to join in this motion").  Only rarely, however, has the House

does not overcome the procedural due process protections which preclude both the House

General Counsel and the House from interfering with Dr. Navarro's defense of this criminal

action.  The only thing the House General Counsel's intervention would achieve is to delay the

Court's ability to resolve Dr. Navarro's challenge to the government's indictment.

Specifically, contrary to the assertion of the House General Counsel, it is far from clear

that the House has any interest in the instant action.  As Supreme Court Justice Frankfurter

eloquently articulated in concurring with the Court's *Watkins* majority:

> The power of the Congress to punish for contempt of its authority is . . .
> rooted in history.  It has been acknowledged by [the Supreme Court] since
> 1821.  Until 1857, Congress was content to punish for contempt through
> its own process.  By the Act of January 24, 1857, as amended by the Act
> of January 24, 1862, Congress provided that, 'in addition to the pains and
> penalties now existing' (referring of course to the power of Congress itself
> to punish for contempt), 'contumacy in a witness called to testify is a
> matter properly under consideration by either House, and deliberately
> refusing to answer questions pertinent thereto, shall be a misdemeanor
> against the United States.'  This legislation is now 2 U.S.C. § 192.  *By thus
> making the federal judiciary the affirmative agency for enforcing the
> authority that underlies the congressional power to punish for contempt,
> Congress necessarily brings into play the specific provisions of the
> Constitution relating to the prosecution of offenses and those implied
> restrictions under which courts function.*

*Watkins v. United States*, 354 U.S. 178, 216 (1957) (Frankfurter, J., concurring) (emphasis

added).  The House General Counsel's interference with the judiciary's "affirmative agency for

enforcing the authority that underlies the congressional power to punish for contempt," *id*. at 216

---

Minority Leadership separately sought to provide its perspective or otherwise assist the Court in such matters.  *See*, *e.g.*, *Amicus Curiae* Brief of Objecting Members of the Bipartisan Legal Advisory Group, *Windsor v. United States*, No. 12-2435 (2nd Cir. Sep. 7, 2012) (arguing Section 3 of the Defense of Marriage Act is unconstitutional).  *See also United States v. Bannon*, No. 21-cr-00670 (May 24, 2022) (ECF No. 75).  Here too, the House Minority Leadership has dissented from the BLAG's authorization of any interference in this case:  a footnote within the House General Counsel's Motion notes that such opposition was:  "out of concern for damaging institutional prerogatives, as the Committee failed to adhere to the 'shall' requirements proscribed by H. Res. 503 as required by the Rules of the House of Representatives and as required by the Supreme Court in *Yellin v. United States*, 374 U.S. 109 (1963)."

(Frankfurter, J., concurring), is improper in that once a referral for contempt has been made the provenance of the House has concluded, *see Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 509 n.16 (1975) ("Any interference with congressional action has already occurred when the cases reached us, and Congress was seeking the aid of the judiciary to enforce its will."),[7] and further involvement risks interference with the alleged contemnors due process rights.[8]  *See SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 125 n.9 (1981) ("[A]n agency could be found to be abusing the court's process if it vigorously pursued a charge because of the influence of a powerful third party without consciously and objectively evaluating the charge.").

Moreover, the House General Counsel's improper attempt to intervene in *this case* risks interference with the "implied restrictions under which courts function."  The "restrictions" to which Justice Frankfurter referred were articulated by the Court's majority:  "the same degree of explicitness and clarity that the Due Process Clause requires in the expression of any element of a criminal offense."  *Id.* at 209.  The House General Counsel will no doubt argue, has he has done in past briefing, that this case implicates either the Rulemaking Clause of the Constitution, *see United States v. Rostenkowski*, 59 F.3d 1291, 1305 (D.C. Cir. 1995), or the important doctrine of separation of powers.  *See Eastland*, 421 at 500.  Yet neither assertion rings true.

---

[7] *Barker v. Conroy*, 921 F.3d 1118 (D.C. Cir. 2019), cited by the House General Counsel, is not to the contrary. There, the appellant, the U.S. House of Representatives Chaplin, was represented by the House General Counsel who necessarily provided his view of the "scope and meaning of House internal rules and procedures."  Moreover, that case did not involve the delegation of authority by the House to the judiciary.

[8] Contrast the House General Counsel's interest in this case, for which the legislative function of the House with respect to Mr. Navarro has concluded, with the *amicus curiae* brief submitted to the Supreme Court in *United States v. Helstoski*, 442 U.S. 477 (1979).  There, the Supreme Court invited the House General Counsel, the undersigned defense counsel, to argue on behalf of the U.S. House of Representatives for the purpose of protecting the House's prerogative with respect to the Speech or Debate Clause of the Constitution as applied to a criminal prosecution of a Member of the House.  *See generally id.*

"[I]t is perfectly clear that the Rulemaking Clause is not an absolute bar to judicial interpretation of the House Rules." *Rostenkowski*, 59 F.3d at 1305 (quoting *Yellin v. United States*, 374 U.S. 109, 114 (1963)); *Yellin*, 374 at 114 ("It has long been settled . . . that rules of Congress and its committees are judicially cognizable."); *Eastland*, 421 U.S. at 509 n.16 ("Our task [is] to perform the judicial function in criminal prosecutions, and we [may] properly scrutinize[] the predicates of [such] criminal prosecutions."). Similarly, more than merely finding congressional rules cognizable, the Supreme Court has held that when a rule relates to the lawful authorization for an inquiry, it "must be strictly observed." *Gojack v. United States*, 384 U.S. 702, 708 (1966). Thus, the Supreme Court has recognized, in "criminal prosecutions," "[d]fferent problems [are] presented" than in "attempts by private parties to impede congressional action," which necessarily implicates the important doctrine of separation of powers. *Eastland*, 421 U.S. at 509 n.16. As the Court further noted in cases of alleged contempt, "[a]ny interference with congressional action has already occurred when the cases reached us, and Congress was seeking the aid of the judiciary to enforce its will." *Id.* Here too, scrutiny of the House rules does not "interfere with the discretionary decisions of Congress." *Rostenkowski*, 59 F.3d at 1304. Nevertheless, "a sufficiently ambiguous House Rule is non-justiciable" and judicial scrutiny is permitted only where a Rule, "is sufficiently clear that [the court] can be confident [in its] interpretation." *Id.* at 1306.

And so it is the Congress that has invited judicial scrutiny of its rules and its adherence thereto when it asks the judiciary to deprive one of their liberty. *See Christoffel v. United States*, 338 U.S. 84, 88 (1949) ("The question is neither what rules Congress may establish for its own governance, nor whether presumptions of continuity may protect the validity of its legislative conduct. The question is rather what rules the House has established and whether they have

followed them."). Having delegated to the judiciary the task of enforcing the authority that "underlies the congressional power to punish for contempt," *Watkins*, 354 U.S. at 216 (Frankfurter, J., concurring), the House has "limited" its role in any subsequent prosecution and thereby alleviated any concern that the challenge to such prosecution would implicate the important doctrine of Separation of Powers. *Marbury v. Madison*, 5 U.S. 137 (1803). *See also Chadha v. Immigration and Naturalization Service*, 634 F.2d 408, 425 (9th Cir. 1980) ("We come then to define the judicial standard governing whether an attempted exercise of authority by one branch contravenes the rule of separation of powers. The twin purposes of preventing concentrations of power dangerous to liberty and of promoting governmental efficiency are served if we define a constitutional violation of the separation of powers as an assumption by one branch of powers that are central or essential to the operation of a coordinate branch, provided also that the assumption disrupts the coordinate branch in the performance of its duties and is unnecessary to implement a legitimate policy of the Government." (citing *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 443 (1977)).

Of course, the judiciary is itself bound by the "restrictions" imposed upon it by, *inter alia*, the Due Process Clause of the Fifth Amendment to the Constitution, and any defendant in a prosecution for criminal contempt of congress is entitled to "the same degree of explicitness and clarity that the Due Process Clause requires in the expression of any element of a criminal offense." *Watkins*, 354 U.S. at 209. To that end, judicial scrutiny of "what rules the House has established and whether they have followed them," *Christoffel*, 338 U.S. at 88, is permissible where said rules are "sufficiently clear." *Rostenkowski*, 59 F.3d at 1306. *See Yellin*, 374 U.S. at 123 ("The Committee prepared the groundwork for prosecution in Yellin's case meticulously. It is not too exacting to require that the Committee be equally as meticulous in obeying its own

rules.").  However, "for a court to interpret a House Rule in the absence of 'judicially discoverable and manageable standards' would require the court to make 'an initial policy determination of a kind clearly for nonjudicial discretion,' and would run the risk of intrusion into the legislative sphere."  *Rostenkowski*, 59 F.3d at 1307.  This Court can be sure then, that its scrutiny of the House rules *in this case* will not risk any violation of the important doctrine of Separation of Powers as contemplated by the House General Counsel.

## CONCLUSION

For the foregoing reasons, Dr. Navarro respectfully requests this Court deny the House General Counsel's Motion for leave to file an *amicus curiae* brief.

[SIGNATURE ON NEXT PAGE]

Dated: September 2, 2022                    Respectfully submitted,

                                                            */s/ Stan M. Brand*

                                            John P. Rowley, III (D.C. Bar No. 392629)
                                            SECIL LAW PLLC
                                            1701 Pennsylvania Avenue NW
                                            Suite 200
                                            Washington, DC 20006
                                            703-417-8652 (telephone)
                                            jrowley@secillaw.com

                                            John S. Irving (D.C. Bar No. 460068)
                                            E&W LAW, LLC
                                            1455 Pennsylvania Avenue NW
                                            Suite 400
                                            Washington, DC 20004
                                            301-807-5670 (telephone)
                                            john.irving@earthandwatergroup.com

                                            Stan M. Brand (D.C. Bar No. 213082)
                                            Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                            BRAND WOODWARD LAW, LP
                                            1808 Park Road NW
                                            Washington, DC  20010
                                            202-996-7447 (telephone)
                                            202-996-0113 (facsimile)
                                            Stanley@BrandWoodwardLaw.com

                                            *Counsel to Dr. Peter K. Navarro*

## CERTIFICATE OF SERVICE

On September 2, 2022, the undersigned hereby certifies that a true and correct copy of

the foregoing was electronically filed and served via the CM/ECF system, which will

automatically send electronic notification of such filing to all registered parties.

_____*/s/ Stanley E. Woodward, Jr.*_____
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel to Dr. Peter Navarro*