Let this be filed.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>)<br><br>v. )<br><br>)<br>PETER K. NAVARRO, )<br><br>)<br>*Defendant.* )<br><br>)<br>)<br>) | Criminal No. 1:22-cr-00200-APM |

**<u>BRIEF OF UNITED STATES HOUSE OF REPRESENTATIVES AS AMICUS CURIAE
IN SUPPORT OF THE DEPARTMENT OF JUSTICE</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................. ii

INTRODUCTION AND STATEMENT OF INTEREST ............................................................ 1

ARGUMENT .................................................................................................................................. 4

CONCLUSION ............................................................................................................................. 17

i

# TABLE OF AUTHORITIES*

**Cases**

*Barker v. Conroy*,
  921 F.3d 1118 (D.C. Cir. 2019)..........................................................................................1, 3

*Barry v. United States ex rel. Cunningham*,
  279 U.S. 597 (1929) ................................................................................................................3

*Budowich v. Pelosi*,
  No. 21-3366 (D.D.C. Jan. 20, 2022) ...............................................................................12, 15

*Comm. on Judiciary, U.S. House of Representatives v. McGahn*,
  415 F. Supp. 3d 148 (D.D.C. 2019)......................................................................................16

*Comm. on Judiciary, U.S. House of Representatives v. Miers*,
  558 F. Supp. 2d 53 (D.D.C. 2008)........................................................................................16

*Eastman v. Thompson*,
  No. 22-99 (C.D. Cal. Jan. 25, 2022)................................................................................13, 15

*In re Sealed Case (Espy)*,
  121 F.3d 729 (D.C. Cir. 1997)................................................................................................5

*Meadows v. Pelosi*,
  No. 21-3217 (D.D.C. Apr. 22, 2022)....................................................................................12

*Nixon v. Adm'r of Gen. Servs.*,
  433 U.S. 425 (1977) ................................................................................................................5

*Rangel v. Boehner*,
  20 F. Supp. 3d 148 (D.D.C. 2013).......................................................................................3, 7

*Republican Nat'l Comm. ("RNC") v. Pelosi*,
  --- F. Supp. 3d. ---, 2022 WL 1294509 (D.D.C. May 1, 2022) ...............................11, 12, 14

*Thompson v. Trump*,
  --- F. Supp. 3d. ---, 2022 WL 503384 (D.D.C. Feb. 18, 2022) ..............................................5

*Trump v. Mazars, USA LLP*,
  140 S. Ct. 2019 (2020) ........................................................................................................2, 3

* Authorities chiefly relied upon are marked with asterisks

*Trump v. Thompson,
    573 F. Supp. 3d 1 (D.D.C. 2021)...................................................................5
    20 F.4th 10 (D.C. Cir. 2021) ...............................................................5, 15

*United States v. Bannon,
    No. 21-670 (D.D.C.)...........................................................................10, 15

United States v. Durenberger,
    48 F.3d 1239 (D.C. Cir. 1995).................................................................13

United States v. Reynolds,
    345 U.S. 1 (1953) ......................................................................................5

United States v. Rostenkowski,
    59 F.3d 1291 (D.C. Cir. 1995)..............................................3, 10, 12, 13

Vander Jagt v. O'Neill,
    699 F.2d 1166 (D.C. Cir. 1982)................................................................7

Watkins v. United States,
    354 U.S. 178 (1957) ..................................................................................2

**Statutes**

2 U.S.C. § 192 .................................................................................................2, 4

26 U.S.C. §§ 8001-05 .........................................................................................8

**Constitution**

U.S. Const., Art I, § 5, cl. 2 .................................................................................3

**Legislative Authorities**

165 Cong. Rec. H1216 (daily ed. Jan. 25, 2019).................................................8

167 Cong. Rec. H37 (daily ed. Jan. 4, 2021)......................................................8

167 Cong. Rec. H5760 (daily ed. Oct. 21, 2021) ..............................................11

167 Cong. Rec. H5768-69 (daily ed. Oct. 21, 2021).........................................11

167 Cong. Rec. H7786 (daily ed. Dec. 14, 2021) .............................................11

167 Cong. Rec. H7793 (daily ed. Dec. 14, 2021) .............................................10

167 Cong. Rec. H7814-15 (daily ed. Dec. 14, 2021) ...........................................................11

168 Cong. Rec. H4217 (daily ed. Apr. 6, 2022)................................................................11

168 Cong. Rec. H4371-79 (daily ed. Apr. 6, 2022) ..................................................11

H. Rep. No. 109-377 (2006) ...........................................................................................9

H. Rep. No. 117-284 (2022) ................................................................1, 5, 6, 7, 16

H. Res. 10, 117th Cong. (2021) ...................................................................................14

H. Res. 437, 109th Cong. (2005) ...................................................................................9

H. Res. 503, 117th Cong. (2021)...................................................8, 9, 10, 11, 12, 13, 14, 15

H. Res. 730, 117th Cong. (2021) ...............................................................................11

H. Res. 851, 117th Cong. (2021) ...............................................................................11

H. Res. 1037, 117th Cong. (2022) .............................................................................11

Rules of the U.S. House of Representatives, 117th Cong. (2021) ...............................1

    Rule I ..................................................................................................................8

    Rule X ................................................................................................................8

**Other Sources**

4 *Hinds' Precedents of the House of Representatives* § 4552 (1907) .........................9

Constitution, Jefferson's Manual, and Rules of the House of Representatives,
    H. Doc. 116-177 § 409 (2021)...............................................................................9

*Ranking Member*, Glossary of Legislative Terms,
    https://perma.cc/83HA-3DKY................................................................................14

## INTRODUCTION AND STATEMENT OF INTEREST

The United States House of Representatives files this *amicus curiae* brief in support of the position of the U.S. Department of Justice that this Court should deny Defendant Peter Navarro's motion to dismiss his indictment.

We provide this brief to the Court because the House is in the best position to provide its interpretation of its own rules and procedures, which Defendant has put at issue.  Indeed, the D.C. Circuit has found dispositive the explanations by the House General Counsel in court briefs and at oral argument concerning the House's interpretation of the scope and meaning of its internal rules and procedures.  *See Barker v. Conroy*, 921 F.3d 1118, 1124, 1130-32 (D.C. Cir. 2019).

As the Justice Department opposition correctly explains, Defendant's motion to dismiss his indictment is seriously flawed because it rests on an inaccurate description of the facts. Defendant portrays himself as a pawn in a struggle between the Executive Branch and the House of Representatives over whether he should have provided testimony and documents despite a claim of executive privilege by former-President Trump.  As the Justice Department points out in its opposition, though, former-President Trump has never invoked executive privilege regarding the House subpoena that gave rise to Defendant's indictment.

In the Select Committee's report recommending holding Defendant in contempt of Congress and referring him to the United States Attorney for presentation to the grand jury under the statute (H. Rep. No. 117-284, at 13-15 (2022)), the Select Committee explained that it had never received or been made aware of any executive privilege claim by former-President Trump involving the Select Committee's subpoena to Defendant.  And Defendant's motion points (at 5) solely to an informal statement concerning executive privilege by former-President Trump about

a different subpoena issued by a different House committee several months earlier regarding entirely different matters.  Moreover, the White House specifically notified Defendant that President Biden declined to invoke executive privilege with regard to the Select Committee subpoena.

In any event, as we demonstrate below, no executive privilege claim could have excused Defendant from properly responding to the Select Committee's subpoena. Such a claim would have been ineffective because the Select Committee made clear to Defendant that its inquiry would focus on Defendant's efforts to overturn the result of the 2020 Presidential election— conduct he himself described as taken in his *personal* capacity—not conduct related to his official duties for the President.  Both the courts and the Executive Branch agree that this type of non-official conduct cannot be shielded by executive privilege.

The bottom line is that, contrary to Defendant's central theme, no clash exists here between the Executive and Legislative Branches.  Defendant has simply been caught in a net of his own making.  He has been indicted solely because he, without any valid cause or lawful excuse ever raised by him to the Select Committee, willfully defied a Congressional subpoena. This is precisely the situation that 2 U.S.C. § 192 addresses.  *See also Watkins v. United States*, 354 U.S. 178, 187-88 (1957) (stating of citizens that "[i]t is their unremitting obligation to respond to subpoenas, to respect the dignity of the Congress and its committees, and to testify fully with respect to matters within the province of proper investigation.").

At several points in his motion (at 10, 13, 17), Defendant cites the Supreme Court's decision in *Trump v. Mazars, USA LLP*, 140 S. Ct. 2019 (2020), apparently for the proposition that this case does indeed involve separation of powers issues.  As this Court knows well, *Mazars* involved subpoenas by House committees seeking non-privileged, personal financial

2

records of then-President Trump, which he opposed.  The Supreme Court rejected President Trump's argument that the House could not do this; the Court merely established a new standard for when the House may indeed compel production of such materials from a sitting President. Nothing in *Mazars* supports Defendant's argument here that he can defy a House subpoena even though neither the former President nor the sitting President opposed that subpoena.

As the Justice Department also points out (at 23-25), Defendant attacks the Select Committee's subpoena by improperly asking this Court to disregard the Constitutional provisions that give the House authority over its own procedures.  The Constitution's Rulemaking Clause states that "[e]ach House may determine the Rules of its Proceedings."  U.S. Const., Art. I, § 5, cl. 2.  In *Barker*, the D.C. Circuit explained that this Clause "'clearly reserves to each House of the Congress the authority to make its own rules,' and . . . interpreting a congressional rule 'differently than would the Congress itself' is tantamount to '*making* the Rules—a power that the Rulemaking Clause reserves to each House alone.'"  921 F.3d at 1130 (quoting *United States v. Rostenkowski*, 59 F.3d 1291, 1306-07 (D.C. Cir. 1995)); *see also Rangel v. Boehner*, 20 F. Supp. 3d 148, 167 (D.D.C. 2013).

Defendant's attacks on the validity of the Select Committee's subpoena ignore the deference a court owes the House regarding the meaning and application of its own rules and procedures, and the presumption of regularity due to Congress.  *See Barry v. United States ex rel. Cunningham*, 279 U.S. 597, 619 (1929) ("The presumption in favor of regularity . . . cannot be denied to the proceedings of the houses of Congress, when acting upon matters within their constitutional authority.").  Further, Defendant's arguments about supposed flaws in the Select Committee's formation and operation have already been rejected by every court to have considered them.

3

The Justice Department's opposition also demonstrates (at 14-19) that, because Defendant did not raise his attacks about the subpoena to the Select Committee, he cannot use them now to fight the subpoena. The House fully endorses this and the Justice Department's other arguments. Below, the House offers its own rebuttal to several of Defendant's other attacks of particular concern to the House.[1]

## ARGUMENT

**A.** Defendant argues (at 4, 20 n.12) that he cannot be criminally prosecuted for his defiance of a House committee subpoena because of the Justice Department's prior practice and the fact that the House could have enforced its subpoena through a civil action. Defendant, however, never explains why, as a matter of law, the possibility of judicial enforcement through a civil action brought by the House estops the Justice Department from bringing an indictment under 2 U.S.C. § 192. Nothing in Section 192 requires the House to take all possible steps to force an individual into compliance before the Justice Department can bring a criminal action for willful noncompliance.

There is simply no support in law—and Defendant provides none—for the theory that, because a civil action may be used to enforce a Congressional subpoena in court, the Justice Department is barred, as a matter of policy or constitutional separation of powers, from pursuing a criminal prosecution specifically provided for by statute when a former Executive Branch official defies a subpoena.

**B.** As noted above, the Justice Department has in its opposition demonstrated that this prosecution raises no constitutional separation of powers issues because former-President Trump has not asserted executive privilege over the testimony or documents covered by the Select

---

[1] If the Court would find it useful, counsel for the House is available to appear at the hearing scheduled on September 23, 2022, to address Defendant's motion.

Committee's subpoena.  It bears emphasizing that Defendant had and has no authority to assert executive privilege on his own against the House; that can be done only by a President, and it must be done formally and with particularity as to specific subjects or points or questions.  *See Trump v. Thompson*, 573 F. Supp. 3d 1, 14 (D.D.C. 2021) ("The privilege 'belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party.'" (quoting *United States v. Reynolds*, 345 U.S. 1, 7 (1953)), *aff'd*, 20 F.4th 10, 26 (D.C. Cir. 2021) ("The executive privilege is just that—a privilege held by the Executive Branch."), *inj. denied*, 142 S. Ct. 680 (2022), *cert. denied*, 142 S. Ct. 1350 (2022); *see also Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449 (1977) ("[T]he privilege is not for the benefit of the President as an individual, but for the benefit of the Republic.").

Further, even a claim of executive privilege by former-President Trump over Defendant would not excuse Defendant's total disregard for the Select Committee's subpoena, because executive privilege applies only to the *official duties* of high-level White House officials close to the President.  *See Thompson v. Trump*, --- F. Supp. 3d ---, 2022 WL 503384, at *18 (D.D.C. Feb. 18, 2022) ("[P]lanning for the January 6 Rally [did not] involve official duties."); *In re Sealed Case (Espy)*, 121 F.3d 729, 752 (D.C. Cir. 1997) ("[Executive] privilege only applies to communications that these advisers and their staff author or solicit and receive in the course of performing their function of advising the President on official government matters.").

The Select Committee made clear to Defendant that it seeks his testimony and documents regarding his plans and activities designed to overturn the results of the 2020 Presidential election.  H. Rep. No. 117-284, at 2-4, 8-19.  In its contempt referral report, the Select Committee explained that it had sought "information from Mr. Navarro on a range of subjects

unrelated to his or the President's official duties or related to his communications with people outside government about matters outside the scope of Mr. Navarro's official duties." *Id.* at 15.

For example, the Select Committee made clear to Defendant that it wished to inquire into his interactions with private citizens, Members of Congress, and others outside the White House about efforts to overturn the 2020 Presidential election, including the so-called "Green Bay Sweep" (a strategy developed by Defendant with Stephen Bannon for changing the election results). *Id.* at 12, 15-16. Defendant has publicly admitted that he worked on these matters as a private citizen. *See id.* at 16. In addition, the Select Committee intended to inquire about Defendant's phone calls with Roger Stone about the then-upcoming rallies in Washington, D.C., and about the book Defendant wrote—and was at the time promoting—recounting his claims that the election was stolen and his experiences around the National Mall on January 6, 2021. *Id.* at 15-16.

As the Select Committee concluded: "There is no conceivable claim of executive privilege over documents and testimony related to those topics." *Id.* at 16. Further, the Select Committee explained that "any claim of executive privilege and the need to maintain confidentiality is severely undermined, if not entirely vitiated, by Mr. Navarro's extensive public disclosure of his communications with the former President, including on issues directly implicated by the Select Committee's subpoena." *Id.* As the Select Committee noted, Defendant's recently published book described his efforts to overturn the 2020 Presidential election and several meetings with then-President Trump about these efforts, as well as that, after receiving the Select Committee's subpoena, Defendant appeared on national television to discuss the subpoena and his conduct in trying to change the election results. *Id.*

With regard to its subpoena to Defendant, the Select Committee was nevertheless fully prepared to carefully assess any specific assertions of executive privilege, and informed Defendant that "he could make executive privilege objections during his deposition and that he must do so on a 'question-by-question basis' to 'enable the Select Committee to better understand his objections and, if necessary, take any additional steps to address them.'" *Id.* at 4.

In sum, given the focus of the Select Committee's inquiries concerning Defendant, any claim of executive privilege did not provide an excuse for him to violate the law by refusing to provide any documents or appear for a deposition.

**C.** The Justice Department's opposition correctly disputes (at 19-27) Defendant's allegations that his indictment should be dismissed because, in his view, the Select Committee did not properly follow House and Select Committee rules and procedures. We agree with the Justice Department's arguments, and we provide further refutation of Defendant's claims.

The House of Representatives takes the position, after a full review of is applicable rules, that its rules allow for the Select Committee to operate with nine members and for Rep. Liz Cheney to operate as the ranking member. Defendant's plea that this Court override the actions of the House and its Speaker by disregarding their interpretation of the House's rules asks this Court to contravene important constitutional text and separation of powers principles. As explained above, the Rulemaking Clause is a critical aspect of the Legislative Branch's constitutional design because it "grants the House the power to make its own Rules about its internal proceedings." *Rangel*, 20 F. Supp. 3d at 167. Accordingly, the D.C. Circuit has pointed out that it is a "startlingly unattractive idea, given our respect for a coequal branch of government, for us to tell the Speaker" whom to appoint to committees. *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1176-77 (D.C. Cir. 1982) (citation and internal quotation marks omitted).

Defendant argues (at 21) that, because the Select Committee's authorizing resolution uses the word "shall," the Speaker had no discretion in appointing Members to the Select Committee.[2] He claims that the Select Committee was not properly organized because the Speaker did not simply accept the nominees suggested by the Minority Leader. But nothing required the Speaker to do so.

The House has four different kinds of committees, each of which is established and governed by various House Rules, statutes, and House resolutions, or on an *ad hoc* basis. *See, e.g.*, Rule X, Rules of the U.S. House of Representatives, 117th Cong. (2021) (House Rules) (rules governing "standing" Committees); 26 U.S.C. §§ 8001-05 (establishing the Joint Committee on Taxation); H. Res. 503, 117th Cong. § 1 (2021) (establishing the Select Committee); 165 Cong. Rec. H1216 (daily ed. Jan. 25, 2019) (appointment of conferees for H.J. Res. 31). The House rules and procedures governing appointments to these four distinct types of committees vary. Significantly, under House rules, the Speaker appoints Members for all select committees, including the one at issue here. *See* House Rule I.11, ("The Speaker shall appoint all select, joint, and conference committees ordered by the House."). And, by unanimous consent, on January 4, 2021, the House expressly authorized the Speaker to "make appointments authorized by law or by the House." *See* 167 Cong. Rec. H37 (daily ed. Jan. 4, 2021) (statement of Rep. Hoyer).

House Resolution 503 does not require that *all* thirteen Members be appointed in order for the Select Committee to function, and we are aware of no rule or law providing that the authorization to appoint thirteen Members required appointment by the Speaker of that precise

---

[2] H. Res. 503 states that "[t]he Speaker shall appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader." H. Res. 503, 117th Cong. § 2(a) (2021).

number.  Indeed, by appointing nine Members, the Speaker provided the Select Committee with

a quorum to do its business.  *See* Constitution, Jefferson's Manual, and Rules of the House of

Representatives, H. Doc. 116-177 § 409, at 217 (2021) ("A majority of the committee constitutes

a quorum for business"); 4 *Hinds' Precedents of the House of Representatives* § 4552, at 924-25

(1907) (vacancies or absences do not preclude committees from their work so long as a quorum

is present).

Given the way that the House operates and interprets its rules (by paying close attention

to prior practice), it is critical to note that precedent also supports a House select committee

operating with fewer than its full allotment of Members being appointed by the Speaker.  In the

109th Congress, the House created the Select Committee to Investigate the Preparation for and

Response to Hurricane Katrina, which allowed for twenty Members, using language analogous to

the Resolution here.  *See* H. Res. 437, 109th Cong. § 2(a) (2005) ("The select committee shall be

composed of 20 members appointed by the Speaker[.]").  Then-House Speaker Dennis Hastert

appointed only eleven Members, all of whom were from the then-majority Republican Party.

*See* H. Rep. No. 109-377, at ii (2006) (listing Members).

The Katrina Select Committee also issued subpoenas.  *See id.* at 23 (noting that the

Katrina Select Committee issued a subpoena to the Department of Defense, and that the

Department complied).  This precedent strongly supports the Speaker's actions here in

appointing the Members of the January 6th Select Committee.

House Resolution 503 itself contemplates the possibility of "vacancies," but provides no

specific timeline for filling them.  *See* H. Res. 503 § 2(c).  Nor does House Resolution 503

provide that the Select Committee would become invalid, or that it must suspend all action,

should a vacancy occur—even though, by definition, it would have fewer than thirteen members. *See id.*

Judge Nichols in this district recently in *United States v. Bannon*, rejected the very arguments being raised here by Defendant.  *See* Mot. Hr'g Tr. at 114:9-116:9, No. 21-670 (D.D.C. June 15, 2022); Mot. Hr'g Tr. at 130:22-131:24, No. 21-670 (D.D.C. July 11, 2022).[3]  In denying the argument that House rules mandated that the Speaker appoint exactly thirteen Members to the Select Committee, Judge Nichols explained that "the fact that House Resolution 503 uses the word 'shall' is not conclusive to proving that 13 members are required for the Select Committee to lawfully operate."  Mot. Hr'g Tr. at 115:4-6, *Bannon* (D.D.C. June 15, 2022). Given the "potential ambiguity" in the rule, Judge Nichols determined that it "must give great weight to the interpretation of those House members charged with implementing the resolution and to the House itself," *id.* at 115:8-10, because "judicial interpretation of an ambiguous House Rule runs the risk of the Court intruding into the sphere of influence reserved to the legislative branch under the Constitution," *id.* at 116:3-5 (quoting *Rostenkowski*, 59 F.3d at 1306).

Judge Nichols added that "that reading appears to have been ratified by the full House several times through the contempt resolution and prosecution referrals with respect to Mr. Bannon, the contempt resolution and referral of Mark Meadows, the contempt resolution and referral for Peter Navarro and the contempt resolution and referral for Dan Scavino."  *Id.* at 115:13-19.[4]

---

[3] Mr. Bannon was subsequently convicted on two counts of contempt of Congress.  *See* Verdict Form, *Bannon* (D.D.C. July 22, 2022), ECF No. 135.

[4] For example, when the resolution on Mark Meadows's contempt was debated before the full House, several Members of Congress raised the argument about the composition of the Select Committee.  *See, e.g.*, 167 Cong. Rec. H7793 (daily ed. Dec. 14, 2021) ("This committee

Judge Kelly of this district had also earlier ruled the same way: "the House views the Select Committee to be duly constituted and empowered to act under its authorizing resolution, even though the Select Committee has only nine members. This understanding is reflected by the House's adoption of the Select Committee's recommendations to find witnesses in contempt of Congress for their refusals to comply with Select Committee subpoenas." *Republican Nat'l Comm. ("RNC") v. Pelosi*, --- F. Supp. 3d. ---, 2022 WL 1294509, at *15 (D.D.C. May 1, 2022), *appeal pending*, No. 22-5123 (D.C. Cir.).

In rejecting the argument that House rules mandated that the Speaker had to appoint thirteen Members to the Select Committee, Judge Kelly explained that the fact "that [House Resolution 503 § 2(a)] states that Speaker Pelosi 'shall' appoint thirteen members to the Select

---

is illegitimate. It has violated its own rules of creation. It has violated its own rules of creation and it says they want to find out this massive truth here about what happened on January 6. You can't have a committee to find out what happened because you are interested. You can't do that. And that is what they are doing today.") (statement of Rep. Biggs); *id.* at H7786 (contending that the Select Committee does not comply with H. Res. 503 because "the committee has zero members appointed in consultation with Leader McCarthy" and "it doesn't have 13 members") (statement of Rep. Banks); *see also* 167 Cong. Rec. H5760 (daily ed. Oct. 21, 2021) (arguing, in debate on the contempt resolution for Bannon, that "the subpoenas that have so far been issued do not ask for information that would meet any legitimate legislative purpose") (statement of Rep. Banks). 168 Cong. Rec. H4217 (daily ed. Apr. 6, 2022) (specifically raising challenges to the Select Committee's means of operation before the full House during its debate over whether the House should adopt a contempt resolution relating to Defendant and Daniel Scavino, Jr.). The interpretive arguments Defendant now presents have been rejected by the Select Committee, the Rules Committee, the Parliamentarian, the Speaker, and the full House of Representatives. Moreover, the full House approved the Select Committee's referrals of Defendant, plus Stephen Bannon, Mark Meadows and Daniel Scavino for contempt of Congress. *See* H. Res. 730, 117th Cong. (2021) (Bannon); H. Res. 851, 117th Cong. (2021) (Meadows); H. Res. 1037, 117th Cong. (2022) (Navarro and Scavino). These resolutions were reported by the Select Committee, approved for floor consideration by the House Rules Committee and approved by the full House. *See* 167 Cong. Rec. H5768-69 (daily ed. Oct. 21, 2021) (vote on Bannon); 167 Cong. Rec. H7814-15 (daily ed. Dec. 14, 2021) (vote on Meadows); 168 Cong. Rec. H4371-79 (daily ed. Apr. 6, 2022) (vote on Navarro and Scavino). The full House's ratification of the referrals reinforces that Defendant's objections to the Select Committee's composition cannot be accepted.

Committee is not conclusive as to whether thirteen members are required for it to lawfully operate." *RNC*, 2022 WL 1294509, at *15. Judge Kelly concluded that if he accepted the argument (which is identical to Defendant's argument) about the Select Committee's composition, he "would be 'interpret[ing] the Rule differently than . . . the [House] itself' and 'would effectively be making the Rules—a power that the Rulemaking Clause reserves to each House alone.'" *Id.* (quoting *Rostenkowski*, 59 F.3d at 1306-07).[5]

Judges Nichols and Kelly were not the first judges to find the argument being made here by Defendant unconvincing; two judges had previously done so, and no judge has ruled differently.

In *Budowich v. Pelosi*, Judge Boasberg also rejected the same challenge that Defendant brings here concerning the composition of the Select Committee. He held that courts must "defer to Congress in the manner of interpreting its rules," and that it would be "usurping Congressional authority" to hold that the Select Committee was not validly composed. Oral Arg. Tr. at 33-34, *Budowich v. Pelosi*, No. 21-3366 (D.D.C. Jan. 20, 2022).

Furthermore, Judge Carter of the Central District of California agreed with Judge Boasberg, likewise recognizing the deference owed to the Speaker, the full House, and the Select

---

[5] In *RNC v. Pelosi*, the court described the Speaker's consultations with Minority Leader McCarthy: "House Minority Leader Kevin McCarthy recommended five more members to Speaker Pelosi: Representative Jim Banks (to serve as Ranking Member) along with Representatives Rodney Davis, Jim Jordan, Kelly Armstrong, and Troy Nehls. Speaker Pelosi agreed to appoint Representatives Davis, Armstrong, and Nehls but declined to appoint Representatives Banks and Jordan, and she asked Minority Leader McCarthy to recommend two other members. That same day, Minority Leader McCarthy decided to withdraw all five of his recommended appointees in protest." 2022 WL 1294509, at *2 (citations omitted). Following the Minority Leader's failure to continue the consultation process, the Speaker interpreted and applied House Resolution 503 and House Rules consistent with House precedents, as outlined herein. As indicated, the Constitution's Rulemaking Clause leaves no doubt that judicial deference to this application of House Resolution 503 is required. *See also* Defs' Mot. for Summ. J. at 7-8, 17-25, *Meadows v. Pelosi*, No. 21-3217 (D.D.C. Apr. 22, 2022), ECF No. 15.

Committee in interpreting a House resolution.  "A court may interpret internal congressional rules only when such interpretation 'requires no resolution of ambiguities.'"  Order Den. Pl.'s Mot. for Prelim. Inj. at 9 n.12, *Eastman v. Thompson*, No. 22-99 (C.D. Cal. Jan. 25, 2022), ECF No. 43 (quoting *United States v. Durenberger*, 48 F.3d 1239, 1244 (D.C. Cir. 1995)).

Under such circumstances, Defendant's demand that this Court tell the House the meaning of its own internal rules and procedures plainly contravenes the separation of powers and the House's constitutionally assigned authority to set its own rules.

Defendants tries (at 19-20) to subvert the holdings of Judge Kelly and Judge Nichols by asserting—unconvincingly—that *Rostenkowski* actually works in his favor.  He argues (at 20) that his indictment cannot stand because "the rules in question" were not "unambiguous or 'sufficiently clear.'" (quoting *Rostenkowski*, 59 F.3d at 1306).  But "the rules in question" here—unlike in *Rostenkowski*—do not relate to the offense itself.  In *Rostenkowski*, the prosecution turned on the distinction between the use of House resources for "personal" as opposed to "official" purposes, a difference that, with regard to several counts in the indictment, turned on interpretation of House rules.  59 F.3d at 1307-08.  The D.C. Circuit concluded that "the Government may not prove . . . counts at trial by reference to any House Rule that we have determined is not subject to judicial interpretation" due to its ambiguity.  *Id.* at 1312; *see also id.* at 1306-07.

*Rostenkowski* thus stands for the proposition that the Government may not use an unclear House rule as a sword to prosecute a defendant—not that a *defendant* may identify such a rule, unrelated to the elements of the offense, and claim that it shields him from prosecution.

Defendant next contends that the Select Committee exceeded its authority because House Resolution 503 allows depositions only after consultation with the Select Committee's ranking

minority member and (according to Defendant) the Select Committee has no such member. Defendant's argument is wrong.

House Resolution 503 provides that "[t]he chair of the Select Committee, upon consultation with the ranking minority member, may order the taking of depositions, including pursuant to subpoena." H. Res. 503 § 5(c)(6)(A). Defendant incorrectly argues (at 9-12) that his subpoena violated the Resolution because the Select Committee has no ranking minority member for purposes of the Resolution. In fact, the Resolution's consultation requirement was satisfied by the Chair's consultation with Vice Chair Liz Cheney.

Consistent with House practice and precedent, the term "ranking minority member" means the first member of the minority party appointed to the Select Committee by the Speaker. *See, e.g.*, *Ranking Member*, Glossary of Legislative Terms, https://perma.cc/83HA-3DKY (defining "ranking member" as "[t]he most senior (though not necessarily the longest-serving) member of the minority party on a committee"); H. Res. 10, 117th Cong. (2021) (containing ranking minority member appointments to the standing Committees of the House, colloquially referred to as "ranking members").

Representative Cheney, by virtue of being the first minority party Member appointed to the Select Committee, is, by definition, the senior ranking minority member of the Select Committee. Accordingly, pursuant to the House's longstanding interpretation of "ranking minority member," House Resolution 503 was satisfied by consultation with Vice Chair Cheney. And, to the extent there is any ambiguity, the House's interpretation must control. *See supra* at 1, 3; *RNC*, 2022 WL 1294509, at *16 ("[O]n this record the Court must defer to the Select Committee's decision to treat Representative Cheney as the ranking minority member for

consultation purposes."); Mot. Hr'g Tr. at 117:10-118:5, *Bannon* (D.D.C. June 15, 2022); Mot.

Hr'g Tr. at 130:22-131:24, *Bannon* (D.D.C. July 11, 2022).

**D.**   Defendant notably does not contest the legislative purpose of the Select Committee

itself, and for good reason.  The D.C. Circuit has already squarely held that "the January 6th

Committee plainly has a valid legislative purpose and its inquiry concerns a subject on which

legislation could be had." *Trump v. Thompson*, 20 F.4th at 41 (internal quotation marks,

alteration, and citation omitted).  The D.C. Circuit emphasized "Congress's uniquely vital

interest in studying the January 6th attack on itself to formulate remedial legislation and to

safeguard its constitutional and legislative operations." *Id.* at 17.[6]  Defendant does, though,

attack the legislative purpose of the subpoena served on him specifically.  That challenge fails.

Defendant is obviously a relevant witness to the Select Committee's investigation.

House Resolution 503 expressly authorizes the Select Committee to: (1) "investigate the facts,

circumstances, and causes relating to the domestic terrorist attack on the Capitol . . . and relating

to the interference with the peaceful transfer of power"; (2) "identify, review, and evaluate the

causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3)

"issue a final report to the House containing such findings, conclusions, and recommendations

for corrective measures . . . as it may deem necessary."  H. Res. 503 § 4(a)(1)-(3).

Defendant's testimony and information are squarely within the appropriate bounds of the

work of the Select Committee, as established by the Select Committee's contempt referral report.

That report describes that Defendant "has publicly acknowledged playing a role in devising a

---

[6] *See also* Oral Arg. Tr. at 33, *Budowich v. Pelosi*, No. 21-3366 (D.D.C. Jan. 20, 2022);
Order Den. Pl.'s Mot. for Prelim. Inj. at 10, *Eastman v. Thompson*, No. 22-99 (C.D. Cal. Jan. 25,
2022), ECF No. 43 (holding that "the issues surrounding the 2020 election and the January 6th
attacks" are "clearly 'subjects on which legislation could be had'").

post-election strategy to change the outcome of the election and promoting claims of election fraud intended to further that strategy." H. Rep. No. 117-284, at 9. Moreover, Defendant released on his personal website a three-part report on purported election fraud, which was shared with Mark Meadows and John Eastman, who were heavily involved in efforts to reverse the 2020 Presidential election results. *Id.* at 10-12. Defendant also claimed credit for concocting with Mr. Bannon the "Green Bay Sweep" plan to overturn the election. *Id.* at 12. And Defendant reportedly worked with members of the Trump Campaign's legal team to directly encourage state legislators to change their voters' results. *Id.* at 11. Finally, Defendant had multiple calls with Mr. Bannon on January 6th both during and after attack on the Capitol. *Id.* at 12.

In other words, Defendant's claim in his motion that the Select Committee did not have sufficient reason to depose him and obtain relevant documents from him has absolutely no credibility and cannot be treated seriously. Defendant's refusal to comply with the Select Committee's subpoena plainly has interfered with its work.

*     *     *     *     *

Finally, the House underscores that Defendant cannot rely on any absolute immunity theory to avoid prosecution for contempt of Congress here. The House maintains that the Office of Legal Counsel opinions discussing the doctrine of absolute immunity for Presidential aides are incorrect and have no basis in the law, as two courts in this district have already held. *See Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53, 99-107 (D.D.C. 2008); *Comm. on Judiciary, U.S. House of Representatives v. McGahn*, 415 F. Supp. 3d 148, 202-03 (D.D.C. 2019). In any event, the House fully agrees with the Department of Justice

16

that those Office of Legal Counsel opinions, by their own terms, do not apply here (*see* ECF No.

44 at 11-12), and thus this Court has no reason to address their merits.

## **<u>CONCLUSION</u>**

For the reasons stated above, the House submits this brief in support of the Department of

Justice's position that Defendant's motion to dismiss his indictment should be denied.

Respectfully submitted,

<u>/s/ *Douglas N. Letter*</u>
DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

September 2, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2022, I caused the foregoing document to be served on the parties' counsel via electronic mail.


*/s/ Douglas N. Letter*
Douglas N. Letter