UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 22-cr-200 |
| | : | |
| PETER K. NAVARRO, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' REPLY TO DEFENDANT'S OPPOSITION TO GOVERNMENT'S OMNIBUS MOTION IN LIMINE**

At trial, the government intends to present a streamlined case to the jury to establish that the Defendant, Peter K. Navarro, was subpoenaed to produce documents and appear for a deposition before the Select Committee to Investigate the January 6th Attack on the United States Capitol ("the Committee"), and nonetheless made a deliberate decision not to do either. The Government's Omnibus Motion in Limine, ECF No. 58, is intended to address the evidence and arguments that are appropriate to present to the jury. The Defendant's opposition blurs the line between the legal defenses that he has presented to the Court in his Rule 12 motion to dismiss and trial defenses that may be presented to the jury. Indeed, he does not just blur the line, he argues explicitly that if the Court should rule against him on his motion to dismiss, then it should allow him to relitigate those same issues before the jury. *See* ECF No. 59 at 6-7, 20-21. The Court should exercise its gatekeeping function to exclude evidence and argument at trial regarding all matters that do not go to the elements of the offenses charged and to the matters that must be resolved by the jury.

In his opposition, the Defendant also continues his effort to avoid the plain meaning of controlling case law that sets the elements of the Contempt of Congress charge, 2 U.S.C. 192, and

that limits the scope of permissible defenses to that charge.[1]  And he continues to advance defenses that he has waived and looks for ways to inject political issues into the trial.  At bottom, the Defendant's argument is not with the government but with the controlling law, and his opposition betrays his wish that the law were different.

The Government's Omnibus Motion in Limine should be granted.

I. **Controlling Precedent Precludes the Defenses and Arguments that the Defendant Wishes to Rely Upon at Trial**

Binding precedent makes clear that for purposes of the contempt of Congress statute, "willful" means a deliberate and intentional failure to appear or produce records, and nothing more. *Licavoli v. United States*, 294 F.2d 207, 208 (D.C. Cir. 1961) ("[H]e who deliberately and intentionally fails to respond to a subpoena 'willfully makes default.'") (citing *United States v. Bryan*, 339 U.S. 323 (1950); *United States v. Fleischman*, 339 U.S. 349 (1950)); *see also Bryan*, 339 U.S. at 330 ("[W]hen the Government introduced evidence in this case that respondent had been validly served with a lawful subpoena directing her to produce records within her custody and control, and that on the day set out in the subpoena she intentionally failed to comply, it made out a prima facie case of wilful default.").  It does not matter if the Defendant's deliberate and intentional failure was in good faith; the Government does not have to show "evil motive"—"[a] deliberate intention not to appear is sufficient." *Licavoli*, 294 F.2d at 208; s*ee also*, *Sinclair v. United States*, 279 U.S. 263, 299 (1929), *overruled on other grounds*, *United States v. Gaudin*, 515 U.S. 506 (1995) ("The gist of the offense is refusal to answer pertinent questions.  No moral

---

[1] The Government acknowledges that the parties have not yet received the benefit of a ruling on the Defendant's Motion to Dismiss the charges.  ECF No. 34.  The Government's Omnibus Motion in Limine and this Reply are submitted with the expectation that the Court will resolve prior to trial the pending issues regarding the legal standard applicable to the offenses charged and any potential defenses to those charges.

2

turpitude is involved. Intentional violation is sufficient to constitute guilt. There was no misapprehension as to what was called for. The refusal to answer was deliberate. The facts sought were pertinent as a matter of law, and section 102 made it appellant's duty to answer. He was bound rightly to construe the statute. His mistaken view of the law is no defense.").

The Defendant attacks this clear and controlling precedent in a variety of ways, but none of his challenges have merit. First, he suggests that the D.C. Circuit's decision in *Licavoli* and other controlling cases should not be credited because the decisions are old. ECF No. 59 at 7 ("The Government supports its position by pointing to *Licavoli* and other case authority that were decided years ago during the Kennedy administration and earlier…"). Whatever the age of this clear and directly applicable case law, it is binding precedent.

Defendant then attempts to brush off the 2022 application of these established legal standards in the recent trial in *United States v. Bannon* where the court instructed the jury as follows:

> For the fourth element, the government must prove to you, beyond a reasonable doubt, that the Defendant acted "willfully." The word "willful," in this context, does not mean that the Defendant's failure or refusal to comply with the Select Committee's subpoena was for an evil or a bad purpose. The reason or purpose of the failure or refusal to comply is immaterial, so long as the failure or refusal was deliberate and intentional. To be deliberate or intentional means that the failure to comply was not the result of inadvertence, accident, or mistake, including a mistake regarding the operative date.
>
> It is not a defense to contempt of Congress that the Defendant did not comply with the subpoena because of the legal advice he received from his attorney or someone else, because of his understanding or belief of what the law required or allowed, or because of his understanding or belief that he had a legal privilege, such as executive privilege, that excused him from complying.

*United States v. Bannon*, 1:21-cr-00670, ECF No. 129.[2]  The Defendant appears to suggest that

---

[2] The Government anticipates that it will submit proposed jury instructions in this case consistent with those that the court used in *Bannon*.

3

this court should disregard the *Bannon* court's thoughtful and persuasive rulings because the court there only followed controlling precedent "reluctantly." ECF No. 59 at 8.  The point, of course, is that the *Bannon* court followed controlling precedent, and it did so because this is not a question of first impression on which the court was free to devise its own standard.

Defendant goes on to suggest that the Court should disregard *Licavoli* because the defendant there was a purported mobster rather than a former Executive Branch official.  ECF No. 59 at 7-8.  The Defendant argues that the law of contempt should be different for a former Executive Branch official because a prosecution may cause interbranch conflict, but he concedes that there is no controlling law that supports his view.  *See* ECF No. 59 at 5 (noting that neither the Supreme Court nor D.C. Circuit have considered the issue of a testimonial privilege for presidential advisors, and speculating what the law regarding the Speech or Debate Clause -- applicable to congressional aides -- "likely portends" for the future.).[3]  Defendant offers no valid reason why the elements of the offense of Contempt of Congress should be different for one defendant rather than another.  The law is clear that a subpoena recipient's mistaken belief that he has a good reason not to comply is no defense, and this Court should not treat his mistake of law differently than anyone else's.

On this point, the Defendant raises the specter of horrible consequences if the Court were to apply controlling law to a former presidential aide, suggesting that it will enable congressional committees to "force current or former presidential aides to disclose privileged communications with a President of the opposite party…" ECF No. 59 at 7, n10.  Yet nothing like that happened

---

[3] The Defendant cites *dicta* from *Tobin v. United States*, 306 F.2d 270 (D.C. Cir. 1962), but that case involved testimony by a state government official and did not involve an interbranch dispute.  There the court concluded only that the subcommittee had exceeded the scope of its authority to investigate.  *Id.* at 276.

in this case. It is undisputed that the Defendant made numerous and extensive public statements in his personal capacity on topics of interest to the Committee, and the evidence at trial will show that the Committee repeatedly assured him in writing that there was room for him to answer some questions and object to others in a manner that would not trench on confidential communications. He simply chose to ignore the Committee's offers to accommodate him. For this reason too, Defendant's general due process concerns sprinkled throughout his briefing also fall flat; he was warned that his privilege claims did not excuse him from his obligations under the subpoena, and indeed that there was a process to resolve them.

In another effort to avoid the impact of *Licavoli* and the controlling law regarding Contempt of Congress, the Defendant argues that the Court should, instead, apply the "middle ground" willfulness standard set forth in *Bryan v. United States*, 524 U.S. 184 (1998). *See* ECF No. 59 at 9. But *Bryan* did nothing explicitly or implicitly to change the established law applicable to Contempt of Congress. For his proposition that the Court should apply the middle-ground standard, the Defendant cites to an Arms Export Control Act case, *United States v. Burden*, 934 F.3d 675, 690-91 (D.C. Cir. 2019), in which the D.C. Circuit rejected the defendant's request to apply the strictest "willfulness" standard from *Cheek v. United States*, 498 U.S. 192 (1991) and *Ratzlaf v. United States*, 510 U.S. 135 (1994). *Burden* provides no help for the Defendant here. As *Burden* noted, "[t]he Supreme Court has explained that 'willfully' is 'a word of many meanings whose construction is often dependent on the context in which it appears.'" *Id*. at 689-90 (*quoting Bryan* at 191). Likewise, "the [Supreme] Court has developed an approach to 'willfulness' that is calibrated to the statutes in which it appears, consistently reading it to require proof that the defendant had a sufficiently culpable state of mind, but not to require proof so specific as to stymie the statute's enforcement." *Id*. at 690. This is precisely the point. Contempt is a unique context

5

in which the courts have explicitly given the term "willful" a particular meaning – a meaning that is necessary to avoid stymying its enforcement. *See Bryan*, 339 U.S. at 331 ("On the other hand, persons summoned as witnesses by competent authority have certain minimum duties and obligations which are necessary concessions to the public interest in the orderly operation of legislative and judicial machinery.  A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity."); *Quinn v. United States,* 349 U.S. 155, 160-161 (1955) (confirming that the requisite intent is a deliberate, intentional refusal to answer, and underscoring the importance of Congress' power to investigate: "[t]his power, deeply rooted in American and English institutions, is indeed co-extensive with the power to legislate. Without the power to investigate—including of course the authority to compel testimony, either through its own processes or through judicial trial—Congress could be seriously handicapped in its efforts to exercise its constitutional function wisely and effectively.").

The Defendant again tries to muddy the waters regarding the applicable "willfulness" standard by raising the distinction between intent and motive, *see* ECF No. 59 at 10-11, but it is not clear precisely how the Defendant believes this is helpful to his argument, particularly given that motive is clearly not an element of the offense charged in this case.  He cites *United States v. Washington*, 705 F.2d 489 (D.C. Cir. 1983), but there the court held merely that evidence of good motive was not admissible or probative of the knowing and willful intent required by the statute that governs false statements in passports, 18 U.S.C § 1542.  *Id*. at 493.  The motive/intent dichotomy is of no use to the Defendant's argument here.

## II.     The Defendant is Not Entitled to Litigate Legal Defenses Before the Jury

The Defendant persists in his argument that he had a valid privilege that shielded him from the Committee's subpoena and that protects him from these contempt charges.  The Government will not restate or address those issues further here.  For purposes of the Government's motion in limine, what matters is that the Defendant's claim of immunity from prosecution is a legal issue for the Court, and not to be presented to the jury.  The Defendant claims that "the Government does not want this Court to address the issue central to this action: what privileges and immunities does a former president have with respect to the advice provided by his former senior advisers."  But the Government does, indeed, want this Court -- rather than the jury -- to resolve those issues as presented in the pending Rule 12 motion to dismiss.  At the hearing on the Defendant's Motion to Compel (ECF No. 31), the Court repeatedly directed the Defendant to focus on the difference between legal issues that may affect the validity of the charges and issues that may properly be presented as a defense at trial.  *See Hrg. Tr.* 8/31/22 at 16, 23, 24, and 25.  The Court should do so again here.  The Defendant's claim of immunity from prosecution is not a matter to be decided by the jury.

Despite the distinction between these legal issues and factual issues for the jury, the Defendant argues that, if his motion to dismiss is denied, he should be permitted to relitigate the same issues before the jury. ECF No. 59 at 6-7.  But that legal challenge stands on the same footing as other legal challenges, such as a claim of selective prosecution, which the Defendant concedes must be resolved by the Court.  *See* ECF No. 59 at 19; *United States v. Washington*, 705 F.2d at 495; *Cf. United States v. Covington*, 395 U.S. 57, 59-60 (1969) (finding that, where the Fifth Amendment privilege against self-incrimination excused an individual from complying with a federal marijuana tax ,payment law, the question of whether the privilege actually excused

7

compliance and therefore provided a basis for dismissal of criminal charges for not paying the tax was a question of law for the court to decide pretrial under Fed R. Crim. P. 12); *United States v. Bulger*, 816 F.3d 137, 146-48 (1st Cir. 2016) (finding the judge was the proper factfinder to determine if the defendant had been given immunity from prosecution by the government in a pretrial decision). The Government is aware of no reason that the Court should treat one legal defense differently than the other, resolving one at the Rule 12 stage and permitting the defendant a second bite at the apple before the jury on the other.

Once the Court resolves the Defendant's Rule 12 motion to dismiss the charges based on his assertion of executive privilege, the issue is not subject to further litigation at trial or resolution by the jury. If the Court's denies the Defendant's motion to dismiss, the jury will, of course, be instructed regarding the requisite state of mind, but he should not be permitted to introduce evidence or arguments regarding Office of Legal Counsel (OLC) opinions regarding executive privilege. *See United States v. Bannon*, D.D.C. Case No. 1:21-cr-670, Hrg. Tr. 7/11/22 at 115-116 (oral ruling granting motion in limine; "[defendant] cannot present evidence regarding [OLC opinions and DOJ writing] to demonstrate that he believed he was not required to comply with the Subpoena, since that question is irrelevant to whether [defendant] deliberately and intentionally failed to comply with the Subpoenas. So too with his assertions of privilege. As a general matter, none of that evidence can justify his failure to appear or produce documents under *Licavoli*."); *id*. at 121 ("Evidence regarding the reasons that [defendant] did not comply with the Subpoena here, for example, because he didn't believe the Subpoena was valid or because he was -- he believed he was legally excused from showing up as a result of the former President's implication of executive privilege or because he relied on his lawyers' advice on these topics, these are

8

[ir]relevant to the criminal charges here and therefore inadmissible.").[4]  At bottom, injecting executive privilege into the trial when it provides no valid defense is an attempt at jury nullification, and it should not be permitted.  *See e.g., United States v. Wilkerson*, 966 F.3d 828, 834-35 (D.C. Cir. 2020) (discussing the role of the jury to apply the law as instructed by the court).

### III.   Defendant May Not Raise Before the Jury Defenses that he has Waived

The Defendant persists in his argument that he should be able to challenge the composition of the Committee that issued his subpoena, although the facts underlying his proposed challenge were a matter of public record and he failed to raise them at the time of his offense.  ECF No. 59 at 14.  The law is abundantly clear, however, that because he failed to raise such objections before the Committee at the time of his non-compliance, he cannot raise them now before the Court or before the jury.  *Bryan*, 339 U.S. at 332-33; *Fleischman,* 339 U.S. at 352*; Hutcheson v. United States*, 369 U.S. 599, 608-611 (1962) (stating that a constitutional objection "must be adequately raised before the inquiring committee if [it] is to be fully preserved for review in this Court.  To hold otherwise would enable a witness to toy with a congressional committee in a manner

---

[4] Even if the law regarding contempt and executive privilege were what the Defendant wishes, and even if this were somehow an issue for trial, the Defendant continues to ignore what is plain in the very OLC opinions he cites and from which he quotes:  they require a Presidential assertion of Executive Privilege that does not exist in this case.  *See* ECF No. 59 at 3-4 and notes 4 and 5 (referring repeatedly to "Presidential assertions" of executive privilege).  The Defendant suggests that there can be "no real doubt" that, if asked, the former President "would have" advised the Defendant to assert all privileges, *Id*. at 1, but there is no evidence that he actually did so. Defendant is faced with the undisputed fact that the only statement regarding executive privilege from the former President was a public post related to a different subpoena, issued by a different Committee, on a different subject matter, months before the Select Committee subpoena at issue in this case.  Though he appears to regret his concession of these clear facts, *Id*. at 13, he has offered no alternative assertion of privilege by the former President in any of the prior litigation, and he offers none now.  The government is aware of none, the Committee received none, and the Court has rightly relied upon his concession of this point. ECF. No 55 at 5 & n.2; Hrg. Tr. 8/31/22 at 39-40, 41.  The Defendant thus stands in sharp contrast to two other witnesses for whom the former President's counsel provided a clear, written assertion of executive privilege.  ECF No. 55 at 5.

9

obnoxious to the rule that such committees are entitled to be clearly apprised of the grounds on which a witness asserts a right of refusal to answer.") (internal citations omitted). The Defendant bristles at the constraints of *Bryan*, but its meaning is quite clear. As this Court has noted, "[i]t would appear that Defendant has waived any such challenges to the Committee's composition, as he did not raise them first before the Committee itself." *See* Order, ECF No. 55 at 11 (citing *Liveright v. United States*, 347 F.2d 473, 475–76 (D.C. Cir. 1965)). Consistent with that law, the Court should not permit evidence or argument before the jury on those legal defenses that have been waived. *See United States v. Bannon*, Hrg. Tr. 7/11/22 at 126-133; 128 (granting motion in limine to exclude evidence about whether the composition of the Select Committee and its leadership complied with House Rules; such "evidence is excludable and will not be presented to the jury").

Although it is not entirely clear what evidence or cross-examination the Defendant envisions using at trial, he suggests that he should be permitted to probe matters involving politics and the formation of the Committee as a vehicle for challenging the credibility of government witnesses or the investigation. ECF No. 59 at 19-22. The Government agrees that the Defendant has a right to cross-examine its witnesses for bias, but bias is not a wedge that opens the door to otherwise waived defenses or legal issues that are not for the jury. The Court should ensure that the Defendant does not inject politics into the case in a manner that is likely to confuse the jury or invite decision on an improper basis. Fed. R. Evidence 403; *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.").

**IV.     The Defendant May Not Use the Doctrines of Public Authority or Entrapment by Estoppel as a Means to Inject Executive Privilege Issues into the Trial**

Should the Court determine that executive privilege does not provide the Defendant with a legal defense to the charges, the trial should proceed without further argument on that issue before the jury.  Put simply, the issue is not one for the jury to resolve.  The Defendant claims, however, that he should be able to argue this same issue executive privilege issue to the jury under the guise of public authority or entrapment by estoppel.  *See* ECF No. 16 ("Dr. Navarro is entitled to present his defense that he acted upon a valid directive by former President Trump not to comply with the Select Committee's subpoena consistent with decades of OLC interpretations….")  The Government has pointed out that the Defendant has not made the requisite showing to warrant these defenses because no government official granted him the authority to violate the law.  *See* ECF No. 58 at 5-8; ECF No. 47.  There is nothing in the law of public authority or entrapment by estoppel that entitles him to circumvent the Court's pretrial rulings and inject into the trial any legal issues regarding executive privilege.

In support of his flawed entrapment argument, ECF No. 59 at 17, the Defendant reiterates that the Government has the burden to prove that he acted with the requisite intent, a matter on which the Government agrees. But here again the Defendant fails to accept that, under the established law of Contempt of Congress set forth above, the term "willful" means only that he acted deliberately and not by mistake or accident.  The requisite intent admits of no exception for a mistake of law regarding executive privilege.  Accordingly, he may not argue to the jury that he believed his conduct was authorized by someone else.  *See United States v. Bannon*, Hrg. Tr. 7/11/22 at 122-126 (granting motion in limine); 122 ("defenses of entrapment by estoppel or public authority" cannot "go to the jury"); *id*. at 125 (court "will therefore not instruct the jury on a

11

defense of public authority" and "will exclude the evidence that would go to that defense," nor for "apparent authority" defense).

### V. Conclusion

The Government requests the Court enter an order precluding the Defendant from offering inadmissible evidence and argument.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Raymond Hulser*
Elizabeth Aloi (D.C. 1015864)
Raymond Hulser (MA 551350)
Amanda Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7212 (Aloi)
elizabeth.aloi@usdoj.gov