IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )     CR No. 22-200
                                   )     Washington, D.C.
        vs.                        )     November 4, 2022
                                   )     2:07 p.m.
PETER K. NAVARRO,                  )
                                   )
          Defendant.               )
_____)


TRANSCRIPT OF MOTION HEARING PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:          Elizabeth Ann Aloi
                             Raymond N. Hulser
                             U.S. ATTORNEY'S OFFICE
                             DISTRICT OF COLUMBIA
                             555 4th Street, NW
                             Washington, D.C. 20003
                             (202) 252-7212
                             Email:
                             elizabeth.aloi@usdoj.gov
                             Email:
                             raymond.hulser2@usdoj.gov

```
APPEARANCES CONTINUED:

For the Defendant:              John S. Irving, IV
                               EARTH & WATER LAW LLC
                               1455 Pennsylvania Avenue, NW
                               Suite 400
                               Washington, D.C. 20004
                               (301) 807-5670
                               Email: jirving1@verizon.net

                               John P. Rowley, III
                               JPROWLEY LAW PLLC
                               8639 Chase Glen Circle
                               Fairfax Station,
                               Virginia 22039
                               (703) 402-8800
                               Email:
                               john.rowley@jprowleylaw.com

                               Stanley McKennett Brand
                               BRAND WOODWARD LAW
                               3 Pebble Ridge Court
                               Rockville, MD 20854
                               (202) 258-6597
                               Email: stanleymbrand@gmail.com

                               Stanley Edmund Woodward, Jr.
                               BRAND WOODWARD LAW
                               1808 Park Road NW
                               Washington, D.C. 20010
                               (202) 996-7447
                               Email:
                               stanley@brandwoodwardlaw.com

Court Reporter:                William P. Zaremba
                               Registered Merit Reporter
                               Certified Realtime Reporter
                               Official Court Reporter
                               E. Barrett Prettyman CH
                               333 Constitution Avenue, NW
                               Washington, D.C. 20001
                               (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription
```

```
1                      P R O C E E D I N G S
2              COURTROOM DEPUTY:  All rise.  This court is in
3    session; the Honorable Amit P. Mehta presiding.
4              THE COURT:  Good afternoon.  Please be seated,
5    everyone.
6              COURTROOM DEPUTY:  Good afternoon, Your Honor.
7    This is Criminal Case No. 22-200, the United States of
8    America versus Peter K. Navarro.
9              Elizabeth Aloi and Raymond Hulser for the
10   government.
11             John Irving, John Rowley, Stanley Brand, and
12   Stanley Woodward for the defense.
13             The defendant is appearing in person for these
14   proceedings.
15             THE COURT:  All right.  Counsel, good afternoon.
16             Mr. Navarro, good afternoon to you, sir.
17             Okay.  So we're here this afternoon for a hearing
18   on the two pending motions, the motion to dismiss and the
19   motion in limine, that the government filed.
20             I would propose we just have them argued at the
21   same time.  There's a fair amount of overlap as between the
22   two.  And I don't know where on either side of the aisle you
23   all divvied up responsibility.  But if you have, that's
24   okay.  You can tag out whenever it is appropriate.
25             And then when we're wrapped up, we can then talk
```

1    about scheduling.  I know everybody's -- that's top of mind

2    for everyone about how things are going to proceed in the

3    next couple of weeks.

4           So why don't we start with Mr. Navarro and the

5    motion to dismiss.  And then, obviously, we can take up

6    the -- we can also respond to the motion in limine while

7    you're up there Mr. Woodward.

8           MR. WOODWARD:  Your Honor, we have divvied up

9    these motions sort of an issue-by-issue basis.  There's some

10   overlap between the motions.

11          THE COURT:  Okay.

12          MR. WOODWARD:  So depending on the questions the

13   Court has, we may tag in and tag out as the Court suggests.

14          The other housekeeping matter we wanted to flag

15   for the Court is how the Court prefers we handle reference

16   to testimony given to the grand jury.  If we want to use the

17   phones or some other, we anticipate that's going to come up.

18          THE COURT:  Why don't we figure that out when we

19   get to a point where that's relevant.

20          MR. WOODWARD:  Sure.

21          Then with the Court's permission, the issue that

22   we would like to jump right into is the question of what

23   privilege does the former President have with respect to

24   close senior advisors.

25          We have submitted in our briefs that, obviously,

1    there is some privilege.  The scope of that privilege has

2    been the subject of much debate in the last two years.  And

3    there is no dispute that Dr. Navarro is a former senior

4    advisor to President Trump and was at all times relevant to

5    the subpoena in question a former senior advisor to

6    President Trump.

7            The question then becomes, well, when a former

8    senior advisor has been subpoenaed by Congress for testimony

9    related to his or her official duties, what does that former

10   senior advisor need to do by way of establishing that the

11   executive privilege has been invoked?

12           There's been some suggestion that former

13   President Trump never did invoke any executive privilege.

14   We've refuted that in our briefs and would refute it here

15   today with the Court.

16           THE COURT:  At the -- well, let's get to that in a

17   moment.

18           Can I ask you at the outset what your primary

19   basis for dismissal is?  I mean, I was a little confused,

20   and maybe it's ultimately distinction without a difference.

21           I mean, your first topic heading refers to the

22   Department of Justice's policy or what the OLC opinions have

23   held.

24           That's not precisely a legal argument; it's more

25   of a historical one.  And what I mean is are you asserting

```
1    that Mr. Navarro is immune from prosecution, full stop?  Or
2    are you asserting that he was immune from being compelled to
3    appear before Congress; and, therefore, there's failure to
4    essentially state a claim or that's a complete defense?
5             As I said, maybe that's a distinction without a
6    difference here, but I'm trying to understand how you're
7    trying to frame the start of your argument.
8             MR. WOODWARD:  Understood, Your Honor.
9             I think the way we would from the argument is that
10   where a former senior advisor has invoked -- or new
11   sentence.
12            Where the former President has invoked executive
13   privilege with respect to the testimony of a senior advisor,
14   then, as a matter of law, that senior advisor need not
15   appear in response to the subpoena that he or she has
16   received by Congress.  That has been the Department of
17   Justice and, as we cite, the litigation as between --
18            THE COURT:  So to be clear, your position is that
19   Mr. Navarro couldn't be compelled, not that he's immune from
20   prosecution.  Now, maybe -- again, that may be a distinction
21   without a difference.  But I just want to understand what
22   your positions because in that 1982 OLP memo, the
23   Department of Justice does take the position that if the
24   executive invokes executive privilege, that the statute
25   doesn't apply --
```

```
 1              MR. WOODWARD:  Correct.

 2              THE COURT:  -- that the contempt statute doesn't

 3    apply.  But you haven't made that precise argument, it seems

 4    to me.

 5              MR. WOODWARD:  Because the key distinction in this

 6    case is that there's been no effort to negotiate the scope

 7    of the executive privilege with the privilege holder.

 8              And in 1982, there had been effort to negotiate

 9    the privilege with the then-president.  And so the

10    distinction the Court's making, I think, is important.  But

11    it really hasn't come into play yet, because if Congress had

12    engaged with former President Trump to discuss the scope of

13    the testimony that could be permissible absent any

14    invocation of executive privilege, then there certainly

15    would be areas in which --

16              THE COURT:  So why does Congress in this case have

17    any obligation to engage with President Trump?  And let's

18    just talk about whether he's waived because that's the big

19    question -- whether he invoked.

20              You've suggested that there may be additional

21    communications that Mr. Navarro received beyond the press

22    release or public statement.  Is there any such statement?

23              MR. WOODWARD:  There have been additional

24    communications, yes.

25              Dr. Navarro and former President Trump speak
```

1    regularly.  And so if the issue that the Court needs to

2    decide is whether Dr. Navarro, assuming he has some

3    obligation or some burden to show that former

4    President Trump intended for him to invoke privilege --

5            THE COURT:  Well, he has to have a burden, right?

6    Doesn't the privilege -- it's not his privilege, but the

7    person who holds the privilege has to at least -- the person

8    in his position has to be in a position, it seems to me, to

9    say the privilege was invoked.

10            MR. WOODWARD:  And he certainly has said that.

11            THE COURT:  I know, but to also establish it in a

12    way that the privilege actually was invoked?

13            In other words, I mean, right now this record

14    contains one and only one suggestion of a privileged

15    invocation and that is that public statement that was made

16    after Dr. Navarro received a subpoena from a different

17    committee, and what you've said in your papers is that was

18    somehow a standing order for him to invoke.  There's no case

19    law that stands for the proposition of a standing order for

20    the invocation of executive privilege.

21            So what I'm wondering is by -- is there any other

22    evidence other than that single statement in which you claim

23    the President of the United States invoked executive

24    privilege as to Dr. Navarro with respect to this subpoena?

25            MR. WOODWARD:  Right.

1          The evidence would, if required to present the

2     evidence -- and I'd respectfully like to come back and deal

3     with whether it's required or not.  But assuming for the

4     sake of argument that Dr. Navarro's required to present

5     evidence, it would be testimonial.

6          There is circumstantial evidence that led

7     Dr. Navarro to the reasonable belief that President Trump

8     was --

9          THE COURT:  So what is it?

10          MR. WOODWARD:  Well, now we're going to -- it's

11     testimony before the grand jury, as well as his experience

12     with the committee and the experience that others were

13     having with the committee.

14          THE COURT:  So, look, let's just put all the cards

15     on the table here.

16          Let me ask you this.  Do you agree with the

17     government's position -- because you brief didn't respond --

18     that it is my decision at this juncture to determine whether

19     there was an invocation of the privilege --

20          MR. WOODWARD:  No.

21          THE COURT:  -- and to determine whether the

22     privilege was invoked?

23          That is not a Rule 12 determination you think I'm

24     supposed to make.  And if it's not now, then when?

25          MR. WOODWARD:  Well, if the Court concludes that

1   there's some standard that Dr. Navarro must meet in order to

2   invoke the executive privilege, then he should be permitted

3   to do that with the jury.

4           THE COURT:  No.  No, absolutely not.

5           The questions of immunities and privileges, I know

6   of no precedent in any area, and I'm happy for you to

7   provide me some, in which the question of an immunity and

8   whether an immunity or a privilege applies is a jury

9   determination.

10          MR. WOODWARD:  Fair enough.

11          Then if it is a question of fact, then there needs

12  to be an evidentiary proceeding, I suppose, is the point.

13  We need testimony in order to establish what the former

14  President intended with respect to Dr. Navarro.

15          All I mean to say is that, as a matter of law, we

16  do not think that the Court can be --

17          THE COURT:  Why shouldn't I at the point just say,

18  You've had your chance.  It's your motion to dismiss.  You

19  haven't given me anything, nor -- this is first time you're

20  suggesting that somehow an evidentiary hearing is necessary

21  to add to the evidentiary record.

22          It's your motion.  You haven't given any evidence

23  at this point.  All you've given me is the single statement

24  that President Trump made to Dr.  -- that had to do with a

25  different subpoena, and there's nothing else on the record.

1           MR. WOODWARD:  No.  With respect, we do reference

2     the grand jury testimony in our --

3           THE COURT:  I don't even remember what the

4     grand jury testimony is that has any reference to some

5     communication that President Trump made to him.

6           MR. WOODWARD:  It is in the independent

7     corroboration of Dr. Navarro's mental state and his

8     reasonable belief that he had been instructed --

9           THE COURT:  But that's a different question.

10          Let's set aside the question of what his belief

11    is, okay?  That's a mens rea issue, it seems to me.

12          The question is:  Did the President of the

13    United States invoke?

14          And I'll tell you I've looked -- and I don't know

15    if the government -- I actually disagree with the

16    government's position on this.  I don't think it needs to be

17    invoked with particularity at this stage.  I'll just tell

18    you what my view is.  However, I do think, however, it has

19    to have some degree of formal invocation.  All the cases use

20    that word.

21          Now, none of the cases sort of precisely say, Here

22    is the standard.  But every single case uses the words

23    "formal indication."  All of the Nixon line of cases use

24    words "formal invocation."  Even the 1982 case that you

25    relied on as far as an OLC opinion.

1              And in each one of those cases, every single case,

2    historical precedence suggests that the President of the

3    United States sends a letter to Congress, has -- a

4    high-level executive sends some type of clear communication

5    as to the particular subpoena.  That executive privilege is

6    being invoked.

7              And it's just absent here, at least on the present

8    record.  There was no communication to the committee.

9              MR. WOODWARD:  To put it mildly, this would not be

10   the first time that this administration's approach to

11   process has been unconventional.

12             The grand jury testimony makes clear what the

13   intent was, and that is the world in which

14   Dr. Navarro was --

15             THE COURT:  Whose intent?

16             MR. WOODWARD:  What the former President's intent

17   was?

18             THE COURT:  How is that?

19             I mean, look, you have to forgive me, the notion

20   that a court is supposed to read tea leaves when it comes to

21   the invocation of a Presidential privilege, it seems to me

22   to be -- I'm mystified by that.

23             MR. WOODWARD:  I --

24             THE COURT:  Either the President invokes or he

25   doesn't.

```
1              And as I said, at every single one -- you know, in
2    every one -- in the Watergate committee hearings, there was
3    a letter sent to the head of the committee.  In that civil
4    litigation, there's a letter sent to, excuse me, it was a
5    letter sent to the Chief Judge in the Watergate -- well,
6    with respect to the Nixon tapes.
7              And there's -- it seems to me here, there actually
8    was a letter sent but not with respect to your client.
9              MR. WOODWARD:  "Why not?" is the question.
10             THE COURT:  I don't know why not.
11             MR. WOODWARD:  We do know why not.  The grand jury
12   explains why not.  The grand jury testimony explains
13   why not.
14             THE COURT:  The grand jury testimony explains why
15   the President of the United States did not send a letter in
16   the same way he did for Mr. Meadows and Mr. Scavino.
17             MR. WOODWARD:  Absolutely.
18             THE COURT:  What does it say?  Just tell me now.
19   I don't care what -- we're in a prosecution at this -- we're
20   in court now.
21             MR. WOODWARD:  The President's counsel makes clear
22   to the Grand Jury that he didn't think he needed to send a
23   letter on behalf of Dr. Navarro because Dr. Navarro and
24   President Trump had their own lines of communication.
25             The President's counsel -- the President counsel
```

1  had every opportunity to tell the grand jury to tell the

2  government that former President Trump was not invoking

3  privilege on behalf of Dr. Navarro.

4          He doesn't say that.  He says, I didn't send the

5  letter because I didn't need to.  Dr. Navarro already

6  understood what the former President's intent was, and that

7  is reiterated by the grand jury's inquiry of the former

8  President spokesperson, who also says that Dr. Navarro --

9  she has absolute every confidence that Dr. Navarro

10 understood President Trump's position with respect to the

11 January 6th Committee.

12         And so those, that testimony before the grand

13 jury, under oath, subject to penalty of perjury, makes clear

14 that everybody understood what President Trump's

15 directive was.

16         Dr. Navarro repeatedly asked the committee to take

17 this up with former President Trump.  Repeatedly, the

18 committee ignored those requests and concluded that it

19 didn't have to, as the Court has suggested.  We don't have

20 to take this up with former President Trump.

21         But that was the world in which Dr. Navarro was

22 operating.  When he didn't comply with subpoena, it was

23 because he understood former President Trump.

24         THE COURT:  So let's assume, as I have -- and

25 maybe I'm wrong.  You tell me if I am -- that there needs to

1   be a formal invocation.

2          MR. WOODWARD:  I do --

3          THE COURT:  And maybe -- do you agree with that?

4          MR. WOODWARD:  No, I don't actually.

5          THE COURT:  You don't.

6          So --

7          MR. WOODWARD:  What happens if the -- God forbid,

8   what happens if the President were to pass away between the

9   time that his administration ended or in the administration

10  and now you have a former senior advisor who's been --

11  former senior advisor to President Kennedy has been

12  compelled before a committee, and the executive privilege

13  still persists.  The privilege isn't about the President,

14  the individual, the person who is holding the office.  The

15  privilege is about the office.

16         THE COURT:  Right, and the officeholder in this

17  case said he wasn't invoking the privilege.

18         MR. WOODWARD:  Well, that's a different issue,

19  which is a thorny one, yes, but it is a different issue.

20         Here, former President Trump -- if former

21  President Trump invokes the privilege, then there's a

22  process that has to follow that.  And it becomes incumbent

23  upon Congress, and if Congress elects not to do it, then --

24         THE COURT:  I'm not sure I -- I mean, look, this

25  is a criminal case, okay?  You're absolutely right in the

1     civil context, the Supreme Court has repeatedly said, you

2     know, We prefer to have these things hashed out between the

3     branches and so the Judicial Branch doesn't have to get

4     involved.

5              For me the question is:  What are the elements of

6     the case?  What are valid defenses?  And is he somehow

7     immune from prosecution?  That's it.

8              And I'm not aware of any case that requires some

9     degree of back-and-forth between Congress and the executive

10    before a prosecution can be brought.  It's not an element.

11    It's not a defense, to my knowledge.  And it's not a

12    prerequisite for the invocation of immunity.

13             MR. WOODWARD:  I think the distinction here,

14    again, unconventional, yes, but the distinction here is that

15    in order to make out an offense for contempt of Congress,

16    the former senior advisor has to be criminally liable, and

17    what *Miers* and what OLC memoranda and what the

18    Department of Justice claimed in its lawsuit over former EPA

19    administrator Ann Gorsuch was that when a former senior

20    advisor has been subpoenaed by Congress and when executive

21    privilege applies to that former senior advisor, it is

22    inherently lawful for the former senior advisor not to

23    comply with the subpoena.

24             And so if that is a lawful -- if that is a legal

25    possibility, then now we have to figure out how we get there

1    and what is required of the former senior advisor in order

2    to represent a former President's invocation of executive

3    privilege.

4              And if the answer is that he or she must show up

5    in court or at the steps of Congress with a certification

6    notarized or whatever it is, this Court can decide that

7    process.  But it would doing that for the first time because

8    you're right; there is no precedent.  There has never been a

9    case in which the former President failed to clearly

10   articulate his or her -- his desire to invoke executive

11   privilege.

12             THE COURT:  So what would you have me do at this

13   point?  Because I think you've just admitted that it wasn't

14   formally done, that at least as a public matter and as far

15   as the committee is concerned -- I maybe me wrong about

16   this -- the only communication that the committee would have

17   been aware of is the public statement.

18             If it is your contention that there is more than

19   that -- and it's not clear to me the grand jury testimony is

20   all that helpful, because whether people understood is

21   different rather than there's an actual formal invocation.

22             If a police officer and a defendant sit down

23   across a table, the defendant doesn't get to come in and

24   say, Well, he understood I was invoking the Fifth Amendment.

25             MR. WOODWARD:  No.  No.  If I may, Your Honor,

1    there was a formal invocation.  I'm not intending to concede

2    that there wasn't a formal invocation.  It's the nature of

3    the formal invocation that's in question.

4            Here, the formal invocation was by Dr. Navarro.

5            In the cases that you're citing, it wasn't

6    President Nixon who walked into the courtroom and said,

7    Don't answer those questions.  It wasn't President Obama who

8    walked in and said, Don't answer the questions.  It was a

9    delegate, an advisor of the former President.

10           Dr. Navarro is an advisor, a delegate of the

11   former President.  He asserted under invocation.  And at

12   that point, yes, it is incumbent upon Congress --

13           THE COURT:  The guess the question is:  Based on

14   what?

15           Again, you may be right and let's for a moment

16   concede that you're right, that what Dr. Navarro did by

17   merely sending an email as opposed to a letter that was

18   nicely typed up with a signature, either from the

19   President's lawyer or from Dr. Navarro directly, let's say

20   hypothetically -- because I think actually you're right in

21   some sense.  Certainly when -- this is unique because,

22   typically, this comes up with respect to somebody who's

23   actually the former advisor of a sitting President or an

24   advisor of a -- or a current advisor of a sitting President.

25   So it's easy, for example, for the Attorney General, as

1    I think happened in Nixon, to send a letter.

2              MR. WOODWARD:  Correct.

3              THE COURT:  But let's say hypothetically that

4    Dr. Navarro sending that email is enough, okay?

5              What is the basis on which Dr. Navarro received a

6    communication that was specific to this subpoena?

7              MR. WOODWARD:  Well, in this case, it would be his

8    testimony, which he doesn't have to give, because he has a

9    Fifth Amendment right.

10             THE COURT:  Then how is he going to establish the

11   fact that it was a note?

12             MR. WOODWARD:  There's only two people that

13   partook in that conversation.  We're not --

14             THE COURT:  Are you going to bring the other

15   person in?

16             MR. WOODWARD:  I don't want to do that.

17             THE COURT:  But then I don't know what else to do.

18             I mean, either Dr. Navarro gets up on the --

19   whether it's before trial or -- I suppose it would be before

20   trial and says, President Trump gave me an oral direction

21   after I received this particular subpoena to invoke

22   executive privilege; otherwise, the record is barren of any

23   such communication.

24             MR. WOODWARD:  If I could walk us back two steps

25   where the Court said, Assume for the sake of argument that

1    I'm correct that Dr. Navarro has invoked on half of former

2    President Trump.

3              THE COURT:  Uh-huh.

4              MR. WOODWARD:  We don't have to get to the basis

5    of that invocation because the record has not been

6    sufficiently -- the record doesn't reflect any basis to

7    doubt Dr. Navarro's assertion of executive privilege.

8              THE COURT:  I think you're wrong in the following

9    sense.  It is not for him to invoke the privilege, right?

10   So some former senior advisor can't come in and say, I'm

11   invoking the executive privilege absent having received a

12   direction from the privilege holder in the first instance.

13             It is entirely ineffective for somebody to do that

14   absent the direction or the instruction to do it.

15             Would you agree with that?

16             MR. WOODWARD:  And the way to resolve that --

17             THE COURT:  Hang on.  Tell me if you agree with

18   that or not.

19             MR. WOODWARD:  It is entirely ineffective for a

20   former senior advisor to invoke privilege without an

21   instruction to do it?

22             THE COURT:  Yes.

23             MR. WOODWARD:  I would just -- because I'm a

24   lawyer, I would caveat that.  It is also not appropriate for

25   a former senior advisor to waive the executive privilege

 1   without the permission of the privilege holder.

 2              THE COURT:  Of course.

 3              On the other -- well, I think that's probably

 4   fair.  I think that's probably fair.  But we're now in a

 5   criminal proceeding in which you are asserting immunity from

 6   being compelled, all right?

 7              MR. WOODWARD:  Yes.

 8              THE COURT:  This isn't -- we're in a legal

 9   proceeding in which your client is charged with two

10   misdemeanors.

11              MR. WOODWARD:  Yes.

12              THE COURT:  If there is evidence on which you are

13   prepared to stand here today and tell me that Dr. Navarro

14   received a direct communication from President Trump or

15   somebody authorized by President Trump to tell him to invoke

16   executive privilege in response to this subpoena, I'm

17   prepared to hear it.

18              But you haven't said there is any such evidence

19   except for it lies with two people, one who's not coming and

20   one who you told me is not prepared to testify.

21              MR. WOODWARD:  And who I don't want to involve in

22   the process.

23              THE COURT:  Well, I don't know what to tell you.

24              MR. WOODWARD:  So, Your Honor, I think that this

25   process is not unlike what we do in the grand jury every

1    single day.  And when there's an invocation of privilege and

2    there's some doubt that the government has about the

3    invocation of privilege -- take executive privilege off the

4    table.  What about Fifth Amendment privilege?  There's a

5    colloquy that happens.

6            Our point, Your Honor, is that all of that was

7    short-circuited.  All of the discussion about the scope of

8    the privilege, its effect, and its validity was

9    short-circuited.  Neither Congress nor the government -- it

10   was eminently reasonable.  They called his lawyer into the

11   grand jury.

12           THE COURT:  So hang on.

13           Give me a legal doctrine on which to then dismiss

14   the indictment, because there was not sufficient

15   communication between the Executive Branch and Congress on

16   this issue.  What's the legal doctrine?

17           Mr. Brand, do you have an answer?

18           To dismiss an indictment, are you asking that

19   somehow my equitable authority or my equitable powers could

20   result in the dismissal of the indictment because they

21   didn't play nice?

22           MR. WOODWARD:  In the face of a senior advisor's

23   invocation of executive privilege, 18 U.S.C. 192 does not

24   stay the claim where Congress or --

25           THE COURT:  Only if the senior executive has been

1    directed to do so by the President or in this case the

2    former President.  In that very 1982 case, that's exactly

3    what happened.  The President invoked executive privilege.

4    It was clear.  There was no dispute on the record about

5    that.

6            MR. WOODWARD:  And then we're back to what is

7    required of the President to invoke the privilege.

8            THE COURT:  Right.

9            MR. WOODWARD:  Is there a formal memorandum?

10   Is it --

11           THE COURT:  I'm asking for anything.  You don't

12   have -- look, you don't even tell me that he whispered in

13   his ear.  You've given me nothing.

14           MR. WOODWARD:  Respectfully, I have said that they

15   had a conversation, right?  That --

16           THE COURT:  Okay.  That's not terrible -- okay.

17   That's something, but I don't know what that

18   conversation was.

19           MR. WOODWARD:  Well, I can represent to the Court

20   that, as a result of that conversation, Dr. Navarro

21   understood he was supposed to invoke executive privilege.

22           THE COURT:  All right.  So based on that, I'm

23   supposed to dismiss this indictment?

24           MR. WOODWARD:  Yes.

25               And I get it.  I do.  I do.  Why didn't the

1    prosecutors call the former President and ask him?  Because

2    they knew what he was going to say, Your Honor.  They knew

3    he was going to say, Yes, yes, I invoked executive

4    privilege.

5            And then there would have been litigation about

6    the extent and the application of the executive privilege as

7    there has been with respect to others.

8            Now, do I think that there could have been a

9    clearer record here?  Your Honor knows I do.

10           THE COURT:  So help me out here.

11           What you're saying is that a former senior advisor

12   who gets a subpoena from Congress can walk into Congress or

13   email Congress and say, Executive privilege.

14           And then we're just supposed to say, Okay?

15           As a judge I'm just supposed to say, Okay.

16   I trust that he was given the communication and the

17   direction?

18           MR. WOODWARD:  No.  I think --

19           THE COURT:  Look, I've never heard of a case --

20   I go back to where I was before, which is that on what

21   ground -- and maybe I interrupted you -- does the failure of

22   the Department of Justice or Congress to verify the

23   communication stand as a basis to dismiss a criminal

24   indictment?

25           MR. WOODWARD:  Because the criminal indictment

1    never should have been brought.  They have an obligation to

2    go to the former President and assess whether there's been

3    an invocation.

4          And if President Trump says, "I don't know what

5    you're talking about.  Dr. Who?" then they have contempt of

6    Congress.  They have a recalcitrant witness who did not show

7    up when the subpoena required.

8          But we know why Congress didn't call former

9    President Trump.  We know why the committee didn't call

10   President Trump.  And, frankly, if Dr. Navarro had retained

11   counsel prior to the criminal indictment, there would have

12   been a letter-writing campaign; and just like Mr. Meadows

13   and Mr. Scavino there would not be a criminal process here.

14         And so they've taken advantage of the lack of

15   communication with former President Trump in order to put

16   Dr. Navarro in that chair.

17         And, yes, the message ought to be, if you want to

18   bring this case, you have to talk to the former President,

19   because -- and I go back to the hypothetical that I posed

20   earlier, which is it wasn't his to waive either.

21         And so if he's holding to Congress to testify

22   about his conversations with the President in the

23   Oval Office, is he permitted to answer those questions

24   absent a waiver of the privilege?

25         These are questions we don't know.  And I agree

1   with Your Honor that we shouldn't be here on the eve of a

2   criminal trial in this matter, but we didn't ask to be here.

3   They didn't ask the former President.

4          THE COURT:  So -- and we're going round and round

5   on this, I guess.  But you're asking me to dismiss the

6   indictment because they didn't talk to each other

7   sufficiently, in your view?

8          MR. WOODWARD:  I'll give you other reasons to

9   dismiss the indictment, but, I mean, that is --

10          THE COURT:  But it all comes down to that.

11          MR. WOODWARD:  That is the lead --

12          THE COURT:  That's the only argument as far as I

13   can tell here, because you haven't given me evidence of a

14   formal invocation that would sort of trigger the kind of

15   immunity from compulsion that you're talking about.  And

16   you're not prepared to make that evidentiary showing, from

17   what I understand.  And so now I'm left with they should

18   have done more to verify.

19          MR. WOODWARD:  I don't mean to make light of the

20   situation.  There are a number of other arguments.  There

21   are a number of other bases that the Court -- this is the

22   most interesting legal issue.

23          THE COURT:  I know we have the issues about the

24   composition of the committee.

25          MR. WOODWARD:  The subpoena didn't specify where

1    he was to appear.  We can have a debate about --

2           THE COURT:  You understand that's all waived.

3    I mean, come on.  Let's not -- there's not -- we can talk

4    about *Christoffel* in a moment because I do actually have a

5    question about that.  But the idea that, because the

6    subpoena didn't tell him where to go and he didn't raise it

7    with them, somehow he can now come in and get the case

8    dismissed?

9           There's not a case anywhere that stands for that

10   proposition.  I mean, there are cases in which somebody has

11   failed to raise constitutional rights before a committee in

12   which the Court has said, Sorry.  You're waived.

13          MR. WOODWARD:  We've distinguished those cases in

14   our brief.  I don't think that's good law.  The Court can --

15          THE COURT:  It's D.C. Circuit, Supreme Court,

16   that's all bad law?

17          MR. WOODWARD:  Judge --

18          THE COURT:  You've got *Christoffel*.  I got you.

19   You're hanging your head on *Christoffel*.

20          MR. WOODWARD:  If we issue a trial subpoena, if we

21   issue a trial subpoena for Dr. Navarro's trial and we don't

22   specify the date and time and place and then we impanel the

23   jury and that witness isn't here and I ask you to have the

24   Marshals go bring that witness here --

25          THE COURT:  Different situation.

1          I've got a Supreme Court decision that says if

2    you've got an objection to the process, you need to take it

3    up with Congress first.  And unless you do so, you have

4    waived.

5          That is based upon -- what the Supreme Court has

6    said is that every individual has an obligation and a duty

7    to provide evidence.  If there is a belief that there is

8    something flawed about the congressional process, you take

9    it up with Congress first.

10          Every single Supreme Court case has said that

11    since *Bryan*.  Every single D.C. Circuit case has said that

12    since *Bryan*.

13          The only exception is if the flaw is not apparent

14    to the individual.  That's the only exception.

15          MR. WOODWARD:  And how do we determine whether the

16    flaw was apparent to the individual?

17          THE COURT:  Well, if the person gets a subpoena

18    and it doesn't have the location on it --

19          MR. WOODWARD:  So are we to have him testify about

20    whether he understood that the flaw was apparent?

21          I mean, yes, that's why I say, "Is it good law?"

22    because it is difficult to reconcile those two positions,

23    but where --

24          THE COURT:  It's not definitely to reconcile,

25    Mr. Woodward.  I mean, I don't know why it's difficult to

1    reconcile at all.

2          I mean, as I said, every single case, other than

3    *Christoffel*, which is distinguishable, has said, you've got

4    to take it up with Congress first unless it's not something

5    that's knowable.  And every single flaw that you've

6    identified, whether it's the composition of the committee,

7    whether it's the absence of a ranking member, whether it's

8    the fact that the subpoena didn't tell him to go to the

9    right place, every single one of those things was evident.

10         Now, I mean, look, Mr. Navarro, let's put it this

11   way.  Let's take the example of Mr. Meadows and Mr. Scavino.

12   I've seen the letters you all wrote, okay?  They're multiple

13   pages long.  They raise dozens of objections with the

14   committee.  That wasn't done here at all.  At all.

15         MR. WOODWARD:  *Reinecke*, *Christoffel*, *Yellen* make

16   clear that Congress has to follow its rules.  And when we

17   find ourselves here sitting at this table --

18         THE COURT:  Would you agree that those cases also

19   stand for the proposition that if the recipient of the

20   subpoena believes those rules are not being followed, that

21   person has an obligation to raise it first with Congress?

22         MR. WOODWARD:  No, because a waiver has to be

23   knowing and voluntary, and Constitutional rights -- and

24   *Watkins* makes clear that when Congress is utilizing the

25   contempt statute, this becomes a question of due process.

```
 1   Constitutional rights cannot be waived unless they're
 2   knowing and voluntarily.
 3              THE COURT:  That's not true.
 4              I mean, every single -- there's a recent -- the
 5   most recent circuit case involved the invocation of the
 6   Fourth Amendment.  It was a constitutional right.  The
 7   defendant had argued to Congress that the Fourth Amendment
 8   right against self-incrimination prevented his disclosure.
 9   I can't remember the name of the case, but you know what I'm
10   talking about.
11              MR. WOODWARD:  I do, yeah.
12              THE COURT:  He then came into court and said,
13   Actually, I meant the Fifth Amendment, right?  Sorry.  Turn
14   it the other way.
15              MR. WOODWARD:  Other way around.
16              THE COURT:  He said the Fifth Amendment, and then
17   he came into court and said, Actually, it's the
18   Fourth Amendment.  It's too broad a subpoena.  It's actually
19   a search.
20              D.C. Circuit said, You waived.
21              MR. WOODWARD:  But not in a criminal case.
22              THE COURT:  It was a criminal case.  It was a
23   contempt case.
24              MR. WOODWARD:  Then I am thinking of a different
25   case than Your Honor is.
```

1          THE COURT:  I'll give you the name of the case.

2    It's *Shelton* 404 F.2d 1292, *Shelton*.

3          MR. WOODWARD:  Well, *Shelton* isn't exactly recent.

4    But, yes, I take Your Honor's --

5          THE COURT:  There aren't that many recent cases

6    that have come to the Circuit or the Supreme Court.

7          MR. WOODWARD:  There are about to be a few more.

8          Look, Your Honor, I hear you.  You know, you

9    understand our position.

10          THE COURT:  I do.

11          MR. WOODWARD:  I'm not going to belabor the point

12    about whether there ought to have been 13 members.  The

13    point is, however, that we are in a criminal prosecution,

14    and that changes the landscape.  And we're going to put --

15          THE COURT:  Help me out with a different argument

16    that you've made, because I'm somewhat intrigued by it.  And

17    then I do want to get back to the issue of immunity -- I

18    don't want to get away from that -- to figure out where

19    we're supposed to go from here.

20          But you've asserted that there is an element of

21    the offense the government needs to prove based upon the

22    "by authority" language in Section 192, right?

23          In your view, what does that mean in terms of the

24    government's proof at trial, including based upon your view

25    that the committee was not properly constituted?

1          MR. WOODWARD:  If I may, with the Court's

2    indulgence, make sure I'm not over my skis in taking that.

3          THE COURT:  If I've taken somebody else's time,

4    I'm sorry.

5          (Defense counsel conferred.)

6          MR. WOODWARD:  The Court's question is if the

7    committee is improperly constituted --

8          THE COURT:  So you've asserted.

9          MR. WOODWARD:  -- as we have asserted, then what

10   does that mean for purposes of 192?

11         THE COURT:  Correct.

12         MR. WOODWARD:  It means that --

13         THE COURT:  Let's assume the argument's not waived

14   because this falls under a *Christoffel*-like situation where

15   you have to prove an element of the offense.

16         MR. WOODWARD:  Right.  It means that because

17   Congress has delegated to the Judiciary the task of

18   resolving whether or not somebody is criminally culpable,

19   that the Court, the Court cannot allow a conviction where

20   Congress did not have the authority to make the inquiry that

21   is the subject of the criminal prosecution.

22         THE COURT:  Okay.  So play that out for me.  This

23   is a lot -- this is somewhat like -- I'm never good at case

24   names.  You know this, Mr. Woodward.  I'll give you the fact

25   pattern, but I can never remember the name of the case.

1          MR. WOODWARD:  Mr. Brand will know the name if you

2    give him the fact pattern.

3          THE COURT:  This is the case in which -- I think

4    this was a Supreme Court case.  Oh, *Gojack*.

5          MR. WOODWARD:  *Gojack*.

6          THE COURT:  *Gojack*, where the committee actually

7    didn't have the delegation.  It didn't identify specifically

8    what the subject matter was.  It wasn't a specific

9    delegation of the subcommittee.

10          If it's an element of the offense, how does that

11    then get presented to the jury without stepping foot on not

12    interpreting the rules in a way that's different than what

13    Congress interprets it to be?

14          MR. WOODWARD:  Right.  This was part also of our

15    argument in the motion to compel --

16          THE COURT:  Correct.

17          MR. WOODWARD:  -- as well, that it wasn't properly

18    presented to the grand jury, and so how could they have

19    concluded that the crime as alleged had occurred?

20          It has to be present -- well, first, how was it

21    presented to the jury?  And so it's presented the jury,

22    presumably, through testimony about what Congress's rules

23    are and how --

24          THE COURT:  And then the jury --

25          MR. WOODWARD:  -- before it was established.

```
1              THE COURT:  And the jury gets to decide whether
2    Congress followed its own rules?
3              MR. WOODWARD:  Only in the absence of the Court's
4    willingness to dismiss the case for failure to follow the
5    rules.
6              THE COURT:  Right.
7              MR. WOODWARD:  But, yes, we certainly wouldn't
8    waive the ability to challenge and the parliamentarian can
9    come in and explain --
10             THE COURT:  But play the game with me for a while
11   because I'm trying to figure out how that works consistent
12   with the idea that the Court should not be, absent a
13   crystal-clear rule, how the Court can present to a jury the
14   question of the committee's composition and the lawfulness
15   of it when the House itself has taken the position that the
16   committee is lawfully constituted.
17             MR. WOODWARD:  We think it's abundantly clear that
18   in a criminal case, the concern over interpretation of the
19   rules clause goes out the window, right?  You have -- okay,
20   I'm -- yes, but let me finish, please.
21             THE COURT:  You know that's not right.
22             MR. WOODWARD:  Don't go out the window.  The Court
23   has two choses.  The Court has two choices.  The Court can
24   conclude that the rules are unambiguous and that they were
25   followed or that they are vague and it cannot interpret them
```

1   and so no enforcement action can lie in the face of vague

2   rules.

3          And so if Congress wanted it to be clear that the

4   speaker could appoint less than 13 members to her committee,

5   she should -- Congress should have so articulated that.

6          That's a vague rule.  We can debate and disagree

7   and agree there's clearly two sides of that.  Lots of

8   minority members of the House have said that the rule,

9   that's not what they intended.  Obviously, they have a

10  motivation for saying that, but it's a vague rule.  And in

11  the face of a vague rule, it cannot form the basis of a

12  criminal contempt charge.

13         Congress --

14         THE COURT:  But what --

15         MR. WOODWARD:  -- is requiring that the Court not

16  interpret its own rules, and so it has the burden of

17  crafting rules that are clear and unambiguous.  And where it

18  fails to do so, it can't hold someone in contempt when it --

19  period.

20         THE COURT:  What would you have me do about the

21  fact, as Judge Nichols held, that notwithstanding the

22  ambiguity of the word "shall," that Congress has ratified

23  the composition of the committee by virtue of the contempt

24  referrals, and so Congress has, by its ratification,

25  confirmed that the committee is properly constituted and

1   consistent with House Resolution 503?  What do I do about

2   that?

3          MR. WOODWARD:  That's a post hoc rationalization

4   for what their rules meant.  They get to create the record

5   when they refer an individual for contempt.  They can't come

6   back later and claim in legal filings, in subsequent

7   resolutions.

8          And here's the problem with what Judge Nichols

9   did, who I have a great deal of respect for, but I

10  respectfully disagree on this salient point.

11         If what Judge Nichols said is right and the

12  Republicans take back the House on Tuesday, then on January

13  4th, can they pass a resolution that says everything that

14  the other guys said is now a misinterpretation under rules

15  and, in fact, Resolution 503 requires 13 members, and

16  everyone who was subpoenaed pursuant to the select committee

17  is no longer required to enforce the subpoenas?  That can't

18  be right either.  Now we have every time Congress changes

19  parties, a repudiation of every rule or resulting

20  legislation that came from the prior Congress.

21         And so the reason why the Court is permitted to

22  delve into this rule-making process, again, is because we're

23  in a criminal prosecution.  And the case law cited by

24  Judge Nichols dealt with civil matters, where the results of

25  the finding doesn't leave someone without their liberty.

1          And the case that I would -- well, I can provide
2    the Court with a case for that.  But that's -- the Supreme
3    Court has been clear, that when you are in the criminal
4    posture, given that you're now laying on top of all of our
5    concerns about separation of powers and rule-making,
6    et cetera, you've added this due process element to it.
7          And when we're depriving somebody of their
8    liberty -- excuse me.  When we're depriving somebody of
9    their liberty, we're going to allow the Court to peek just a
10   little bit into whether the rules are ambiguous or vague.
11   And if they're vague, they cannot give rise to a 192 action.
12          THE COURT:  Okay.
13          MR. WOODWARD:  The Court asked to return to
14   immunity.
15          We don't use the word "immunity" because we
16   realize, just candidly, Judge, immunity is -- you know,
17   testimonial immunity is significant.  And were we to come
18   into the court and say it's absolute testimonial immunity --
19          THE COURT:  This is immunity from prosecution.
20          MR. WOODWARD:  Immunity from prosecution for
21   failing to appear as the subpoena dictated.
22          THE COURT:  Right.
23          MR. WOODWARD:  And I think that I would be --
24   "arrogant" is the word that comes to mind, where I'd walk
25   around the courthouse and say that every former senior

1   advisor has testimonial immunity.  No.

2          But on the facts, on the record in this case, it's

3   impossible -- it's impossible for us to conclude that he had

4   to show up, that he had to appear.

5          And absent any effort by Congress or the

6   Department of Justice after Congress to converse with former

7   President Trump, it is inappropriate for them to bring a

8   contempt action as against his former senior advisor.

9          And there are at least a couple of examples where

10  this question becomes more difficult.

11         Dr. Navarro's isn't that difficult because he did

12  invoke the privilege.  He did ask the committee to consult

13  with former President Trump.  And instead of engaging in any

14  meaningful dialogue, we know from the testimony of

15  President Trump's lawyer that no meaningful dialogue

16  was had.

17         THE COURT:  So, Mr. Woodward, you'll forgive me,

18  but let's say I agree with you.  Say I agree with you that

19  it seems like a bad idea to have someone held in contempt

20  when they invoke executive privilege as a former senior

21  advisor, if not a matter of law, then as a matter of decency

22  or that Congress should have reached out to the President

23  and said, Is Dr. Navarro really invoking executive privilege

24  on your behalf?  That wasn't done here.  What is the legal

25  theory on which you would have me hang my hat to say,

```
 1   Indictment dismissed?
 2            MR. WOODWARD:  Actually, I would refer back to the
 3   1982 decision of United States versus United States House of
 4   Representatives in which the District Court there dismissed
 5   the case and said, I'm out of my lane.  You know, this
 6   is a --
 7            THE COURT:  That was a civil case.
 8            MR. WOODWARD:  It was a civil case.
 9            THE COURT:  So help me with --
10            MR. WOODWARD:  But this is --
11            THE COURT:  Help me with a criminal concept.
12            MR. WOODWARD:  This is a civil case clothed in --
13            THE COURT:  It's not.  It's a criminal case.
14            So help me with what it is.  I mean, are you
15   saying that this indictment was brought as a violation of
16   separation of powers?
17            MR. WOODWARD:  Yes.
18            THE COURT:  Is it an Indictment that was brought
19   in violation of his due process rights?
20            I mean, I'm trying to figure out what the hook is
21   for this requirement that you think now exists that needs to
22   be layered onto before a contempt charge can be brought.
23            MR. WOODWARD:  18 U.S.C. 192 as applied is
24   unconstitutional.  And that is what the Department of
25   Justice said in 1982 when they sought a declaratory judgment
```

1     concluding that Ann Gorsuch's failure to appear and provide

2     documents was inherently lawful.

3          And to the extent the Department of Justice is

4     going to continue to prosecute former senior advisors or

5     current senior advisors after an invocation of executive

6     privilege without itself investigating the sufficiency, the

7     merits, the scope of that executive privilege, yes, we're

8     asking the Court to advise the Department that those cases

9     cannot stand.

10          And, as a general matter, 18 U.S.C. 192 was not

11     intended to capture recalcitrant administration officials.

12     The case law you have before you doesn't deal with former

13     senior advisors.  It largely deals with those that refuse to

14     testify for other reasons.

15          And here we have the utmost of unique

16     circumstances, but circumstances that could simply have been

17     resolved with a phone call.

18          THE COURT:  Okay.  Let me hear from the

19     government.

20          MR. HULSER:  Good afternoon, Your Honor.

21     Raymond Hulser.

22          THE COURT:  Mr. Hulser, good afternoon.

23          MR. HULSER:  So, Judge, I want to go, first, to

24     the immunity privilege issue.  I think you have said very

25     plainly that that's what we're talking about.  It's

1    immunity.  It is privilege.  Those are matters for the Court

2    to decide.  And the defendant, by filing a motion to

3    dismiss, has put a burden on himself to provide you with a

4    basis to do that, and he has failed to do that.

5           We think that there needs to be an invocation,

6    formal or otherwise, by the privilege holder.  And there was

7    not here.

8           And I think that the eleventh-hour suggestion that

9    there may have been a conversation that may have told

10   someone to assert it on behalf of that official is very

11   suspect at this point in the process.

12          We've been at this for a while or the Court has

13   been at this for a while.  The motions have been pending.

14   Representations have been made.  The Court has relied on

15   them, and we do not see an invocation.

16          And I just want to suggest, too, Judge, that there

17   may be a reason for that.  This subpoena was given to the

18   defendant to talk about a subject matter that he did not

19   handle in his official capacity.  He expressly said over and

20   over again that he was making comments, writing reports,

21   writing a book in his personal capacity regarding the

22   election.

23          And there's a reason for that, because it's

24   illegal under the Hatch Act for him to work as a White House

25   official on matters that are designed to effect the outcome

1    of an election.  He was advised of that in December, and he

2    acted accordingly.

3            So there is a fundamental difference.  When you

4    read the OLC opinions, you'll see two things.

5            One, there's an invocation, as Your Honor has

6    focused on.

7            And, number two, that this testimony regarding a

8    former official related to their official duties.

9            That's not the case here.

10           THE COURT:  So can we back up just to make sure I

11   understand where there are areas of disagreement.

12           I know that's not this situation, but does the

13   Department of Justice still take the position that the

14   former -- that a former official of a sitting President who

15   refuses to appear before Congress, based upon the proper

16   invocation of executive privilege, cannot be subject to

17   contempt under 192.

18           MR. HULSER:  So if there were an invocation by the

19   privilege holder, Your Honor, that is correct.

20           THE COURT:  Okay.

21           So does the Department of Justice also believe, or

22   take the position, that if there is a proper invocation by a

23   former President with respect to a former senior advisor of

24   executive privilege, that that person's refusal to appear

25   would not be subject to prosecution under 192?

1          MR. HULSER:  Yes, Judge, I would say that it would

2   be an invocation by the former President as to the former

3   official as to official matters.

4          THE COURT:  Okay.

5          MR. HULSER:  Yes.

6          THE COURT:  All right.  So we're getting

7   somewhere.

8          So the Department's position here is that that

9   last position is inapplicable because there was no formal

10  invocation here, correct?

11         MR. HULSER:  Yes.

12         THE COURT:  All right.

13         So what then about Mr. Woodward's position that I

14  ought to, based upon some thing, some still unclear

15  authority, dismiss this indictment because neither Congress

16  nor the Executive Branch sufficiently sought out to

17  determine whether, in fact, there was a former invocation?

18         MR. HULSER:  So two things on that, Judge.

19         You know, there was an effort, an offer, of

20  accommodation.  The committee's communications with the

21  defendant said, We believe that there are things that you

22  can come in and answer because you've spoken in your private

23  capacity -- you've written books.  You've given

24  interviews -- that we think will not trench on confidential

25  communications.  There was an offer of accommodation.  He

1  simply didn't take them up on it.

2          Judge, the other thing I just want to make sure

3  you're aware of in terms of the facts of this invocation

4  that we're now talking about, the defendant was contacted by

5  the committee by email.

6          Will you accept service of a subpoena?

7  February 9th, 2022.

8          Three minutes later, he said, "Executive

9  privilege."

10          There wasn't a conversation with anybody that we

11  have heard about that he has proffered, that anyone told us

12  about during the grand jury investigation, because the

13  Department did investigate whether there was an invocation.

14  And we didn't find evidence that there was.

15          THE COURT:  So, I'm sorry.  The Department did

16  investigate?

17          MR. HULSER:  We had a grand jury investigation.

18          THE COURT:  Right.

19          MR. HULSER:  That's what I'm referring to.

20          THE COURT:  Did that include an effort to find out

21  from the former President whether he, in fact, gave at least

22  an oral instruction?

23          MR. HULSER:  What we did, Judge, was we put -- we

24  spoke with witnesses or a witness who would be in touch with

25  him and who could tell us whether there was an invocation.

```
 1   So it was represented --
 2           THE COURT:  When you say "him," you mean the
 3   former President?
 4           MR. HULSER:  Yes, Judge.  That's right.
 5           THE COURT:  And the Department spoke with somebody
 6   who, when you say "would be in touch with him" --
 7           MR. HULSER:  Yes.
 8           THE COURT:  -- do you mean to say somebody who,
 9   contemporaneously with the question, in other words, when
10   the Department asked that person, that person was in a
11   position to then ask the former President whether he
12   intended to previously or did, I should say, not intended
13   to, did invoke executive privilege?  Is that what you mean?
14           MR. HULSER:  Really, the -- yes, Judge, to that
15   part but really the latter.  It is whether or not it was
16   invoked, whether there was a direction.
17           THE COURT:  So you're telling me the
18   Department of Justice had a communication with somebody
19   who's a representative of the President who is authorized to
20   speak on his behalf, and that person told you that the
21   President did not invoke executive privilege as to
22   Mr. Navarro?
23           MR. HULSER:  I would say that that person did not
24   invoke to the committee, did not send something to the
25   committee invoking, that is correct, and that that person
```

1   had invoked -- been involved in invocations in

2   other instances.

3           THE COURT:  Maybe I'm a little confused.

4           I'm not talking about the committee.  I'm asking

5   you about your investigation and whether the

6   Department of Justice, as part of its investigation, did

7   what I thought I heard you say, which is to reach out to a

8   representative of the President to confirm whether, in fact,

9   there was an invocation or not.

10          Whether it was communicated to the committee,

11  that's not what I'm asking.

12          MR. HULSER:  Yes, Judge.

13          So two witnesses and both were connected with the

14  former President, and we did not find evidence that there

15  was an invocation.

16          THE COURT:  And if that's so, should I not have

17  some -- be given some evidentiary basis for that at this

18  stage?  I mean, you've just said, look, there's an absence

19  of evidence.  But you've now suggested that there's

20  affirmative evidence that there was not an invocation.

21          MR. HULSER:  So I'm suggesting the negative,

22  Judge.  But I believe in this context, a motion to dismiss,

23  based on an immunity, a privilege, the defendant has a

24  burden to come forward and say, This is what happened.  And

25  we've all seen what he has offered, which is the President's

1    public statement in response to the COVID subpoena.

2           So I would also say the fact that there was an

3    invocation in that instance actually works against the

4    defendant here, because that was a subpoena that related to

5    something the defendant did in his official capacity, and it

6    was an immediate and specific statement by the President.

7    And the absence of one here implies that there was a

8    decision made.

9           THE COURT:  So say I were to accept that, either

10   that he hasn't met a burden or that you've now provided me

11   with information I don't think I had or a combination of the

12   two, what about the secondary point that Mr. Woodward's

13   made, which is that somebody should not be subject to

14   prosecution on a 192 when Congress made apparently no

15   attempt to determine whether the President had invoked?

16          MR. HULSER:  So I guess what I'm saying in

17   addition, Judge, is that they did offer accommodation.

18   Please come in and tell us what is the basis for this

19   privilege.

20          He offered nothing.  He simply did not produce

21   documents, did not show up.

22          Two words:  Executive privilege.

23          So there was an offer by the committee to do that.

24   And, also, Judge, an offer for him to come in and talk about

25   things that were clearly not subject to confidential

1  communications with the President or things done in his

2  official capacity.  So there was an effort at accommodation.

3  He rejected it.

4          THE COURT:  So your view is, for example, the

5  piece about the Green Bay Sweep because it had to do with

6  the campaign and the election could not have possibly been

7  in his official capacity.

8          MR. HULSER:  Yes, Judge.

9          THE COURT:  Or communications related to that.

10         MR. HULSER:  Yes, Judge.

11         And you don't have to take my word for it.  The

12  defendant said so.  He said so repeatedly:  This is in my

13  personal capacity.

14         THE COURT:  He said that where?

15         MR. HULSER:  He said that in press releases where

16  he was announcing his report.  He said it in interviews.

17         And candidly, Judge, in one interview, he said

18  something about it being the Navarro report and referred to

19  "that Hatch Act crap."  So he was well aware of why he was

20  saying that.

21         THE COURT:  Okay.

22         Can I ask you to pivot to a different issue, which

23  is the one I left off with Mr. Woodward, the issue of the

24  committee's composition and whether there is some element of

25  192 that requires you to establish that the committee was

1    authorized to issue the subpoena.  I mean, it does say, "By

2    the authority of a committee of the House," right, in this

3    case?

4            So what's your position on that?

5            MR. HULSER:  So, Judge, I think that you have

6    ample information before you, both from the House and from

7    the documents, that show you that the committee had the

8    authority, even though it had fewer members than were in the

9    resolution.

10           That is one issue.  Did the committee have

11   authority to conduct investigations?  What was the

12   authority?  How was it supposed to carry that out?

13           That's in Resolution 503.  Your Honor can evaluate

14   that based on the information given to you, the

15   representations given to you by the House of Representatives

16   itself, and reach the same conclusion, perhaps, that

17   Judge Kelly did.

18           Subordinate to that, I think, Judge, is that the

19   committee has to issue a subpoena, a process to the

20   defendant, and they did so.

21           So the larger issue regarding the House and what

22   authority it had, I think that is a matter for Your Honor to

23   decide, whether we call it an element or not, for Your Honor

24   to decide.  But then we are down into whether or not there

25   was a subpoena issued for pertinent information.  And

1    whether there was a lawful subpoena issued, we would say --

2          THE COURT:  That seems like a separate issue to

3    me.  Maybe I'm misunderstanding the statute.  But let's sort

4    of back up for a moment because I want to make sure I'm

5    marrying the issues that are at least in my head, which is

6    that with respect to the committee's composition that it has

7    9 members versus 13, do you believe that that needs to be

8    established as an element under 192?

9          MR. HULSER:  We do not, Judge.

10         THE COURT:  You do not.

11         MR. HULSER:  That's why we have argued that it was

12    waived.

13         THE COURT:  Well, so I guess I'll back up one

14    step.  Do you agree that the distinction between *Christoffel*

15    and *Bryan* is that a defendant, subject to contempt, can

16    waive any argument that's not raised before Congress except

17    one that goes to an element on which the government has a

18    burden of proof?

19         MR. HULSER:  Yes, Judge.

20         THE COURT:  Okay.

21         So then, in your view, the "by authority of"

22    language, what does the government have to prove to

23    satisfy -- well, let me ask.

24         Does the "by authority" do any work as an element,

25    in your view.

```
1            MR. HULSER:  So I think that it does within the

2   framework of the resolution.  So it would tell the committee

3   what they can investigate, so within the bounds of that, and

4   how can they subpoena witnesses.  The chairman has to sign

5   the subpoena.

6            So those are things that we will prove, that it

7   was lawful process issued to the witness, and on the subject

8   matter within the resolution's authority.

9            THE COURT:  So what if the position's position

10  was, it seems to me, is that the committee didn't have the

11  authority to issue any subpoenas absent it being fully

12  composed of 13 members?  Is that not something you have to

13  prove, you think?

14           MR. HULSER:  We do not.  And we think that it is

15  something that has been waived as a defense; it should have

16  been waived --

17           THE COURT:  But if it's an element -- you think

18  it's not an element.

19           MR. HULSER:  Yes, Judge.

20           THE COURT:  So then, say, hypothetically, there

21  were only three members of the committee and they issued a

22  subpoena.  Would it still be your view that the government

23  would not have to prove that three members of the committee

24  is sufficient to empower it to issue subpoenas?

25           MR. HULSER:  So I think, first, we would say that
```

1    if the defendant did not raise it, it is not a matter that

2    the Court can consider in the context of this prosecution

3    because it has been waived.

4           And since we do not view the structure of the

5    committee and the legality of how it operated under the

6    resolution as an element of the offense, and if the House

7    came in and reported to Your Honor that that was a valid way

8    for the committee to proceed, then we would say, No, it's

9    not a defense and it's waived.

10          THE COURT:  And so then help me understand.  What,

11   then, is the content, the evidentiary content, in your view,

12   for the "by authority of" language?

13          I though I heard you say that that is an element,

14   that you do have to have some proof of "by the authority

15   of."  So what content fills that, in your view, that would

16   satisfy that element beyond a reasonable doubt?

17          MR. HULSER:  So I think we are now within -- it

18   focuses largely on pertinence.  It is -- the authority is

19   that you can investigate these things in these ways and that

20   if you step outside of that, you're no longer within your

21   authority.

22          THE COURT:  So the "by authority of," in your

23   view, is simply the pertinency requirement.

24          MR. HULSER:  It is pertinence and process, Judge.

25   I think if one of the employees issued a subpoena and wrote

1    it on a piece of paper and handed it to the defendant, that

2    would not be a lawful process.  That would not be by

3    authority of the committee.

4           THE COURT:  Okay.  Can I ask you a different

5    question?  How does this marry up with *Rostenkowski*?  And

6    the last -- I guess I was having this conversation with

7    Mr. Woodward, that they've raised the contention that the

8    committee was not properly composed.

9           Say I disagree with you that that's not been

10   waived -- excuse me -- that I disagree with you that it has

11   been waived.  How then would that be something that I could

12   present to a jury for decision?  Or could it be?

13          MR. WOODWARD:  Right.

14          Judge, I don't think so.  I think that there are

15   elements or if it's something that you decide could be a

16   defense, that that would be for Your Honor to decide.

17          It is not an issue that is really capable of

18   submission to the jury.

19          And I will say, for example, in *Christoffel*, the

20   confidence of the tribunal was a simple fact.  There weren't

21   enough people in the room.  So that is something that a jury

22   could determine.

23          But this one would require more of a structural

24   statutory interpretation, constitutional authority of the

25   committee, opinions of different members, et cetera.  I

1    don't think that's capable of submission to a jury.  I think

2    it --

3                THE COURT:  So if it's ambiguous, would you then

4    agree that if that element or what would prop up that

5    element is an ambiguous rule or an ambiguous standard, that

6    the case is not justiciable and the indictment should be

7    dismissed?

8                MR. HULSER:  No, Judge.

9                I think that if it is not justiciable, then we

10   have to rely on what the House it says it is.

11               THE COURT:  But -- okay.  Fair enough.

12               But then the question is:  How do I -- look, the

13   two judges that have considered this have said at a minimum

14   that the resolution is ambiguous on its face in terms of the

15   word "shall."

16               And the House has come in and said, It's

17   ambiguous; but, as we read the rule and understand the rule,

18   we can have nine members and the committee can function.

19   The defendant has come in and said, That's not what the rule

20   says.  We think otherwise.

21               If there is a context of that in the context of a

22   criminal case that requires me to accept the House at its

23   word, doesn't that in some sense deny the defendant some due

24   process in the ability to say, Actually, you know, the rule

25   says what it says.  And, Judge, you can't rely on the fact

```
1   that the House has backfilled it, which is what Mr. Woodward
2   has suggested.
3            MR. HULSER:  To some degree, I think it's a matter
4   of process in how the decision is made.  And on this issue,
5   I believe the Court should make the decision.  And the Court
6   would look at what is being represented to you by the House.
7            They are not saying, It might be this; it might be
8   that.
9            They're telling you, us, what it is.
10           I think Rostenkowski is a very, very different
11  context where the content of a rule, what the rule means in
12  their internal financial regulations about how Members are
13  supposed to spend money, is taking that rule and imposing a
14  definition of it on a Member as if you stumble over that
15  rule one way or another, you're going to be criminally
16  prosecuted.
17           If, for example, pertinence here were completely
18  ambiguous -- nobody could tell what this committee is
19  supposed to investigate -- I think then we'd be talking
20  about a Rostenkowski issue.
21           That's not at all what we're talking about.
22           It's a very clear resolution, with powers,
23  functions, the way it operates, and its mandated subject
24  matter.
25           I think that is probably to me the best analogy.
```

1    If pertinence were vague, we would have an issue like

2    *Rostenkowski*, but we don't.

3              THE COURT:  Okay.

4              Let's shift topics for a moment, and that's the

5    estoppel defense.

6              I think you all took the position before

7    Judge Nichols that the OLC opinions could constitute

8    authority upon which to build an estoppel defense.

9              Do you still take that position here?

10             MR. HULSER:  Yes, Judge.

11             THE COURT:  And would that require in your view as

12   a predicate to asserting that defense that the defendant

13   would come forward and say, Yes, in fact, I relied on those

14   OLC opinions?

15             MR. HULSER:  Yes, Judge, and I think with some

16   specificity, not simply, I'm aware of OLC opinions.

17             THE COURT:  Right.

18             MR. HULSER:  Yes, Judge.

19             THE COURT:  Okay.

20             All right.  That's helpful.  Thank you.

21             Anything else you'd like to add?  I sort of --

22             MR. HULSER:  No, Your Honor.  I'm sure you've had

23   a long day.

24             THE COURT:  It's been a long week, as they all

25   have been.  But Mr. Woodward knows that better than I do.

1          MR. HULSER:  Thank you, Judge.

2          THE COURT:  Mr. Woodward, or anyone else would

3    like to --

4          MR. WOODWARD:  I want to respond briefly to my

5    lane, and then I do believe I'll invite Mr. Rowley to the

6    podium.

7          I don't think I clearly understood Your Honor's

8    question about the recording the statute 18 U.S.C. 192,

9    which requires or which says that every person who having

10   been summoned as a witness by the authority of either House.

11         THE COURT:  Right.

12         MR. WOODWARD:  And so I missed that.  And I want

13   to be clear because now we're in our area of expertise.

14   From what does the authority of the House derive?

15   Obviously, it's from the Constitution, right?

16         So the Constitution gives the House its authority.

17   The House then passes its rules in every session, which

18   create standing committees, and then the House separately

19   creates select committees.

20         And in this case -- and what's really unique about

21   this case is that when the House passed Resolution 503 and

22   created the Select Committee, it did not give the

23   Select Committee independent authority or independent or

24   separate rules on how it was to conduct its business, which

25   is why we have several of the interpretive issues that we

1    have.

2             Instead, it created the Select Committee and then

3    referred to Select Committee back to the rules that the

4    House had passed that applied to other committees.

5             And so in every other committee of the House of

6    Representatives, every other standing committee, shall I

7    say?  There might be some debate about the coronavirus

8    committee, for example, and other select committees that the

9    House has cited in its findings.  But in every other, for

10   lack of a better phrase, normal committee, there is no

11   debate about who the ranking member is, because there are

12   rules that establish who the ranking member is.

13            There is no debate about how members are put onto

14   the committee.  There is no debate about how a deposition is

15   to proceed.

16            Not an issue in this case because there wasn't a

17   deposition.  But just by way of an example, the House Rules

18   require that when a deposition is taken, the deposition is

19   to be conducted in one-hour segments in which the majority

20   party gets to question a witness for one hour, and then the

21   minority party gets to question a witness for one hour.

22            In these depositions, that wasn't happening

23   because the committee had selected one lawyer to inquire of

24   its subpoenaed witnesses.

25            And so there are a number of reasons --

1              THE COURT:  How do we know that wasn't done by

2    consent?

3              MR. WOODWARD:  How do we know --

4              THE COURT:  It wasn't done by consent.

5              MR. WOODWARD:  I have personal knowledge.

6         So we know that this committee is relying on rules

7    that were inapplicable to the hybrid committee that came

8    from the political circumstances that unfolded.

9              And so by the authority of the House, the

10   authority of the Select Committee to issue subpoenas is not

11   the pertinency of the committee, as my esteemed counsel

12   would suggest, it's the Constitution, because all of the

13   authority that any committee of the House has ultimately

14   derives from the Constitution.

15             And so we respectfully disagree that the Court can

16   simply acknowledge the pertinency of the committee and

17   conclude that the subpoena was valid.  That's really not an

18   issue we've litigated with you very much at all, in fact.

19             Instead, we've submitted that where a committee is

20   improperly constituted, where a committee fails to follow

21   its own rules, Supreme Court precedent makes clear that

22   enforcement of a subpoena -- and let's be clear.  We're here

23   under 18 U.S.C. 192 -- the House has other mechanisms of

24   enforcement.

25             THE COURT:  So --

1          MR. WOODWARD:  Enforcement of a subpoena under 192

2    requires strict adherence, and the cases I was citing before

3    are *Eastland* and *Rostenkowski* so I make clear.

4          THE COURT:  So I disagree with you in the

5    following sense, and I think this is fairly clear.

6          Strict adherence is not required unless, unless

7    the defendant raises the objection before Congress first.

8    That didn't happen here, except, except in the case where it

9    goes to an element of the government's burden of proof

10   under 192.

11         There are legions of cases in the Supreme Court in

12   which the defendant claims there was a rules violation of

13   some kind that occurred.  And the Supreme Court has said

14   over and over again, If it was apparent and could have been

15   raised and it wasn't, you've waived, and that's not a

16   defense to 192.

17         The only exception, and the government is agreeing

18   with it, is if the rules violation goes to an element of the

19   offense, as it did in *Christoffel*, was it a competent

20   tribunal before which the person, *Christoffel*, was accused

21   of committing perjury?

22         Similarly here, did Dr. Navarro -- this is my

23   question -- did he engage in contempt -- did he commit

24   contempt before a House that was authorized, excuse me, a

25   committee that was authorized to summon him for testimony or

1   produce papers?  That's seems to be the question.

2          And it that's an element, it's not waived, then

3   gets to the question of:  How is it proved?  And can it be

4   proved in a court of law?

5          MR. WOODWARD:  So for the record, we agree to

6   disagree with Your Honor about whether it's been waived.

7   I'll just cite page 14 of our reply brief.  Okay.

8          It can't be.  I mean, that, I think, is the

9   holding of *Eastland, Rostenkowski*, and *Gojack*, as the Court

10  cited.

11         THE COURT:  *Gojack* is different.  The guy actually

12  preserved the issue in *Gojack*.

13         MR. WOODWARD:  Well, the issue remains that the

14  Court has to -- for the Court to conclude that an ambiguous

15  rule -- that an ambiguous rule means something, it has gone

16  into the lane of Congress and rule-making.

17         And this is what the Supreme Court said in

18  *Helstoski*, different type of privilege.  But in

19  *United States versus Helstoski*, the Supreme Court overturned

20  a conviction involving speech or debate clause.  And the

21  Third Circuit ultimately dismissed an indictment.  The

22  citation there is --

23         THE COURT:  I'm familiar with the case.

24         MR. WOODWARD:  Okay.  So the idea that the Court

25  can dismiss an indictment based on separation of powers

```
1    grounds is not a novel concept.
2            And the message is clear.  The select committee is
3    still out there.  They're still issuing subpoenas, as it
4    turns out.  If they want their rules to be enforceable, they
5    need to be unambiguous.
6            New sentence here, because a very specific type of
7    enforcement.  If they want to ask the Department of Justice
8    and this Court to --
9            THE COURT:  So let me ask you this.  If -- and
10   you've actually suggested this in one of your footnotes.
11           If before they issue their next subpoena, the
12   committee gets a resolution on the House floor that says
13   nine members are okay -- that's consistent with House
14   Resolution 503 -- would somebody in Dr. Navarro's position
15   who receives a subpoena after such a subsequent amendment be
16   able to make the claim that you are right now?
17           MR. WOODWARD:  Yeah, I think so.  I don't think
18   it's a resolution articulating what its interpretation of
19   the rules are that resolves this problem.  It's the rule
20   itself.
21           THE COURT:  No, but that's -- I mean, you yourself
22   have said --
23           MR. WOODWARD:  Right.  I think what we're
24   suggesting is that if they passed --
25           THE COURT:  You've written that -- this is
```

```
1    page 20, footnote 12.

2           MR. WOODWARD:  Of which brief?  I'm sorry,

3    Your Honor.

4           THE COURT:  Opening brief.

5           This is in response to the issue of waiver.  And

6    you wrote, "Alternatively, the House Speaker could appoint

7    all 13 members to the Select Committee, as was dictated by

8    the passage of House Resolution 503, amend Resolution 503 so

9    as to specify whether the appointment of 13 members is

10   required and/or clarify what role the ranking member and/or

11   the vice chair is to play in accordance with House rules."

12          MR. WOODWARD:  I agree with all of that.

13          THE COURT:  Okay.

14          MR. WOODWARD:  I agree with all of that.

15          THE COURT:  In your view, that hasn't been done

16   here, and ratification is not sufficient.

17          MR. WOODWARD:  In our view, that has not been done

18   here, and ratification is not sufficient.  That is not the

19   vote that was put to the members of the House.

20          The vote that was put to the members of the House

21   was very different.  The briefs that were filed by the

22   Bragg, very different.

23          And that opens the door, as a hypothetical

24   proposed, to any number of post hoc rationalization or

25   interpretations through legal process.
```

1          I'll make two other brief points.  I just -- the

2    Court and defense counsel did not have much discussion about

3    the subject matter of the subpoena, but we don't really take

4    any moment of that.  There's an OLC opinion for

5    Kellyanne Conway authored by the Department of Justice.  The

6    sole purpose of the subpoena that she received was Hatch Act

7    violations, and yet the department concluded that she was

8    immune from testimony.

9          So it can't be that the determining factor is

10   whether the subpoena happens to touch on subject matter that

11   is outside of Dr. Navarro or any other recipient's official

12   duties.  The fact of the matter is, are they a senior

13   advisor, close advisor to the President?  To the Court.  Not

14   this Court.

15         THE COURT:  I thought -- I'll have to look.

16   I thought the OLC opinion was actually narrower than that.

17   It's not any subpoena.  It's a subpoena that asks for

18   documents or testimony about the person's official duties.

19   That's what the 1982 OLC opinion.

20         MR. WOODWARD:  That is what the 1982 OLC opinion,

21   I believe -- I take the Court at its word.  But in the

22   Department's July 12th, 2019 OLC opinion concerning the

23   Oversight Committee's subpoena to close advisor

24   Kellyanne Conway in which they sought information about

25   allegations of Hatch Act violations -- I mean, it was, by

1  definition, they were seeking information that was not part

2  of her official duties.  And the Department said, Senior

3  advisor, that's what controls.  She need not appear.  Her

4  nonappearance is presumptively lawful.

5              *Helstoski*.

6              Oh, unclear authority, I think, it's complex.  But

7  *Helstoski* does give us the authority that the Court needs to

8  dismiss the case.  It's a violation of separation of powers.

9  It's unconstitutional as applied, and we would reiterate

10  that.

11              With that, let me turn --

12              THE COURT:  Well, let me ask you.  What's your

13  response to the government's point that the committee did

14  attempt to accommodate Dr. Navarro and President Trump by

15  saying, Look, we'll respect the privilege; you've just got

16  to show up.  And we can deal with it then.

17              And he didn't show up.

18              MR. WOODWARD:  So if we follow that hypothetical

19  out, he appears.  They ask him a question.  And he asserts

20  executive privilege --

21              THE COURT:  Right.

22              MR. WOODWARD:  -- as to every question that he's

23  asked.  That's a distinction without a difference.

24              THE COURT:  Well, maybe he does and maybe he

25  doesn't.  We don't know.  If they ask him, you know,

```
 1  Dr. Navarro, you wrote this book.  You've said this book was
 2  not done in your capacity as an official of the
 3  administration.  We have some questions about the contents
 4  of your book.
 5          MR. WOODWARD:  Again, the Kellyanne Conway OLC
 6  memoranda says that he can still invoke executive privilege,
 7  that he doesn't have to answer those questions.
 8          THE COURT:  He doesn't have to --
 9  Kellyanne Conway -- I'd like to read that.  I'm not sure
10  I've read it because I don't know if it was cited.  It may
11  have been.  But it just seems a little unusual to me because
12  it seems it would then immunize a senior member of Congress
13  from coming forward on anything -- excuse me, senior member
14  of an administration from coming forward on anything.
15          Say Congress was investigating trading on
16  executive -- or trading -- unlawful trading of stock.
17  That's clearly not official.  You mean to tell me an
18  executive, a high-level senior official could just say, I'm
19  not showing up, even though this is something that's clearly
20  about my personal conduct?
21          MR. WOODWARD:  But, Judge, that's the point,
22  respectfully, is that there's dialogue about what the scope
23  of this would be.
24          THE COURT:  But you've taken a different position,
25  which is that --
```

1          MR. WOODWARD:  That's exactly --

2          THE COURT:  You've just taken a different

3     position, which is it doesn't matter what the topic of the

4     subpoena is as long as the person is, categorically, a

5     senior advisor, they have a right to not show up.  And I

6     don't think that's what the OLC opinions have said.

7          MR. WOODWARD:  No.  They have the right to invoke

8     the privilege.  And what happens next, that's the question.

9     We don't know what happens next because, with respect to the

10    government, I believe that they may not have understood the

11    question you were asking.

12         They did not independently inquire of former

13    President Trump or his advisors whether there was an

14    invocation of executive privilege.

15         What their inquiry was, was whether there was an

16    invocation of executive privilege with respect to the

17    subpoena that Dr. Navarro received.

18         And so when they brought --

19         THE COURT:  But isn't that the question?

20         MR. WOODWARD:  Well, I thought you were making a

21    distinction as to whether, after being referred a

22    prosecution --

23         THE COURT:  Right.

24         MR. WOODWARD:  -- for 192, did they go to former

25    President Trump and say, This is what you want to happen

1      here because you didn't direct your senior advisor to invoke

2      executive privilege?

3                  They did not do that.

4                  THE COURT:  No, but I'm -- well --

5                  MR. WOODWARD:  They asked his lawyers.  They said,

6      Lawyer, did you write a letter to Dan Scavino?

7                  Yes, I did.

8                  Did you write a letter to Mark Meadows?

9                  Yes, I did.

10                 Did you write a letter to Dr. Navarro?

11                 No, I did not.

12                 Why didn't you write a letter to Dr. Navarro?

13                 Because I didn't think I had to.  Dr. Navarro has

14     his own line of communication with former President Trump,

15     and he didn't need me to write him a letter.

16                 And they left it at that.  They didn't ask the

17     lawyer whether he thought former President Trump failed to

18     invoke the privilege.  They left it at that.

19                 So then they brought in former President Trump's

20     spokesperson.  And they said, Former President Trump's

21     Spokesperson, do you know whether former President Trump

22     invoked executive privilege with respect to Dr. Navarro?

23     Do you know whether he had that specific conversation?

24                 And she said, I imagine they did, because every

25     time they spoke about the Select Committee, we were all in

1   agreement, and they left it at that.

2            And so the idea that there has been an inquiry of

3   former President Trump as to whether -- we know what former

4   President Trump is going to say.

5            THE COURT:  Does the government disagree with that

6   characterization of its investigation?

7            MR. HULSER:  No, Judge, although I will say I

8   think rather than have these kind of smaller representations

9   about it, we might just offer Your Honor the transcripts of

10  those two witnesses so you can see clearly what was asked,

11  what was not --

12           MR. WOODWARD:  No objection.  They'll back my

13  dramatization, but no objection.

14           Yes, I think Your Honor should read the

15  transcripts.  They speak for themselves.

16           THE COURT:  Okay.

17           MR. WOODWARD:  Okay.  With that, Mr. Rowley.

18           Thank you, Your Honor.

19           MR. ROWLEY:  Your Honor, briefly.  John Rowley.

20           THE COURT:  Hi, Mr. Rowley.

21           MR. ROWLEY:  Your Honor, there's another very

22  important issue here that, in addition to the issues that

23  Mr. Woodward raised, I'd like to address for the Court.  And

24  that is the due-process violation here.

25           This is a case that should not be prosecuted, and

1    I would submit to the Court cannot be prosecuted in view of

2    the fact that Dr. Navarro did not have fair warning of the

3    prosecution or of the possibility that he could be

4    criminally prosecuted for not appearing pursuant to the

5    subpoena.

6            Your Honor's very aware of the OLC opinions.

7    We talked about that the last couple times we were here.

8    I won't get into that in any kind of detail again today

9    here.

10           However, since 1956, the position of the

11   Justice Department and the Office of Legal Counsel has been

12   under both administrations that a senior Presidential

13   advisor who has been directed to invoke executive privilege

14   on behalf of a President is absolutely immune from

15   congressional process.

16           Mr. Navarro understood that.  He would have had no

17   reason to believe that his failure to comply --

18           THE COURT:  Doesn't that all come back to whether,

19   in fact, there was an invocation?

20           MR. ROWLEY:  It does, Your Honor.

21           THE COURT:  Right.

22           MR. ROWLEY:  All of these arguments --

23           THE COURT:  The only difference between that and

24   estoppel issue is that the due-process issue doesn't require

25   the defendant to have actually relied on the OLC opinions.

1          MR. ROWLEY:  Well, Your Honor, unless Dr. Navarro

2    had fair warning --

3          THE COURT:  No, but --

4          MR. ROWLEY:  -- of the law, there can be no

5    legitimate prosecution.

6          THE COURT:  No.  That's what I'm saying.  The

7    difference between the estoppel argument and the due process

8    argument is what was in his head.  He can assert estoppel if

9    he said, I read the OLC opinions; this is what I understood.

10   A due process argument doesn't require him to have said

11   that.

12         MR. ROWLEY:  Right.

13         And, Your Honor I'd again like to point out as we

14   didn't our briefs, that specifically in the *Harriet Miers*

15   case, Speaker Pelosi referred Ms. Miers and Josh Bolten for

16   prosecution, and the Attorney General said, We're not going

17   to prosecute because this is not a crime.

18         And that's been the state of play since 2008,

19   Your Honor.  The case then went on and was enforced civilly.

20         THE COURT:  So, again, again, this comes back to

21   whether there was an invocation.  And it seems to me much of

22   your -- many of your arguments hinge on whether I determine

23   there was an invocation or not.

24         MR. ROWLEY:  Well, I think so, Your Honor,

25   although I should point out that, as Your Honor realizes,

1    I believe, the OLC opinions also say that because of

2    separation of powers issues, a senior advisor to a President

3    is absolutely immune regardless of an invocation.

4            There is just no obligation to subject oneself to

5    congressional process if one has that position.

6            THE COURT:  I'll look at that.  Mr. Woodward just

7    suggested that.  I'll ask government counsel whether they

8    agree with that characterization, but it would be surprise

9    me that just by virtue of the person's position, the topic

10   of the subpoena has nothing to do with the person's official

11   capacity, that they could simply say, "I'm not showing up,"

12   and be immune from compulsion just by virtue of -- I mean,

13   for God's sake, the President of the United States can be

14   called for a civil deposition.  I understand that doesn't

15   raise separation-of-powers issues, although it does somewhat

16   since the court oversees the civil litigation process.

17           MR. ROWLEY:  The OLC opinions say that someone

18   like Dr. Navarro, by virtue of his position, is the

19   alter ego of the President.

20           THE COURT:  I know, but that's in his official

21   capacity, not in something that's potentially personal.

22   I mean, yes, I don't think there's any dispute that if what

23   they had called Dr. Navarro to -- this is why he was in a

24   better position and standing with respect to the

25   Coronavirus Committee.

1          There's no doubt Dr. Navarro worked on coronavirus

2   matters.  And by subpoenaing him, he would have been

3   essentially the alter ego of the President.  That's not

4   necessarily this.

5          MR. ROWLEY:  Well, again, Your Honor, look,

6   I agree that this does come down to whether or not

7   President Trump instructed Dr. Navarro to invoke executive

8   privilege.  I think that that's the linchpin on many of

9   these arguments.

10          But I also think that under the circumstances,

11   there was no fair warning provided to Dr. Navarro that if he

12   failed to comply with that congressional subpoena, that he

13   could be criminally prosecuted.  He's the first person in

14   the history of the United States to have been criminally

15   prosecuted for failing to comply under circumstances like

16   this, leaving Steve Bannon aside.  That's a different

17   situation entirely.

18          Thank you, Your Honor.

19          THE COURT:  Thank you, Mr. Rowley.

20          Okay.  So I guess let's just talk about logistics.

21   If you would please get me those transcripts, I'd

22   appreciate it.

23          I guess, what is the government's position on the

24   OLC memos that we just talked about?  And that'll be the

25   last I'll hear on the question of, is this a categorical

 1    immunity or is it something that is specific to the person's

 2    official capacity?

 3         MR. HULSER:  I am not aware of an OLC opinion that

 4    says that a former official is categorically immune from

 5    testimony when it has nothing to do with their official

 6    duties.  All of the opinions I've seen have that phrase, as

 7    well as the invocation.

 8         If I can just clarify for Your Honor that

 9    Kellyanne Conway opinion, which you may not have seen.  So

10    the question was whether or not she had violated the

11    Hatch Act by saying certain things in her official capacity.

12         The Office of Special Counsel said, Yes, she did.

13         So the things she was supposed to be doing in her

14    personal capacity, not in her official capacity, are the

15    things she actually did in her official capacity.  So that's

16    what the OLC opinion concluded.

17         THE COURT:  Right.  Not the other way around.

18         Okay.

19         MR. ROWLEY:  Your Honor, if I may just be heard

20    very briefly.

21         Your Honor, with respect to -- in answer to

22    Your Honor's question, I have the OLC opinion, July 12th,

23    2019, dealing with Kellyanne Conway.

24         And I quote on page 2 of the opinion:  "This

25    testimonial immunity is rooted in the separation of powers

1    and derives from President's status as the head of a

2    separate, coequal branch of government.  Because the

3    President's closest advisors serve as his alter egos,

4    compelling them to testify would undercut the independence

5    and autonomy of the presidency and interfere directly with

6    the President's ability to faithfully discharge his

7    responsibilities.

8              THE COURT:  Yeah, I don't think there's any

9    disagreement with that.  The question is as to what topic

10   and what the subject matter of the subpoena is.

11             All right.  So as you all know, I'm currently in

12   trial.  And Mr. Woodward can tell you more about when that's

13   likely to end than I can.

14             MR. WOODWARD:  No, I can't.

15             THE COURT:  Hang on, everybody.  Sorry.

16             We have a trial date of November 16th, and we have

17   a pretrial next Wednesday; is that right?

18             MR. HULSER:  Yes, Judge.

19             THE COURT:  So maybe I'm being overly optimistic,

20   but I think there's still an outside chance that we could

21   start this case on the 16th or soon thereafter.  And my

22   expectation is it's not going to be that long and we could

23   fit it in.  I think I will have a better sense of that next

24   week.

25             So I'd like to keep us on track to go to trial on

1   the 16th.  The one adjustment I do need to make is to the

2   pretrial, which is currently scheduled for 2:00 on the 9th.

3   Can you all come in at -- come in on Veterans Day -- at 5:30

4   on November the 10th?

5           MR. ROWLEY:  On the 10th, Your Honor?

6           MR. HULSER:  Yes, Judge.

7           THE COURT:  Okay.  So we'll adjust the schedule.

8   Obviously, I have a lot to think about before then.

9           And if I think -- well, I have a lot to think

10  about between now and then.  So let's try and keep things on

11  schedule.  I know the ball's in my court to rule on a number

12  of these matters, and we will do that hopefully with an eye

13  toward getting it done consistent with what our schedule is.

14          So we'll leave it at that for now, okay?

15          All right.  Anything else, Counsel?

16          MR. HULSER:  No, Judge.

17          THE COURT:  All right.  Thank you, all.

18  Appreciate it.

19          And you can email, whatever the best way to get

20  the grand jury transcripts me to is.  I'd appreciate it.

21          Thank you, everyone.  Don't wait for me, please.

22          COURTROOM DEPUTY:  This Court stands in recess

23  until the return of court.

24          (Proceedings concluded at 4:05 p.m.)

25

C E R T I F I C A T E

       I, William P. Zaremba, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.


Date:__November 8, 2022_____     

       William P. Zaremba, RMR, CRR

**COURTROOM
DEPUTY: [3]** 3/2 3/6
76/22
**MR. HULSER: [42]**
40/20 40/23 42/18 43/1
43/5 43/11 43/18 44/17
44/19 44/23 45/4 45/7
45/14 45/23 46/12
46/21 47/16 48/8 48/10
48/15 49/5 50/9 50/11
50/19 51/1 51/14 51/19
51/25 52/17 52/24 54/8
55/3 56/10 56/15 56/18
56/22 57/1 69/7 74/3
75/18 76/6 76/16
**MR. ROWLEY: [12]**
69/19 69/21 70/20
70/22 71/1 71/4 71/12
71/24 72/17 73/5 74/19
76/5
**MR. WOODWARD:
[120]**
**THE COURT: [173]**

**1**

**10th [2]** 76/4 76/5
**12 [2]** 9/23 63/1
**1292 [1]** 31/2
**12th [2]** 64/22 74/22
**13 [7]** 31/12 35/4 36/15
50/7 51/12 63/7 63/9
**14 [1]** 61/7
**1455 [1]** 2/3
**16th [3]** 75/16 75/21
76/1
**18 U.S.C. 192 [5]** 22/23
39/23 40/10 57/8 59/23
**1808 [1]** 2/15
**192 [17]** 22/23 31/22
32/10 37/11 39/23
40/10 42/17 42/25
47/14 48/25 50/8 57/8
59/23 60/1 60/10 60/16
67/24
**1956 [1]** 70/10
**1982 [8]** 6/22 7/8 11/24
23/2 39/3 39/25 64/19
64/20

**2**

**20 [1]** 63/1
**200 [2]** 1/4 3/7
**20001 [1]** 2/21
**20003 [1]** 1/15
**20004 [1]** 2/4
**20010 [1]** 2/15
**2008 [1]** 71/18
**2019 [2]** 64/22 74/23
**202 [4]** 1/16 2/12 2/16
2/21
**2022 [3]** 1/5 44/7 77/7
**20854 [1]** 2/12
**22-200 [2]** 1/4 3/7
**22039 [1]** 2/8
**252-7212 [1]** 1/16
**258-6597 [1]** 2/12
**2:00 [1]** 76/2

**3**

**301 [1]** 2/4
**3249 [1]** 2/21
**333 [1]** 2/20
**354-3249 [1]** 2/21

**4**

**400 [1]** 2/3
**402-8800 [1]** 2/8
**404 [1]** 31/2
**4:05 p.m [1]** 76/24
**4th [2]** 1/15 36/13

**5**

**503 [7]** 36/1 36/15
49/13 57/21 62/14 63/8
63/8
**555 [1]** 1/15
**5670 [1]** 2/4
**5:30 [1]** 76/3

**6**

**6597 [1]** 2/12
**6th [1]** 14/11

**7**

**703 [1]** 2/8
**7212 [1]** 1/16
**7447 [1]** 2/16

**8**

**807-5670 [1]** 2/4
**8639 [1]** 2/7
**8800 [1]** 2/8

**9**

**996-7447 [1]** 2/16
**9th [2]** 44/7 76/2

**A**

**ability [3]** 34/8 54/24
75/6
**able [1]** 62/16
**about [63]** 4/1 4/2 7/18
15/13 15/15 17/15 22/2
22/4 22/7 23/4 24/5
25/5 25/22 26/15 26/23
27/1 27/4 27/5 28/8
28/19 30/10 31/7 31/12
33/22 35/20 36/1 37/5
40/25 41/18 43/13 44/4
44/11 44/12 46/4 46/5
47/12 47/24 48/5 48/18
55/12 55/20 55/21 57/8
57/20 58/7 58/11 58/13
58/14 61/6 64/2 64/18
64/24 66/3 66/20 66/22
68/25 69/9 70/7 73/20
73/24 75/12 76/8 76/10
**above [1]** 77/4
**above-titled [1]** 77/4
**absence [4]** 29/7 34/3
46/18 47/7
**absent [8]** 7/13 12/7
20/11 20/14 25/24
34/12 38/5 51/11
**absolute [2]** 14/9 37/18

**absolutely [5]** 10/16
13/17 15/25 70/14 72/3
**abundantly [1]** 34/17
**accept [3]** 44/6 47/9
54/22
**accommodate [1]**
65/14
**accommodation [4]**
43/20 43/25 47/17 48/2
**accordance [1]** 63/11
**accordingly [1]** 42/2
**accused [1]** 60/20
**acknowledge [1]** 59/16
**across [1]** 17/23
**Act [5]** 41/24 48/19
64/6 64/25 74/11
**acted [1]** 42/2
**action [3]** 35/1 37/11
38/8
**actual [1]** 17/21
**actually [19]** 8/12
11/15 13/7 15/4 18/20
18/23 27/4 30/13 30/17
30/18 33/6 39/2 47/3
54/24 61/11 62/10
64/16 70/25 74/15
**add [2]** 10/21 56/21
**added [1]** 37/6
**addition [2]** 47/17
69/22
**additional [2]** 7/20
7/23
**address [1]** 69/23
**adherence [2]** 60/2
60/6
**adjust [1]** 76/7
**adjustment [1]** 76/1
**administration [5]**
15/9 15/19 40/11 66/3
66/14
**administration's [1]**
12/10
**administrations [1]**
70/12
**administrator [1]**
16/19
**admitted [1]** 17/13
**advantage [1]** 25/14
**advise [1]** 40/8
**advised [1]** 42/1
**advisor [35]** 5/4 5/5 5/8
5/10 6/10 6/13 6/16
15/10 15/11 16/16
16/20 16/21 16/22 17/1
18/9 18/10 18/23 18/24
18/24 20/10 20/20
20/25 24/11 38/1 38/8
38/21 42/23 64/13
64/13 64/23 65/3 67/5
68/1 70/13 72/2
**advisor's [1]** 22/22
**advisors [6]** 4/24 40/4
40/5 40/13 67/13 75/3
**affirmative [1]** 46/20
**after [6]** 8/16 19/21
38/6 40/5 62/15 67/21
**afternoon [7]** 3/4 3/6
3/15 3/16 3/17 40/20

**again [12]** 6/20 16/14
18/15 36/22 41/20
60/14 66/5 70/8 71/13
71/20 71/20 73/5
**against [3]** 30/8 38/8
47/3
**agree [16]** 9/16 15/3
20/15 20/17 25/25
29/18 35/7 38/18 38/18
50/14 54/4 61/5 63/12
63/14 72/8 73/6
**agreeing [1]** 60/17
**agreement [1]** 69/1
**aided [1]** 2/23
**aisle [1]** 3/22
**all [44]** 3/2 3/15 3/23
5/4 9/14 10/15 10/23
11/19 11/23 17/20 21/6
22/6 22/7 23/22 26/10
27/2 27/16 29/1 29/12
29/14 29/14 37/4 43/6
43/12 46/25 55/21 56/6
56/20 56/24 59/12
59/18 63/7 63/12 63/14
68/25 70/18 70/22 74/6
75/11 75/11 76/3 76/15
76/17 76/17
**all right [3]** 3/15 21/6
23/22
**allegations [1]** 64/25
**alleged [1]** 33/19
**allow [2]** 32/19 37/9
**Aloi [2]** 1/13 3/9
**already [1]** 14/5
**also [14]** 4/6 8/11 14/8
20/24 29/18 33/14
42/21 47/2 47/24 72/1
73/10
**alter [3]** 72/19 73/3
73/3
**alter ego [2]** 72/19
73/3
**Alternatively [1]** 63/6
**although [3]** 69/7
71/25 72/15
**am [3]** 14/25 30/24
74/3
**ambiguity [1]** 35/22
**ambiguous [9]** 37/10
54/3 54/5 54/5 54/14
54/17 55/18 61/14
61/15
**amend [1]** 63/8
**amendment [9]** 17/24
19/9 22/4 30/6 30/7
30/13 30/16 30/18
62/15
**AMERICA [2]** 1/3 3/8
**AMIT [2]** 1/10 3/3
**Amit P. Mehta [1]** 3/3
**amount [1]** 3/21
**ample [1]** 49/6
**analogy [1]** 55/25
**Ann [3]** 1/13 16/19
40/1
**Ann Gorsuch [1]** 16/19
**announcing [1]** 48/16

**another [2]** 55/15
69/21
**answer [8]** 17/4 18/7
18/8 22/17 25/23 43/22
66/7 74/21
**anticipate [1]** 4/17
**any [25]** 5/13 7/13 7/17
7/22 8/21 10/6 10/22
11/4 16/8 19/22 20/6
21/18 38/5 38/13 50/16
50/24 51/11 59/13
63/24 64/4 64/11 64/17
70/8 72/22 75/8
**anybody [1]** 44/10
**anyone [2]** 44/11 57/2
**anything [6]** 10/19
23/11 56/21 66/13
66/14 76/15
**anywhere [1]** 27/9
**apparent [4]** 28/13
28/16 28/20 60/14
**apparently [1]** 47/14
**appear [9]** 6/3 6/15
27/1 37/21 38/4 40/1
42/15 42/24 65/3
**APPEARANCES [2]**
1/12 1/18
**appearing [1]** 3/13
70/4
**appears [1]** 65/19
**application [1]** 24/6
**applied [3]** 39/23 58/4
65/9
**applies [2]** 10/8 16/21
**apply [2]** 6/25 7/3
**appoint [2]** 35/4 63/6
**appointment [1]** 63/9
**appreciate [3]** 73/22
76/18 76/20
**appreciate it [1]** 73/22
**approach [1]** 12/10
**appropriate [2]** 3/24
20/24
**are [46]** 4/2 5/25 6/2
16/5 16/6 19/14 21/5
21/12 22/18 25/25
26/20 26/21 27/10
28/19 29/20 31/7 31/13
33/23 34/24 34/25
35/17 37/3 37/10 38/9
39/14 41/1 41/25 42/11
43/21 49/24 50/5 51/6
52/17 53/14 55/7 55/12
58/11 58/13 58/25 60/3
60/11 62/13 62/16
62/19 64/12 74/14
**area [2]** 10/6 57/13
**areas [2]** 7/15 42/11
**aren't [1]** 31/5
**argued [3]** 3/20 30/7
50/11
**argument [13]** 5/24 6/7
6/9 7/3 9/4 19/25 26/12
31/15 33/15 50/16 71/7
71/8 71/10
**argument's [1]** 32/13
**arguments [4]** 26/20
70/22 71/22 73/9

**A**

around [3] 30/15 37/25 74/17
arrogant [1] 37/24
articulate [1] 17/10
articulated [1] 35/5
articulating [1] 62/18
as [76] 3/21 4/13 6/5 6/14 6/17 6/17 8/24 9/11 9/11 10/15 11/25 11/25 12/5 13/1 14/19 14/24 17/14 17/14 17/15 18/17 18/25 23/20 24/6 24/15 24/23 26/12 26/12 29/2 32/9 33/17 33/19 35/21 37/21 38/8 38/20 38/21 39/15 39/23 40/10 41/24 42/5 43/2 43/3 45/21 46/6 50/8 50/24 51/15 52/6 54/17 55/14 56/11 56/24 57/10 59/11 60/19 61/9 62/3 63/7 63/9 63/23 65/9 65/22 66/2 67/4 67/4 67/21 69/3 71/13 71/25 74/6 74/7 75/1 75/3 75/9 75/11
aside [2] 11/10 73/16
ask [18] 5/18 9/16 24/1 26/2 26/3 27/23 38/12 45/11 48/22 50/23 53/4 62/7 62/9 65/12 65/19 65/25 68/16 72/7
asked [6] 14/16 37/13 45/10 65/23 68/5 69/10
asking [7] 22/18 23/11 26/5 40/8 46/4 46/11 67/11
asks [1] 64/17
assert [2] 41/10 71/8
asserted [4] 18/11 31/20 32/8 32/9
asserting [4] 5/25 6/2 21/5 56/12
assertion [1] 20/7
asserts [1] 65/19
assess [1] 25/2
assume [3] 14/24 19/25 32/13
assuming [2] 8/2 9/3
attempt [2] 47/15 65/14
Attorney [2] 18/25 71/16
Attorney General [2] 18/25 71/16
ATTORNEY'S [1] 1/14
authored [1] 64/5
authority [30] 22/19 31/22 32/20 43/15 49/2 49/8 49/11 49/12 49/22 50/21 50/24 51/8 51/11 52/12 52/14 52/18 52/21 52/22 53/3 53/24 56/8 57/10 57/14 57/16 57/23 59/9 59/10 59/13 65/6 65/7

45/19 49/1 60/24 60/25
autonomy [1] 75/5
Avenue [2] 2/3 2/20
aware [7] 16/8 17/17 44/3 48/19 56/16 70/6 74/3
away [2] 15/8 31/18

**B**

back [17] 9/2 16/9 19/24 23/6 24/20 25/19 31/17 36/6 36/12 39/2 42/10 50/4 50/13 58/3 69/12 70/18 71/20
backfilled [1] 55/1
bad [2] 27/16 38/19
ball's [1] 76/11
Bannon [1] 73/16
barren [1] 19/22
Barrett [1] 2/22
based [10] 18/13 23/22 28/5 31/21 31/24 42/15 43/14 46/23 49/14 61/25
bases [1] 26/21
basis [10] 4/9 5/19 19/5 20/4 20/6 24/23 35/11 41/4 46/17 47/18
Bay [1] 48/5
be [82]
because [58] 6/22 7/5 7/11 7/18 9/17 13/23 14/5 14/23 17/7 17/13 17/20 18/20 18/21 19/8 20/5 20/23 22/14 22/20 24/1 24/25 25/19 26/6 26/13 27/4 27/5 28/22 29/22 31/16 32/14 32/16 34/11 36/22 37/15 38/11 41/23 43/9 43/15 43/22 44/12 47/4 48/5 50/4 52/3 57/13 58/11 58/16 58/23 59/12 62/6 66/10 66/11 67/9 68/1 68/13 68/24 71/17 72/1 75/2
becomes [4] 5/7 15/22 29/25 38/10
been [52] 5/2 5/8 5/11 5/12 6/16 7/6 7/8 7/23 11/8 12/11 15/10 15/11 16/20 17/8 17/17 20/5 22/25 24/5 24/7 24/8 25/1 25/2 25/12 31/12 37/3 40/16 41/9 41/12 41/13 41/13 41/14 46/1 48/6 51/15 51/16 52/3 53/9 53/11 56/24 56/25 57/10 60/14 61/6 63/15 63/17 66/11 69/2 70/11 70/13 71/18 73/2 73/14
before [23] 1/10 6/3 9/11 14/12 15/12 16/10 19/19 19/19 19/24 20/27/11 33/25 39/22 40/12 42/15 49/6 50/16 56/6 60/2 60/7 60/20

behalf [6] 13/23 14/3 38/24 41/10 45/20 70/14
being [9] 6/2 12/6 21/6 29/20 48/18 51/11 55/6 67/21 75/19
belabor [1] 31/11
belief [4] 9/7 11/8 11/10 28/7
believe [10] 42/21 43/21 46/22 50/7 55/5 57/5 64/21 67/10 70/17 72/1
believes [1] 29/20
best [2] 55/25 76/19
better [4] 56/25 58/10 72/24 75/23
between [11] 3/21 4/10 6/17 15/8 16/2 16/9 22/15 50/14 70/23 71/7 76/10
beyond [2] 7/21 52/16
big [1] 7/18
bit [1] 37/10
Bolten [1] 71/15
book [4] 41/21 66/1 66/1 66/4
books [1] 43/23
both [3] 46/13 49/6 70/12
bounds [1] 51/3
Bragg [1] 63/22
branch [4] 16/3 22/15 43/16 75/2
branches [1] 16/3
Brand [6] 2/10 2/11 2/14 3/11 22/17 33/1
brandwoodwardlaw.com [1] 2/17
brief [6] 9/17 27/14 61/7 63/2 63/4 64/1
briefly [3] 57/4 69/19 74/20
briefs [4] 4/25 5/14 63/21 71/14
bring [4] 19/14 25/18 27/24 38/7
broad [1] 30/18
brought [7] 16/10 25/1 39/15 39/18 39/22 67/18 68/19
Bryan [3] 28/11 28/12 50/15
build [1] 56/8
burden [8] 8/3 8/5 35/16 41/3 46/24 47/10 50/18 60/9
business [1] 57/24

**C**

call [5] 24/1 25/8 25/9 40/17 49/23
called [3] 22/10 72/14 72/23
came [5] 30/12 30/17 36/20 52/7 59/7
campaign [2] 25/12

can [50] 3/24 3/25 4/5 4/6 5/18 10/16 16/10 17/6 23/19 24/12 26/13 27/1 27/3 27/7 27/14 32/25 34/8 34/13 34/23 35/1 35/6 36/13 37/1 39/22 42/10 43/22 48/22 49/13 50/15 51/3 51/4 52/2 52/19 53/4 54/18 54/18 59/15 61/3 61/25 65/16 66/6 69/10 71/4 71/8 72/13 74/8 75/12 75/13 76/3 76/19
can't [9] 20/10 30/9 35/18 36/5 36/17 54/25 61/8 64/9 75/14
candidly [2] 37/16 48/17
cannot [8] 30/1 32/19 34/25 35/11 37/11 40/9 42/16 70/1
capable [2] 53/17 54/1
capacity [15] 41/19 41/21 43/23 47/5 48/2 48/7 48/13 66/2 72/11 72/21 74/2 74/11 74/14 74/14 74/15
capture [1] 40/11
cards [1] 9/14
care [1] 13/19
carry [1] 49/12
case [59] 3/7 7/6 7/16 8/18 11/22 11/24 12/1 15/17 15/25 16/6 16/8 17/9 19/7 23/1 23/2 24/19 25/18 27/7 27/9 28/10 28/11 29/2 30/5 30/9 30/21 30/22 30/23 30/25 31/1 32/23 32/25 33/3 33/4 34/4 34/18 36/23 37/1 37/2 38/2 39/5 39/7 39/8 39/12 39/13 40/12 42/9 49/3 54/6 54/22 57/20 57/21 58/16 60/8 61/23 65/8 69/25 71/15 71/19 75/21
cases [12] 11/19 11/21 11/23 12/1 18/5 27/10 27/13 29/18 31/5 40/8 60/2 60/11
categorical [1] 73/25
categorically [2] 67/4 74/4
caveat [1] 20/24
certain [1] 74/11
certainly [4] 7/14 8/10 18/21 34/7
certification [1] 17/5
Certified [1] 2/19
certify [1] 77/2
cetera [2] 37/6 53/25
CH [1] 2/20
chair [2] 25/16 63/11
chairman [1] 51/4
challenge [1] 34/8
chance [2] 10/18 75/20

changes [2] 31/14 36/18
characterization [2] 69/6 72/8
charge [2] 35/12 39/22
charged [1] 21/9
Chase [1] 2/7
Chief [1] 13/5
choices [1] 34/23
choses [1] 34/23
Christoffel [10] 27/4 27/18 27/19 29/3 29/15 32/14 50/14 53/19 60/19 60/20
Christoffel-like [1] 32/14
Circle [1] 2/7
circuit [6] 27/15 28/11 30/5 30/20 31/6 61/21
circuited [2] 22/7 22/9
circumstances [5] 40/16 40/16 59/8 73/10 73/15
circumstantial [1] 9/6
citation [1] 61/22
cite [2] 6/17 61/7
cited [5] 36/23 58/9 61/10 66/10
citing [2] 18/5 60/2
civil [8] 13/3 16/1 36/24 39/7 39/8 39/12 72/14 72/16
civilly [1] 71/19
claim [5] 6/4 8/22 22/24 36/6 62/16
claimed [1] 16/18
claims [1] 60/12
clarify [2] 63/10 74/8
clause [2] 34/19 61/20
clear [21] 6/18 12/4 12/12 13/21 14/13 17/19 23/4 29/16 29/24 34/13 34/17 35/3 35/17 37/3 55/22 57/13 59/21 59/22 60/3 60/5 62/2
clearer [1] 24/9
clearly [7] 17/9 35/7 47/25 57/7 66/17 66/19 69/10
client [2] 13/8 21/9
close [3] 4/24 64/13 64/23
closest [1] 75/3
clothed [1] 39/12
coequal [1] 75/2
colloquy [1] 22/5
COLUMBIA [2] 1/1 1/14
combination [1] 47/11
come [22] 4/17 7/11 9/2 17/23 20/10 17/23 27/7 31/6 34/9 36/5 37/17 43/22 46/24 47/18 47/24 54/16 54/19 56/13 70/18 73/6 76/3 76/3
comes [5] 12/20 18/22 26/10 37/24 71/20

## C

**coming [3]** 21/19 66/13 66/14
**comments [1]** 41/20
**commit [1]** 60/23
**committee [73]** 8/17 9/12 9/13 12/8 13/2 13/3 14/11 14/16 14/18 15/12 17/15 17/16 25/9 26/24 27/11 29/6 29/14 31/25 32/7 33/6 34/16 35/4 35/23 35/25 36/16 38/12 44/5 45/24 45/25 46/4 46/10 47/23 48/25 49/2 49/7 49/10 49/19 51/2 51/10 51/21 51/23 52/5 52/8 53/3 53/8 53/25 54/18 55/18 57/22 57/23 58/2 58/3 58/5 58/6 58/8 58/10 58/14 58/23 59/6 59/7 59/10 59/11 59/13 59/16 59/19 59/20 60/25 62/2 62/12 63/7 65/13 68/25 72/25
**committee's [5]** 34/14 43/20 48/24 50/6 64/23
**committees [4]** 57/18 57/19 58/4 58/8
**committing [1]** 60/21
**communicated [1]** 46/10
**communication [14]** 11/5 12/4 12/8 13/24 17/16 19/6 19/23 21/14 22/15 24/16 24/23 25/15 45/18 68/14
**communications [6]** 7/21 7/24 43/20 43/25 48/1 48/9
**compel [1]** 33/15
**compelled [4]** 6/2 6/19 15/12 21/6
**compelling [1]** 75/4
**competent [1]** 60/19
**complete [1]** 6/4
**completely [1]** 55/17
**complex [1]** 65/6
**comply [5]** 14/22 16/23 70/17 73/12 73/15
**composed [2]** 51/12 53/8
**composition [6]** 26/24 29/6 34/14 35/23 48/24 50/6
**compulsion [2]** 26/15 72/12
**computer [1]** 2/23
**computer-aided [1]** 2/23
**concede [2]** 18/1 18/16
**concept [3]** 39/11 62/1
**concern [1]** 34/18
**concerned [1]** 17/15
**concerning [1]** 64/22
**concerns [1]** 37/5
**conclude [4]** 34/24 38/3 59/17 61/14

**concluded [1]** 74/20
**concludes [1]** 9/25
**concluding [1]** 40/1
**conclusion [1]** 49/16
**conduct [3]** 49/11 57/24 66/20
**conducted [1]** 58/19
**conferred [1]** 32/5
**confidence [2]** 14/9 53/20
**confidential [2]** 43/24 47/25
**confirm [1]** 46/8
**confirmed [1]** 35/25
**confused [2]** 5/19 46/3
**Congress [52]** 5/8 6/3 6/16 7/11 7/16 12/3 15/23 15/23 16/9 16/15 16/20 17/5 18/12 22/9 22/15 22/24 24/12 24/12 24/13 24/22 25/6 25/8 25/21 28/3 28/9 29/4 29/16 29/21 29/24 30/7 32/17 32/20 33/13 34/2 35/3 35/5 35/13 35/22 35/24 36/18 36/20 38/5 38/6 38/22 42/15 43/15 47/14 50/16 60/7 61/16 66/12 66/15
**Congress's [1]** 33/22
**congressional [4]** 28/8 70/15 72/5 73/12
**connected [1]** 46/13
**consent [2]** 59/2 59/4
**consider [1]** 52/2
**considered [1]** 54/13
**consistent [4]** 34/11 36/1 62/13 76/13
**constitute [1]** 56/7
**constituted [1]** 31/25 32/7 34/16 35/25 59/20
**Constitution [5]** 2/20 57/15 57/16 59/12 59/14
**constitutional [5]** 27/11 29/23 30/1 30/6 53/24
**consult [1]** 38/12
**contacted [1]** 44/4
**contains [1]** 8/14
**contemporaneously [1]** 45/9
**contempt [16]** 7/2 16/15 25/5 29/20 30/3 35/12 35/18 35/23 36/5 38/8 38/19 39/22 42/17 50/15 60/23 60/24
**content [4]** 52/11 52/11 52/15 55/11
**contention [2]** 17/18 53/7
**contents [1]** 66/3
**context [6]** 16/1 46/22 52/2 54/21 54/21 55/11
**continue [1]** 40/4
**CONTINUED [1]** 2/1

**conversation [8]** 19/13 23/15 23/18 23/20 41/9 44/10 53/6 68/23
**conversation was [1]** 23/18
**conversations [1]** 25/22
**converse [1]** 38/6
**conviction [2]** 32/19 61/20
**Conway [6]** 64/5 64/24 66/5 66/9 74/9 74/23
**coronavirus [3]** 58/7 72/25 73/1
**Coronavirus Committee [1]** 72/25
**correct [9]** 7/1 19/2 20/1 32/11 33/16 42/19 43/10 45/25 77/3
**corroboration [1]** 11/7
**could [23]** 7/13 19/24 22/19 24/8 33/18 35/4 40/16 44/25 48/6 53/11 53/12 53/15 53/22 55/18 56/7 60/14 63/6 66/18 70/3 72/11 73/13 75/20 75/22
**couldn't [1]** 6/19
**counsel [12]** 3/15 13/21 13/25 13/25 25/11 32/5 59/11 64/2 70/11 72/7 74/12 76/15
**couple [4]** 4/3 38/9 70/7
**course [1]** 21/2
**court [77]** 1/1 2/11 2/18 2/19 3/2 4/13 4/13 4/15 4/15 5/15 8/1 9/25 10/16 12/20 13/20 14/19 16/1 17/5 17/6 19/25 23/19 26/21 27/12 27/14 27/15 28/1 28/5 28/10 30/12 30/17 31/6 32/19 32/19 33/4 34/12 34/13 34/22 34/23 34/23 35/15 36/21 37/2 37/3 37/9 37/13 37/18 39/4 40/8 41/1 41/12 41/14 52/2 55/5 55/5 55/15 55/25 59/21 60/11 60/13 61/4 61/9 61/14 61/14 61/17 61/19 61/24 62/8 64/2 64/13 64/14 64/21 65/7 69/23 70/1 72/16 76/11 76/22 76/23
**court now [1]** 13/20
**Court's [5]** 4/21 7/10 32/1 32/6 34/3
**courthouse [1]** 37/25
**courtroom [1]** 18/6
**COVID [1]** 47/1
**COVID subpoena [1]** 47/1
**CR [1]** 1/4
**crafting [1]** 35/17
**crap [1]** 48/19

**created [2]** 57/22 58/2
**creates [1]** 57/19
**crime [2]** 33/19 71/17
**criminal [19]** 3/7 15/25 21/5 24/23 24/25 25/11 25/13 26/2 30/21 30/22 31/13 32/21 34/18 35/12 36/23 37/3 39/11 39/13 54/22
**criminally [6]** 16/16 32/18 55/15 70/4 73/13 73/14
**CRR [2]** 77/2 77/8
**crystal [1]** 34/13
**crystal-clear [1]** 34/13
**culpable [1]** 32/18
**current [2]** 18/24 40/5
**currently [2]** 75/11 76/2

## D

**D.C [5]** 1/5 1/15 2/4 2/15 2/21
**D.C. [3]** 27/15 28/11 30/20
**D.C. Circuit [3]** 27/15 28/11 30/20
**Dan [1]** 68/6
**Dan Scavino [1]** 68/6
**date [2]** 27/22 75/16 77/7
**day [3]** 22/1 56/23 76/3
**deal [4]** 9/2 36/9 40/12 65/16
**dealing [1]** 74/23
**deals [1]** 40/13
**dealt [1]** 36/24
**debate [8]** 5/2 27/1 35/6 58/7 58/11 58/13 58/14 61/20
**December [1]** 42/1
**decency [1]** 38/21
**decide [8]** 8/2 17/6 34/1 41/2 49/23 49/24 53/15 53/16
**decision [7]** 9/18 28/1 39/3 47/8 53/12 55/4 55/5
**declaratory [1]** 39/25
**defendant [24]** 1/7 2/2 3/13 17/22 17/23 30/7 41/2 41/18 43/21 44/4 46/23 47/4 47/5 48/8 49/20 50/15 52/1 53/1 54/19 54/23 56/12 60/7 60/12 70/25
**defense [12]** 3/12 6/4 16/11 32/5 51/15 52/9 53/16 56/5 56/8 56/12 60/16 64/2
**defenses [1]** 16/6
**definitely [1]** 28/24
**definition [2]** 55/14 65/1
**degree [3]** 11/19 16/9 55/3
**delegate [2]** 18/9 18/10

**delegated [1]** 32/17
**delegation [2]** 33/7 33/9
**delve [1]** 36/22
**deny [1]** 54/23
**department [22]** 5/22 6/16 6/23 16/18 24/22 38/6 39/24 40/3 40/8 42/13 42/21 44/13 44/15 45/5 45/10 45/18 46/6 62/7 64/5 64/7 65/2 70/11
**Department's [2]** 43/8 64/22
**depending [1]** 4/12
**deposition [5]** 58/14 58/17 58/18 58/18 72/14
**depositions [1]** 58/22
**depriving [2]** 37/7 37/8
**derive [1]** 57/14
**derives [2]** 59/14 75/1
**designed [1]** 41/25
**desire [1]** 17/10
**detail [1]** 70/8
**determination [2]** 9/23 10/9
**determine [7]** 9/18 9/21 28/15 43/17 47/15 53/22 71/22
**determining [1]** 64/9
**dialogue [3]** 38/14 38/15 66/22
**dictated [2]** 37/21 63/7
**did [50]** 5/13 11/12 13/15 13/16 18/16 25/6 32/20 36/9 38/11 38/12 41/18 44/13 44/15 44/20 44/23 45/12 45/13 45/21 45/23 45/24 46/6 46/14 47/5 47/17 47/20 47/21 49/19 49/17 49/20 52/1 57/22 60/19 60/22 60/23 60/23 64/2 65/13 67/12 67/24 68/3 68/6 68/7 68/8 68/9 68/10 68/11 68/24 70/2 74/12 74/15
**did you [3]** 68/6 68/8 68/10
**didn't [30]** 9/17 13/22 14/4 14/5 14/19 14/22 22/21 23/25 25/8 25/9 26/2 26/3 26/6 26/25 27/6 27/6 29/8 33/7 33/7 44/1 44/14 51/10 60/8 65/17 68/1 68/12 68/13 68/15 68/16 71/14
**difference [7]** 5/20 6/6 6/21 42/3 65/23 70/23 71/7
**different [21]** 8/16 10/25 11/9 15/18 15/19 17/21 27/25 30/24 31/15 33/12 48/22 53/4 53/25 55/10 61/11

**D**

**different...** [6] 61/18 63/21 63/22 66/24 67/2 73/16
**difficult** [4] 28/22 28/25 38/10 38/11
**direct** [2] 21/14 68/1
**directed** [2] 23/1 70/13
**direction** [5] 19/20 20/12 20/14 24/17 45/16
**directive** [1] 14/15
**directive was** [1] 14/15
**directly** [2] 18/19 75/5
**disagree** [9] 11/15 35/6 36/10 53/9 53/10 59/15 60/4 61/6 69/5
**disagreement** [2] 42/11 75/9
**discharge** [1] 75/6
**disclosure** [1] 30/8
**discuss** [1] 7/12
**discussion** [2] 22/7 64/2
**dismiss** [15] 3/18 4/5 10/18 22/13 22/18 23/23 24/23 26/5 26/9 34/4 41/3 43/15 46/22 61/25 65/8
**dismissal** [2] 5/19 22/20
**dismissed** [5] 27/8 39/1 39/4 54/7 61/21
**dispute** [3] 5/3 23/4 72/22
**distinction** [10] 5/20 6/5 6/20 7/5 7/10 16/13 16/14 50/14 65/23 67/21
**distinguishable** [1] 29/3
**distinguished** [1] 27/13
**DISTRICT** [5] 1/1 1/1 1/10 1/14 39/4
**divvied** [2] 3/23 4/8
**do** [61] 5/10 9/16 10/3 10/16 10/24 11/1 11/18 13/11 15/2 15/3 15/23 17/12 19/16 19/17 20/13 20/14 20/21 21/25 22/17 23/1 23/25 23/25 24/8 24/9 27/4 28/3 28/15 30/11 31/10 31/17 35/18 35/20 36/1 36/1 41/4 41/4 41/15 45/8 47/23 48/5 50/7 50/9 50/10 50/14 50/24 56/9 56/25 57/5 59/1 59/3 68/3 68/21 68/23 72/10 74/5 76/1 76/12
**Do you know** [1] 68/23
**doctrine** [2] 22/13 22/16
**documents** [4] 40/2 47/21 49/7 64/18
**does** [24] 4/23 5/9 6/23

31/23 32/10 33/10 42/12 42/21 49/1 50/22 50/24 51/1 53/5 57/14 65/7 65/24 69/5 70/20 72/15 73/6
**doesn't** [21] 6/25 7/2 8/6 12/25 14/4 16/3 17/23 19/8 20/6 28/18 36/25 40/12 54/23 65/25 66/7 66/8 67/3 70/18 70/24 71/10 72/14
**doing** [2] 17/7 74/13
**don't** [45] 3/22 4/4 4/18 11/3 11/14 11/16 13/10 13/19 14/19 15/4 15/5 18/7 18/8 19/16 19/17 20/4 21/21 21/23 23/11 23/12 23/17 25/4 25/25 26/19 27/14 27/21 28/25 31/18 34/22 37/15 47/11 48/11 53/14 54/1 56/2 57/7 62/17 64/3 65/25 66/10 67/6 67/9 72/22 75/8 76/21
**done** [11] 17/14 26/18 29/14 38/24 48/1 59/1 59/4 63/15 63/17 66/2 76/13
**door** [1] 63/23
**doubt** [4] 20/7 22/2 52/16 73/1
**down** [4] 17/22 26/10 49/24 73/6
**dozens** [1] 29/13
**Dr** [2] 10/24 20/7
**Dr.** [52] 5/3 7/25 8/2 8/16 8/24 9/4 9/7 10/1 10/14 11/7 12/14 13/23 13/23 14/3 14/5 14/8 18/10 18/16 18/19 19/4 19/5 19/18 20/1 21/13 23/20 25/5 25/10 25/16 27/21 38/11 38/23 60/22 62/14 64/11 65/14 66/1 67/17 68/10 68/12 68/13 68/22 70/2 71/1 72/18 72/23 73/1 73/7 73/7 73/11
**Dr. Navarro** [45] 5/3 7/25 8/2 8/16 8/24 9/7 10/1 10/14 13/23 13/23 14/3 14/5 14/8 14/9 14/16 14/21 18/4 18/10 18/16 18/19 19/4 19/5 19/18 20/1 21/13 23/20 25/10 25/16 38/23 60/22 64/11 65/14 66/1 67/17 68/10 68/12 68/13 68/22 70/2 71/1 72/18 72/23 73/1 73/7 73/11
**Dr. Navarro was** [1] 12/14
**Dr. Navarro's** [5] 9/4

**Dr. Who** [1] 25/5
**dramatization** [1] 69/13
**due** [8] 29/25 37/6 39/19 54/23 69/24 70/24 71/7 71/10
**due-process** [2] 69/24 70/24
**during** [1] 44/12
**duties** [6] 5/9 42/8 64/12 64/18 65/2 74/6
**duty** [1] 28/6

**E**

**each** [2] 12/1 26/6
**ear** [1] 23/13
**earlier** [1] 25/20
**EARTH** [1] 2/2
**Eastland** [2] 60/3 61/9
**easy** [1] 18/25
**Edmund** [1] 2/14
**effect** [2] 22/8 41/25
**effort** [6] 7/6 7/8 38/5 43/19 44/20 48/2
**ego** [2] 72/19 73/3
**egos** [1] 75/3
**either** [8] 3/22 12/24 18/18 19/18 25/20 36/18 47/9 57/10
**election** [3] 41/22 42/1 48/6
**elects** [1] 15/23
**element** [20] 16/10 31/20 32/15 33/10 37/6 48/24 49/23 50/8 50/24 50/24 51/17 51/18 52/6 52/13 52/16 54/4 54/5 60/9 60/18 61/2
**elements** [2] 16/5 53/15
**eleventh** [1] 41/8
**eleventh-hour** [1] 41/8
**Elizabeth** [2] 1/13 3/9
**Elizabeth Aloi** [1] 3/9
**elizabeth.aloi** [1] 1/17
**else** [5] 10/25 19/17 56/21 57/2 76/15
**else's** [1] 32/3
**email** [11] 1/16 1/17 2/5 2/9 2/13 2/16 18/17 19/4 24/13 44/5 76/19
**eminently** [1] 22/10
**employees** [1] 52/25
**empower** [1] 51/24
**end** [1] 75/13
**ended** [1] 15/9
**enforce** [1] 36/17
**enforceable** [1] 62/4
**enforced** [1] 71/19
**enforcement** [5] 1/1 59/22 59/24 60/1 62/7
**engage** [2] 7/17 60/23
**engaged** [1] 7/12
**engaging** [1] 38/13
**enough** [4] 10/10 19/4 53/21 54/11
**entirely** [3] 20/13 20/19

**EPA** [1] 16/18
**equitable** [2] 22/19 22/19
**essentially** [2] 6/4 73/3
**establish** [5] 8/11 10/13 19/10 48/25 58/12
**established** [2] 33/25 50/8
**establishing** [1] 5/10
**esteemed** [1] 59/11
**estoppel** [5] 56/5 56/8 70/24 71/7 71/8
**et** [2] 37/6 53/25
**et cetera** [1] 37/6
**evaluate** [1] 49/13
**eve** [1] 28/5
**even** [5] 11/3 11/24 23/12 49/8 66/19
**every** [24] 11/22 12/1 13/1 13/2 14/1 14/9 21/25 28/6 28/10 28/11 29/2 29/5 29/9 30/4 36/18 36/19 37/25 57/9 57/17 58/5 58/6 58/9 65/22 68/24
**everybody** [2] 14/14 75/15
**everybody's** [1] 4/1
**everyone** [4] 3/5 4/2 36/16 76/21
**everything** [1] 36/13
**evidence** [14] 8/22 9/1 9/2 9/5 9/6 10/22 21/12 21/18 26/13 28/7 44/14 46/14 46/19 46/20
**evident** [1] 29/9
**evidentiary** [6] 10/12 10/20 10/21 26/16 46/17 52/11
**exactly** [3] 23/2 31/3 67/1
**example** [7] 18/25 29/11 48/4 53/19 55/17 58/8 58/17
**examples** [1] 38/9
**except** [4] 21/19 50/16 60/8 60/8
**exception** [3] 28/13 28/14 60/17
**excuse** [5] 13/4 37/8 53/10 60/24 66/13
**executive** [52] 5/11 5/13 6/12 6/24 6/24 7/7 7/14 8/20 8/23 10/2 12/4 12/5 15/12 16/9 16/20 17/2 17/10 19/22 20/7 20/11 20/25 21/16 22/3 22/15 22/23 22/25 22/3 23/21 24/3 24/6 24/13 38/20 38/23 40/5 40/7 42/16 42/24 43/16 44/8 45/13 45/21 47/22 65/20 66/6 66/16 66/18 67/14 67/16 68/2 68/22 70/13 73/7
**Executive privilege** [1]

**exists** [1] 39/21
**expectation** [1] 75/22
**experience** [2] 9/11 9/12
**expertise** [1] 57/13
**explain** [1] 34/9
**explains** [3] 13/12 13/12 13/14
**expressly** [1] 41/19
**extent** [2] 24/6 40/3
**eye** [1] 76/12

**F**

**F.2d** [1] 31/2
**face** [4] 22/22 35/1 35/11 54/14
**fact** [18] 10/11 19/11 29/18 32/24 33/2 35/21 36/15 43/17 44/21 46/8 47/2 53/20 54/25 56/13 57/18 64/12 70/2 70/19
**factor** [1] 64/9
**facts** [5] 38/2 44/3
**failed** [5] 17/9 27/11 41/4 68/17 73/12
**failing** [2] 37/21 73/15
**fails** [2] 35/18 59/20
**failure** [6] 6/3 24/21 34/4 40/1 70/17
**fair** [8] 3/21 10/10 21/4 21/4 54/11 70/2 71/2 73/11
**Fairfax** [1] 2/7
**fairly** [1] 60/5
**faithfully** [1] 75/6
**falls** [1] 32/14
**familiar** [1] 61/23
**far** [3] 11/25 17/14 26/12
**February** [1] 44/7
**February 9th** [1] 44/7
**few** [1] 31/7
**fewer** [1] 49/8
**Fifth** [5] 17/24 19/9 22/4 30/13 30/16
**figure** [4] 4/18 16/25 31/18 34/11 39/20
**filed** [2] 3/19 63/21
**filing** [1] 41/2
**filings** [1] 36/6
**fills** [1] 52/15
**financial** [1] 55/12
**find** [4] 29/17 44/14 44/20 46/14
**finding** [1] 36/25
**findings** [1] 58/9
**finish** [1] 34/20
**first** [14] 5/21 10/19 12/10 17/7 22/10 28/3 28/9 29/4 29/21 33/20 40/23 51/25 60/7 73/13
**fit** [1] 75/23
**flag** [1] 4/14
**flaw** [4] 28/13 28/16 28/20 29/5
**flawed** [1] 28/8
**floor** [1] 62/12

**F**

focused [1] 42/6
focuses [1] 52/18
follow [5] 15/22 29/16
34/4 59/20 65/18
followed [3] 29/20 34/2
34/25
following [2] 20/8 60/5
foot [1] 33/11
footnote [1] 63/1
footnotes [1] 62/10
forbid [1] 15/7
foregoing [1] 77/3
forgive [2] 12/19 38/17
form [1] 35/11
formal [1] 11/19
11/23 11/24 15/1 17/21
18/1 18/2 18/3 18/4
23/9 26/14 41/6 43/9
formally [1] 17/14
former [75] 4/23 5/3
5/5 5/7 5/9 5/12 6/10
6/12 7/12 7/25 8/3
10/13 12/16 14/2 14/6
14/7 14/17 14/20 14/23
15/10 15/11 15/20
15/20 16/16 16/18
16/19 16/21 16/22 17/1
17/2 17/9 18/9 18/11
18/23 20/1 20/10 20/20
20/25 23/2 24/1 24/11
25/2 25/8 25/15 25/18
26/3 37/25 38/6 38/8
38/13 38/20 40/4 40/12
42/8 42/14 42/14 42/23
42/23 43/2 43/2 43/17
44/21 45/3 45/11 46/14
67/12 67/24 68/14
68/17 68/19 68/20
68/21 69/3 69/3 74/4
forth [1] 16/9
forward [4] 46/24
56/13 66/13 66/14
Fourth [3] 30/6 30/7
30/18
Fourth Amendment [1]
30/18
frame [1] 6/7
framework [1] 51/2
frankly [1] 25/10
full [1] 6/1
fully [1] 51/11
function [1] 54/18
functions [1] 55/23
fundamental [1] 42/3

**G**

game [1] 34/10
gave [2] 19/20 44/21
general [3] 18/25 40/10
71/16
get [15] 4/19 5/16 16/3
16/25 17/23 20/4 23/25
27/7 31/17 31/18 33/11
36/4 70/8 73/21 76/19
gets [8] 19/18 24/12
28/17 34/1 58/20 58/21
61/3 62/12

getting [2] 4/24 7/10
give [9] 19/8 22/13
26/8 31/1 32/24 33/2
37/11 57/22 65/7
given [13] 4/16 10/19
10/22 10/23 23/13
24/16 26/13 37/4 41/17
43/23 46/17 49/14
49/15
gives [1] 57/16
Glen [1] 2/7
gmail.com [2] 2/13
go [11] 24/20 25/2
25/19 27/6 27/24 29/8
31/19 34/22 40/23
67/24 75/25
God [1] 15/7
God's [1] 72/13
goes [4] 34/19 50/17
60/9 60/18
going [16] 4/2 4/17
9/10 19/10 19/14 24/2
24/3 26/4 31/11 31/14
37/9 40/4 55/15 69/4
71/16 75/22
Gojack [6] 33/4 33/5
33/6 61/9 61/11 61/12
gone [1] 61/15
good [9] 3/4 3/6 3/15
3/16 27/14 28/21 32/23
40/20 40/22
Gorsuch [1] 16/19
Gorsuch's [1] 40/1
got [6] 27/18 27/18
28/1 28/2 29/3 65/15
government [17] 1/13
3/10 3/19 11/15 14/2
22/2 22/9 31/21 40/19
50/17 50/22 51/22
60/17 67/10 69/5 72/7
75/2
government's [6] 9/17
11/16 31/24 60/9 65/13
73/23
grand [19] 4/16 9/11
11/2 11/4 12/12 13/11
13/12 13/14 13/22 14/1
14/7 14/12 17/19 21/25
22/11 33/18 44/12
44/17 76/20
grand jury [1] 11/4
13/22 22/11 76/20
great [1] 36/9
Green [1] 48/5
Green Bay Sweep [1]
48/5
ground [1] 24/21
grounds [1] 62/1
guess [7] 18/13 26/5
47/16 50/13 53/6 73/20
73/23
guy [1] 61/11
guys [1] 36/14

**H**

had [32] 7/8 7/11 10/18
10/24 11/8 13/24 14/1
15/25 20/10 30/7 33/19

asserted [1] 48/13
45/18 46/1 47/11 47/15
48/5 49/7 49/8 49/22
56/22 58/4 58/23 68/13
68/23 70/16 71/2 72/23
74/10
half [1] 20/1
handed [1] 53/1
handle [2] 4/15 41/19
hang [4] 20/17 22/12
38/25 75/15
hanging [1] 27/19
happen [2] 60/8 67/25
happened [3] 19/1
23/3 46/24
happening [1] 58/22
happens [6] 15/7 15/8
22/5 64/10 67/8 67/9
happy [1] 10/6
Harriet [1] 71/14
Harriet Miers [1] 71/14
has [84]
hashed [1] 16/2
hasn't [3] 7/11 47/10
63/15
hat [1] 38/25
Hatch [5] 41/24 48/19
64/6 64/25 74/11
Hatch Act [1] 64/6
64/25 74/11
have [116]
haven't [5] 7/3 10/19
10/22 21/18 26/13
having [4] 9/13 20/11
53/6 57/9
he [86]
he said [2] 44/8 48/14
he's [5] 6/19 7/18
25/21 65/22 73/13
head [5] 13/3 27/19
50/5 71/8 75/1
heading [1] 5/21
hear [4] 21/17 31/8
40/18 73/25
heard [5] 24/19 44/11
46/7 52/13 74/19
hearing [1] 1/9 3/17
10/20
hearings [1] 13/2
held [3] 5/23 35/21
38/19
help [6] 24/10 31/15
39/9 39/11 39/14 52/10
helpful [2] 17/20 56/20
Helstoski [4] 61/18
61/19 65/5 65/7
her [9] 5/9 17/10 35/4
65/2 65/3 74/11 74/13
74/14 74/15
here [44] 3/17 5/14 6/6
9/15 11/21 12/7 13/7
15/20 16/13 16/14 18/4
21/13 24/9 24/10 25/13
26/1 26/2 26/13 27/23
27/24 29/14 29/17
31/19 38/24 40/15 41/7
42/9 43/8 43/10 47/4
47/7 55/17 56/9 59/22

63/18 68/1 69/22 69/24
70/7 70/9
here's [1] 36/8
Hi [1] 69/20
high [2] 12/4 66/18
high-level [2] 12/4
66/18
him [21] 8/4 8/18 11/5
20/9 21/15 24/1 27/6
28/19 29/8 33/2 41/24
44/25 45/2 45/6 47/24
60/25 65/19 65/25
68/15 71/10 73/2
himself [1] 41/3
hinge [1] 71/22
his [33] 5/9 8/6 8/9
9/11 11/7 11/10 15/9
17/10 17/10 19/7 22/10
23/13 25/20 25/22 30/8
38/8 39/19 41/19 41/21
45/20 47/5 48/1 48/7
48/16 67/13 68/5 68/14
70/17 71/8 72/18 72/20
75/3 75/6
historical [2] 5/25 12/2
history [1] 73/14
hoc [2] 36/3 63/24
hold [1] 35/18
holder [5] 7/7 20/12
21/1 41/6 42/19
holding [1] 15/14
25/21 61/9
holds [1] 8/7
Honor [39] 3/6 4/8 6/8
17/25 21/24 22/6 24/2
24/9 26/1 30/25 31/8
40/20 42/5 42/19 49/13
49/22 49/23 52/7 53/16
56/22 61/6 63/3 69/9
69/14 69/18 69/19
69/21 70/20 71/1 71/13
71/19 71/24 71/25 73/5
73/18 74/8 74/19 74/21
76/5
Honor's [4] 31/4 57/7
70/6 74/22
HONORABLE [2] 1/10
3/3
hook [1] 39/20
hopefully [1] 76/12
hour [4] 41/8 58/19
58/20 58/21
House [37] 34/15 35/8
36/1 36/12 39/3 41/24
49/2 49/6 49/15 49/21
52/6 54/10 54/16 54/22
55/1 55/6 57/10 57/14
57/16 57/17 57/18
57/21 58/4 58/5 58/9
58/17 59/9 59/13 59/23
60/24 62/12 62/13 63/6
63/8 63/11 63/19 63/20
housekeeping [1] 4/14
how [27] 4/2 4/15 6/6
12/18 16/25 19/10
28/15 33/10 33/18
33/20 33/23 34/11

74/13 49/12 51/4 52/5
53/5 53/11 54/12 55/4
55/12 57/24 58/13
58/14 59/1 59/3 61/3
however [4] 11/18
11/18 31/13 70/10
huh [1] 20/3
Hulser [1] 1/13 3/9
40/21 40/22
hybrid [1] 59/7
hypothetical [2] 25/19
63/23 65/18
hypothetically [3]
18/20 19/3 51/20

**I**

I agree [1] 73/6
I believe [1] 72/1
I didn't [1] 14/5
I don't [1] 72/22
I go [1] 24/20
I guess [3] 26/5 50/13
73/23
I have [4] 14/24 36/9
59/5 74/22
I just [1] 64/1
I know [1] 72/20
I mean [17] 5/21 8/13
10/15 12/19 15/24
19/18 26/9 27/3 28/25
29/2 29/10 30/4 39/14
61/8 64/25 72/12 72/22
I should [1] 45/12
I think [19] 7/10 16/13
18/20 19/1 20/8 21/4
24/18 33/3 40/24 49/5
49/18 49/22 55/3 55/10
55/19 60/5 61/8 65/6
73/8
I thought [2] 64/15
64/16
I trust [1] 24/16
I understand [1] 26/17
I want [3] 40/23 57/4
57/12
I won't [1] 70/8
I'd [8] 9/2 37/24 66/9
69/23 71/13 73/21
75/25 76/20
I'll [13] 11/14 11/17
26/8 31/1 32/24 50/13
57/5 61/7 64/1 64/15
72/6 72/7 73/25
I'm [48] 6/6 8/21 9/23
10/6 12/22 14/25 15/24
16/8 18/1 20/1 20/10
20/23 21/16 23/11
23/22 24/15 26/17 30/9
32/23 34/11 34/20 39/5
39/20 44/15 44/19 46/3
46/4 46/4 46/11 46/21
47/16 50/3 50/4 56/16
56/22 61/23 63/2 66/9
66/18 68/4 71/6 72/11
75/11 75/19
I'm just [1] 24/15
I'm not [1] 32/2

**I**

I'm not sure [1] 66/9
I'm sorry [3] 32/4 44/15 63/2
I've [7] 11/14 24/19 28/1 29/12 32/3 66/10 74/6
idea [5] 27/5 34/12 38/19 61/24 69/2
identified [1] 29/6
identify [1] 33/7
ignored [1] 14/18
Ill [1] 2/6
illegal [1] 41/24
imagine [1] 68/24
immediate [1] 47/6
immune [9] 6/1 6/2 6/19 16/7 64/8 70/14 72/3 72/12 74/4
immunities [1] 10/5
immunity [19] 10/7 10/8 16/12 21/5 26/15 31/17 37/14 37/15 37/16 37/17 37/18 37/19 37/20 38/1 40/24 41/1 46/23 74/1 74/25
immunize [1] 66/12
impanel [1] 27/22
implies [1] 47/7
important [7] 7/10 69/22
imposing [1] 55/13
impossible [2] 38/3 38/3
improperly [2] 32/7 59/20
inapplicable [2] 43/9 59/7
inappropriate [1] 38/7
include [1] 44/20
including [1] 31/24
incrimination [1] 30/8
incumbent [3] 15/22 18/12
independence [1] 75/4
independent [3] 11/6 57/23 57/23
independently [1] 67/12
indication [1] 11/23
indictment [16] 22/14 22/18 22/20 23/23 24/24 24/25 25/11 26/6 26/9 39/1 39/15 39/18 43/15 54/6 61/21 61/25
individual [5] 15/14 28/6 28/14 28/16 36/5
indulgence [1] 32/2
ineffective [2] 20/13 20/19
information [6] 47/11 49/6 49/14 49/25 64/24 65/1
inherently [2] 16/22 40/2
inquire [2] 58/23 67/12
inquiry [4] 14/7 32/20 67/15 69/2

**instance [1] 12/12**
instances [1] 46/2
instead [3] 38/13 58/2 59/19
instructed [2] 11/8 73/7
instruction [3] 20/14 20/21 44/22
intended [6] 8/4 10/14 35/9 40/11 45/12 45/12
intending [1] 18/1
intent [4] 12/13 12/15 12/16 14/6
interesting [1] 26/22
interfere [1] 75/5
internal [1] 51/2
interpret [2] 34/25 35/16
interpretation [3] 34/18 53/24 62/18
interpretations [1] 63/25
interpreting [1] 33/12
interpretive [1] 57/25
interprets [1] 33/13
interrupted [1] 24/21
interview [1] 48/17
interviews [2] 43/24 48/16
intrigued [1] 31/16
investigate [5] 44/13 44/16 51/3 52/19 55/19
investigating [2] 40/6 66/15
investigation [5] 44/12 44/17 46/5 46/6 69/6
investigations [1] 49/11
invite [1] 57/5
invocation [47] 7/14 8/15 8/20 9/19 11/9 11/24 12/21 15/1 16/12 17/2 17/21 18/1 18/2 18/3 18/4 18/11 20/5 22/1 22/3 22/23 25/3 26/14 30/5 40/5 41/5 41/15 42/5 42/16 42/18 42/22 43/2 43/10 43/17 44/3 44/13 44/25 46/9 46/15 46/20 47/3 67/14 67/16 70/19 71/21 71/23 72/3 74/7
invocations [1] 46/1
invoke [23] 5/13 8/4 8/18 10/2 11/13 17/10 19/21 20/9 20/20 21/15 23/7 23/21 38/12 38/20 45/13 45/21 45/24 66/6 67/7 68/1 68/18 70/13 73/7
invoked [17] 5/11 6/10 6/12 7/19 8/9 8/12 8/23 9/22 11/17 12/6 20/1 23/3 24/3 45/16 46/1 47/15 68/22
invokes [3] 6/24 12/24 15/21
invoking [6] 14/2 15/17

45/25
involve [1] 21/21
involved [3] 16/4 30/5 46/1
involving [1] 61/20
Irving [2] 2/2 3/11
is [266]
is a [1] 39/6
Is it [1] 23/10
isn't [6] 15/13 21/8 27/23 31/3 38/11 67/19
issue [36] 4/9 4/9 4/21 8/1 11/11 15/18 15/19 22/16 26/22 27/20 27/21 31/17 40/24 48/22 48/23 49/1 49/10 49/19 49/21 50/2 51/11 51/24 53/17 54/5 55/20 56/1 58/16 59/10 59/18 61/12 61/13 62/11 63/5 69/22 70/24 70/24
issued [5] 49/25 50/1 51/7 51/21 52/25
issues [6] 26/23 50/5 57/25 69/22 72/2 72/15
issuing [1] 62/3
it [186]
it's [60] 5/20 5/24 8/6 9/3 9/10 9/24 10/18 10/22 12/7 16/10 16/11 16/11 17/19 18/2 18/25 19/19 27/15 28/24 28/25 29/4 29/6 29/7 29/7 30/17 30/18 30/18 31/2 33/10 33/21 34/17 35/10 37/18 38/2 38/3 39/13 39/13 40/25 41/23 51/17 51/18 52/8 52/9 53/15 54/3 54/16 55/3 55/22 56/24 57/15 59/12 61/2 61/6 62/18 62/19 64/17 64/17 65/6 65/8 65/9 75/2
itself [4] 34/15 40/6 49/16 62/20
IV [1] 2/2

**J**

January [2] 14/11 36/12
January 6th [1] 14/11
jirving1 [1] 2/5
John [5] 2/2 2/6 3/11 3/11 69/19
John Irving [1] 3/11
John Rowley [1] 3/11
john.rowley [1] 2/9
Josh [1] 71/15
Josh Bolten [1] 71/15
JPROWLEY [1] 2/6
jprowleylaw.com [1]

Jr [1] 2/14
judge [44] 1/10 13/5 24/15 27/17 35/21 36/8 36/11 36/24 37/16 40/23 41/16 43/1 43/18 44/2 44/23 45/4 45/14 46/12 46/22 47/17 47/24 48/8 48/10 48/17 49/5 49/17 49/18 50/9 50/19 51/19 52/24 53/14 54/8 54/25 56/7 56/10 56/15 56/18 57/1 66/21 69/7 75/18 76/6 76/16
Judge Kelly [1] 49/17
Judge Nichols [5] 35/21 36/8 36/11 36/24 56/7
judges [1] 54/13
judgment [1] 39/25
Judicial [1] 16/3
Judiciary [1] 32/17
July [2] 64/22 74/22
jump [1] 4/22
juncture [1] 9/18
jury [31] 4/16 9/11 10/3 10/8 11/2 11/4 12/12 13/11 13/12 13/14 13/22 14/1 14/13 17/19 21/25 22/11 27/23 33/11 33/18 33/21 33/21 33/24 34/1 34/13 44/12 44/17 53/12 53/18 53/21 54/1 76/20
jury's [1] 14/7
just [35] 3/20 6/21 7/18 9/14 10/17 11/17 12/7 13/18 17/13 20/23 24/14 24/15 25/12 37/9 37/16 41/16 42/10 44/2 46/18 58/17 61/7 64/1 65/15 66/11 66/18 67/2 69/9 72/4 72/6 72/9 72/12 73/20 73/24 74/8 74/19
Justice [14] 6/17 6/23 16/18 24/22 38/6 39/25 40/3 42/13 42/21 45/18 46/6 62/7 64/5 70/11
Justice Department [1] 70/11
Justice's [1] 5/22
justiciable [2] 54/6 54/9

**K**

K. [1] 3/8
keep [2] 75/25 76/10
Kelly [1] 49/17
Kellyanne [6] 64/5 64/24 66/5 66/9 74/9 74/23
Kellyanne Conway [6] 64/5 64/24 66/5 66/9 74/9 74/23
Kennedy [1] 15/11
key [1] 7/5

kind [4] 26/14 60/13 69/8 70/8
knew [2] 24/2 24/2
know [42] 3/22 4/1 8/11 10/5 11/14 13/1 13/10 13/11 16/2 19/17 21/23 23/17 25/4 25/8 25/9 25/25 26/23 28/25 30/9 31/8 32/24 33/1 34/21 37/16 38/14 39/5 42/12 43/19 54/24 59/1 59/3 59/6 65/25 65/25 66/10 67/9 68/21 68/23 69/3 72/20 75/11 76/11
knowable [1] 29/5
knowing [2] 29/23 30/2
knowledge [2] 16/11 59/5
knows [2] 24/9 56/25

**L**

lack [2] 25/14 58/10
landscape [1] 31/14
lane [3] 39/5 57/5 61/16
language [3] 31/22 50/22 52/12
largely [2] 40/13 52/18
larger [1] 49/21
last [5] 5/2 43/9 53/6 70/7 73/25
later [2] 36/6 44/8
latter [1] 45/15
law [15] 2/2 2/6 2/11 2/14 6/14 8/19 10/15 27/14 27/16 28/21 36/23 38/21 40/12 61/4 71/4
lawful [7] 16/22 16/24 40/2 50/1 51/7 53/2 65/4
lawfully [1] 34/16
lawfulness [1] 34/14
lawsuit [1] 16/18
lawyer [7] 18/19 20/24 22/10 38/15 58/23 68/6 68/17
lawyers [1] 68/5
layered [1] 39/22
laying [1] 37/4
lead [1] 26/11
least [6] 8/7 12/7 17/14 38/9 44/21 50/5
leave [2] 36/25 76/14
leaves [1] 12/20
leaving [1] 73/16
led [1] 9/6
left [5] 26/17 48/23 68/16 68/18 69/1
legal [10] 5/24 16/24 21/8 22/13 22/16 26/22 36/6 38/24 65/23 70/11
legality [1] 52/5
legions [1] 60/11
legislation [1] 36/20
legitimate [1] 71/5
less [1] 35/4
let [7] 9/16 34/20 40/18

**L**

let... [4]  50/23 62/9
65/11 65/12
let's [18]  5/16 7/17
9/14 11/10 14/24 18/15
18/19 19/3 27/3 29/10
29/11 32/13 38/18 50/3
56/4 59/22 73/20 76/10
letter [16]  12/3 13/3
13/4 13/5 13/8 13/15
13/23 14/5 18/17 19/1
25/12 68/6 68/8 68/10
68/12 68/15
letter-writing [1]  25/12
letters [1]  29/12
level [2]  12/4 66/18
liable [1]  16/16
liberty [3]  36/25 37/8
37/9
lie [1]  35/1
lies [1]  21/19
light [1]  26/19
like [16]  4/22 9/2 25/12
32/14 32/23 38/19 50/2
56/1 56/21 57/3 66/9
69/23 71/13 72/18
73/15 75/25
likely [1]  75/13
limine [2]  3/19 4/6
linchpin [1]  73/8
line [2]  11/23 68/14
lines [1]  13/24
litigated [1]  59/18
litigation [4]  6/17 13/4
24/5 72/16
little [4]  5/19 37/10
46/3 66/11
LLC [1]  2/2
location [1]  28/18
logistics [1]  73/20
long [5]  29/13 56/23
56/24 67/4 75/22
longer [2]  36/17 52/20
look [14]  9/14 12/19
15/24 23/12 24/19
29/10 31/8 46/18 54/12
55/6 64/15 65/15 72/6
73/5
looked [1]  11/14
lot [3]  32/23 76/8 76/9
Lots [1]  35/7

**M**

made [10]  7/3 8/15
10/24 11/5 31/16 41/14
47/8 47/13 47/14 55/4
majority [1]  58/19
make [15]  9/24 16/15
26/16 26/19 29/15 32/2
32/20 42/10 44/2 50/4
55/5 60/3 62/16 64/1
76/1
makes [5]  12/12 13/21
14/13 29/24 59/21
making [6]  7/10 36/22
37/5 41/20 61/16 67/20
mandated [1]  55/23
many [3]  31/5 71/22

Mark [1]  68/8
marry [1]  53/5
marrying [1]  50/5
Marshals [1]  27/24
matter [21]  4/14 6/14
10/15 17/14 26/2 33/8
38/21 38/21 40/10
41/18 49/22 51/8 52/1
55/3 55/24 64/3 64/10
64/12 67/3 75/10 77/4
matters [6]  36/24 41/1
41/25 43/3 73/2 76/12
may [13]  4/13 6/20
7/20 17/25 18/15 32/1
41/9 41/9 41/17 66/10
67/10 74/9 74/19
maybe [12]  5/20 6/5
6/20 14/25 15/3 17/15
24/21 46/3 50/3 65/24
65/24 75/19
McKennett [1]  2/10
MD [1]  2/12
me [61]  7/4 8/8 9/16
10/7 10/19 10/23 11/1
12/19 12/21 13/4 13/7
13/18 14/25 16/5 17/12
17/15 17/19 19/20
20/17 21/13 21/20
22/13 23/12 23/13
24/10 26/5 26/13 31/15
32/22 34/10 34/20
35/20 37/8 38/17 38/25
39/9 39/11 39/14 40/18
45/17 47/10 50/3 50/23
51/10 52/10 53/10
54/22 55/25 60/24 62/9
65/11 65/12 66/11
66/13 66/17 68/15
71/21 72/9 73/21 76/20
76/21
Meadows [4]  13/16
25/12 29/11 68/8
mean [32]  5/19 5/21
5/25 8/13 10/15 12/19
15/24 19/18 26/9 26/19
27/3 27/10 28/21 28/25
29/2 29/10 30/4 31/23
32/10 39/14 39/20 45/2
45/8 45/13 46/18 49/1
61/8 62/21 64/25 66/17
72/12 72/22
meaningful [2]  38/14
38/15
means [4]  32/12 32/16
55/11 61/15
meant [2]  30/13 36/4
mechanical [1]  2/23
mechanisms [1]  59/23
meet [1]  10/1
MEHTA [2]  1/10 3/3
member [7]  29/7 55/14
58/11 58/12 63/10
66/12 66/13
members [18]  31/12
35/4 35/8 36/15 49/8
50/7 51/12 51/21 51/23
53/25 54/18 55/12

memo [1]  6/22
memoranda [2]  16/17
66/6
memorandum [1]  23/9
memos [1]  73/24
mens [1]  11/11
mental [1]  11/7
merely [1]  18/17
Merit [1]  2/18
merits [1]  40/7
message [2]  25/17
62/2
met [1]  47/10
Miers [3]  16/17 71/14
71/15
might [4]  55/7 55/7
58/7 69/9
mildly [1]  12/9
mind [2]  4/1 37/24
minimum [1]  54/13
minority [2]  35/8 58/21
minutes [1]  44/8
misdemeanors [1]
21/10
misinterpretation [1]
36/14
missed [1]  57/12
misunderstanding [1]
50/3
moment [6]  5/17 18/15
27/4 50/4 56/4 64/4
money [1]  55/13
more [7]  5/24 17/18
26/18 31/7 38/10 53/23
75/12
most [2]  26/22 30/5
motion [10]  1/9 3/18
3/19 4/5 4/6 10/18
10/22 33/15 41/2 46/22
motions [3]  3/18 4/9
4/10 41/13
motivation [1]  35/10
Mr. [35]  3/16 4/4 4/7
6/1 6/19 7/21 13/16
13/16 22/17 25/12
25/13 28/25 29/10
29/11 29/11 32/24 33/1
38/17 40/22 43/13
45/22 47/12 48/23 53/7
55/1 56/25 57/2 57/5
69/17 69/20 69/23
70/16 72/6 73/19 75/12
Mr. Brand [2]  22/17
33/1
Mr. Hulser [1]  40/22
Mr. Meadows [3]  13/16
25/12 29/11
Mr. Navarro [8]  3/16
4/4 6/1 6/19 7/21 29/10
45/22 70/16
Mr. Rowley [4]  57/5
69/17 69/20 73/19
Mr. Scavino [3]  13/16
25/13 29/11
Mr. Woodward [12]
4/7 28/25 32/24 38/17

57/2 69/23 72/6 75/12
Mr. Woodward's [2]
43/13 47/12
Ms. [1]  71/15
Ms. Miers [1]  71/15
much [4]  5/2 59/18
64/2 71/21
multiple [1]  29/12
must [2]  10/1 17/4
my [18]  9/18 11/18
16/11 22/19 22/19 32/2
38/25 39/5 48/11 48/12
50/5 57/4 59/11 60/22
66/20 69/12 75/21
76/11
mystified [1]  12/22

**N**

name [4]  30/9 31/1
32/25 33/1
names [1]  32/24
narrower [1]  64/16
nature [1]  18/2
NAVARRO [57]  1/6 3/8
3/16 4/4 5/3 6/1 6/19
7/21 7/25 8/2 8/16 8/24
9/7 10/1 10/14 12/14
12/23 13/23 14/3 14/5
14/8 14/9 14/16 14/21
18/4 18/10 18/16 18/19
19/4 19/5 19/18 20/1
21/13 23/20 25/10
25/16 29/10 38/23
45/22 48/18 60/22
64/11 65/14 66/1 67/17
68/10 68/12 68/13
68/22 70/2 70/16 71/1
72/18 72/23 73/1 73/7
73/11
Navarro's [6]  9/4 11/7
20/7 27/21 38/11 62/14
necessarily [1]  73/4
necessary [1]  10/20
need [9]  5/10 6/14
10/13 14/5 28/2 62/5
65/3 68/15 76/1
needed [1]  13/22
needs [9]  8/1 10/11
11/16 14/25 31/21
39/21 41/5 50/7 65/7
negative [1]  46/21
negotiate [2]  7/6 7/8
neither [2]  22/9 43/15
never [6]  5/13 17/8
24/19 25/1 32/23 32/25
new [2]  6/10 62/6
next [6]  4/3 62/11 67/8
67/9 75/17 75/23
nice [1]  22/21
nicely [1]  18/18
Nichols [5]  35/21 36/8
36/11 36/24 56/7
nine [2]  54/18 62/13
Nixon [4]  11/23 13/6
18/6 19/1
no [47]  1/4 3/7 5/3 7/6
8/18 9/20 10/4 10/4

10/6 11/1 12/8 15/4
17/8 17/25 17/25 23/4
24/18 29/22 35/1 36/17
38/1 38/15 43/9 47/14
52/8 52/20 54/8 56/22
58/10 58/13 58/14
62/21 67/7 68/4 68/11
69/7 69/12 69/13 70/16
71/3 71/4 71/6 72/4
73/1 73/11 75/14 76/16
nobody [1]  55/18
nonappearance [1]
65/4
none [1]  11/21
normal [1]  58/10
not [154]
notarized [1]  17/6
note [1]  19/11
nothing [5]  10/25
23/13 47/20 72/10 74/5
notion [1]  12/19
notwithstanding [1]
35/21
novel [1]  62/1
November [4]  1/5
75/16 76/4 77/7
now [26]  6/20 8/13
9/10 9/24 11/21 13/18
13/20 15/10 16/25 21/4
24/8 26/17 27/7 29/10
36/14 36/18 37/4 39/21
44/4 46/19 47/10 52/17
57/13 62/16 76/10
76/14
number [6]  26/20
26/21 42/7 58/25 63/24
76/11
NW [4]  1/15 2/3 2/15
2/20

**O**

oath [1]  14/13
Obama [1]  18/7
objection [4]  28/2 60/7
69/12 69/13
objections [1]  11/2
obligation [6]  7/17 8/3
25/1 28/6 29/21 72/4
obviously [5]  4/5 4/25
35/9 57/15 76/8
occurred [2]  33/19
60/13
off [2]  22/3 48/23
offense [6]  16/15 31/21
32/15 33/10 52/6 60/19
offer [6]  43/19 43/25
47/17 47/23 47/24 69/9
offered [2]  46/25 47/20
office [1]  1/14 15/14
15/15 25/23 70/11
74/12
officeholder [1]  15/16
officer [1]  17/22
official [27]  2/19 5/9
41/10 41/19 41/25 42/8
42/8 42/14 43/3 43/3
47/5 48/2 48/7 64/11
64/18 65/2 66/2 66/17

**O**

**official... [9]** 66/18
72/10 72/20 74/2 74/4
74/5 74/11 74/14 74/15
**officials [1]** 40/11
**Oh [2]** 33/4 65/6
**okay [33]** 3/17 3/24
4/11 11/11 15/25 19/4
23/16 23/16 24/14
24/15 29/12 32/22
34/19 37/12 40/18
42/20 43/4 48/21 50/20
53/4 54/11 56/3 56/19
61/7 61/24 62/13 63/13
69/16 69/17 73/20
74/18 76/7 76/14
**OLC [23]** 5/22 11/25
16/17 42/4 56/7 56/14
56/16 64/4 64/16 64/19
64/20 64/22 66/5 67/6
70/6 70/25 71/9 72/1
72/17 73/24 74/3 74/16
74/22
**OLP [1]** 6/22
**one [27]** 5/25 8/14 8/14
12/1 13/1 13/2 15/19
21/19 21/20 29/9 42/5
47/7 48/17 48/23 49/10
50/13 50/17 52/25
53/23 55/15 58/19
58/20 58/21 58/23
62/10 72/5 76/1
**one-hour [1]** 58/19
**oneself [1]** 72/4
**only [11]** 8/14 17/16
19/12 22/25 26/12
28/13 28/14 34/3 51/21
60/17 70/23
**Opening [1]** 63/4
**opens [1]** 63/23
**operated [1]** 52/5
**operates [1]** 55/23
**operating [1]** 14/22
**opinion [11]** 11/25
64/4 64/16 64/19 64/20
64/22 73/4 74/9 74/16
74/22 74/24
**opinions [13]** 5/22
42/4 53/25 56/7 56/14
56/16 67/6 70/6 70/25
71/9 72/1 72/17 74/6
**opportunity [1]** 14/1
**opposed [1]** 18/17
**optimistic [1]** 75/19
**oral [2]** 19/20 44/22
**order [7]** 8/18 8/19
10/1 10/13 16/15 17/1
25/15
**other [28]** 4/14 4/17
8/13 8/21 8/22 19/14
21/3 26/6 26/8 26/20
26/21 29/2 30/14 30/15
36/14 40/14 44/2 45/9
46/2 58/4 58/5 58/6
58/8 58/9 59/23 64/1
64/11 74/17
**other instances [1]**
46/2

**otherwise [3]** 19/22
41/6 54/20
**ought [2]** 25/17 31/12
43/14
**our [13]** 4/25 5/14 11/2
22/6 27/14 31/9 33/14
37/4 57/13 61/7 63/17
71/14 76/13
**ourselves [1]** 29/17
**out [25]** 3/24 4/13 4/18
16/2 16/15 16/25 24/10
31/15 31/18 32/22
34/11 34/19 34/22
38/22 39/5 39/20 43/16
44/20 46/7 49/12 62/3
62/4 65/19 71/13 71/25
**outcome [1]** 41/25
**outset [1]** 5/18
**outside [3]** 52/20 64/11
75/20
**Oval [1]** 25/23
**Oval Office [1]** 25/23
**over [8]** 16/18 32/2
34/18 41/19 41/20
55/14 60/14 60/14
**overlap [2]** 3/21 4/10
**overly [1]** 75/19
**oversees [1]** 72/16
**Oversight [1]** 64/23
**overturned [1]** 61/19
**own [5]** 13/24 34/2
35/16 59/21 68/14

**P**

**P. [1]** 3/3
**p.m [2]** 1/6 76/24
**page [3]** 61/7 63/1
74/24
**page 20 [1]** 63/1
**pages [1]** 29/13
**paper [1]** 53/1
**papers [2]** 8/17 61/1
**Park [1]** 2/15
**parliamentarian [1]**
34/8
**part [4]** 33/14 45/15
46/6 65/1
**particular [2]** 12/5
19/21
**particularity [1]** 11/17
**parties [1]** 36/19
**partook [1]** 19/13
**party [2]** 58/20 58/21
**pass [2]** 15/8 36/13
**passage [1]** 63/4
**passed [3]** 57/21 58/4
62/24
**passes [1]** 57/17
**pattern [2]** 32/25 33/2
**Pebble [1]** 2/11
**peek [1]** 37/9
**Pelosi [1]** 71/15
**penalty [1]** 14/13
**pending [2]** 3/18 41/13
**Pennsylvania [1]** 2/3
**people [4]** 17/20 19/12
21/19 53/21

**period [1]** 35/19
**perjury [2]** 14/13 60/21
**permissible [1]** 7/13
**permission [2]** 4/21
21/1
**permitted [3]** 10/2
25/23 36/21
**persists [1]** 15/13
**person [16]** 3/13 8/7
8/7 15/14 19/15 28/17
29/21 45/10 45/10
45/20 45/23 45/25 57/9
60/20 67/4 73/13
**person's [5]** 42/24
64/18 72/9 72/10 74/1
**personal [6]** 41/21
48/13 59/5 66/20 72/21
74/14
**pertinence [4]** 52/18
52/24 55/17 56/1
**pertinency [2]** 52/23
59/11 59/16
**pertinent [1]** 49/25
**PETER [2]** 1/6 3/8
**Peter K. Navarro [1]**
3/8
**phone [1]** 40/17
**phones [1]** 4/17
**phrase [2]** 58/10 74/6
**piece [2]** 48/5 53/1
**pivot [1]** 48/22
**place [2]** 27/22 29/9
**plainly [1]** 40/25
**Plaintiff [1]** 1/4
**play [6]** 7/11 22/21
32/22 34/10 63/11
71/18
**please [5]** 3/4 34/20
47/18 73/21 76/21
**PLLC [1]** 2/6
**podium [1]** 57/6
**point [16]** 4/19 10/12
10/17 10/23 17/13
18/12 22/6 31/11 31/13
36/10 41/11 47/12
65/13 66/21 71/13
71/25
**points [1]** 64/1
**police [1]** 17/22
**policy [1]** 5/22
**political [1]** 59/8
**posed [1]** 25/19
**position [28]** 6/18 6/23
8/8 8/8 9/17 11/16
14/10 31/9 34/15 42/13
42/22 43/8 43/9 43/13
45/11 49/4 51/9 56/6
56/9 62/14 66/24 67/3
70/10 72/5 72/9 72/18
72/24 73/23
**position's [1]** 51/9
**positions [2]** 6/22
28/22
**possibility [2]** 16/25
70/3
**possibly [1]** 48/6
**post [2]** 36/3 63/24

63/24
**posture [1]** 37/4
**potentially [1]** 72/21
**powers [9]** 22/19 37/5
39/16 55/22 61/25 65/8
72/2 72/15 74/25
**precedence [1]** 12/2
**precedent [3]** 10/6
17/8 59/21
**precise [1]** 7/3
**precisely [2]** 5/24
11/21
**predicate [1]** 56/12
**prefer [1]** 16/2
**prefers [1]** 4/15
**prepared [4]** 21/13
21/17 21/20 26/16
**prerequisite [1]** 16/12
**present [6]** 9/1 9/4
12/7 33/20 34/13 53/12
**presented [4]** 33/11
33/18 33/21 33/21
**preserved [1]** 61/12
**presidency [1]** 75/5
**president [91]**
**President Kennedy [1]**
15/11
**President Nixon [1]**
18/6
**President Obama [1]**
18/7
**President Trump [19]**
5/4 5/6 5/13 7/17 7/25
8/4 9/7 10/24 11/5
13/24 19/20 21/14
21/15 25/4 25/10 65/14
68/21 69/4 73/7
**President Trump's [5]**
14/10 14/14 38/15
68/19 68/20
**President's [10]** 12/16
13/21 13/25 14/6 17/2
18/19 46/25 75/1 75/3
75/6
**Presidential [2]** 12/21
70/12
**presiding [1]** 3/3
**press [7]** 7/21 48/15
**presumably [1]** 33/22
**presumptively [1]** 65/4
**pretrial [2]** 75/17 76/2
**Prettyman [1]** 2/20
**prevented [1]** 30/8
**previously [1]** 45/12
**primary [1]** 5/18
**prior [2]** 25/11 36/20
**private [1]** 43/22
**privilege [85]**
**privileged [1]** 8/14
**privileges [1]** 10/5
**probably [3]** 21/3 21/4
55/25
**problem [2]** 36/8 62/19
**proceed [3]** 4/2 52/8
58/15
**proceeding [2]** 10/12
21/5 21/9

**proceedings [5]** 1/9
2/23 3/14 76/24 77/4
**process [2]** 12/11
15/22 17/7 21/22 21/25
25/13 28/2 28/8 29/25
36/22 37/6 39/19 41/11
49/19 51/7 52/24 53/2
54/24 55/4 63/25 69/24
70/15 70/24 71/7 71/10
72/5 72/16
**produce [2]** 47/20 61/1
**produced [1]** 2/23
**proffered [1]** 44/11
**proof [4]** 31/24 50/18
52/14 60/9
**prop [1]** 54/4
**proper [2]** 42/15 42/22
**properly [1]** 31/25
33/17 35/25 53/8
**propose [1]** 3/20
**proposed [1]** 63/24
**proposition [3]** 8/19
27/10 29/19
**prosecute [2]** 40/4
71/17
**prosecuted [6]** 55/16
69/25 70/1 70/4 73/13
73/15
**prosecution [17]** 6/1
6/20 13/19 16/7 16/10
31/13 32/21 36/23
37/19 37/20 42/25
47/14 52/2 67/22 70/3
71/5 71/16
**prosecutors [1]** 24/1
**prove [2]** 31/21 32/15
50/22 51/6 51/13 51/23
**proved [2]** 61/3 61/4
**provide [5]** 10/7 28/7
37/1 40/1 41/3
**provided [2]** 47/10
73/11
**public [5]** 7/22 8/15
17/14 17/17 47/1
**purpose [1]** 64/6
**purposes [1]** 32/10
**pursuant [2]** 36/16
70/4
**put [10]** 9/14 12/9
25/15 29/10 31/14 41/3
44/23 58/13 63/19
63/20

**Q**

**question [36]** 4/22 5/5
5/7 7/19 10/7 10/11
11/9 11/10 11/12 13/9
16/5 18/3 18/13 27/5
29/25 32/6 34/14 38/10
45/9 53/5 54/12 57/8
58/20 58/21 60/23 61/1
61/3 65/19 65/22 67/8
67/11 67/19 73/25
74/10 74/22 75/9
**questions [8]** 4/12
10/5 18/7 18/8 25/23
25/25 66/3 66/7
**quote [1]** 74/24

**R**

raise [6] 27/6 27/11 29/13 29/21 52/1 72/15
raised [4] 50/16 53/7 60/15 69/23
raises [1] 60/7
ranking [4] 29/7 58/11 58/12 63/10
rather [2] 17/21 69/8
ratification [3] 35/24 63/16 63/18
ratified [1] 35/22
rationalization [2] 36/3 63/24
Raymond [1] 1/13 3/9 40/21
Raymond Hulser [1] 3/9 40/21
raymond.hulser2 [1] 1/18
rea [1] 11/11
reach [2] 46/7 49/16
reached [1] 38/22
read [7] 12/20 42/4 54/17 66/9 66/10 69/14 71/9
realize [1] 37/16
realizes [1] 71/25
really [8] 7/11 38/23 45/14 45/15 53/17 57/20 59/17 64/3
Realtime [1] 2/19
reason [4] 36/21 41/17 41/23 70/17
reasonable [4] 9/7 11/8 22/10 52/16
reasons [3] 26/8 40/14 58/25
recalcitrant [2] 25/6 40/11
received [9] 6/16 7/21 8/16 19/5 19/21 20/11 21/14 64/6 67/17
receives [1] 62/15
recent [4] 30/4 30/5 31/3 31/5
recess [1] 76/22
recipient [1] 29/19
recipient's [1] 64/11
reconcile [3] 28/22 28/24 29/1
record [13] 8/13 10/21 10/25 12/8 19/22 20/5 20/6 23/4 24/9 36/4 38/2 61/5 77/3
recorded [2] 2/23
recording [1] 57/8
refer [2] 36/5 39/2
reference [3] 4/15 11/1 11/4
referrals [1] 35/24
referred [4] 48/18 58/3 67/21 71/15
referring [1] 44/19
refers [1] 5/21
reflect [1] 20/6
refusal [1] 42/24
refuse [1] 40/13

refuses [1] 5/14
refute [1] 5/14
refuted [1] 5/14
regarding [3] 41/21 42/7 49/21
regardless [1] 72/3
Registered [1] 2/18
regularly [1] 8/1
regulations [1] 55/12
Reinecke [1] 29/15
reiterate [1] 65/9
reiterated [1] 14/7
rejected [1] 48/3
related [4] 5/9 42/8 47/4 48/9
release [1] 7/22
releases [1] 48/15
relevant [2] 4/19 5/8
relied [4] 11/25 41/14 56/13 70/25
rely [2] 54/10 54/25
relying [1] 59/6
remains [1] 61/13
remember [3] 11/3 30/9 32/25
repeatedly [4] 14/16 14/17 16/1 48/12
reply [1] 61/7
report [2] 48/16 48/18
reported [1] 52/7
Reporter [4] 2/18 2/18 2/19 2/19
reports [1] 41/20
represent [2] 17/2 23/19
representations [3] 41/14 49/15 69/8
representative [2] 45/19 46/8
Representatives [3] 39/4 49/15 58/6
represented [2] 45/1 55/6
Republicans [1] 36/12
repudiation [1] 36/19
requests [1] 14/18
require [5] 53/23 56/11 58/18 70/24 71/10
required [9] 9/1 9/3 9/4 17/1 23/7 25/7 36/17 60/6 63/10
requirement [2] 39/21 52/23
requires [6] 16/8 36/15 48/25 54/22 57/9 60/2
requiring [1] 35/15
resolution [15] 36/1 36/13 36/15 49/9 49/13 51/2 52/6 54/14 55/22 57/21 62/12 62/14 62/18 63/8 63/8
Resolution 503 [6] 36/15 49/13 57/21 62/14 63/8 63/8
resolution's [1] 51/8
resolutions [1] 36/7
resolve [1] 20/16
resolved [1] 40/17

resolving [1] 32/18
respect [19] 4/23 6/13 8/24 10/14 11/1 13/6 13/8 14/10 18/22 24/7 36/9 42/23 50/6 65/15 67/9 67/16 68/22 72/24 74/21
respectfully [5] 9/2 23/14 36/10 59/15 66/22
respond [3] 4/6 9/17 57/4
response [5] 6/15 21/16 47/1 63/5 65/13
responsibilities [1] 75/7
responsibility [1] 3/23
result [2] 22/20 23/20
resulting [1] 36/19
results [1] 36/24
retained [1] 25/10
return [2] 37/13 76/23
Ridge [1] 2/11
right [53] 3/15 4/22 8/5 8/13 8/25 15/16 15/25 17/8 18/15 18/16 18/20 19/9 20/9 21/6 23/8 23/15 23/22 29/9 30/6 30/8 30/13 31/22 32/16 33/14 34/6 34/19 34/21 36/11 36/18 37/22 43/6 43/12 44/18 45/4 49/2 53/13 56/17 56/20 57/11 57/15 62/16 62/23 65/21 67/5 67/7 67/23 70/21 71/12 74/17 75/11 75/17 76/15 76/17
rights [4] 27/11 29/23 30/1 39/19
rise [2] 3/2 37/11
RMR [2] 77/2 77/8
Road [1] 2/15
Rockville [1] 2/12
role [1] 63/10
room [1] 53/21
rooted [1] 74/25
Rostenkowski [6] 53/5 55/10 55/20 56/2 60/3 61/9
round [2] 26/4 26/4
Rowley [7] 2/6 3/11 57/5 69/17 69/19 69/20 73/19
rule [23] 9/23 34/13 35/6 35/8 35/10 35/11 36/19 36/22 37/5 54/5 54/17 54/17 54/19 54/24 55/11 55/11 55/13 55/15 61/15 61/15 61/16 62/10 62/19 76/11
Rule 12 [1] 9/23
rule-making [3] 36/22 37/5 61/16
rules [26] 29/16 29/20 33/12 33/22 34/2 34/5

resolved [1] 32/18
respect [19]
36/4 36/14 36/14 37/10 57/17 57/24 58/3 58/12 58/17 59/6 59/21 60/12 60/18 62/4 62/19 63/11

**S**

said [54] 6/5 8/10 8/17 13/1 15/17 16/1 18/6 18/8 19/25 21/18 23/14 27/12 28/6 28/10 28/11 29/2 29/3 30/12 30/16 30/17 30/20 35/8 36/11 36/14 38/23 39/5 39/25 40/24 41/19 43/21 44/8 46/18 48/12 48/12 48/18 48/14 48/15 48/16 48/17 54/13 54/16 54/19 60/13 61/17 62/22 65/2 66/1 67/6 68/5 68/20 68/24 71/9 71/10 71/16 74/12
sake [3] 9/4 19/25 72/13
salient [1] 36/10
same [3] 3/21 13/16 49/16
satisfy [2] 50/23 52/16
say [50] 8/9 10/15 10/17 11/21 13/18 14/4 17/24 18/19 19/3 20/10 24/2 24/3 24/13 24/14 24/15 28/21 37/18 37/25 38/18 38/18 38/25 43/1 45/2 45/6 45/8 45/12 45/23 46/7 46/24 47/2 47/9 49/1 50/1 51/20 51/25 52/8 52/13 53/9 53/19 54/24 56/13 58/7 66/15 66/18 67/25 69/4 69/7 72/1 72/11 72/17
saying [9] 24/11 35/10 39/15 47/16 48/20 55/7 65/15 71/6 74/11
says [14] 14/4 14/8 19/20 25/4 28/1 36/13 54/10 54/20 54/25 54/25 57/9 62/12 66/6 74/4
Scavino [4] 13/16 25/13 29/11 68/6
schedule [3] 76/7 76/11 76/13
scheduled [1] 76/2
scheduling [1] 4/1
scope [6] 5/1 7/6 7/12 22/7 40/7 66/22
search [1] 30/19
seated [1] 3/4
secondary [1] 47/12
Section [1] 31/22
Section 192 [1] 31/22
see [3] 41/15 42/4 69/10
seeking [1] 65/1
seems [12] 7/3 8/8 11/11 12/21 13/7 38/19

50/2 51/10 61/1 66/11 66/12 71/21
seen [4] 29/12 46/25 74/6 74/9
segments [1] 58/19
select [11] 36/16 57/19 57/22 57/23 58/2 58/3 58/8 59/10 62/2 63/7 68/25
Select Committee [1] 57/23
selected [1] 58/23
self [1] 30/8
self-incrimination [1] 30/8
send [5] 13/15 13/22 14/4 19/1 45/24
sending [2] 18/17 19/4
sends [2] 12/3 12/4
senior [37] 4/24 5/3 5/5 5/8 5/10 6/10 6/13 6/14 15/10 15/11 16/16 16/19 16/21 16/22 17/1 20/10 20/20 20/25 22/22 22/25 24/11 37/25 38/8 38/20 40/4 40/5 40/13 42/23 64/12 65/2 66/12 66/13 66/18 67/5 68/1 70/12 72/2
sense [5] 18/21 20/9 54/23 60/5 75/23
sent [4] 13/3 13/4 13/5 13/8
sentence [2] 6/11 62/6
separate [3] 50/2 57/24 75/2
separately [1] 57/18
separation [7] 37/5 39/16 61/25 65/8 72/2 72/15 74/25
serve [1] 75/3
service [1] 44/6
session [2] 3/3 57/17
set [1] 11/10
several [1] 57/25
shall [3] 35/22 54/15 58/6
she [12] 6/15 14/9 17/4 35/5 64/6 64/7 65/3 68/24 74/10 74/12 74/13 74/15
Shelton [3] 31/2 31/2 31/3
shift [1] 56/4
short [2] 22/7 22/9
short-circuited [2] 22/7 22/9
should [16] 10/2 25/1 26/17 34/12 35/5 35/5 38/22 45/12 46/16 47/13 51/15 54/6 55/5 69/14 69/25 71/25
shouldn't [2] 10/17 26/1
show [9] 8/3 17/4 25/6 38/4 47/21 49/7 65/5 65/17 67/5
showing [3] 26/16

showing... [2] 66/19 72/11
side [1] 3/22
sides [1] 35/7
sign [1] 51/4
signature [1] 18/18
significant [1] 37/17
Similarly [1] 60/22
simple [1] 53/20
simply [7] 40/16 44/1 47/20 52/23 56/16 59/16 72/11
since [6] 28/11 28/12 52/4 70/10 71/18 72/16
single [12] 8/22 10/23 11/22 12/1 13/1 22/1 28/10 28/11 29/2 29/5 29/9 30/4
sir [1] 3/16
sit [1] 17/22
sitting [4] 18/23 18/24 29/17 42/14
situation [5] 26/20 27/25 32/14 42/12 73/17
skis [1] 32/2
smaller [1] 69/8
so [120]
sole [1] 64/6
some [28] 4/9 4/17 5/1 5/12 8/2 8/3 10/1 10/7 11/4 11/19 12/4 16/8 18/21 20/10 22/2 43/14 43/14 46/17 46/17 48/24 52/14 54/23 54/23 55/3 56/15 58/7 60/13 66/3
somebody [18] 18/22 20/13 21/15 27/10 32/3 32/18 37/7 37/8 45/5 45/8 45/18 47/13 62/14
somehow [5] 8/18 10/20 16/6 22/19 27/7
someone [5] 35/18 36/25 38/19 41/10 72/17
something [15] 23/17 28/8 29/4 45/24 47/5 48/18 51/12 51/15 53/11 53/15 53/21 61/15 66/19 72/21 74/1
somewhat [3] 31/16 32/23 72/15
somewhere [1] 43/7
soon [1] 75/21
sorry [6] 27/12 30/13 32/4 44/15 63/2 75/15
sort [5] 4/9 11/21 26/14 50/3 56/21
sought [3] 39/25 43/16 64/24
speak [3] 7/25 45/20 69/15
speaker [3] 35/4 63/6 71/15
Special [1] 74/12
specific [6] 19/6 33/8

specifically [2] 33/7 71/14
specificity [1] 56/16
specify [3] 26/25 27/22 63/9
speech [1] 61/20
spend [1] 55/13
spoke [3] 44/24 45/5 68/25
spoken [1] 43/22
spokesperson [3] 14/8 68/20 68/21
stage [2] 11/17 46/18
stand [4] 21/13 24/23 29/19 40/9
standard [3] 10/1 11/22 54/5
standing [5] 8/18 8/19 57/18 58/6 72/24
stands [3] 8/19 27/9 76/22
stanley [5] 2/10 2/14 2/17 3/11 3/12
Stanley Brand [1] 3/11
Stanley Woodward [1] 3/12
stanleymbrand [2] 2/13
start [3] 4/4 6/7 75/21
state [3] 6/4 11/7 71/18
statement [8] 7/22 7/22 8/15 8/22 10/23 17/17 47/1 47/6
STATES [13] 1/1 1/3 1/10 3/7 8/23 11/13 12/3 13/15 39/3 39/3 61/19 72/13 73/14
Station [1] 2/7
status [1] 75/1
statute [5] 6/24 7/2 29/25 50/3 57/8
statutory [1] 53/24
stay [1] 22/24
stenography [1] 2/23
step [2] 50/14 52/20
stepping [1] 33/11
steps [2] 17/5 19/24
Steve [1] 73/16
Steve Bannon [1] 73/16
still [9] 15/13 42/13 43/14 51/22 56/9 62/3 62/3 66/6 75/20
stock [1] 66/16
stop [1] 6/1
Street [1] 1/15
strict [2] 60/2 60/6
structural [1] 53/23
structure [1] 52/4
stumble [1] 55/14
subcommittee [1] 33/9
subject [16] 5/2 14/13 32/21 33/8 41/18 42/16 42/25 47/13 47/25 50/15 51/7 55/23 64/3 64/10 72/4 75/10
submission [2] 53/18

submit [1] 70/1
submitted [2] 4/25 59/19
Subordinate [1] 49/18
subpoena [51] 5/5 6/15 8/16 8/24 10/25 12/5 14/22 16/23 19/6 19/21 21/16 24/12 25/7 26/25 27/6 27/20 27/21 28/17 29/8 29/20 30/18 37/21 41/17 44/6 47/1 47/4 49/1 49/19 49/25 50/1 51/4 51/5 51/22 52/25 59/17 59/22 60/1 62/11 62/15 64/3 64/6 64/10 64/17 64/17 64/23 67/4 67/17 70/5 72/10 73/12 75/10
subpoenaed [4] 5/8 16/20 36/16 58/24
subpoenaing [1] 73/2
subpoenas [5] 36/17 51/11 51/24 59/10 62/3
subsequent [2] 36/6 62/15
such [4] 7/22 19/23 21/18 62/15
sufficiency [1] 40/6
sufficient [4] 22/14 51/24 63/16 63/18
sufficiently [3] 20/6 26/7 43/16
suggest [2] 41/16 59/12
suggested [6] 7/20 14/19 46/19 55/2 62/10 72/7
suggesting [3] 10/20 46/21 62/24
suggestion [5] 5/12 8/14 41/8
suggests [2] 4/13 12/2
Suite [1] 2/3
summon [1] 60/25
summoned [1] 57/10
suppose [2] 10/12 19/19
supposed [11] 9/24 12/20 23/21 23/23 24/14 24/15 31/19 49/12 55/13 55/19 74/13
Supreme [13] 16/1 27/15 28/1 28/5 28/10 31/6 33/4 37/2 59/21 60/11 60/13 61/17 61/19
Supreme Court [10] 16/1 27/15 28/1 28/5 31/6 33/4 59/21 60/11 60/13 61/17
sure [8] 4/20 15/24 32/2 42/10 44/2 50/4 56/22 66/9
surprise [1] 72/8
suspect [1] 41/11
Sweep [1] 48/5

table [4] 9/15 17/23 22/4 29/17
tag [3] 3/24 4/13 4/13
take [18] 4/5 6/23 14/16 14/20 22/3 28/2 28/8 29/4 29/11 31/4 36/12 42/13 42/22 44/1 48/11 56/9 64/3 64/21
taken [6] 25/14 32/3 34/15 58/18 66/24 67/2
taking [2] 32/2 55/13
talk [8] 3/25 7/18 25/18 26/6 27/3 41/18 47/24 73/20
talked [2] 70/7 73/24
talking [8] 25/5 26/15 30/10 40/25 44/4 46/4 55/19 55/21
tapes [1] 13/6
task [1] 32/17
tea [1] 12/20
tell [20] 11/14 11/17 13/18 14/1 14/1 14/25 20/17 21/13 21/15 21/23 23/12 26/13 27/6 29/8 44/25 47/18 51/2 55/18 66/17 75/12
telling [2] 45/17 55/9
terms [3] 31/23 44/3 54/14
terrible [1] 23/16
testify [5] 21/20 25/21 28/19 40/14 75/4
testimonial [5] 9/5 37/17 37/18 38/1 74/25
testimony [21] 4/16 5/8 6/13 7/13 9/11 10/13 11/2 11/4 12/12 13/12 13/14 14/12 17/19 19/8 33/22 38/14 42/7 60/25 64/8 64/18 74/5
than [12] 8/22 17/18 17/21 29/2 30/25 33/12 35/4 49/8 56/25 64/16 69/8 75/13
Thank [7] 56/20 57/1 69/18 73/18 73/19 76/17 76/21
Thank you [4] 56/20 73/18 73/19 76/17
that [508]
that'll [1] 73/24
that's [72] 3/23 4/1 4/17 4/19 5/24 6/4 6/5 7/18 11/9 11/11 15/18 16/7 18/3 21/3 21/4 23/2 23/16 23/17 26/12 27/2 27/14 27/16 28/14 28/21 29/5 30/3 33/12 34/21 35/6 35/9 36/3 37/2 40/25 42/9 42/12 44/19 45/4 46/11 46/16 49/13 50/11 50/16 53/9 54/1 54/19 55/21 56/4 56/20 59/17 60/15 61/1 61/2 62/13 62/21 64/19

5/3 65/23 66/17 66/19 66/21 67/1 67/6 67/8 71/6 71/18 72/20 72/21 73/3 73/8 73/16 74/15 75/12
their [11] 13/24 36/4 36/25 37/7 37/9 42/8 55/12 62/4 62/11 67/15 74/5
them [7] 3/20 27/7 34/25 38/7 41/15 44/1 75/4
themselves [1] 69/15
then [57] 3/25 3/25 4/5 4/21 5/7 6/14 7/9 7/14 9/24 10/2 10/11 10/11 15/21 15/23 16/25 19/10 19/17 22/13 23/6 24/5 24/14 25/5 27/22 30/12 30/16 30/24 31/17 32/9 33/11 33/24 36/12 38/21 43/13 45/11 49/24 50/21 51/20 52/8 52/10 52/11 53/11 54/3 54/9 54/12 55/19 57/5 57/17 57/18 58/2 58/20 61/2 65/16 66/12 68/19 71/19 76/8 76/10
then-president [1] 7/9
theory [1] 38/25
there [95]
there's [32] 3/21 4/9 5/12 6/3 7/6 8/18 10/1 10/25 13/4 13/7 15/21 17/21 19/12 22/1 22/2 22/4 25/2 27/3 27/9 30/4 35/7 41/23 42/5 46/18 46/19 64/4 66/22 69/21 72/22 73/1 75/8 75/20
thereafter [1] 75/21
therefore [1] 6/3
these [3] 3/13 4/9 16/2 25/25 52/19 52/19 58/22 69/8 70/22 73/9 76/12
they [62] 22/10 22/20 23/14 24/2 24/2 25/1 25/5 25/6 26/3 26/6 26/17 29/13 33/18 34/24 34/25 35/9 35/9 36/4 36/5 36/5 36/13 37/11 38/20 39/25 47/17 49/20 51/3 51/4 51/21 55/7 56/24 62/4 62/4 62/7 62/11 62/24 64/12 64/24 65/1 65/19 65/25 67/5 67/7 67/10 67/12 67/18 67/24 68/3 68/5 68/5 68/16 68/16 68/18 68/19 68/20 68/24 68/25 69/1 69/15 72/7 72/11 72/24
They'll [1] 69/12
they're [5] 29/12 30/1 37/11 55/9 62/3
they've [2] 25/14 53/7

**T**

**thing [2]** 43/14 44/2
**things [14]** 4/2 16/2 29/9 42/4 43/18 43/21 47/25 48/1 51/6 52/19 74/11 74/13 74/15 76/10
**think [70]** 6/9 7/10 9/23 10/16 11/16 11/18 13/22 16/13 17/13 18/20 19/1 20/8 21/3 21/4 21/24 24/8 24/18 27/14 33/3 34/17 37/23 39/21 40/24 41/5 41/8 43/24 47/11 49/5 49/18 49/22 51/1 51/13 51/14 51/17 51/25 52/17 52/25 53/14 53/14 54/1 54/1 54/9 54/20 55/3 55/10 55/19 55/25 56/6 56/15 57/7 60/5 61/8 62/17 62/17 62/23 65/6 67/6 68/13 69/8 69/14 71/24 72/22 73/8 73/10 75/8 75/20 75/23 76/8 76/9 76/9
**thinking [1]** 30/24
**Third [1]** 61/21
**Third Circuit [1]** 61/21
**this [112]**
**This is [1]** 3/7
**thorny [1]** 15/19
**those [18]** 12/1 14/12 14/18 18/7 25/23 27/13 28/22 29/9 29/18 29/20 40/8 40/13 41/1 51/6 56/13 66/7 69/10 73/21
**though [3]** 49/8 52/13 66/19
**thought [5]** 46/7 64/15 64/16 67/20 68/17
**three [3]** 44/8 51/21 51/23
**through [2]** 33/22 63/25
**time [9]** 3/21 10/19 12/10 15/9 17/7 27/22 32/3 36/18 68/25
**times [2]** 5/4 70/7
**titled [1]** 77/4
**today [3]** 5/15 21/13 70/8
**told [4]** 21/20 41/9 44/11 45/20
**too [2]** 30/18 41/16
**took [1]** 56/6
**top [2]** 4/1 37/4
**topic [5]** 5/21 67/3 72/9 75/9
**topics [1]** 56/4
**touch [3]** 44/24 45/6 64/10
**toward [1]** 76/13
**track [1]** 75/25
**trading [3]** 66/15 66/16 66/16
**transcript [3]** 1/9 2/23 77/3

**transcripts [4]** 69/9 69/15 73/21 76/20
**trench [1]** 43/24
**trial [10]** 19/19 19/20 26/2 27/20 27/21 27/21 31/24 75/12 75/16 75/25
**tribunal [2]** 53/20 60/20
**trigger [1]** 26/14
**true [1]** 30/3
**Trump [36]** 5/4 5/6 5/13 7/12 7/17 7/25 8/4 9/7 10/24 11/5 13/24 14/2 14/17 14/20 14/23 15/20 15/21 19/20 20/2 21/14 21/15 25/4 25/9 25/10 25/15 38/7 38/13 65/14 67/13 67/25 68/14 68/17 68/21 69/3 69/4 73/7
**Trump's [5]** 14/10 14/14 38/15 68/19 68/20
**trust [1]** 24/16
**try [1]** 76/10
**trying [4]** 6/6 6/7 34/11 39/20
**Tuesday [1]** 36/12
**turn [2]** 30/13 65/11
**turns [1]** 62/4
**two [20]** 3/18 3/22 5/2 19/12 19/24 21/9 21/19 28/22 34/23 34/23 35/7 42/4 42/7 43/18 46/13 47/12 47/22 54/13 64/1 69/10
**type [3]** 12/4 61/18 62/6
**typed [1]** 18/18
**typically [1]** 18/22

**U**

**U.S [1]** 1/14
**U.S.C. [5]** 22/23 39/23 40/10 57/8 59/23
**Uh [1]** 20/3
**Uh-huh [1]** 20/3
**ultimately [3]** 5/20 59/13 61/21
**unambiguous [3]** 34/24 35/17 62/5
**unclear [2]** 43/14 65/6
**unconstitutional [2]** 39/24 65/9
**unconventional [2]** 12/11 16/14
**under [15]** 14/13 18/11 32/14 36/14 41/24 42/17 42/25 50/8 52/5 59/23 60/1 60/10 70/12 73/10 73/15
**under 192 [1]** 60/10
**undercut [1]** 75/4
**understand [9]** 6/6 6/21 26/17 27/2 31/9 42/11 52/10 54/17

**understood [13]** 6/8 14/6 14/10 14/14 14/23 17/20 17/24 23/21 28/20 57/7 67/10 70/16 71/9
**unfolded [1]** 59/8
**unique [3]** 18/21 40/15 57/20
**UNITED [13]** 1/1 1/3 1/10 3/7 8/23 11/13 12/3 13/15 39/3 39/3 61/19 72/13 73/14
**United States [9]** 3/7 8/23 11/13 12/3 13/15 39/3 39/3 72/13 73/14
**United States versus Helstoski [1]** 61/19
**unlawful [1]** 66/16
**unless [6]** 28/3 29/4 30/1 60/6 60/6 71/1
**unlike [1]** 21/25
**until [1]** 76/23
**unusual [1]** 66/11
**up [29]** 3/23 3/25 4/5 4/7 4/8 4/17 14/17 14/20 17/4 18/18 18/22 19/18 25/7 28/3 28/9 29/4 38/4 42/10 44/1 47/21 50/4 50/13 53/5 54/4 65/16 65/17 66/19 67/5 72/11
**upon [8]** 15/23 18/12 28/5 31/21 31/24 42/15 43/14 56/8
**us [8]** 19/24 38/3 44/11 44/25 47/18 55/9 65/7 75/25
**usdoj.gov [2]** 1/17 1/18
**use [4]** 4/16 11/19 11/23 37/15
**uses [1]** 11/22
**utilizing [1]** 29/24
**utmost [1]** 40/15

**V**

**vague [8]** 34/25 35/1 35/6 35/10 35/11 37/10 37/11 56/1
**valid [3]** 16/6 52/7 59/17
**validity [1]** 22/8
**verify [2]** 24/22 26/18
**verizon.net [1]** 2/5
**versus [4]** 3/8 39/3 50/7 61/19
**very [13]** 23/2 40/24 41/10 55/10 55/10 55/22 59/18 62/6 63/21 63/22 69/21 70/16 74/20
**Veterans [1]** 76/3
**vice [1]** 63/11
**view [16]** 11/18 26/7 31/23 31/24 48/4 50/21 50/25 51/22 52/4 52/11 52/15 52/23 56/11 63/15 63/17 70/1

**violation [6]** 39/15 39/19 60/12 60/18 65/8 69/24
**violations [2]** 64/7 64/25
**Virginia [1]** 2/8
**virtue [4]** 35/23 72/9 72/12 72/18
**voluntarily [1]** 30/2
**voluntary [1]** 29/23
**vote [2]** 63/19 63/20
**vs [1]** 1/5

**W**

**wait [1]** 76/21
**waive [4]** 20/25 25/20 34/8 50/16
**waived [17]** 7/18 27/2 27/12 28/4 30/1 30/20 32/13 50/12 51/15 51/16 52/3 52/9 53/10 53/11 60/15 61/2 61/6
**waiver [3]** 25/24 29/22 63/5
**walk [3]** 19/24 24/12 37/24
**walked [3]** 18/6 18/8 18/8
**want [16]** 4/16 6/21 19/16 21/21 25/17 31/17 31/18 40/23 41/16 44/2 50/4 57/4 57/12 62/4 62/7 67/25
**wanted [2]** 4/14 35/3
**warning [3]** 70/2 71/2 73/11
**was [142]**
**was had [1]** 38/16
**Washington [5]** 1/5 1/15 2/4 2/15 2/21
**wasn't [16]** 15/17 17/13 18/2 18/5 18/7 25/20 29/14 33/8 33/17 38/24 44/10 58/16 58/22 59/1 59/4 60/15
**WATER [1]** 2/2
**Watergate [2]** 13/2 13/5
**Watkins [1]** 29/24
**way [15]** 5/10 6/9 8/12 13/16 20/16 29/11 30/14 30/15 33/12 52/7 55/15 55/23 58/17 74/17 76/19
**ways [1]** 52/19
**we [109]**
**We talked [1]** 70/7
**we'd [1]** 55/19
**we'll [3]** 65/15 76/7 76/14
**we're [26]** 3/17 3/25 9/10 13/19 13/19 19/13 21/4 21/8 23/6 24/14 26/4 31/14 31/19 36/22 37/7 37/8 37/9 40/7 40/25 43/6 44/4 55/21 57/13 59/22 62/23 71/16

**We've [6]** 5/14 27/13 41/12 46/25 59/18 59/19
**Wednesday [1]** 75/17
**week [2]** 56/24 75/24
**weeks [1]** 4/3
**well [31]** 5/7 5/16 8/5 9/10 9/11 9/25 13/5 15/18 17/24 19/7 21/3 21/23 23/19 28/17 31/3 33/17 33/20 37/1 48/19 50/13 50/23 61/13 65/12 65/24 67/20 68/4 71/1 71/24 73/5 74/7 76/9
**went [1]** 71/19
**were [19]** 9/12 15/8 34/24 37/17 42/18 46/13 47/9 47/25 49/8 51/21 55/17 56/1 59/7 63/21 65/1 67/11 67/20 68/25 70/7
**weren't [1]** 53/20
**what [117]**
**what's [4]** 22/16 49/4 57/20 65/12
**whatever [2]** 17/6 76/19
**when [31]** 3/25 4/18 5/7 9/24 12/20 14/22 16/19 16/20 18/21 22/1 25/7 29/16 29/24 34/15 35/18 36/5 37/3 37/7 37/8 38/20 39/25 42/3 45/2 45/6 45/9 47/14 57/21 58/18 67/18 74/5 75/12
**whenever [1]** 3/24
**where [25]** 3/22 4/19 6/10 6/12 19/25 22/24 24/20 26/25 27/6 28/23 31/18 32/14 32/19 33/6 35/17 36/24 37/24 38/9 42/11 48/14 48/15 55/11 59/19 59/20 60/8
**whether [50]** 7/18 7/19 8/2 9/3 9/18 9/21 10/8 17/20 19/19 25/2 28/15 28/20 29/6 29/7 29/7 31/12 32/18 34/1 37/10 43/17 44/13 44/21 44/25 45/11 45/15 45/16 46/5 46/8 46/10 47/15 48/24 49/23 49/24 50/1 61/6 63/9 64/10 67/13 67/15 67/21 68/17 68/21 68/23 69/3 70/18 71/21 71/22 72/7 73/6 74/10
**which [42]** 7/15 8/22 10/7 12/13 14/21 15/19 17/9 19/5 19/8 21/5 21/9 21/12 22/13 24/20 25/20 27/10 27/23 29/3 33/3 38/25 39/4 46/7 46/25 47/13 48/22 50/5 50/17 55/1 56/8 57/9 59/7 59/17 57/24 58/19

**W**

**which... [8]** 60/12 60/20 63/2 64/24 66/25 67/3 74/9 76/2
**while [4]** 4/6 34/10 41/12 41/13
**whispered [1]** 23/12
**White [1]** 41/24
**White House [1]** 41/24
**who [23]** 8/7 14/8 15/14 18/6 18/7 21/20 21/21 24/12 25/5 25/6 36/9 36/16 42/14 44/24 44/25 45/6 45/8 45/19 57/9 58/11 58/12 62/15 70/13
**who's [4]** 15/10 18/22 21/19 45/19
**Whose [1]** 12/15
**why [21]** 4/4 4/18 7/16 10/17 13/9 13/10 13/11 13/12 13/13 13/14 23/25 25/8 25/9 28/21 28/25 36/21 48/19 50/11 57/25 68/12 72/23
**why not [1]** 13/13
**will [8]** 33/1 43/24 44/6 51/6 53/19 69/7 75/23 76/12
**William [3]** 2/18 77/2 77/8
**willingness [1]** 34/4
**window [2]** 34/19 34/22
**within [5]** 51/1 51/3 51/8 52/17 52/20
**without [9]** 5/20 6/5 6/21 20/20 21/1 33/11 36/25 40/6 65/23
**witness [8]** 25/6 27/23 27/24 44/24 51/7 57/10 58/20 58/21
**witnesses [5]** 44/24 46/13 51/4 58/24 69/10
**won't [1]** 70/8
**wondering [1]** 8/21
**WOODWARD [16]** 2/11 2/14 2/14 3/12 4/7 28/25 32/24 38/17 48/23 53/7 55/1 56/25 57/2 69/23 72/6 75/12
**Woodward's [2]** 43/13 47/12
**word [8]** 11/20 35/22 37/15 37/24 48/11 54/15 54/23 64/21
**words [5]** 8/13 11/22 11/24 45/9 47/22
**work [2]** 41/24 50/24
**worked [1]** 73/1
**works [2]** 34/11 47/3
**world [2]** 12/13 14/21
**would [63]** 3/20 4/22 5/14 6/9 7/15 9/1 9/5 12/9 17/7 17/12 17/16 19/7 19/19 20/15 20/23 20/24 24/5 25/11 25/13

37/23 38/25 39/2 42/25 43/1 43/1 44/24 45/6 45/23 47/2 50/1 51/2 51/22 51/23 51/25 52/8 52/15 53/2 53/2 53/11 53/16 53/23 54/3 54/4 55/6 56/1 56/11 56/13 57/2 59/12 62/14 65/9 66/12 66/23 70/1 70/16 72/8 73/2 73/21 75/4
**wouldn't [1]** 34/7
**wrapped [1]** 3/25
**write [5]** 68/6 68/8 68/10 68/12 68/15
**writing [3]** 25/12 41/20 41/21
**written [2]** 43/23 62/25
**wrong [3]** 14/25 17/15 20/8
**wrote [4]** 29/12 52/25 63/6 66/1

**Y**

**yeah [3]** 30/11 62/17 75/8
**years [1]** 5/2
**Yellen [1]** 29/15
**yes [39]** 7/24 15/19 16/14 18/12 20/22 21/7 21/11 23/24 24/3 24/3 25/17 28/21 31/4 34/7 34/20 39/17 40/7 43/1 43/5 43/11 45/4 45/7 45/14 46/12 48/8 48/10 50/19 51/19 56/10 56/13 56/15 56/18 68/7 68/9 69/14 72/22 74/12 75/18 76/6
**yet [2]** 7/11 64/7
**you [155]**
**you'd [1]** 56/21
**you'll [2]** 38/17 42/4
**you're [21]** 4/7 6/6 10/19 15/25 17/8 18/5 18/16 18/20 20/8 24/11 25/5 26/5 26/15 26/16 27/12 27/19 37/4 44/3 45/17 52/20 55/15
**you've [28]** 7/20 8/17 10/18 10/23 17/13 23/13 27/18 28/2 29/3 29/5 31/16 31/20 32/8 37/6 43/22 43/23 43/23 46/18 46/19 47/10 56/22 60/15 62/10 62/25 65/15 66/1 66/24 67/2
**your [80]**
**Your Honor [38]** 3/6 4/8 6/8 17/25 21/24 22/6 24/2 24/9 26/1 30/25 31/8 40/20 42/5 42/19 49/13 49/22 49/23 52/7 53/16 56/22 61/6 63/3 69/9 69/14 69/18 69/19 69/21 70/20 71/1 71/13 71/19

74/8 74/21 76/5
**Your Honor's [3]** 57/7 70/6 74/22
**yourself [1]** 62/21

**Z**

**Zaremba [3]** 2/18 77/2 77/8