IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )    CR No. 22-200
                                    )    Washington, D.C.
        vs.                         )    January 27, 2023
                                    )    9:00 a.m.
PETER K. NAVARRO,                   )
                                    )
            Defendant.              )
_____)


        TRANSCRIPT OF PRETRIAL CONFERENCE PROCEEDINGS
          BEFORE THE HONORABLE AMIT P. MEHTA
             UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:         John Crabb
                            Elizabeth Ann Aloi
                            U.S. ATTORNEY'S OFFICE
                            DISTRICT OF COLUMBIA
                            555 4th Street, NW
                            Washington, D.C. 20003
                            (202) 252-7212
                            Email:
                            John.D .Crabb@usdoj.gov
                            Email:
                            elizabeth.aloi@usdoj.gov

```
APPEARANCES CONTINUED:

For the Defendant:          John S. Irving, IV
                            EARTH & WATER LAW LLC
                            1455 Pennsylvania Avenue, NW
                            Suite 400
                            Washington, D.C. 20004
                            (301) 807-5670
                            Email: jirving1@verizon.net

                            John P. Rowley, III
                            JPROWLEY LAW PLLC
                            8639 Chase Glen Circle
                            Fairfax Station,
                            Virginia 22039
                            (703) 402-8800
                            Email:
                            john.rowley@jprowleylaw.com

                            Stanley McKennett Brand
                            BRAND WOODWARD LAW
                            3 Pebble Ridge Court
                            Rockville, MD 20854
                            (202) 258-6597
                            Email: stanleymbrand@gmail.com

                            Stanley Edmund Woodward, Jr.
                            BRAND WOODWARD LAW
                            1808 Park Road NW
                            Washington, D.C. 20010
                            (202) 996-7447
                            Email:
                            stanley@brandwoodwardlaw.com

Court Reporter:             William P. Zaremba
                            Registered Merit Reporter
                            Certified Realtime Reporter
                            Official Court Reporter
                            E. Barrett Prettyman CH
                            333 Constitution Avenue, NW
                            Washington, D.C. 20001
                            (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription
```

```
 1                   P R O C E E D I N G S
 2              COURTROOM DEPUTY:  All rise.
 3              All rise.  This court is in session, the Honorable
 4     Amit P. Mehta presiding.
 5              THE COURT:  Good morning.  Please be seated,
 6     everyone.
 7              COURTROOM DEPUTY:  Good morning, Your Honor.
 8              This is Criminal Case No. 22-200, United States of
 9     America versus Peter K. Navarro.
10              John Crabb and Elizabeth Aloi for the government.
11              John Irving, John Rowley, Stanley Brand, and
12     Stanley Woodward for the defendant.
13              The defendant is appearing in person for these
14     proceedings.
15              THE COURT:  All right.  Counsel, good morning,
16     everyone.
17              Mr. Navarro, good morning to you, sir.
18              Okay.  So we're here for a Pretrial Conference.
19     A number of things we need to cover this morning.
20     Hopefully, we have enough time to do it.
21              All right.  First things first, and that's the
22     motion for reconsideration that Mr. Navarro filed with
23     respect to the Court's memorandum opinion.  Anybody wish to
24     be heard further about that motion?
25              MR. WOODWARD:  Happy to answer any questions that
```

1    the Court has on the motion.  The motion does, in our view,

2    speak for itself.  We've obviously also read the

3    government's response and happy to address any issues that

4    are raised there.  But, no.  We defer to the Court.

5              THE COURT:  Hang on for a second, everyone.

6              Thank you for your patience.

7              Okay.  All right.  If there's no further argument,

8    then -- okay.  If there's no further argument, let me just

9    go ahead and at least rule on the first portion of it.  And

10   then we can talk about the evidentiary hearing request and

11   then the discovery request.

12             So, essentially, Mr. Navarro has asked the Court

13   to reconsider its ruling with respect to executive privilege

14   and the invocation of executive privilege and whether and to

15   what extent it can serve as a defense to the charges of

16   contempt.  Specifically, Mr. Navarro has asked that the

17   Court reverse its holding that Mr. Navarro bears -- or

18   I should say Dr. Navarro bears the burden of establishing

19   that President Trump invoked the executive privilege, or in

20   the alternative, asks that the Court hold that Dr. Navarro

21   establish -- only need to establish his reasonable belief

22   that he had a legal duty to assert executive privilege.

23             So I agree that the motion for reconsideration

24   standard is that, under Federal Rule of Criminal -- excuse

25   me, Civil Procedure, 54(b), the criminal rules don't have a

1    standard for reconsideration.  And so courts in this

2    District have borrowed the 54(b) standard from the

3    Civil Rules with respect to review of an interlocutory

4    order.

5           The standard there is "as justice requires."  To

6    determine whether justice requires reconsideration of a

7    previously issued interlocutory order, the Court considers

8    whether it patently misunderstood a party, has made a

9    decision outside the adversarial issues presented to the

10   Court by the parties, has made an error not of reasoning but

11   of apprehension, or where a controlling or significant

12   change in law or facts has occurred since the submission of

13   the issue to the Court, quoting from *United States versus*

14   *Slough*, S-l-o-u-g-h, 61 F.Supp 3d, 103, 2014, from the

15   District Court.

16          Here, the Court did not patently misunderstand the

17   issues.  The decision was not made outside the adversarial

18   process.  The Court made no error of apprehension, and

19   there's been no change in the facts of the law.  For that

20   reason alone, the motion will be denied.

21          The only new evidence that the defendant presents

22   is a letter dated January 23rd, 2023, from the President's

23   counsel, Evan Corcoran.  That letter ultimately states

24   "Accordingly, this confirms President Trump's position that

25   as of one of his senior advisers, you had an obligation to

1    assert executive privilege on his behalf and fully comply

2    with the principles of confidentiality stated above when you

3    corresponded to -- responded to the committee's subpoena."

4          I will say, first of all, the letter is notable

5    for what it doesn't say; and that is, it doesn't say that

6    the President actually directed Mr. Navarro at any point to

7    invoke executive privilege with respect to the

8    Select Committee's subpoena to him.

9          What is particularly -- the second notable thing

10   about the letter is it suggests that Mr. Navarro had a

11   freestanding, independent obligation to invoke executive

12   privilege.  He writes, citing to the *McGahn* decision, now

13   Justice Jackson, that Justice Jackson wrote, stands for the

14   proposition that, "Acknowledging the legal duty on the part

15   of the aide to invoke executive privilege on the President's

16   behalf."  This is the footnote that's contained in the

17   letter.

18         That is an unfortunately -- well, it's a quote --

19   it's taken quite out of context.  The full quote in

20   Justice Jackson's opinion was, with respect to such

21   withholding, "The President can certainly identify sensitive

22   information that he deems subject to executive privilege,"

23   citing *United States versus Nixon*, "and his doing so gives

24   rise to a legal duty on the part of the aide to invoke the

25   privilege on the President's behalf when, in the course of

1   his testimony, he is asked a question that would require

2   disclosure of that information."

3            So the citation to *McGahn* is not accurate.  For

4   there to be some sort of freestanding obligation, that

5   obligation arises as Justice Jackson, then Judge Jackson,

6   observed when the President identifies sensitive information

7   that he deems subject to executive privilege.

8            And I'll note just there's some further irony in

9   citing *McGahn*, and what Justice Jackson or Judge Jackson

10  actually held in that case was that senior Presidential

11  aides don't enjoy testimonial immunity from process by

12  Congress, that they, in fact, have to show up.  Leave that

13  aside whether that holding is ultimately correct or not.

14           All that said, the arguments that have been made

15  in the motion for reconsideration are essentially the same

16  as those that the Court considered and rejected.

17           First, Dr. Navarro contends that it was an error

18  for the Court to place an initial burden on him to

19  demonstrate executive privilege on a former senior adviser.

20  He's correct in the sense that there is no case that

21  presents this precise factual scenario.  It has not come up

22  before.

23           But I think he's incorrect that there's no case

24  law to support the notion that a person who is asserting

25  executive privilege, or in Dr. Navarro's case, someone who's

1    claiming testimonial immunity based upon executive

2    privilege, bears the burden to come forward with some

3    evidence to support the assertion of that privilege.

4           The Court, for example, cited the Circuit's

5    decisions both in *Trump v. Thompson* and *In Re Sealed Case* as

6    clearly placing the burden on the holder of the executive

7    privilege to show the privilege applies.

8           I think there's also a useful analogous context in

9    which this arises in which Congressmen have invoked the

10   Speech or Debate Clause to avoid a congressional subpoena or

11   to narrow a -- excuse me, a grand jury subpoena for records.

12          And what the Third Circuit said in 1978 in a case

13   called *In Re: Grand Jury* investigation into possible

14   violations of Title 18, et cetera, which can be found at

15   587 F.2d 589, the Third Circuit said the following:

16          "Since the Congressman is asserting a use

17   privilege personal to him and since the information as to

18   which calls were" -- this had to do with call records --

19   "since the information as to which calls were legislative

20   acts is in his possession alone, the burden of going forward

21   in a persuasion by a preponderance of the evidence falls on

22   him.  He should be permitted to indicate by affidavit or

23   testimony those calls which he contends are privileged.  If

24   the United States Attorney contests that showing, he should

25   be permitted to offer evidence in opposition.  Placing the

burden of going forward and of persuasion on the Congressman

presents, of course, the possibility that he will have to

testify and that the government will attempt to use that

testimony against him if he should later be indicted and

tried.  Since, however, such testimony may be required in

order to vindicate what the Congressman believes to be a

valid constitutional right, no testimony so elicited may be

used against him in any subsequent prosecution."

That same procedure that was suggested by the

Third Circuit was actually followed by this Court in a case

called *In Re: Possible Violations,* 18 U.S.C. -- of

18 U.S.C. 2001, et cetera, at 491 F.Supp. 211, 213, a case

from 1980, and was more recently used by the Southern

District of New York in a case called *SEC versus Committee*

*on Ways and Means,* 161 F.Supp.3d 199 at 248.

Bottom line being, these are cases that suggest

that when there is a privilege being asserted of the kind

here, although I understand this is in the Speech or Debate

Clause context, that there is some burden; and perhaps the

burden in the Speech or Debate Clause context may be heavier

than what I'm asking for here.  But, nevertheless, it at

least places the burden on the privilege holder in an

analogous context in a criminal setting.

I want to make one thing clear about my ruling,

which is the Court did not require defendant to make a

1    showing that the executive privilege actually applied to his

2    sought-after testimony and records; rather, defendant argued

3    that he could not be prosecuted for contempt of Congress,

4    because as a former senior adviser to the President, the

5    invocation of executive privilege cloaked him with

6    testimonial immunity and, therefore, he was not required to

7    appear.

8           But that argument required defendant to show in

9    the first instance that the President, in fact, invoked

10   executive privilege.  It is not enough -- it is not enough

11   as he now suggests that he had a good-faith belief that the

12   President invoked privilege.  An uninterrupted line of

13   D.C. Circuit cases makes clear that a person's good-faith

14   belief that he was not required to respond to a

15   congressional subpoena or inquiry is not a defense to

16   contempt.

17          This goes all the way back to *Fields versus*

18   *United States,* 164 F.2d at 97 from 1974; *Dennis versus*

19   *United States,* 171 F.2d 986 from 1948; *Eisler* -- that's

20   E-i-s-l-e-r -- *versus United States*, 170 F.2d 273; and then,

21   of course, there's *Licavoli*, L-i-c-a-v-o-l-i, *versus*

22   *United States,* 294 F.2d 207, from 1961.

23          And then there's the Supreme Court's decisions in

24   *Sinclair versus United States*, 279 U.S. 263, from 1929, and

25   in *United States versus Bryan* at 339 U.S.C. 323 at 1950,

1    which stands for the same proposition.

2              Again, the defendant makes the argument that he

3    should not bear any burden because the Select Committee did

4    not make an adequate effort to confirm that the President --

5    with the President that he wished to invoke executive

6    privilege; that is, the Court has held that puts the burden

7    on the wrong party.

8              Yes, there is a tradition of accommodation between

9    the Executive Branch and Congress when it comes to executive

10   records, Executive Branch records or testimony, but the

11   Court is not aware of any basis on which a defendant's

12   alleged deliberate and intentional refusal to appear can be

13   excused by Congress not having done enough.

14             The observation that the Supreme Court made in

15   *Bryan*, I think, is apt.  A subpoena has never been treated

16   as an invitation to a game of hare and hounds in which the

17   witness must testify only if cornered at the end of the

18   chase.

19             The defendant's good-faith belief here that the

20   President has invoked the privilege is not enough, and it's

21   not sufficient for him to say that Congress didn't do enough

22   for him to avoid having to appear.

23             The defendant cites *United States versus*

24   *Poindexter* is a case in which the Court required resolution

25   of interbranch conflict in the context of a criminal

1    prosecution, but that case has no bearing on this one.

2    There, the District Court simply decided that it would

3    narrow the scope of a trial subpoena for Presidential

4    records before evaluating whether the requested records were

5    covered by executive privilege.

6              Defendant also cites the dismissal of the

7    indictment against the Congressman in *United States versus*

8    *Helstoski,* 635 F.2d 200, from the Third Circuit from 1980.

9    That case involved dismissal of criminal offenses because

10   the government improperly put speech or debate protected

11   materials before the grand jury to secure the charges.

12   There's no comparable circumstance here.

13             Let me make one thing clear and add another.

14             First, the Court did not deny defendant's motion

15   because he did not come forward with evidence that the

16   President had not made a formal invocation of privilege;

17   rather, the Court denied the motion because the defendant

18   came forward with no evidence that the President, in fact,

19   had invoked the privilege as to his subpoena from the

20   Select Committee.

21             The Court never had to answer the question of

22   whether the President's direction to defendant constituted

23   a, "formal invocation," because there was no evidence

24   presented of a Presidential directive in the first place.

25             Second, even if the Court is wrong that the

1    initial burden of proof rests on the defendant and, instead,

2    the government has some obligation to make out a prima facie

3    case that the President did not, in fact, invoke, the

4    government has met its burden here.  The grand jury

5    investigation, as the government has represented and based

6    upon the testimony I've reviewed, has found no evidence that

7    the President, in fact, had invoked before Dr. Navarro

8    refused to appear.

9          So for those reasons, the motion for

10   reconsideration will be denied.

11         Okay.  Let's --

12         MR. WOODWARD:  Your Honor, can I just make one

13   clarifying point for the record?

14         THE COURT:  Of course.

15         MR. WOODWARD:  I don't expect this to change

16   Your Honor's view, which is obviously very thorough.  And we

17   appreciate the time that you paid to this on relatively

18   short notice.

19         But our argument is, as I think the Court

20   understands, first, that there was no obligation on

21   Dr. Navarro to proffer anything with respect to executive

22   privilege.  And while I appreciate the Court's skepticism

23   about that position, as Mr. Brand sort of wisely directed me

24   last evening, instead of watching the rest of "White Lotus"

25   with my wife, I listened to his argument before the

1    Supreme Court in *Helstoski* in which many of the Justices on

2    the bench found with incredulity the House's position at

3    that argument that Speech or Debate Clause existed

4    irrespective of whether the Member in question, then

5    Henry Helstoski, invoked it.

6              So he was grilled ad nauseam, Mr. Brand, that is,

7    at the idea that the House would be coming forward and

8    saying, "No.  This privilege exists.  It cannot be waived;

9    and, therefore, it has to be honored."

10             Now, yes, Your Honor points out that the case is

11   distinct in the procedural background.  There Speech or

12   Debate material had been presented to a grand jury.  Here

13   our point is that when we know the executive privilege may

14   be implicated, there ought to be some duty on behalf of the

15   other co-equal branches to resolve that debate before we

16   come before Your Honor in this case of criminal contempt

17   proceeding.

18             So our argument is, first, no obligation to

19   proffer any evidence by Dr. Navarro.  The privilege exists

20   and the extent of the privilege's application to the

21   testimony or records in question has to be resolved.  And we

22   make the observations in our briefing that:  What do we do

23   in the case of a President who was unable to provide that

24   information?

25             President Kennedy's aides could not have received

 1   a formal invocation of privilege from President Kennedy, by

 2   way of example.

 3            And then, two, as Your Honor points out, if there

 4   is a requirement that it be only that Dr. Navarro show that

 5   he reasonably believed that he was to invoke privilege, and

 6   that should trigger some obligation on behalf of Congress to

 7   negotiate with the Executive Branch and the former President

 8   to resolve privilege.

 9            So I think Your Honor understands our argument.

10   But I want to make clear for the record that it's, first,

11   that he had no obligation.  If he'd had any obligation, what

12   it was he was entitled to -- required to show to invoke the

13   privilege.

14            Thank you, Your Honor.

15            THE COURT:  Understood, Mr. Woodward.

16            And just so that there's no mistake about this, in

17   terms of burden, what we are talking about here is the

18   burden in the context of a Rule 12 motion seeking dismissal

19   of an indictment.  That's the burden we're talking about.

20   And, in my view, as I've held, that in that context -- and

21   let's be clear.  It's that context we're talking about,

22   where a defendant is seeking to dismiss an indictment

23   because he has asserted that executive privilege enabled him

24   to not comply with a congressional subpoena because he was

25   testimonially immune, it's my view -- and I may be wrong --

1   that the defendant has some privilege to come forward --

2   excuse me -- has some burden to come forward with some

3   evidence that, in fact, the privilege was invoked, because,

4   as you've said, it's not his privilege to waive.  At the

5   same time, it's not his privilege to invoke.  It is the

6   President's privilege to invoke.

7          And there's no evidence before me that the

8   President, in fact, invoked a privilege with respect to

9   Dr. Navarro as to this subpoena from the Select Committee.

10   We'd be in a very different position -- and we'll talk about

11   this momentarily -- if there were evidence of an invocation

12   and what that would mean in terms of the government's burden

13   and potential defenses, which I want to talk about in

14   a moment.

15          And in terms of the obligation to negotiate,

16   again, I think, that is certainly clearly the case in the

17   civil context.  But we are in a criminal proceeding.  And,

18   you know, I just -- I've been given no case law or no reason

19   to think that an appellate court would say Congress did not

20   do enough to confirm the invocation of the executive

21   privilege to essentially immunize or excuse somebody from

22   not appearing and, therefore, not face a contempt charge.

23          And just to note, I do think in the alternative,

24   although I didn't say this in the motion, that at least in

25   the Rule 12 context where there is a request to dismiss an

1    indictment, even if the government bears the burden in the

2    initial -- bears some burden initially to show prima facie

3    evidence that there was no invocation, I think it's been met

4    here.  So we'll see whether those become issues at some

5    point down the road.

6            Okay.  So with that out of the way, I think the

7    question becomes, you had made a request, Mr. Woodward,

8    to -- for an evidentiary hearing.  It's not clear to me what

9    the purpose of that hearing would be at this point.

10           If the purpose of the hearing is for Dr. Navarro

11   to come up and say -- and testify that, in fact, he had a

12   conversation with the President and that the President told

13   him to invoke, it seems to me it's too late in the day for

14   that to happen.  The opportunity presented itself in

15   connection with the Rule 12 motion.  He had an opportunity

16   to present evidence in connection with that Rule 12 motion,

17   as you yourself have now pointed out, and was true at the

18   time as well, that Dr. Navarro could have taken a stand at

19   that point and not had to choose between his Fifth Amendment

20   privilege and testifying in connection with his motion.

21           But it's pretty clear, based upon the oral

22   argument transcript, that he instead chose to invoke his

23   Fifth Amendment and not testify in connection with that

24   motion.  So that's observation one.

25           Observation two is that if the intention is to get

1   up and testify that he reasonably believed that the

2   President had invoked or that he had a reasonable belief he

3   was not required to appear, I'm not sure that gets you

4   anywhere.

5          MR. WOODWARD:  Your Honor, I think we would first

6   observe at the outset that the request for an evidentiary

7   hearing, of course, was made with the potential -- with the

8   possibility in mind that Your Honor might revise the Court's

9   ruling and change the standard.

10         So in light of the Court's ruling, we'd certainly

11  want to confer about whether the evidence through

12  Dr. Navarro's testimony would show directly that the

13  President invoked or his reasonable belief.

14         Separate and apart from what the evidence at the

15  hearing would show, part of -- I think the request for the

16  hearing would be to create a proffer or a record as to what

17  evidence would have been presented at the trial.  I think

18  this is sort of inextricably intertwined with the notion

19  that under *Licavoli* and its progeny, the trial will not

20  involve evidence of what -- whether the President instructed

21  Dr. Navarro to invoke privilege or not.

22         And so we would be looking to replete the record

23  with all of the evidence, circumstantial and direct, that

24  there was a good-faith belief to invoke the privilege.

25         Now, we can represent that to the Court.  The

1    Court -- we observed in the Court's ruling that counsel's
2    representation was not sufficient and so, hence, the request
3    for an evidentiary hearing.
4            And as far as the timing, Your Honor, with
5    respect, we did not anticipate that the Court was going to
6    rule that there was an obligation by Dr. Navarro to come
7    forward with evidence.  This issue of whether or not
8    Dr. Navarro reasonably, if I may -- new sentence.
9            This issue of whether the President invoked
10   executive privilege, candidly, was not one that we thought
11   would come to the front in this case.  It was not an issue
12   in the -- before the Select Committee.  He was never accused
13   by the Select Committee of not having been under instruction
14   by the President to invoke privilege.  It's not one that we
15   submit is glaring in the indictment.  It's an argument that
16   came forward after the case was indicted and before
17   Your Honor on motions to dismiss.
18           And so --
19           THE COURT:  Can I -- if I could interrupt you.
20           MR. WOODWARD:  You always may interrupt me,
21   Your Honor.
22           THE COURT:  That's all right.
23           Two things.  Number one, I think the
24   Select Committee did contest of invocation of executive
25   privilege.  I mean, I think they responded to Dr. Navarro

1    and said -- at a minimum, I thought they said -- or maybe

2    this was in connection with the other subpoena, so I may be

3    misrecollecting, that there had not been an invocation of

4    the executive privilege.

5                MR. WOODWARD:  No, Your Honor.  I believe the

6    Select Committee's correspondence through Dan George is very

7    bare bones.

8                Now, that's in part because Dr. Navarro's response

9    was also bare bones.

10               They advised him that they had a subpoena.  His

11   response was, "No counsel, executive privilege."

12               And then the back-and-forth that occurs over the

13   weeks that follow concerned Dr. Navarro's repeated assertion

14   that executive privilege precludes his ability from

15   testifying and that his "hands are tied."

16               THE COURT:  Was that in the resolution, though?

17   Perhaps it was in the report.

18               But in any event --

19               MR. WOODWARD:  The only really contest of

20   executive privilege that occurs in Dr. Navarro's

21   communications with the Select Committee is their

22   representation that President Biden and Biden's White House

23   Counsel's office had advised Dr. Navarro through

24   correspondence that executive privilege ought not

25   apply here.

1          THE COURT:  Right.

2          MR. WOODWARD:  So at the time that he was

3    negotiating with the Select Committee, there was no

4    insinuation, suggestion, directly or otherwise, that

5    President Trump had, in fact, not invoked executive

6    privilege.

7          And then, again, in the indictment, we humbly

8    submit that the indictment does not make clear that this

9    case is about the lack of an invocation of executive

10   privilege.

11         And so the arguments that really were the focus of

12   our motion to dismiss, and before that, our motions to

13   compel, focused more on how executive privilege played out

14   in this context, not whether or not it had been invoked.

15         And so to the extent that there's some -- to the

16   extent the Court is suggesting that we should have come

17   forward before, I think Dr. Navarro's counsel will own that

18   that did not happen, but that Dr. Navarro not be prejudiced

19   by that potentially oversight.  And so --

20         THE COURT:  So let me preview my thinking about

21   what I want to talk about next, and I'll be curious to hear

22   what everybody's reaction is to this.

23         As I've thought about this, is if there is

24   evidence of an actual invocation by the President with

25   respect to Dr. Navarro and his subpoena, I think that's a

1    defense at trial.

2         And the reason I think that is it has been the

3    Department of Justice's position that if there's a

4    Presidential invocation of privilege, there is testimonial

5    immunity; a senior White House aide does not need to appear.

6    And the reasoning, as I understand it, for that position is

7    that it would violate the separation of powers to compel a

8    senior White House aide to appear before Congress about

9    official acts.  Clearly, it's about official acts.

10        And what I understand the Department of Justice to

11   say is that Congress does not have the authority under the

12   Constitution to compel a senior White House aide to come

13   before Congress to testify or produce records about

14   official acts.

15        And Congress has to have the authority to summon

16   someone before them, and that's an element the government

17   must prove beyond a reasonable doubt to make out a case

18   of contempt.

19        So that's something I want to have a conversation

20   with.  I don't know what the government thinks about that,

21   but that is my initial thought.

22        So if what you propose, Mr. Woodward, is that

23   Dr. Navarro would get up on the witness stand or you've got

24   independent evidence that would show an actual invocation, I

25   suppose you could ask me to hold an evidentiary hearing now

1    and consider that in the context of Rule 12, in which case I

2    would be required to make factual findings and

3    determinations.

4            Or if I'm right that it's a potential defense, you

5    put that issue before the jury and it will be for the jury

6    to decide whether, in fact, there was an invocation, because

7    I think the government's position was there was

8    no invocation.

9            MR. WOODWARD:  May I consult with --

10           THE COURT:  Sure.

11           I'm curious to hear what the government thinks,

12   because I do want to talk about what the parameters of the

13   defense case is going to potentially be in this trial.

14           (Defense counsel conferred off the record.)

15           MR. WOODWARD:  Your Honor, it is our position --

16   it's clear the Court understands our position actually.  And

17   our argument had been that -- has been, and so we can't

18   unring that bell, if you will, that the way we would

19   describe the Court's position or what the Court has just

20   described is our argument to the effect of, as applied, this

21   statute is unconstitutional insofar as it cannot be used to

22   punish a former senior adviser to a President for refusing

23   to comply with a congressional subpoena insofar as the

24   department's position has been that that refusal is

25   presumptively lawful, and that goes back to the 1984

```
 1    litigation between United States and the United States House
 2    of Representatives.
 3              To the extent that the Court -- and we would also
 4    note that in Sinclair -- and I'll pull the citation when I
 5    get back to my computer.  But that, again, in the
 6    congressional setting, the question of -- I mean, there it
 7    was determined that this is an issue of law and not one for
 8    the jury to decide; however, if the Court's --
 9              THE COURT:  What was an issue of law?
10              MR. WOODWARD:  Sinclair had to do with -- oh,
11    right, I'm sorry -- pertinency, that whether or not the
12    committee's investigation was pertinent was an issue of law.
13              THE COURT:  Right, but that's been overruled or at
14    least -- let's put it this way:  It's clearly now an
15    element.  Everybody agrees it's an element.  And post
16    Gaudin, that's something the jury needs to decide, the issue
17    of pertinency.  And I think that was -- that's been proposed
18    here in these jury instructions, and I think that was also
19    true in the Bannon prosecution.
20              MR. WOODWARD:  I cite Sinclair only by way of
21    explanation for how our argument has played out before
22    Your Honor.
23              So our position had been that pertinency was a
24    question of law.  Our position would be that executive
25    privilege is a question of law for the Court to decide.  But
```

1   if the Court is willing to permit as a defense evidence that

2   executive privilege had been invoked and that, under DOJ

3   policy, barred Dr. Navarro's testimony, made his refusal to

4   comply lawful, then, yes, we would put on that defense.

5              So -- and long answer --

6              THE COURT:  That, in fact, there was an

7   invocation?

8              MR. WOODWARD:  In fact, there was an invocation of

9   executive privilege and that not Dr. Navarro was legally

10  obligated, duty-bound, to honor that invocation.

11             THE COURT:  Okay.

12             Counsel, Ms. Aloi.

13             MS. ALOI:  Thank you, Your Honor.

14             The government's position here would be that

15  I think we have a potential disagreement over the breadth of

16  the department's position as it relates to executive

17  privilege.

18             While we don't dispute that under certain

19  circumstances it can provide a defense, we would not

20  concede, without additional information and briefing, that

21  it would provide a defense here and that it would not be

22  appropriate for the jury to evaluate the invocation that is

23  a matter for the Court to decide.

24             THE COURT:  So spin that out for me.  What do

25  you mean?

1           MS. ALOI:  Whether or not -- whether or not a

2    party has privilege available to them as a defense has never

3    been put before the jury.

4           THE COURT:  So let me be 100 percent clear.

5           I don't think either side is asking me to rule on

6    the ultimate question, which is:  Is there a testimonial

7    privilege?

8           Judge Jackson, now Justice Jackson, ruled that

9    there was not, notwithstanding 50 years of OLC opinions.

10          I'm not being asked to consider that question

11   here, it seems to me, unless the Department of Justice is

12   going to agree with Justice Jackson.

13          But -- so if your position is that, consistent

14   with the OLC's position, is that Congress does not have the

15   authority to compel a senior aide of a President to come

16   before Congress -- and as I understand the rationale, that

17   is a position taken based upon the separation of powers

18   that's embodied in the Constitution and Congress's ability

19   to investigate and authority to investigate is derived from

20   the Constitution and, therefore, limited by the

21   Constitution.

22          And so if Congress doesn't have the authority to

23   compel a senior White House aide to appear, if, in fact,

24   there was an invocation of executive privilege, there would

25   be an absence of authority under the statute to compel; and,

1    therefore, that would constitute a defense to contempt.

2             MS. ALOI:  Your Honor, the facts here are not

3    consistent with the circumstances you just described.

4             At the time that the subpoena was issued,

5    Mr. Navarro was a former aide, so he was not a present --

6             THE COURT:  I understand.

7             MS. ALOI:  -- and he also was being asked about

8    matters that were not official acts.

9             THE COURT:  So let me just be clear here.  I mean,

10   I asked this very question of Mr. Hulser last time we were

11   all together.

12            I asked him.  I said, "I know this is not the

13   situation, but does the Department of Justice still take the

14   position that a former official of a sitting President, who

15   refuses to appear before Congress, based upon the proper

16   invocation of executive privilege, cannot be subject to

17   contempt under 192?"

18            His answer was:  "So if there were an invocation

19   by the privilege holder, Your Honor, that is correct."

20            Okay.

21            My question was then:  "So does the Department of

22   Justice also believe, or take the position, that if there is

23   a proper invocation of privilege by a former President with

24   respect to a former senior adviser of the executive

25   privilege, that that person's refusal to appear would not be

1   subject to prosecution under Section 192?"

2          Mr. Hulser said, "Yes, Judge, I would say that it

3   would be an invocation by the former President as to the

4   former official as to official matters.

5          "Okay.  Yes, all right.

6          "Now we're getting somewhere.

7          "So the Department's position here is that that

8   last position is inapplicable because there was no formal

9   invocation here, correct?

10          "Yes."

11          MS. ALOI:  Yes, Your Honor.

12          I think -- so -- those questions were asked, at

13   least somewhat in the hypothetical, as to the state of the

14   law, not as it applies to Mr. Navarro.  And you, yourself,

15   just read that they were cabined by official acts.

16          And here the record is, first, that there was no

17   invocation and, second, that the Committee had identified

18   for Mr. Navarro that they were seeking information that was

19   not subject to the privilege either way.

20          And so here we would say based on these facts,

21   you --

22          THE COURT:  So you'll have to forgive me.  Sure,

23   the Committee says that, but how do I know?

24          I mean, in other words, I understand that's the

25   Committee's position, but there were also plenty of

1    witnesses that went in and invoked executive privilege

2    before the Select Committee about a whole host of topics

3    and -- and the Select Committee, as far as I know, has not

4    sought to compel anybody's testimony and override executive

5    privilege.

6            So, I mean, I understand the argument that

7    potentially the subpoena was seeking information that wasn't

8    about official acts.  I understand that.  But it's not

9    apparent to me that at least some of it wasn't relating to

10   official acts and that he wasn't going to be asked about

11   official acts in some respect.

12           MS. ALOI:  Yes, Your Honor.

13           But I think you've just flagged the salient point.

14   In those situations, the officials went before the

15   Committee, claimed privilege, and then there was a process

16   by which it was resolved.

17           THE COURT:  But even in the, you know, the OLC

18   opinion Mr. Woodward cited last time concerning

19   Kellyanne Conway, right, the Department's position was, even

20   though this was an alleged Hatch Act violation, which, by

21   definition means these are acts beyond, conduct beyond

22   someone's official duties, the Department of Justice's

23   position was she didn't have to show up because it bore on

24   her official duties.

25           And, you know, this isn't so clear-cut.  You know,

1    Dr. Navarro wasn't called in to talk about his own bank
2    records or about a mortgage he had taken out, right?  He was
3    asked to come in to discuss events surrounding January 6th,
4    and undoubtedly would have been asked about his knowledge,
5    to the extent that he had any, about the President's conduct
6    before and on that day, as many others were.
7              And, you know, we can have a fight about whether
8    having a conversation about trying to get reelected is an
9    official act or not, but I don't know that you want to stand
10   on that now.
11             MS. ALOI:  That's all right, Your Honor.  We have
12   not briefed to this.  We have not put before you these
13   issues for the very reasons you flagged in your order.  You
14   do not have to decide these constitutional issues because
15   there was no invocation here.
16             THE COURT:  Okay.  That's fine.
17             But my point is, if there was -- I know the
18   Department of Justice's position is that there was not and
19   that your investigation has suggested there was not.  But
20   if, say, hypothetically -- and I'm not saying he's going to
21   do this.  But say, hypothetically, he gets on the witness
22   stand and says, "I had a conversation with the President of
23   the United States, and he told me to invoke in response to
24   the Select Committee's subpoena."  Is that, in your view, a
25   defense to contempt?

1          MS. ALOI:  Your Honor, if there were to be an

2     evidentiary hearing in which you had made a finding that

3     there was an invocation, the Department would request

4     permission to brief whether or not it is a defense.

5          THE COURT:  But I think you're looking at two

6     different things.

7          I don't need an evidentiary hearing for that

8     purpose.  In other words, what I'm saying is that this is a

9     fact issue.  It can be a fact issue.  This isn't about what

10    the legal consequence of it is.  You all have already

11    decided what the legal consequence is potentially.

12         It's, was there an invocation, full period, full

13    stop.  And when I talked to Mr. Woodward last time, he said

14    there was -- there was a conversation between Dr. Navarro

15    and the President.  There were only two people present for

16    that conversation, or at least witness to that conversation.

17    One was Dr. Navarro, and the other was the President.  And

18    he wasn't prepared to bring the President in.

19         So if Dr. Navarro -- again, this is not, at this

20    point, it seems to me, an evidentiary hearing issue.  It is

21    simply an issue of:  Was there authority?  And a predicate

22    of that is:  Was executive privilege invoked?

23         MS. ALOI:  Yes, Your Honor.

24         But as you flag in your order, executive privilege

25    could be invoked in many ways.  It could be a blanket

1   assertion.  It could be a protective assertion.  It could

2   actually have involved evaluation --

3            THE COURT:  That's right.

4            MS. ALOI:  -- of the information being sought.

5            THE COURT:  That is correct.  That's correct.

6            MS. ALOI:  So I can't opine here today.

7            THE COURT:  That's correct.  What I'm opining on

8   here and have opined on, it has to be an invocation with

9   respect to this subpoena, not some subpoena from the

10  coronavirus subcommittee, not some blanket standing

11  invocation that the President may have issued, because I

12  don't think the case law supports either.  It would be an

13  invocation as to this subpoena.

14           And it's not clear to me that the President has to

15  directly communicate it himself to the Committee.  It can be

16  done through the aide who's called to testify, in much the

17  same way that people came before the Select Committee and

18  invoked executive privilege on the record.

19           MS. ALOI:  Well, our position hasn't changed.  The

20  Department's position is that under certain circumstances,

21  an invocation of executive privilege can be a defense to

22  contempt, but we are not prepared to say that on the facts

23  of this case, even as you've just described.

24           THE COURT:  So what would be the circumstances

25  under which it would be a defense, in your view, that are

1   not present here?

2          MS. ALOI:  Well, certainly were Mr. Navarro a

3   current official and the privilege was invoked by the

4   current President, our posture would be different.

5          I think the OLC opinions are not entirely clear,

6   and they are just advisory.  The courts have not found

7   testimonial immunity.  And so, you know, I can't speak --

8          THE COURT:  But you can't tell me the

9   Department of Justice would prosecute if you thought there

10  wasn't testimonial immunity?

11         MS. ALOI:  I am not -- I can't give you the

12  hypothetical position of the Department of Justice today.

13         THE COURT:  Hang on.  You've prosecuted because

14  you don't think there was an invocation.  You didn't

15  prosecute, part of the reason, I suspect, Mr. Meadows or

16  Mr. Scavino is because they did bring letters to Congress

17  saying, "You should invoke," right?

18         So, I mean, I'm not asking you to disclose what

19  your deliberations were in deciding whether to prosecute

20  them or not.  But that is a fundamental difference in the

21  Department's position with respect to Mr. Scavino and

22  Meadows and Dr. Navarro.

23         MS. ALOI:  Look, the record as to Mr. Scavino and

24  Mr. Meadows is not complete in this proceeding, and so there

25  are other considerations there.

1            But here, I think to the -- to the extent --

2            THE COURT:  No doubt.

3            MS. ALOI:  To the extent you are construing

4   Mr. Hulser's words to say that under these facts, had there

5   been an invocation, the Department would not have

6   prosecuted, he may have misspoke.

7            THE COURT:  All right.  So tell me under what

8   circumstances the Department of Justice would say that an

9   invocation in this case would have allowed Dr. Navarro not

10  to appear under OLC precedent.

11           MS. ALOI:  So I think, first, there would have to

12  be internal deliberations over whether or not he qualified

13  as a senior-level official akin to the type where

14  testimonial immunity would attach.  It's not available to

15  all executive officials.  It's only available to the closest

16  advisers to the President.

17           I think there needs to be a close look at what he

18  was being asked to testify about.

19           And here, he had written a book about what he was

20  being asked to testify about.  And so I think there are a

21  number of considerations the Department would have

22  considered before bringing a lawsuit.

23           And here again, totally irrelevant, because there

24  was no -- there's no evidence of an invocation.  We have

25  looked and not found it, as you noted in our grand jury

1   investigation.  The defense has been invited to provide it

2   and has utterly failed to do so.  The only evidence they put

3   forward is a retroactive letter that doesn't get the

4   job done.

5           THE COURT:  Yeah, I don't think much of the letter

6   either.

7           MS. ALOI:  And we're not in the position here to

8   opine on how OLC would interpret these facts.

9           THE COURT:  Okay.

10          But what I'm hearing you saying is that I'm not

11  out to lunch; in other words, if there was an actual

12  invocation, it is a potential defense.  You're just saying

13  it has to be under the right circumstances.

14          MS. ALOI:  That's right.

15          THE COURT:  And why shouldn't it be the case that

16  it doesn't matter what the circumstances are, given what the

17  OLC's position has been?  We are in a criminal proceeding

18  now, and it seems to me that we ought to have some pretty

19  clear lines about what the law is before we prosecute

20  somebody, right?

21          So if at a minimum the Department of Justice's

22  contention is, as a predicate to not appearing there has to

23  be an invocation, it seems to me that ought to be a defense

24  in this case for him to get up on the witness stand or some

25  other witness and say, "There was an invocation."

1          And you all can convince the jury that he's not

2    telling the truth or that there was no invocation.  I mean,

3    you know, you've got plenty of grist for cross-examination

4    if he takes the witness stand.

5          I mean, I'm not sure they're going to present that

6    defense, but just putting this out there for discussion,

7    because I want to know exactly what this trial is going to

8    look like.

9          MS. ALOI:  Your Honor, if I may, a couple things.

10         First off, the testimonial immunity wouldn't apply

11   to the provision of the subpoena that sought documents.  And

12   so he would still have to provide a privilege log to be

13   evaluated for the purposes of one count of the contempt

14   charge.

15         Second, never before has a jury been asked to

16   decide the validity of a privilege invocation.  That's why

17   these matters are decided pretrial.  It's why the defendant

18   was given an opportunity to put it forward on a motion to

19   dismiss.  And so it would be unprecedented for the Court to

20   ask the jury in its instructions to decide whether or not

21   privilege had been invoked.

22         THE COURT:  Sure, because nobody has ever been

23   prosecuted in these circumstances.  You're right; it would

24   be unprecedented.

25         I mean, we are in uncharted territory.

1          MS. ALOI:  But we're not because there was no

2     invocation.

3          THE COURT:  Okay.  I understand.  That's your

4     position.  Right?  They -- I don't know whether they have a

5     different position or not.  I'm just trying to explore the

6     possibility of whether, if that is their position at trial,

7     if, as I said, hypothetically, Dr. Navarro gets on the stand

8     and says, "I had a conversation with the President.  He told

9     me to invoke, and I invoked with respect to the subcommittee

10    subpoena," whether that's a defense.

11          And I'm not sure the legal propriety of that or

12    not.  I mean, you know, and then we also then get into the

13    estoppel issue, because, you know, you can't ask somebody to

14    parse those OLC opinions in the way that you're suggesting.

15    I mean, I just -- you know, the notion that somehow these

16    OLC opinions provide, you know, clear guidance for someone

17    who is in the position of Dr. Navarro is fanciful.

18          MS. ALOI:  Your Honor, but that is looking through

19    a backwards lens.

20          There is no evidence in the record to suggest that

21    he relied on OLC opinions at the time of the contempt.

22          THE COURT:  I know.  That's the other thing I want

23    to raise, which is, you all have said to me -- at least I

24    think he's conceded last time, that there's an

25    entrapment-by-estoppel defense based upon the OLC opinions.

1            MS. ALOI:  Yes, Your Honor, if there --

2            THE COURT:  Right?

3            MS. ALOI:  -- if there were evidence that the

4    defendant had, in fact, relied on them.

5            THE COURT:  Right.  So, again, this -- I wanted to

6    have this conversation.  What does that look like in the

7    government's view.  If Dr. Navarro gets on the stand and

8    says, "I spent the entire night reading the OLC opinions,

9    and I came away from reading those OLC opinions thinking I

10   didn't have to appear," seems to me that that's a defense.

11           Now, you all think he didn't do that.  I don't

12   know whether he did it or not, and these are fact questions.

13           MS. ALOI:  So, Your Honor, the defendant would

14   bear the burden on that defense.  And so we don't have to --

15           THE COURT:  I don't disagree with that.

16           MS. ALOI:  Yeah.  We don't have to discuss it in

17   the hypothetical.  He has not met his burden.

18           THE COURT:  Well, but he hasn't had a chance to

19   put on his defense.  It's not something decided pretrial.

20           MS. ALOI:  Yes, but there needs to be a pretrial

21   showing at the outset to see if he's entitled to raise that

22   defense.

23           THE COURT:  Not necessarily.

24           I mean, no, no.  Hang on.

25           Not necessarily.  I mean, in a self-defense case,

1   I don't ask somebody to proffer what the self-defense is

2   before they get on the stand and say it was self-defense.

3   They don't have to proffer that.  The only question at the

4   end of the day is whether they get the jury instruction.

5           MS. ALOI:  Yes, Your Honor.  But here, the

6   defendant made the decision to litigate in advance, gave

7   notice of his public authority and entrapment by estoppel

8   defenses, and the government has affirmatively moved to

9   exclude them.  So absent any evidence that they exist, they

10  should be excluded.

11          THE COURT:  Right.

12          And what I've told you is that I agree with you on

13  public authority, he didn't give any notice.  And he also --

14  I don't think as a legal matter, he can stand on that.

15          But as to entrapment by estoppel, you know, what

16  if he gets on the witness stand and says, "Not only did I

17  have a conversation with the President, but his lawyer was

18  in the room; and the two of them told me that because the

19  President has invoked, based on OLC opinions, you don't have

20  to go in, Dr. Navarro"?

21          What if he gets on the witness stand and

22  says that?

23          MS. ALOI:  So, Your Honor, that is not -- so

24  entrapment by estoppel requires a bit more than that.  It

25  requires an inaccurate statement of the law by a government

1    official on the direct point that is being raised.  It is --

2            THE COURT:  Right.

3            MS. ALOI:  -- entirely a factor of an inquiry, and

4    there are no OLC opinions that would take Mr. Navarro off

5    the hook on this set of facts.

6            THE COURT:  Correct.

7            Right, which is an incorrect interpretation of the

8    law, in your view, right, that whoever advised him dates --

9    again, this is all the hypothetical because I don't know

10   what he's going to say.  I'm just trying to figure out what

11   this trial is going to look like and what he would be

12   permitted to say as a potential defense.

13           Now, he may not have ever looked at an OLC

14   opinion, may have never heard the word "OLC."  I don't know.

15   I'm just trying to figure out what the parameters of

16   something like that would look like.

17           MS. ALOI:  Your Honor, the defendant at trial

18   should be permitted to show that his conduct was not willful

19   and that it was deliberate and intentional and not by --

20   and, therefore, he can get up there and testify that his

21   failure to show by was by mistake or by accident.  But he

22   cannot get up and testify as to his mistaken belief of the

23   state of the law.

24           THE COURT:  I agree with that.

25           MS. ALOI:  So that's what the trial presentation

1    looks like.

2          THE COURT:  I agree with you.  I'm not saying --

3    my hypothetical had nothing to do with his individual

4    mistaken belief.  It had everything to do with being told by

5    the President that he didn't have to appear.

6          I mean, I've left that open.  I don't know that

7    that's what he's going to say.  I don't know that's what the

8    defense will be.

9          MS. ALOI:  Well, he has yet to suggest that he

10   will say such a thing.  So I suppose we'll respond at an

11   evidentiary hearing as appropriate if there is one.

12         THE COURT:  But, again, I don't view this as an

13   evidentiary hearing matter.  We don't have evidentiary

14   hearings about defenses before trial.  Either the defense is

15   established at trial and there's a basis to give a jury

16   instruction, or there isn't.

17         I mean, you know, self-defense is a classic

18   example.  We don't ask for the defense to come forward and

19   establish some prima facie case of self-defense.  Just the

20   opposite is true.  They don't even have to disclose what

21   their defense is before trial.

22         MS. ALOI:  So I guess I mustn't have understood

23   the Court's order because my understanding was that the

24   entrapment by estoppel defense was foreclosed unless the

25   defendant put forward additional evidence as there are three

1    specific bullet points that you had outlined in your order.

2    There had been no showing of that.  And so --

3              THE COURT:  At this point.  At this point.

4              MS. ALOI:  Trial starts on Monday.  When are we

5    doing this?

6              THE COURT:  Well, he has a defense case, and he

7    can get up on the stand or he can call other witnesses to

8    try and meet that defense.

9              MS. ALOI:  The Court's indulgence?

10             THE COURT:  Sure.

11             (Government counsel conferred off the record.)

12             MS. ALOI:  Your Honor, your order states on

13   page 34, "This Court finds that, without a more precise

14   factual proffer, the entrapment-by-estoppel defense is not

15   available to the defendant."

16             The suggestion that there would need to be a

17   factual proffer suggests to the government that this should

18   be made pretrial instead of on the stand so that we can all

19   prepare for the testimony that may come.

20             It doesn't suggest that the defendant may offer

21   this evidence at trial absent additional information for the

22   Court.

23             And it also goes on to say, "The same is true of

24   his claim reliance on OLC opinions as a basis for entrapment

25   by estoppel defense.  The defendant has never represented

```
 1   that he actually relied on any particular OLC opinion before
 2   he refused to comply with the Select Committee's subpoena.
 3              THE COURT:  That's right.
 4              I mean, look, I don't want to back off what I
 5   wrote, but I think the analogy is an apt one.  I've had
 6   cases in which the government comes in and says, "You should
 7   preclude any evidence of self-defense pretrial."
 8              And my answer to that has always been:  "I'll let
 9   you know once I hear the evidence," right?
10              MS. ALOI:  Yes, Your Honor.
11              THE COURT:  And if there's no evidence of
12   self-defense, you're not going to get the instruction.
13              Similarly here, if there's no evidence or, put
14   differently, insufficient evidence to support the elements
15   of an entrapment by estoppel, he won't get the instruction,
16   and the jury won't be told that that's a defense that he can
17   rely on.
18              MS. ALOI:  Yes, Your Honor, but the Court -- the
19   government, too, has a right to rely on your opinions in
20   preparing its trial presentation.  It is Friday before with
21   the trial is set to start, your briefing said -- you're
22   order said that they needed to come forward with a factual
23   proffer.  They should be held to that standard because we
24   have moved in limine to exclude it --
25              THE COURT:  Okay.
```

1          MS. ALOI:  -- on the record that the Court has.

2          THE COURT:  Mr. Woodward.

3          MR. WOODWARD:  I'll just make a few observations.

4     Of course, we wouldn't oppose more time.  We're

5     happy to have -- if the Court ruled in this fashion, there

6     are some subpoenas we'd like to issue, because we weren't

7     intending to put this issue before the jury.  But --

8          THE COURT:  Which issue?

9          MR. WOODWARD:  The issue of whether Dr. Navarro --

10    excuse me.

11         The issue of whether the President invoked

12    executive privilege.

13         We are -- you know, we think the -- the way the

14    government has characterized this is a little bit

15    misleading.  For example, the notion that he's anything but

16    the most senior of advisers, he was an adviser to the

17    President, AP.  That's just about as high as you can get in

18    the White House.

19         And we would contrast that with Administrator

20    Gorsuch, who was at the EPA, which, by the way, was a

21    documents case.  So the idea that this is a subpoena for

22    documents and so our argument that the prosecution cannot

23    lie constitutionally is just as applicable insofar as that

24    was the position in the *Gorsuch* case.

25         They wanted documents from Anne Gorsuch.  The

1    Department said, "You cannot constitutionally

2    prosecute her."

3              Here we have documents and testimony.

4              We would also advise that, as far as the

5    President's invocation, as the Court has observed, it

6    doesn't have to be the President, right?  It wasn't the

7    President who instructed Meadows or Scavino to not appear at

8    their depositions.  It was the President's counsel.

9              We take issue with the government's claim that

10   they've thoroughly investigated this.  As we discussed last

11   time, they brought in a lawyer for the President whose

12   testimony was, "I didn't issue a letter."

13             THE COURT:  So let me ask you this, Mr. Woodward:

14   What I hear you saying is that there is somebody out there

15   who spoke to the President who communicated to Dr. Navarro,

16   say, hypothetically, that's what you're talking about; that

17   it wasn't, in fact, the President that said you need to

18   invoke; it was some intermediary, right?  How do you

19   overcome the hearsay issues?

20             MR. WOODWARD:  There are many issues that I need

21   to overcome, including calling my malpractice carrier before

22   I put Dr. Navarro on the stand.  This is not -- this all

23   very, very complicated, which is why we've taken the

24   position that the case shouldn't go to trial.

25             I don't know, Your Honor.  I don't know, candidly.

1          THE COURT:  I mean, I've thought about this.

2          I mean, you know, it's an interesting question.

3    You know, clearly he could get on the stand and say, "He

4    told me to invoke," right?

5          MR. WOODWARD:  I don't think -- we could overcome

6    that hearsay question by state of mind, right?

7          "What was your state of mind following the

8    conversation?"

9          THE COURT:  I'm not sure it is about the state of

10   mind as much as it is just a direction.  I don't know that

11   it implicates hearsay.

12         But if somebody is in the room and hears the same

13   direction, I think that's probably admissible too.

14         But somebody who's not in the room and doesn't

15   hear Dr. Navarro hear that, I'm not sure that works.  But I

16   have to think about it.

17         MR. WOODWARD:  Your Honor characterized my

18   position at the last hearing as not a position to subpoena

19   the President.  I wouldn't do that without Your Honor's

20   permission for the obvious reason that that's not done

21   either.

22         Now, the letter that we obtained in the

23   intervening five days from Your Honor's order suggests to me

24   that the President would object to a trial subpoena, but I

25   haven't spoken to the President about this, former President

1    about this, so I don't know.

2            What I will say -- by the way, Your Honor, we do

3    take issue with the fact that that letter is described as

4    fabricated by the government, which gets to our whole

5    concern about the scope of the government's investigation.

6    Not one phone call placed by a representative of the

7    Department of Justice to the President -- former President

8    of the United States about whether or not he invoked

9    privilege.  And so the evidence before the grand jury was

10   limited to those two individuals.

11           THE COURT:  And that's why we have a trial.

12           I don't want to quibble with you here.  But you

13   know as well as I do, challenging the sufficiency and the

14   accuracy and the thoroughness of the government's

15   investigation is a common trial tactic.  That doesn't mean

16   the indictment gets dismissed.  A grand jury has determined

17   that there's sufficient evidence to charge him.

18           You can go off all you want about the inadequacy

19   of the government's investigation here, if it's relevant,

20   before a jury, but that doesn't get you a dismissal absent

21   some misconduct that violates his due-process rights.

22           MR. WOODWARD:  Fair enough.  Yeah, fair enough.

23           And so what would Dr. Navarro testify to?  I

24   intimated last time, I did that as an officer of the court,

25   that there was a conversation.  I cannot tell the Court with

1   absolute certainty that he would testify to his defense.

2          The Court is opening his door to his doing that.

3   That's something that his defense counsel will have to

4   discuss over the weekend.  But, yes, that would be

5   Exhibit A, is Dr. Navarro's own testimony about his

6   understanding that the President had invoked executive

7   privilege.

8          But there are others --

9          THE COURT:  But to be clear, it's not his

10  understanding.  It's that, in fact, it was invoked.

11         Again, his good-faith belief that it was invoked

12  is not the same as it, in fact, was invoked.

13         MR. WOODWARD:  I am specifically not saying

14  "good-faith belief" because I understand the Court's ruling

15  on this.

16         I am also specifically saying and understanding

17  because I don't know precisely what the President said to

18  Dr. Navarro.  And I don't know what, if any, follow-up

19  occurred in that conversation.  And so I have not made a

20  representation to that effect.

21         Did former President Trump say, "Peter, do not go

22  down there and testify.  Executive privilege precludes you

23  from doing that"?  I don't think so, right?  That's not the

24  character and the way in which I think the President

25  communicates with his close aides, current and former.  So I

1    don't know what was said.

2           THE COURT:  But he does to the public because he

3    did that with respect to the coronavirus.

4           MR. WOODWARD:  He did do that with respect to the

5    coronavirus.  And he was apparently prepared to do that with

6    respect to this committee in the press release that

7    Dr. Navarro exchanged with Ms. Harrington, which is why she

8    was involved in this.

9           I think the question is:  There would be evidence

10   of the President's invocation of privilege, direct and

11   circumstantial.  We would welcome the opportunity to put

12   that before the jury.  We don't oppose the government's

13   request for more time and/or to brief the issue.  But

14   either way, you know, we're happy to talk about what the

15   evidence was.

16          It's remarkable that the government would take the

17   position that they're caught unawares that our position is

18   that privilege had been invoked.  Right?  We've made that

19   clear all along.

20          They disagree with whether or not the evidence

21   carries the day on the invocation of privilege.  The Court

22   is skeptical of whether the evidence carries the day on that

23   privilege.  But it's been our position all along,

24   unequivocally, Dr. Navarro was to invoke executive

25   privilege.

1           And the letter was not fabricated, right?

2    Evan Corcoran wrote the letter, and his name was at the

3    bottom of it.  And the position laid out by --

4           THE COURT:  I didn't say it was fabricated.  I

5    just said it didn't say what it should have said or what you

6    would have liked it to have said, which is that he, in fact,

7    invoked.  It said he had an obligation to invoke, which is

8    very different than an actual invocation.

9           MR. WOODWARD:  Lest there be any doubt, the letter

10   also did not say what I wanted it to say.  It was the best

11   that we could do in the time that we had.  The United States

12   of America has accused --

13          THE COURT:  And there may be a reason for that.

14          MR. WOODWARD:  There are many reasons for that,

15   I'm sure, yes, Your Honor.

16          And so if this is an issue to come before trial,

17   then we'll ask you for trial subpoenas.  And we'll serve

18   them, and we'll see where that goes.

19          But I do have concerns about resolving those trial

20   subpoenas between now and Monday, candidly, because they are

21   going to involve counsel to the President.  They are

22   potentially going to involve the President.

23          I mean, one -- query whether that's necessary if

24   our legal position is correct, right?  If our legal position

25   is that the privilege has to be resolved before the trial

1  occurs -- and we understand the Court's position.  It is a

2  very thorough and reasoned argument.  But the Court also

3  appreciates that it just hasn't happened before.  We've

4  never been in this context before.

5          Query whether we don't let the Court of Appeals

6  weigh in before we go through the process of having to put

7  this evidence before a jury.

8          THE COURT:  I'm sorry.  What do you mean, don't

9  let the Court of Appeals weigh in?

10          MR. WOODWARD:  We can ask the Court of Appeals to

11  weigh in under 1292(b) and certify the issue interlocutory

12  and come back when -- I mean, this case, again, with respect

13  to the Court, is going to the Court of Appeals at some

14  point.  The question is:  What does the record look like?

15          THE COURT:  He hasn't been convicted yet.

16          MR. WOODWARD:  Fair enough.  And I haven't

17  given up.

18          THE COURT:  You're underestimating your skills.

19          MR. WOODWARD:  Thank you, Your Honor.

20          But one -- thinking out loud, one way to do this

21  may be to certify it interlocutory.  Let the

22  Court of Appeals tell us we're wrong and then come back and

23  decide the issue of who testifies and under what

24  circumstances.

25          THE COURT:  I've never seen an interlocutory

1    appeal on a discrete criminal issue before.

2            MR. WOODWARD:  No.  And I've researched it quite a

3    bit.  The argument by analogy would be that there also is no

4    specific rule that addresses reconsideration, and yet we

5    turn to the Civil Rules in contexts where --

6            THE COURT:  Yeah, but that requires an

7    actual order.

8            MR. WOODWARD:  It does require an order from

9    Your Honor.

10           THE COURT:  An actual judgment either on a

11   discrete legal issue, not just a, "Hey, please opine."

12           MR. WOODWARD:  And we think that the best

13   analogy -- and I apologize profusely for sort of dropping

14   this on the Court.

15           We think the best analogy would be in the

16   privilege context where an adverse ruling as to privilege

17   can be appealed even in a criminal context.  This is a

18   privilege case, so we would argue that the Court can certify

19   a ruling on privilege to the Court of Appeals interlocutory

20   so as to avoid the piercing of the privilege, which,

21   incidentally, may not be for him to testify.

22           THE COURT:  I don't understand how I can do that;

23   in other words, this isn't a question of scope of privilege,

24   whether he turned some documents over in the context of the

25   civil litigation.

1          My point is perhaps a basic one, which is that the

2     Department of Justice has taken the position that in certain

3     circumstances, Congress doesn't have the authority to compel

4     a senior aide.  They may say these aren't these

5     circumstances.  But that's their view.  That's been their

6     view for 50 years.

7          There is a dispute in this case about whether, in

8     fact, there was an invocation.  I don't think that's for me

9     to resolve.  I think that's a jury question.  I really do.

10          I mean, if it goes to the issue of authority, a

11     jury can decide whether there was an invocation.  We can

12     have a discussion at some point about what's an adequate

13     invocation.  And maybe, you know, if it's written on a

14     napkin, that may not be adequate; and they may not get an

15     instruction.

16          But if there's an adequate invocation, the

17     Department of Justice disputes that it was ever made, which

18     is what they have said right now, I don't know why a jury

19     doesn't decide that.  Why does an Article III judge get to

20     decide that in a criminal case?  This isn't a civil

21     litigation.

22          I mean, he can waive, but he's not waiving his

23     right to a jury trial.

24          MR. WOODWARD:  It's not too late.

25          But these are issues that we'll have to discuss

```
 1   with him, including what, as Your Honor observed, would be a
 2   difficult cross-examination.  And so we can't --
 3              THE COURT:  It would be a difficult
 4   cross-examination.
 5              MR. WOODWARD:  We cannot represent to the Court
 6   that he would absolutely testify.  But certainly that's one
 7   way to establish that the President had invoked executive
 8   privilege.  And as the Court points out, what does that mean
 9   and whether it's sufficient would be an issue that we'd have
10   to address.
11              And I think -- not I think.  I represent --
12              THE COURT:  We do this all the time in criminal
13   cases, right?  We make judgments about whether the evidence
14   is sufficient to draw a jury instruction.
15              MR. WOODWARD:  Yes.
16              THE COURT:  So, again, if somebody comes up and
17   says, "Self-defense," the judge has to determine whether
18   there is a "scintilla of evidence" to support the jury
19   instruction.
20              I'm going to have to do the same thing here, it
21   seems to me, potentially, with respect to the question of
22   invocation, because I think it goes to the authority of the
23   Committee to compel him to appear.
24              MR. WOODWARD:  Well, and that does raise the issue
25   of circumstantial evidence and the evidence that we have
```

1   proffered would be necessary to fully understand

2   Dr. Navarro's both state of mind and also the scope of the

3   President's --

4           THE COURT:  His state of mind is not relevant.

5           MR. WOODWARD:  -- and also the scope of the

6   President's invocation, because what the words mean could,

7   we submit, depend on what others understood from the same or

8   similar words.  And there's no --

9           THE COURT:  I don't know that it matters what

10  others think.  Either he invoked or he didn't.  And, you

11  know, if -- you know, we can talk about it -- you know, if

12  what you're proposing to say to me is that there's some

13  interlocutor, some representative, who's going to come in

14  and say, "I heard the President say X at the time and then I

15  conveyed that to Dr. Navarro," we should talk about that,

16  because I don't know whether, as an evidentiary matter,

17  that's appropriate.

18          MR. WOODWARD:  No.  I think -- I take

19  Your Honor's point.

20          I think what might happen is that the government

21  might claim fabrication or otherwise doubt the veracity of

22  Dr. Navarro's statements, in which case circumstantial

23  evidence of the President invoking executive privilege by

24  two dozen other former senior advisers would add veracity to

25  what Dr. Navarro's testimony is.

1          I mean, I don't want to sound whiny about this, to

2    quote my kids, but they called the letter fabricated.  Now,

3    I don't know why they believe that the letter was

4    fabricated.  I don't know why they use the word

5    "fabricated."  But they clearly doubt Dr. Navarro.  And

6    that's their prerogative.

7          THE COURT:  But let's not cast aspersions here.

8          The letter is clearly not fabricated in the sense

9    that somebody did write it.  Mr. Corcoran did write it.

10   Presumably, he consulted with his client before he wrote it.

11         But I'm going to go back to what I said in the

12   beginning.  It doesn't say what it needs to say.

13         MR. WOODWARD:  It doesn't say what it needs to

14   say, and it comes at a very convenient time for Mr. Navarro.

15   We appreciate all of that.

16         But you're right.  It's not fabricated.  I didn't

17   write the brief.  But when I put my name on the briefs that

18   I do write, I'm very careful about the words that I use.

19   They claim the letter was fabricated.  They're very likely

20   to claim that Dr. Navarro's testimony -- and they're going

21   to impeach him on that in their cross-examination of him.

22         THE COURT:  Correct.

23         MR. WOODWARD:  And so we submit we would have the

24   opportunity to bring in corroborating evidence of why

25   Dr. Navarro's testimony is not fabricated, and the dozens of

1    aides whose transcripts we have now seen all invoke the

2    executive privilege.  In fact, save one, everyone invokes

3    executive privilege, including those who are readily

4    identifiable as not fans of the former President,

5    nevertheless, invoking executive privilege.

6              THE COURT:  This goes to your issue of discovery.

7    I mean, I don't -- I mean if what you're suggesting is that

8    because the President has invoked as to others, Meadows,

9    Scavino, for example, the jury can infer that he invoked as

10   to Dr. Navarro, I don't think you can do that.

11             MR. WOODWARD:  No.

12             THE COURT:  Right.

13             MR. WOODWARD:  What I'm suggesting is that

14   circumstantial evidence of the President's invocation of

15   privilege would be relevant into assessing the credibility

16   of the direct evidence that does come in --

17             THE COURT:  Agreed.

18             MR. WOODWARD:  -- whether that's Dr. Navarro's

19   testimony or the President's testimony.

20             THE COURT:  Agreed.

21             But as to him.

22             MR. WOODWARD:  As to him.

23             THE COURT:  Right.  Not others.

24             MR. WOODWARD:  Right.

25             THE COURT:  Not others.

1          MR. WOODWARD:  As to him.

2          So when Dr. Navarro or when the President

3    testifies or some other interlocutory testifies, "There was

4    a conversation.  Executive privilege was invoked," and the

5    government comes up and says, "It wasn't invoked.  Look at

6    all those these other instances of you're either writing a

7    book or talking on a podcast or doing whatever in which you

8    didn't say executive privilege was," we don't think -- and

9    the government has said unequivocally, "It was not invoked."

10   They're sure of that.

11         THE COURT:  Right.

12         MR. WOODWARD:  We're incredulous as to how they

13   could be so certain of that without knowing or ever having

14   spoken to the President about the issue.

15         But the idea that it wasn't invoked is going to be

16   contradicted.  The idea that it wasn't invoked as to

17   Dr. Navarro is going to be contradicted by those others

18   vis-à-vis circumstantial evidence that we would put on.  Why

19   did these people put on evidence?

20         Mr. Cuccinelli was here yesterday without a

21   counsel, appeared before the Select Committee without a

22   counsel, asserting executive privilege.  Doesn't have a

23   lawyer, right?  That is a much more comparable scenario to

24   Dr. Navarro, who also was not represented by counsel before

25   the Select Committee, two individuals who understood there

```
1    have to be been an invocation of executive privilege.
2            That's different from Meadows and Scavino insofar
3    as they received letters from Mr. Clark directing them to
4    assert executive privilege.
5            THE COURT:  Right.
6            MR. WOODWARD:  But there are others who did not
7    receive those letters.
8            THE COURT:  We can have a longer conversation
9    about this in a moment.  But I'm not sure the circumstances
10   of others is terribly relevant to Dr. Navarro or would I
11   allow it, but we can talk about what you're proffering.
12           MR. WOODWARD:  That's different from what we're
13   entitled to, of course, also.  Whether you would allow it as
14   admissible in trial is different than the discovery
15   standard, but I don't want to -- I'll argue that as much as
16   the Court will allow me at the appropriate time.
17           As far as putting on a defense, we hear the Court,
18   you know.  If that is the way that the Court wishes to
19   proceed, then we'll put on a defense that executive
20   privilege was invoked.  I wouldn't stand before the Court
21   today or a few months ago and tell the Court that executive
22   privilege was invoked if I didn't believe that, if I didn't
23   believe we could prove it if given the opportunity.
24           THE COURT:  Okay.
25           MS. ALOI:  Your Honor, if I may respond briefly.
```

1          THE COURT:  Of course.  That's what we're

2    here for.

3          MS. ALOI:  So in your order and consistent with

4    both the defendant's briefing and the government's briefing,

5    no one disputed that it was the Court's responsibility

6    pretrial to determine whether a valid invocation of

7    privilege immunizes a person from prosecution.

8          So hypothetically speaking, what happens at trial

9    if the defendant puts on evidence that he invoked or that

10   there was a proper invocation and then the jury convicts

11   anyway?  What happens?

12         You could not have made a pretrial determination

13   on whether that invocation immunizes him from prosecution

14   or not.

15         THE COURT:  I'm sorry.  The hypothetical is he

16   testifies that the President invoked and the jury convicts.

17   Why?  Because the jury didn't believe him.

18         MS. ALOI:  But they -- but the opportunity to

19   resolve whether or not that immunized him from being there

20   altogether would not have arisen because there --

21         THE COURT:  Here's the thing.  I don't quite

22   understand why this is -- perhaps I'm making this -- maybe

23   I'm making it too complicated.

24         If they had given me some evidence in connection

25   with their Rule 12 that there was an invocation, I then

1     would have been confronted with the question of:  Was there

2     an invocation?  Can I credit the invocation?

3          And if I credit the invocation, was it the kind of

4     invocation that would have meant the Committee lacked the

5     authority and, therefore, I dismissed the case, right?

6          There was no evidence.

7          We're past the Rule 12 stage.  They can choose

8     whether to raise this kind of defense at the Rule 12 stage

9     or not.  That's up to them.  They failed in their burden of

10    proof at the Rule 12 stage.  That doesn't foreclose them

11    from raising it as a defense at trial.

12         MS. ALOI:  There's no law to support that premise

13    because they didn't.

14         THE COURT:  Because nobody has ever been

15    prosecuted in this situation.  I mean --

16         MS. ALOI:  Because it is the Court's

17    responsibility to decide on the facts if there was

18    invocation and if dismissal is appropriate.  Here there was

19    no invocation and, therefore, no dismissal.  That takes it

20    off the table as a defense at trial.

21         THE COURT:  Why?

22         MS. ALOI:  Because then the jury is being asked to

23    decide if there was an invocation.  And had there been one,

24    they couldn't convict.  But that's not the question they'll

25    be asked to decide.

1          We will never know if they then convict when it

2     should have been dismissed pretrial, because he's immune

3     from prosecution if there was an invocation on this

4     hypothetical set of facts.

5          THE COURT:  No, no, no.  It's not -- hang on.  I

6     don't know why this is -- maybe I'm simplifying it too much.

7          Say, hypothetically, he gets on the stand and

8     says, "I had a conversation with the President.  He told me

9     to invoke."  Right?

10          You get up and you will cross-examine him six ways

11     to Sunday about how that is entirely not true.

12          The jury will decide whether Dr. Navarro is

13     telling the truth or not, right?  They will have to make

14     that decision.

15          They will be instructed:  If you conclude that

16     there was an invocation by the President, that means the

17     Committee had no authority to subpoena him to appear.  They

18     lacked authority.  The government has not met that element

19     of proof.

20          What is wrong with that?

21          MS. ALOI:  So that is not how the authority

22     provision of the elements of contempt has been interpreted

23     in the past.

24          The issue you raised speaks to his immunity from

25     prosecution, not the committee's authority.

1          The case law about the authority component of the

2     elements of contempt speaks to whether or not the subpoena

3     was properly -- the subpoena on its face had checked all the

4     boxes and whether or not it sought information pertinent to

5     the inquiry.

6          THE COURT:  That's not true.

7          There are cases in which Circuit Courts and the

8     Supreme Court have overturned convictions where a committee

9     didn't have the authority, right?  They didn't have the

10    authority because they didn't check the right boxes, not

11    because the subpoena didn't have the right boxes checked,

12    but because, for example, Congress, a Committee says, part

13    of its rules -- we've talked about the rules issues -- in

14    order for this subcommittee to investigate a particular

15    issue, it has to be, you know, corrected by a vote of the

16    Committee, and there wasn't a vote of the full Committee.

17    The subcommittee didn't have the authority.

18          MS. ALOI:  So in those cases, I think they can be

19    distinguished here, because in those cases, it was the

20    authority in question was the authority to issue the

21    subpoena.

22          Here, the challenge to the committee's authority

23    is not on the basis of whether the subpoena was sort of

24    validly issued, but whether or not a third-party invocation

25    then immunizes the recipient of the subpoena.

1          The Committee is not asked to determine at the
2    time in which they authorized the subpoena whether or not
3    the person receiving it is immune from testimony.
4          THE COURT:  That's fine.
5          It's not the Committee's issue.  It's the question
6    of what the law provides, right?
7          The Committee doesn't have to determine whether --
8    I mean, the Committee -- look, presumably every time a
9    Congressional Committee issue a subpoena, it thinks it has
10   the authority to do it.  That doesn't necessarily mean it,
11   in fact, does.  That's ultimately for a Judge and a Court
12   and potentially a jury to decide.  Right?
13         The Department of Justice has taken the position
14   that if -- a Congressional Committee does not have the
15   authority, doesn't have the power to issue a subpoena to a
16   senior Presidential aide to appear.  That's your position.
17         I didn't make that up.  That's your position.
18         MS. ALOI:  Again, that's not our position today
19   here on these facts.  These are fact-driven inquiries.  It
20   is not our position here today.
21         THE COURT:  So let me ask you this.  Let me just
22   ask this question.  Say your investigation did turn up
23   evidence that there was an invocation by the President of
24   the United States, and you concluded that that was a
25   credible evidentiary determination, that, in fact, there

1    was some invocation.  Do you think he would be subject

2    to contempt?

3             MS. ALOI:  Your Honor, I cannot -- these are very

4    complicated issues.

5             THE COURT:  It's not that complicated.

6             You're the prosecutor.  You're standing up here on

7    behalf of the Department of Justice.  You have told me you

8    don't think there was an invocation, and that's the reason

9    he's been charged with contempt.

10            And I'm asking you:  If your investigation had

11   determined that there was an invocation and that there was a

12   credible invocation, would he be subject to contempt?

13            MS. ALOI:  Your Honor, in other situations in

14   which there was a credible invocation, the recipient of the

15   subpoenas showed up for their depositions and answered

16   question by question "invoked."

17            And so on these facts without nothing more,

18   without reaching the question of testimonial immunity and

19   having received no direction not to show up from the

20   President, only to honor the privilege, which is consistent

21   with what everyone else got -- nobody was directed not to

22   show up.  People were directed to honor the privilege and

23   they did.  They showed up for their depositions, and they

24   answered the questions one by one.

25            And that would be our expectation on these set of

1    facts, which actually speaks to the entrapment by estoppel

2    defense in part, because there was no -- I'm hypothetically

3    speaking because, again, there's no evidence of this.

4          But consistent with the letters that various

5    people have received, there was nothing in -- there's no

6    mistake of law to simply say, "Honor the privilege," because

7    that can be done without being in contempt because you

8    can -- people could have gone before the committee and

9    asserted the privilege.  It would be the direction not to

10   show up.

11         As we heard from Mr. Scavino and Mr. Meadows, from

12   the defendant, and from the defendant himself in the letter

13   from Mr. Corcoran, who didn't even represent the President

14   at the time, that's not what the letter says.

15         THE COURT:  Hang on.  All right.  You know, maybe

16   I'm splitting hairs here, but I'm now hearing you say that

17   it's not the Department of Justice's position that you don't

18   have to show up.  But I thought that was the position in the

19   OLC opinions, that you don't have to show.

20         MS. ALOI:  I think it is an over -- I'm not --

21         THE COURT:  Now, they may have showed, right?

22   They may have showed.  And I think there's plenty of legal

23   authority in the courts to say that they've got to show and

24   individually invoke.  But the OLC opinions say you don't

25   have to show.  Kellyanne Conway didn't have to show.

1          MS. ALOI:  Your Honor, admittedly, having read

2   your opinion, we weren't prepared here today to opine on the

3   OLC opinion.  So if I could have the Court's indulgence for

4   a moment.

5          THE COURT:  Sure.

6          (Government counsel conferred off the record.)

7          MR. CRABB:  Good morning, Your Honor.

8          THE COURT:  Hi, Mr. Crabb.

9          MR. CRABB:  John Crabb for the government.

10   Good.  How are you?

11          THE COURT:  Good.

12          MR. CRABB:  If I could just briefly try to explain

13   part of our position.

14          We do not believe that based on the circumstances

15   before the Court here and I believe the salient

16   circumstances would be former President Trump's status at

17   the time the subpoena was issued, Mr. Navarro's status at

18   the time the subpoena was issued, and Mr. Navarro's position

19   in the Trump administration, we're not -- we don't believe

20   that the Department's position is there's testimonial

21   immunity under those circumstances.

22          And that's something that, if I understood the

23   Court correctly to have said a moment ago, that if the

24   defense were to present evidence that there was an

25   invocation of executive privilege, that that would mean they

 1   must acquit.

 2          We would like an opportunity to brief that.  We

 3   don't believe that's true.  We don't believe that would be

 4   tantamount to testimonial immunity.

 5          We believe that even if the jury were to believe

 6   that the former President had invoked executive privilege,

 7   that Mr. Navarro would still have had to provide a subpoena

 8   log, would still have had to attend the deposition, and

 9   would still have had to invoke question by question where

10   appropriate.

11          THE COURT:  So let me ask you this:  When you say

12   he had to appear, is that because you don't think an

13   absolute testimonial immunity applied to him?

14          MR. CRABB:  Correct, Your Honor, and if I may

15   just -- may I elaborate briefly on that?

16          THE COURT:  Yes, and just tell me why.  Because,

17   again, I keep referring to this Kellyanne Conway OLC

18   opinion.  She didn't have to appear.  So I want to know why

19   you're telling me that Dr. Navarro had to appear to invoke.

20          MR. CRABB:  And that's why if the Court will

21   indulge me a bit, I will be the first to admit that these

22   are very complicated, very nuanced issues.  And I do not

23   want to pretend to speak for OLC off the cuff before the

24   Court at this moment.

25          But I don't believe that the situation before the

1    Court involving Mr. Navarro and the former President has

2    been specifically addressed by OLC.  I think that's a more

3    complicated question.  And we would like an opportunity to

4    confer with the true experts.  And, like I said, I do not

5    want to off the cuff stand here and pretend to represent or

6    explain OLC's position across this important and complicated

7    landscape.

8             THE COURT:  Okay.

9             So then the question to me then, it seems to be,

10   is it your view that whether he was entitled to actual

11   testimonial immunity, that is, he didn't have to show,

12   whether the circumstances would support that defense is

13   something I would need to decide pretrial?

14            In other words, for example, if your position were

15   he wasn't a senior adviser, or your position were this

16   wasn't a subpoena with respect to official acts, is that

17   something I would have to decide pretrial in order to

18   determine whether he had an entitlement to that immunity so

19   that the jury could decide the factual predicate question of

20   whether there was an invocation?

21            MR. CRABB:  For the most part, yes, Your Honor.

22   And I don't at all mean to split hairs, but I believe that

23   we would need to -- I would ask for an opportunity to

24   present our legal position on what the impact would be, even

25   if the jury were to believe that the former President had

1    invoked the executive privilege.

2              And I understand this is, I think, a point the

3    Court has made several times this morning.  This is a mixed

4    question.  Some of the parameters of the issue I just

5    identified would be affected by what the evidence is that

6    actually came before the Court and the jury.

7              But I do think there would be an important and

8    maybe somewhat complicated legal issue for the Court to sort

9    through as to what the ramifications and, therefore, the

10   instruction to the jury would be if there was an invocation.

11   We don't think it's necessarily as simple as, if an

12   invocation, case over.

13             THE COURT:  Okay.  I mean, that may be.  I mean,

14   I'm not disputing that it maybe is a more complicated

15   question.  But I guess what I would ask you -- and maybe you

16   don't have the answer to that right now.  Let's leave

17   Dr. Navarro out of this.

18             MR. CRABB:  I'm sorry, Your Honor?

19             THE COURT:  Let's leave Dr. Navarro out of this

20   for a moment.  But is there a world, in your view, in which

21   Congress subpoenas a senior executive to the President,

22   former senior executive to a former President, and that

23   person is immune from providing testimony and, therefore,

24   cannot be subject to a contempt prosecution?

25             MR. CRABB:  Your Honor, I'm pausing because I have

1    to beg indulgence to the Court.

2            I am not in a position and am not fully familiar

3    with all the OLC opinions and the nuances to answer the

4    Court's question accurately and, in particular, as a

5    representative of the Department at this moment.  I would

6    ask for you to give us some period of time to respond to

7    that after proper consultation.

8            THE COURT:  Okay:  Okay.  Fair enough.

9            MR. CRABB:  Thank you for the indulgence.

10           THE COURT:  You've got five minutes.  I'm joking.

11   Have a seat.  You can have a seat, Mr. Crabb.

12           MR. CRABB:  Thank you, Your Honor.

13           THE COURT:  All right.  Where do we go from here?

14   Just let's just sort of summarize where I think I am and

15   what I hear the parties saying, and then we'll figure out

16   what we're going to do.

17           I'm of the view, as I said at the start of this,

18   that, one, the government bears the burden of proving beyond

19   a reasonable doubt that Congress had the authority to issue

20   a subpoena that would compel him to testify or produce

21   documents.  That authority element, in my view, goes beyond

22   pertinency.  It goes beyond compliance with the rules.  It

23   goes fundamentally to the question of whether the

24   Constitution permits Congress to issue a subpoena.  In 99

25   out of 100 cases, that's not an issue.

1         It is an issue in this case for one reason and one

2    reason alone, because the Department of Justice for

3    50 years, whether rightly or wrongly, has stood by the

4    position that Congress does not have the authority, due to

5    the separation of powers, to compel a senior aide of a

6    President of the United States, whether that person be a

7    former aide and whether, perhaps, that person is the former

8    aide of a former President, they don't have the authority to

9    do that, that the person who was the aide has testimonial

10   immunity.  They do not have to show up, and they cannot be

11   held in contempt for not showing up.

12        The predicate, it seems to me, to that outcome is:

13   Was there an invocation of executive privilege?  Was there

14   an invocation?

15        In this case, the government says, "No, there

16   was not."

17        Dr. Navarro's case seems to be, or at least he's

18   alluding to the possibility, that there was.

19        I think that's a question for the jury.

20        Now, what I've just heard the prosecutor say is,

21   "Judge, even if we learned in the course of our

22   investigation that there was an invocation, we don't think

23   testimonial immunity applied to Dr. Navarro; and, therefore,

24   he can still be subject to contempt for not showing up."

25        Okay.  That's an issue, it seems to me, that needs

1   to be fleshed out a little bit more.  And I need to

2   understand why, because if that's your position,

3   Department of Justice, it does seem to me appropriate for

4   that to be resolved pretrial.

5          I don't think a jury should be asked to determine

6   as a legal matter whether Dr. Navarro was entitled to

7   testimonial immunity.  They can decide questions of fact

8   upon which testimonial immunity is predicated, like was

9   there an invocation?  That's a pretty simple thing for them

10  to determine.

11         But I don't think they can determine the legal

12  consequences of an invocation within particular

13  circumstances.  I think that's a legal question for the

14  Court to decide pretrial, because if the circumstances are

15  met and I tell the jury the circumstances are met, that's

16  one instruction.  And if they aren't met, then maybe they

17  don't get an instruction at all.

18         Make sense?

19         MR. CRABB:  Your Honor, it does.  And we agree

20  with that, the tiering of the decision tree, if that's the

21  right analogy.

22         THE COURT:  And, by the way, you can tell me I'm

23  full of it.  I may be wrong completely.  You can tell

24  me that.

25         MR. CRABB:  I won't need to take advantage of that

1    leave.  Thank you, Your Honor.

2            We do agree with it and that there would be a

3    legal question for the Court to decide what the implications

4    would be if the jury were to determine that there had been

5    an invocation by former President Trump.

6            Could I just -- I don't mean to belabor it.  Could

7    I clarify one thing?

8            I didn't mean to say that, standing here today, I

9    know that the Department's position is that there would not

10   be testimonial immunity on these facts.

11           What I meant to say was:  This is something that

12   we're asking for the opportunity to look into more clearly.

13           THE COURT:  I understood that.

14           MR. CRABB:  Okay.  I just wanted to be able to

15   go home.

16           THE COURT:  I understood that completely.

17           MR. CRABB:  Thank you.

18           THE COURT:  Which I think is probably news to the

19   gentlemen on this side of the room.

20           Okay.

21           Look, you know, it was not my intention to come in

22   here and vacate a trial date, but I guess that's what we'll

23   have to do.

24           Mr. Crabb, how much time do you think you need to

25   get back to me in writing?

1          MR. CRABB:  And, Your Honor, just to clarify, this

2    will be a pleading to explain to the Court the government's

3    position on what the legal ramifications would be if there

4    had been an invocation of executive privilege by former

5    President Trump?

6          THE COURT:  Broadly speaking, yes.  But feel free

7    to tell me that, after you've had time to consult and think

8    about it, that an invocation, an actual invocation, is not a

9    defense.  I mean, you can take that position.

10         You can tell me that even if it is a defense, it's

11   a defense that can only be determined by a court in advance

12   and it's not a jury question, although I don't think that's

13   probably right.  But you can tell me that if you think

14   that's your position.

15         And then you can tell me what you just talked

16   about, which was that even if there was an invocation, why

17   he wasn't immune.

18         MR. CRABB:  May I have just a moment, Your Honor,

19   please?

20         THE COURT:  Yes.

21         MR. CRABB:  Thank you, Your Honor.

22         We certainly are interested in this moving

23   forward, and we understand and are disappointed that the

24   trial date has been vacated.

25         We also understand, as I've tried to say, some of

```
1    these issues are rather complicated and will involve some
2    discussion and review.  So could we have a month to submit
3    our pleading?
4              THE COURT:  Sure.
5              MR. CRABB:  Thank you.
6              THE COURT:  I don't have anything else to do.
7              MR. CRABB:  That's what I hear.
8              THE COURT:  Okay.
9              And then I assume defense will want an opportunity
10   to respond.  And so if the government's files something --
11   let's see.  Today is the 27th of January.  February 27th,
12   we'll get something from the government.  Why don't we just
13   make it February 28th.
14             Mr. Woodward, how much time do you want,
15   three weeks, two weeks?  You'll be in trial with me,
16   potentially, still.
17             MR. WOODWARD:  I will most certainly be in trial
18   with you, Your Honor, so we'll take as much time as the
19   Court would allow.
20             THE COURT:  You've got a lot of other folks over
21   there who can do the laboring for you while you're --
22             MR. WOODWARD:  One could hope, Your Honor.
23             THE COURT:  All right.  Why don't we just say the
24   21st for now.  And then if you need more time, you'll let
25   me know.
```

1          And if the government wants a reply, it can reply

2    by the 28th.  And we can figure out the schedule from there.

3    Why don't you put a reply date of the 31st.

4          All right.  Look, I guess the last thing I want to

5    discuss before we adjourn, I mean, we've talked a fair

6    amount about this issue.  The other issue that we touched

7    upon briefly was the question of entrapment by estoppel and

8    what that would look like and whether there needs to be some

9    sort of pretrial proffer.

10          I guess what I would say is as follows:  I don't

11    think the rules specifically require a disclosure of an

12    entrapment by estoppel offense.  It does for public

13    authority.

14          That said, they are sort of kindred spirits to one

15    another with some difference.  And so I do think, now that I

16    reflect on this, that it is probably fair to the government

17    that if Dr. Navarro is going to, in fact, assert an

18    entrapment by estoppel defense, it provide notice to the

19    government that he's doing that and provide the basis for

20    that defense.

21          And so given that we have some time now, I'll ask

22    the government -- and I'll ask the defense that if they are

23    going to intend to do so, that they provide that notice in

24    30 days, by the 28th of February, okay?

25          All right.  Anything else you want to talk about?

```
 1   Jury selection?
 2           All right.  We'll see you all when we see you, we
 3   look forward to receiving your submissions.
 4           Thanks.
 5           MR. WOODWARD:  I'm sorry, Your Honor.  Do you want
 6   to pick a next date?
 7           THE COURT:  No.  I'll just wait for the pleadings
 8   to be submitted, and I'll have everybody back in after that.
 9           MR. WOODWARD:  Thank you, Your Honor.
10           THE COURT:  All right?
11           COURTROOM DEPUTY:  All rise.
12           THE COURT:  Thank you.  Do not wait for me,
13   everybody.  Thank you.
14           COURTROOM DEPUTY:  This court stands in recess.
15           MS. ALOI:  Your Honor, do we need to exclude time
16   under the Speedy Trial Act?
17           MR. WOODWARD:  We will waive.
18           THE COURT:  Thank you for the reminder.
19           MR. WOODWARD:  I think these are pretrial briefs.
20           THE COURT:  I'm sorry?
21           MR. WOODWARD:  I think these are pretrial briefs.
22           MS. ALOI:  But there's nothing -- well, I guess
23   there is a motion in limine pending, so that would
24   potentially trigger it.  But I guess at least if we could
25   exclude time until the first brief is due.
```

1          MR. WOODWARD:  Sure, until the 28th.

2          MS. ALOI:  Yeah.

3          THE COURT:  So we'll exclude time through the 28th

4    under the Speedy Trial Act.  I think the ends of justice

5    outweigh the interests of the public and the defendant in a

6    speedy trial; specifically, affording the parties additional

7    time to vet these issues that we've talked about today

8    warrants the exclusion of time.

9          Thank you, everybody.

10          COURTROOM DEPUTY:  This Court stands in recess.

11          (Proceedings concluded at 10:46 a.m.)

C E R T I F I C A T E

       I, William P. Zaremba, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.


Date:__January 28, 2023_____     

       William P. Zaremba, RMR, CRR

**COURTROOM
DEPUTY: [5]** 3/2 3/7
78/11 78/14 79/10
**MR. CRABB: [19]** 67/7
67/9 67/12 68/14 68/20
69/21 70/18 70/25 71/9
71/12 73/19 73/25
74/14 74/17 75/1 75/18
75/21 76/5 76/7
**MR. WOODWARD:
[54]** 3/25 13/12 13/15
18/5 19/20 20/5 20/19
21/2 23/9 23/15 24/10
24/20 25/8 44/3 44/9
45/20 46/5 46/17 47/22
48/13 49/4 50/9 50/14
51/10 51/16 51/19 52/2
52/8 52/12 53/24 54/5
54/15 54/24 55/5 55/18
56/13 56/23 57/11
57/13 57/18 57/22
57/24 58/1 58/12 59/6
59/12 76/17 76/22 78/5
78/9 78/17 78/19 78/21
79/1
**MS. ALOI: [56]** 25/13
26/1 27/2 27/7 28/11
29/12 30/11 31/1 31/23
32/4 32/6 32/19 33/2
33/11 33/23 34/3 34/11
35/7 35/14 36/9 37/1
37/18 38/1 38/3 38/13
38/16 38/20 39/5 39/23
40/3 40/17 40/25 41/9
41/22 42/4 42/9 42/12
43/10 43/18 44/1 59/25
60/3 60/18 61/12 61/16
61/22 62/21 63/18
64/18 65/3 65/13 66/20
67/1 78/15 78/22 79/2
**THE COURT: [128]**

**.**
**.Crabb [1]** 1/17

**1**
**100 [2]** 26/4 71/25
**103 [1]** 5/19
**10:46 [1]** 79/11
**12 [9]** 15/18 16/25
17/15 17/16 23/1 60/25
61/7 61/8 61/10
**1292 [1]** 51/11
**1455 [1]** 2/3
**161 F.Supp.3d 199 [1]**
9/15
**170 F.2d 273 [1]** 10/20
**171 F.2d 986 [1]** 10/19
**18 [1]** 8/14
**18 U.S.C [1]** 9/11
**18 U.S.C. 2001 [1]** 9/12
**1808 [1]** 2/15
**192 [2]** 27/17 28/1
**1929 [1]** 10/24
**1948 [1]** 10/19
**1950 [1]** 10/25
**1961 [1]** 10/22

**1978 [1]** 8/12
**1980 [2]** 9/13 12/8
**1984 [1]** 23/25
**199 [1]** 9/15

**2**
**200 [3]** 1/4 3/8 12/8
**20001 [1]** 2/21
**20003 [1]** 1/15
**20004 [1]** 2/4
**2001 [1]** 9/12
**20010 [1]** 2/15
**2014 [1]** 5/14
**202 [4]** 1/16 2/12 2/16
2/21
**2023 [3]** 1/5 5/22 80/7
**207 [1]** 10/22
**20854 [1]** 2/12
**211 [1]** 9/12
**213 [1]** 9/12
**21st [1]** 76/24
**22-200 [2]** 1/4 3/8
**22039 [1]** 2/8
**23rd [1]** 5/22
**248 [1]** 9/15
**252-7212 [1]** 1/16
**258-6597 [1]** 2/12
**263 [1]** 10/24
**27 [1]** 1/5
**273 [1]** 10/20
**279 U.S. 263 [1]** 10/24
**27th [2]** 76/11 76/11
**28 [1]** 80/7
**28th [5]** 76/13 77/2
77/24 79/1 79/3
**294 F.2d 207 [1]** 10/22

**3**
**30 days [1]** 77/24
**301 [1]** 2/4
**31st [1]** 77/3
**323 [1]** 10/25
**3249 [1]** 2/1
**333 [1]** 2/20
**339 U.S.C. 323 [1]**
10/25
**34 [1]** 42/13
**354-3249 [1]** 2/21
**3d [1]** 5/14

**4**
**400 [1]** 2/3
**402-8800 [1]** 2/8
**491 F.Supp [1]** 9/12
**4th [1]** 1/15

**5**
**50 [2]** 26/9 53/6
**50 years [1]** 72/3
**54 [2]** 4/25 5/2
**555 [1]** 1/15
**5670 [1]** 2/4
**587 F.2d 589 [1]** 8/15
**589 [1]** 8/15

**6**
**61 F.Supp 3d [1]** 5/14
**635 F.2d 200 [1]** 12/8

**6th [1]** 30/3

**7**
**703 [1]** 2/8
**7212 [1]** 1/16
**7447 [1]** 2/16

**8**
**807-5670 [1]** 2/4
**8639 [1]** 2/7
**8800 [1]** 2/8

**9**
**97 [1]** 10/18
**986 [1]** 10/19
**99 [1]** 71/24
**996-7447 [1]** 2/16
**9:00 [1]** 1/6

**A**
**a.m [2]** 1/6 79/11
**ability [2]** 20/14 26/18
**able [2]** 74/14
**about [68]** 3/24 4/10
6/10 9/24 13/23 15/16
15/17 15/19 15/21
16/10 16/13 18/11 21/9
21/20 21/21 21/23 22/8
22/9 22/13 22/20 23/12
27/7 29/2 29/8 29/10
30/1 30/2 30/4 30/5
30/7 30/8 31/9 34/18
34/19 34/20 35/19
41/14 44/17 45/16 46/1
46/9 46/16 46/25 47/1
47/5 47/8 47/18 48/5
49/14 50/19 53/7 53/12
54/13 55/11 55/15 56/1
56/18 58/14 59/9 59/11
62/11 63/1 63/13 75/8
75/16 77/6 77/25 79/7
**above [2]** 6/2 80/4
**above-titled [1]** 80/4
**absence [1]** 26/25
**absent [3]** 39/9 42/21
47/20
**absolute [2]** 48/1 68/13
**absolutely [1]** 54/6
**accident [1]** 40/21
**accommodation [1]**
11/8
**Accordingly [1]** 5/24
**accuracy [1]** 47/14
**accurate [1]** 7/3
**accurately [1]** 71/4
**accused [2]** 19/12
50/12
**Acknowledging [1]**
6/14
**acquit [1]** 68/1
**across [1]** 69/6
**act [4]** 29/20 30/9
78/16 79/4
**acts [11]** 8/20 22/9
22/9 22/14 27/8 28/15
29/8 29/10 29/11 29/21
69/16
**actual [8]** 21/24 22/24

**6th [1]** 30/3
**69/10 75/8
**actual order [1]** 52/7
**actually [9]** 6/6 7/10
9/10 10/1 23/16 32/2
43/1 66/1 70/6
**ad [1]** 14/6
**add [2]** 12/13 55/24
**additional [4]** 25/20
41/25 42/21 79/6
**address [2]** 4/3 54/10
**addressed [1]** 69/2
**addresses [1]** 52/14
**adequate [4]** 11/4
53/12 53/14 53/16
**adjourn [1]** 77/5
**administration [1]**
67/19
**Administrator [1]**
44/19
**admissible [2]** 46/13
59/14
**admit [1]** 68/21
**admittedly [1]** 67/1
**advance [2]** 39/6 75/11
**advantage [1]** 73/25
**adversarial [2]** 5/9
5/17
**adverse [1]** 52/16
**advise [1]** 45/4
**advised [3]** 20/10
20/23 40/8
**adviser [6]** 7/19 10/4
23/22 27/24 44/16
69/15
**advisers [4]** 5/25 34/16
44/16 55/24
**advisory [1]** 33/6
**affected [1]** 70/5
**affidavit [1]** 8/22
**affirmatively [1]** 39/8
**affording [1]** 79/6
**after [5]** 10/2 19/16
71/7 75/7 78/8
**again [15]** 11/2 16/16
21/7 24/5 31/19 34/23
38/5 40/9 41/12 48/11
51/12 54/16 64/18 66/3
68/17
**against [3]** 9/4 9/8 12/7
**ago [2]** 59/21 67/23
**agree [7]** 4/23 26/12
39/12 40/24 41/2 73/19
74/2
**Agreed [2]** 57/17 57/20
**agrees [1]** 24/15
**ahead [1]** 4/9
**aide [15]** 6/15 6/24
22/5 22/8 22/12 26/15
26/23 27/5 32/16 53/4
64/16 72/5 72/7 72/8
72/9
**aided [1]** 2/23
**aides [4]** 7/11 14/25
48/25 57/1
**akin [1]** 34/13
**all [42]** 3/2 3/3 3/15
3/21 4/7 6/4 7/14 10/17

69/10 75/8
**actual order [1]** 52/7
(continued — right columns)
**30/11 31/10 34/7 34/15
36/1 37/23 38/11 40/9
42/18 45/22 47/18
49/19 49/23 54/12
56/15 57/1 58/6 63/3
66/15 69/22 71/3 71/13
73/17 76/23 77/4 77/25
78/2 78/2 78/10 78/11
**all right [3]** 19/22 28/5
78/10
**alleged [2]** 11/12 29/20
**allow [4]** 59/11 59/13
59/16 76/19
**allowed [1]** 34/9
**alluding [1]** 72/18
**Aloi [3]** 1/13 3/10 25/12
**alone [3]** 5/20 8/20
72/2
**along [2]** 49/19 49/23
**already [1]** 31/10
**also [22]** 4/2 8/8 12/6
20/9 24/3 24/18 27/7
27/22 28/25 37/12
39/13 42/23 45/4 48/16
50/10 51/2 52/3 55/2
55/5 58/24 59/13 75/25
**alternative [2]** 4/20
16/23
**although [2]** 9/18
16/24 75/12
**altogether [1]** 60/20
**always [2]** 19/20 43/8
**am [6]** 33/11 48/13
48/16 71/2 71/2 71/14
**Amendment [2]** 17/19
17/23
**AMERICA [3]** 1/3 3/9
50/12
**AMIT [2]** 1/10 3/4
**amount [1]** 77/6
**analogous [2]** 8/8 9/23
**analogy [5]** 43/5 52/3
52/13 52/15 73/21
**Ann [1]** 1/13
**Anne [1]** 44/25
**Anne Gorsuch [1]**
44/25
**another [2]** 12/13
77/15
**answer [7]** 3/25 12/21
25/5 27/18 43/8 70/16
71/3
**answered [2]** 65/15
65/24
**anticipate [1]** 19/5
**any [16]** 3/25 4/3 6/6
9/8 11/3 11/11 14/19
15/11 20/18 30/5 39/9
39/13 43/1 43/7 48/18
50/9
**Anybody [1]** 3/23
**anybody's [1]** 29/4
**anything [4]** 13/21
44/15 76/6 77/25
**anyway [1]** 60/11
**anywhere [1]** 18/4
**AP [1]** 44/17

**A**

apart [1] 18/14
apologize [1] 52/13
apparent [1] 29/9
apparently [1] 49/5
appeal [1] 52/1
appealed [1] 52/17
Appeals [6] 51/5 51/9
51/10 51/13 51/22
52/19
appear [20] 10/7 11/12
11/22 13/8 18/3 22/5
22/8 26/23 27/15 27/25
34/10 38/10 41/5 45/7
54/23 62/17 64/16
68/12 68/18 68/19
APPEARANCES [2]
1/12 1/18
appeared [1] 58/21
appearing [3] 3/13
16/22 35/22
appellate [1] 16/19
applicable [1] 44/23
application [1] 14/20
applied [4] 10/1 23/20
68/13 72/23
applies [2] 8/7 28/14
apply [2] 20/25 36/10
apply here [1] 20/25
appreciate [3] 13/17
13/22 56/15
appreciates [1] 51/3
apprehension [2] 5/11
5/18
appropriate [7] 25/22
41/11 55/17 59/16
61/18 68/10 73/3
apt [2] 11/15 43/5
are [48] 4/4 7/15 8/23
9/16 15/17 16/17 20/15
27/2 29/21 32/22 32/25
33/5 33/6 33/25 34/3
34/20 35/16 35/17
36/17 36/25 38/12 40/4
41/25 42/4 44/6 44/13
45/20 48/8 50/14 50/20
50/21 53/25 57/3 59/6
63/7 64/19 65/3 67/10
68/22 73/14 73/15
75/22 75/23 76/1 77/14
77/22 78/19 78/21
aren't [2] 53/4 73/16
argue [2] 52/18 59/15
argued [1] 10/2
argument [18] 4/7 4/8
10/8 11/2 13/19 13/25
14/3 14/18 15/9 17/22
19/15 23/17 23/20
24/21 29/6 44/22 51/2
52/3
arguments [2] 7/14
21/11
arisen [1] 60/20
arises [2] 7/5 8/9
Article [1] 53/19
Article III [1] 53/19
as [104]
aside [1] 7/13
37/13 39/1 41/18 45/13
50/17 51/10 64/21
64/22 68/11 69/23
70/15 71/6 77/21 77/22
asked [18] 4/12 4/16
7/1 26/10 27/7 27/10
27/12 28/12 29/10 30/3
30/4 34/18 34/20 36/15
61/22 61/25 64/1 73/5
asking [5] 9/21 26/5
33/18 65/10 74/12
asks [1] 4/20
aspersions [1] 56/7
assert [4] 4/22 6/1 59/4
77/17
asserted [3] 9/17 15/23
66/9
asserting [3] 7/24 8/16
58/22
assertion [4] 8/3 20/13
32/1 32/1
assessing [1] 57/15
assume [1] 76/9
attach [1] 34/14
attempt [1] 9/3
attend [1] 68/8
Attorney [1] 8/24
ATTORNEY'S [1] 1/14
authority [32] 22/11
22/15 26/15 26/19
26/22 26/25 31/21 39/7
39/13 53/3 53/10 54/22
61/5 62/17 62/18 62/21
62/25 63/1 63/9 63/10
63/17 63/20 63/20
63/22 64/10 64/15
66/23 71/19 71/21 72/4
72/8 77/13
authorized [1] 64/2
available [4] 26/2
34/14 34/15 42/15
Avenue [2] 2/3 2/20
avoid [3] 8/10 11/22
52/20
aware [1] 11/11
away [1] 38/9

**B**

back [10] 10/17 20/12
23/25 24/5 43/4 51/12
51/22 56/11 74/25 78/8
background [1] 14/11
backwards [1] 37/19
bank [1] 30/1
Bannon [1] 24/19
bare [2] 20/7 20/9
barred [1] 25/3
Barrett [1] 2/20
based [9] 8/1 13/5
17/21 26/17 27/15
28/20 37/25 39/19
67/14
basic [1] 53/1
basis [5] 11/11 41/15
42/24 63/23 77/19
be [135]
bear [1] 11/3 38/14
bears [6] 4/17 4/18 8/2
17/1 17/2 71/18
because [57] 10/4 11/3
12/9 12/15 12/17 12/23
15/23 15/24 16/3 20/8
23/6 23/12 28/8 29/23
30/14 32/11 33/13
33/16 34/23 36/7 36/22
37/1 37/13 39/18 40/9
41/23 43/23 44/6 48/14
48/17 49/2 50/20 54/22
55/6 55/16 57/8 60/17
60/20 61/13 61/14
61/16 61/22 62/2 63/10
63/11 63/12 63/19 66/2
66/3 66/6 66/7 68/12
68/16 70/25 72/2 73/2
73/14
become [1] 17/4
becomes [1] 17/7
been [44] 5/19 7/14
11/15 14/12 16/18 17/3
18/17 19/13 20/3 21/14
22/2 23/17 23/17 23/24
24/13 24/17 24/23 25/2
26/3 30/4 34/5 35/1
35/17 36/15 36/21
36/22 42/2 43/8 49/18
49/23 51/4 51/15 53/5
59/1 61/1 61/14 61/23
62/2 62/22 65/9 69/2
74/4 75/4 75/24
before [56] 1/10 7/22
12/4 12/11 13/7 13/25
14/15 14/16 16/7 19/12
19/16 21/12 21/17 22/8
22/13 22/16 23/5 24/21
26/3 26/16 27/15 29/2
29/14 30/6 30/12 32/17
34/22 35/19 36/15 39/2
41/14 41/21 43/1 43/20
44/7 45/21 47/9 47/20
49/12 50/16 50/25 51/3
51/4 51/6 51/7 52/1
56/10 58/21 58/24
59/20 66/8 67/15 68/23
68/25 70/6 77/5
beg [1] 71/1
beginning [1] 56/12
behalf [6] 6/1 6/16 6/25
14/14 15/6 65/7
being [12] 9/16 9/17
26/10 27/7 32/4 34/18
34/20 40/1 41/4 60/19
61/22 66/7
belabor [1] 74/6
belief [11] 4/21 10/11
10/14 11/19 18/2 18/13
18/24 40/22 41/4 48/11
48/14
believe [16] 20/5 27/22
56/3 59/22 59/23 60/17
67/14 67/15 67/19 68/3
68/3 68/5 68/5 68/25
69/22 69/25
believed [2] 15/5 18/1
believes [1] 9/6
bench [1] 14/2
best [3] 50/10 52/12
52/15
between [5] 11/8 17/19
24/1 31/14 50/20
beyond [6] 22/17 29/21
29/21 71/18 71/21
71/22
Biden [1] 20/22
Biden's [1] 20/22
bit [5] 39/24 44/14 52/3
68/21 73/1
blanket [2] 31/25 32/10
bones [2] 20/7 20/9
book [2] 34/19 58/7
bore [1] 29/23
borrowed [1] 5/2
both [3] 8/5 55/2 60/4
bottom [2] 9/16 50/3
bound [1] 25/10
boxes [2] 63/4 63/10
63/11
Branch [3] 11/9 11/10
15/7
branches [1] 14/15
Brand [6] 2/10 2/11
2/14 3/11 13/23 14/6
brandwoodwardlaw.c
om [1] 2/17
breadth [1] 25/15
brief [5] 31/4 49/13
56/17 68/2 78/25
briefed [1] 30/12
briefing [5] 14/22
25/20 43/21 60/4 60/4
briefly [4] 59/25 67/12
68/15 77/7
briefs [3] 56/17 78/19
78/21
bring [3] 31/18 33/16
56/24
bringing [1] 34/22
Broadly [1] 75/6
brought [1] 45/11
Bryan [2] 10/25 11/15
bullet [1] 42/1
burden [24] 4/18 7/18
8/2 8/6 8/20 9/1 9/19
9/20 9/22 11/3 11/6
13/1 13/4 15/17 15/18
15/19 16/2 16/12 17/1
17/2 38/14 38/17 61/9
71/18
20/20 42/7 42/7 42/18
43/16 44/17 47/18
51/10 52/17 52/18
52/22 53/11 53/11
53/22 55/11 57/9 57/10
59/8 59/11 61/2 61/7
63/18 66/7 66/8 71/11
72/24 73/7 73/11 73/22
73/23 75/9 75/10 75/11
75/13 75/15 76/21 77/1
77/2
can't [7] 23/17 32/6
33/7 33/8 33/11 37/13
54/2
candidly [3] 19/10
45/25 50/20
cannot [11] 14/8 23/21
27/16 40/22 44/22 45/1
47/25 54/5 65/3 70/24
72/10
careful [1] 56/18
carrier [1] 45/21
carries [2] 49/21 49/22
case [47] 8/7 10/7 7/20
7/23 7/25 8/5 8/12 9/10
9/12 9/14 11/24 12/1
12/9 13/3 14/10 14/16
14/23 16/16 16/18
19/11 19/16 21/9 22/17
23/1 23/13 32/12 32/23
34/9 35/15 35/24 38/25
41/19 42/6 44/21 44/24
45/24 51/12 52/18 53/7
53/20 55/22 61/5 63/1
70/12 72/1 72/15 72/17
cases [8] 9/16 10/13
43/6 54/13 63/7 63/18
63/19 71/25
cast [1] 56/7
caught [1] 49/17
certain [4] 25/18 32/20
53/2 58/13
certainly [7] 6/21 16/16
18/10 33/2 54/6 75/22
76/17
certainty [1] 48/1
Certified [1] 2/19
certify [4] 51/11 51/21
52/18 80/2
cetera [2] 8/14 9/12
CH [1] 2/20
challenge [1] 63/22
challenging [1] 47/13
chance [1] 38/18
change [4] 5/12 5/19
13/15 18/9
changed [1] 32/19
character [1] 48/24
characterized [2]
44/14 46/17
charge [3] 16/22 36/14
47/17
charged [1] 65/9
charges [2] 4/15 12/11
chase [2] 2/7 11/18
check [1] 63/10
checked [2] 63/3 63/11
choose [2] 17/19 61/7

**C**

chose [1] 17/22
Circle [1] 2/7
Circuit [6] 8/12 8/15
9/10 10/13 12/8 63/7
Circuit's [1] 8/4
circumstance [1]
12/12
circumstances [19]
25/19 27/3 32/20 32/24
34/8 35/13 35/16 36/23
51/24 53/3 53/5 59/9
67/14 67/16 67/21
69/12 73/13 73/14
73/15
circumstantial [6]
18/23 49/11 54/25
55/22 57/14 58/18
citation [2] 7/3 24/4
cite [1] 24/20
cited [2] 8/4 29/18
cites [2] 11/23 12/6
citing [3] 6/12 6/23 7/9
civil [6] 4/25 5/3 16/17
52/5 52/25 53/20
Civil Rules [1] 5/3
claim [5] 42/24 45/9
55/21 56/19 56/20
claimed [1] 29/15
claiming [1] 8/1
clarify [2] 74/7 75/1
clarifying [1] 13/13
Clark [1] 59/3
classic [1] 41/17
Clause [4] 8/10 9/19
9/20 14/3
clear [18] 9/24 10/13
12/13 15/10 15/21 17/8
17/21 21/8 23/16 26/4
27/9 29/25 32/14 33/5
35/19 37/16 48/9 49/19
clear-cut [1] 29/25
clearly [8] 8/6 16/16
22/9 24/14 46/3 56/5
56/8 74/12
client [1] 56/10
cloaked [1] 10/5
close [2] 34/17 48/25
closest [1] 34/15
co [1] 14/15
co-equal [1] 14/15
COLUMBIA [2] 1/1
1/14
come [22] 7/21 8/2
12/15 14/16 16/1 16/2
17/11 19/6 19/11 21/16
22/12 26/15 30/3 41/18
42/19 43/22 50/16
51/12 51/22 55/13
57/16 74/21
comes [5] 11/9 43/6
54/16 56/14 58/5
coming [1] 14/7
committee [32] 9/14
11/3 12/20 16/9 19/12
19/13 19/24 20/21 21/3
28/17 28/23 29/2 29/3
29/15 32/15 32/17 49/6

62/17 63/8 63/12 63/16
63/16 64/1 64/7 64/8
64/9 64/14 66/8
committee's [10] 6/3
6/8 20/6 24/12 28/25
30/24 43/2 62/25 63/22
64/5
common [1] 47/15
communicate [1]
32/15
communicated [1]
45/15
communicates [1]
48/25
communications [1]
20/21
comparable [2] 12/12
58/23
compel [11] 21/13 22/7
22/12 26/15 26/23
26/25 29/4 53/3 54/23
71/20 72/5
complete [1] 33/24
completely [2] 73/23
74/16
compliance [10] 71/22
45/23 60/23 65/4 65/5
68/22 69/3 69/6 70/8
70/14 76/1
comply [5] 6/1 15/24
23/23 25/4 43/2
component [1] 63/1
computer [2] 2/23 24/5
computer-aided [1]
2/23
concede [1] 25/20
conceded [1] 37/24
concern [1] 47/5
concerned [1] 20/13
concerning [1] 29/18
concerns [1] 50/19
conclude [1] 62/15
concluded [2] 64/24
79/11
conduct [3] 29/21 30/5
40/18
confer [2] 18/11 69/4
CONFERENCE [2] 1/9
3/18
conferred [3] 23/14
42/11 67/6
confidentiality [1] 6/2
confirm [2] 11/4 16/20
confirms [1] 5/24
conflict [1] 11/25
confronted [1] 61/1
Congress [22] 7/12
10/3 11/9 11/13 11/21
15/6 16/19 22/8 22/11
22/13 22/15 26/14
26/16 26/22 27/15
33/16 53/3 63/12 70/21
71/19 71/24 72/4
Congress's [1] 26/18
congressional [7] 8/10
10/15 15/24 23/23 24/6

Congressman [4] 8/16
9/1 9/6 12/7
Congressmen [1] 8/9
connection [6] 17/15
17/16 17/20 17/23 20/2
60/24
consequence [2]
31/10 31/11
consequences [1]
73/12
consider [2] 23/1
26/10
considerations [1]
33/25 34/21
considered [2] 7/16
34/22
considers [1] 5/7
consistent [5] 26/13
27/3 60/3 65/20 66/4
constitute [1] 27/1
constituted [1] 12/22
Constitution [6] 2/20
22/12 26/18 26/20
26/21 71/24
constitutional [2] 9/7
30/14
constitutionally [2]
44/23 45/1
construing [1] 34/3
consult [2] 23/9 75/7
consultation [1] 71/7
consulted [1] 56/10
contained [1] 6/16
contempt [21] 4/16
10/3 10/16 14/16 16/22
22/18 27/1 27/17 30/25
32/22 36/13 37/21
62/22 63/2 65/2 65/9
65/12 66/7 70/24 72/11
72/24
contends [2] 7/17 8/23
contention [1] 35/22
contest [2] 19/24 20/19
contests [1] 8/24
context [17] 6/19 8/8
9/19 9/20 9/23 11/25
15/18 15/20 15/21
16/17 16/25 21/14 23/1
51/4 52/16 52/17 52/24
contexts [1] 52/5
CONTINUED [2] 2/1
58/17
contradicted [2] 58/16
58/17
contrast [1] 44/19
controlling [1] 5/11
convenient [1] 56/14
conversation [16]
17/12 22/19 30/8 30/22
31/14 31/16 31/16 37/8
38/6 39/17 46/8 47/25
48/19 58/4 59/8 62/8
conveyed [1] 55/15
convict [2] 61/24 62/1
convicted [1] 51/15
convictions [1] 63/8
convicts [2] 60/10
60/16

Conway [3] 29/19
66/25 68/17
Corcoran [4] 5/23 50/2
56/9 66/13
cornered [1] 11/17
coronavirus [3] 32/10
49/3 49/5
correct [12] 7/13 7/20
27/19 28/9 32/5 32/5
32/7 40/6 50/24 56/22
68/14 80/3
corrected [1] 63/15
correctly [1] 67/23
corresponded [1] 6/3
correspondence [2]
20/6 20/24
corroborating [1]
56/24
could [25] 10/3 14/25
17/18 19/19 22/25
31/25 31/25 32/1 32/1
46/3 46/5 50/11 55/6
58/13 59/23 60/12 66/8
67/3 67/12 69/19 74/6
74/6 76/2 76/22 78/24
couldn't [1] 61/24
counsel [14] 3/15 5/23
20/11 21/17 23/14
25/12 42/11 45/8 48/3
50/21 58/21 58/22
58/24 67/6
counsel's [2] 19/1
20/23
count [1] 36/13
couple [1] 36/9
course [9] 6/25 9/2
10/21 13/14 18/7 44/4
59/13 60/1 72/21
court [89]
Court's [16] 3/23 10/23
13/22 18/8 18/10 19/1
23/19 24/8 41/23 42/9
48/14 51/1 60/5 61/16
67/3 71/4
courts [4] 5/1 33/6
63/7 66/23
cover [1] 3/19
covered [1] 12/5
CR [1] 1/4
Crabb [6] 1/13 3/10
67/8 67/9 71/11 74/24
create [1] 18/16
credibility [1] 57/15
credible [3] 64/25
65/12 65/14
credit [2] 61/2 61/3
criminal [13] 3/8 4/24
4/25 9/23 11/25 12/9
14/16 16/17 35/17 52/1
52/17 53/20 54/12
cross [5] 36/3 54/2
54/4 56/21 62/10
cross-examination [4]
36/3 54/2 54/4 56/21
cross-examine [1]
54/1
CRR [2] 80/2 80/8

**C**

Cuccinelli [1] 58/20
cuff [2] 68/23 69/5
curious [2] 21/21
23/11
current [3] 33/3 33/4
48/25
cut [1] 29/25

**D**

D.C [5] 1/5 1/15 2/4
2/15 2/21
D.C. [2] 10/13
D.C. Circuit [1] 10/13
Dan [1] 20/6
Dan George [1] 20/6
date [5] 74/22 75/24
77/3 78/6 80/7
dated [1] 5/22
dates [1] 40/8
day [5] 17/13 30/6 39/4
49/21 49/22
days [2] 46/23 77/24
debate [7] 8/10 9/18
9/20 12/10 14/3 14/12
14/15
decide [23] 23/6 24/8
24/16 24/25 25/23
30/14 36/16 36/20
51/23 53/11 53/19
53/20 61/17 61/23
61/25 62/12 64/12
69/13 69/17 69/19 73/7
73/14 74/3
decided [4] 12/2 31/11
36/17 38/19
deciding [1] 33/19
decision [6] 5/9 5/17
6/12 39/6 62/14 73/20
decisions [2] 8/5 10/23
deems [6] 6/22 7/7
defendant [29] 1/7 2/2
3/12 3/13 5/21 9/25
10/2 10/8 11/2 11/23
12/6 12/17 12/22 13/1
15/22 16/1 36/17 38/4
38/13 39/6 40/17 41/25
42/15 42/20 42/25 60/9
66/12 66/12 79/5
defendant's [4] 11/11
11/19 12/14 60/4
defense [62] 4/15
10/15 22/11 23/4 23/13
23/14 25/1 25/4 25/19
25/21 26/2 27/1 30/25
31/4 32/21 32/25 35/1
35/12 35/23 36/6 37/10
37/25 38/10 38/14
38/19 38/22 38/25 39/1
39/2 40/12 41/8 41/14
41/17 41/18 41/19
41/21 41/24 42/6 42/8
42/14 42/25 43/7 43/12
43/16 48/1 48/3 54/17
59/17 59/19 61/8 61/11
61/20 66/2 67/24 69/12
75/9 75/10 75/11 76/9
77/18 77/20 77/22
defenses [3] 16/13

defenses... [2] 39/8 41/14
defer [1] 4/4
definition [1] 29/21
deliberate [2] 11/12 40/19
deliberations [2] 33/19 34/12
demonstrate [1] 7/19
denied [3] 5/20 12/17 13/10
Dennis [1] 10/18
deny [1] 12/14
Department [24] 22/3 22/10 26/11 27/13 27/21 29/22 30/18 31/3 33/9 33/12 34/5 34/8 34/21 35/21 45/1 47/7 53/2 53/17 64/13 65/7 66/17 71/5 72/2 73/3
department's [8] 23/24 25/16 28/7 29/19 32/20 33/21 67/20 74/9
depend [1] 55/7
deposition [1] 68/8
depositions [3] 45/8 65/15 65/23
derived [1] 26/19
describe [1] 23/19
described [4] 23/20 27/3 32/23 47/3
determination [2] 60/12 64/25
determinations [1] 23/3
determine [10] 5/6 54/17 60/6 64/1 64/7 69/18 73/5 73/10 73/11 74/4
determined [4] 24/7 47/16 65/11 75/11
did [24] 5/16 9/25 11/3 12/14 12/15 13/3 16/19 19/5 19/24 21/18 33/16 38/12 39/16 47/24 48/21 49/3 49/4 50/10 56/9 56/9 58/19 59/6 64/22 65/23
didn't [29] 11/21 16/24 29/23 33/14 38/10 38/11 39/13 41/5 45/12 50/4 50/5 55/10 56/16 58/8 59/22 59/22 60/17 61/13 63/9 63/9 63/10 63/11 63/17 64/17 66/13 66/25 68/18 69/11 74/8
difference [2] 33/20 77/15
different [8] 16/10 31/6 33/4 37/5 50/8 59/2 59/12 59/14
differently [1] 43/14
difficult [2] 54/2 54/3
direct [4] 18/23 40/1 49/10 57/16
directed [4] 6/6 13/23

directing [1] 59/3
direction [5] 12/22 46/10 46/13 65/19 66/9
directive [1] 12/24
directly [3] 18/12 21/4 32/15
disagree [2] 38/15 49/20
disagreement [1] 25/15
disappointed [1] 75/23
disclose [2] 33/18 41/20
disclosure [2] 7/2 77/11
discovery [3] 4/11 57/6 59/14
discrete [2] 52/1 52/11
discuss [5] 30/3 38/16 48/4 53/25 77/5
discussed [1] 45/10
discussion [3] 36/6 53/12 76/2
dismiss [5] 15/22 16/25 19/17 21/12 36/19
dismissal [6] 12/6 12/9 15/18 47/20 61/18 61/19
dismissed [1] 47/16 61/5 62/2
dispute [2] 25/18 53/7
disputed [1] 60/5
disputes [1] 53/17
disputing [1] 70/14
distinct [1] 14/11
distinguished [1] 63/19
DISTRICT [8] 1/1 1/1 1/10 1/14 5/2 5/15 9/14 12/2
do [55] 3/20 8/18 11/21 14/22 14/22 16/20 16/23 23/12 24/10 25/24 28/23 30/14 30/21 35/2 38/11 41/3 41/4 45/18 46/19 47/2 47/13 48/21 49/4 49/5 50/11 50/19 51/8 51/20 52/22 53/9 54/12 54/20 56/18 57/10 64/10 65/1 67/14 68/22 69/4 70/7 71/13 71/16 72/9 72/10 74/2 74/23 74/24 76/6 76/14 76/21 77/15 77/23 78/5 78/12 78/15
documents [7] 36/11 44/21 44/22 44/25 45/3 52/24 71/21
does [21] 4/1 21/8 22/5 22/11 26/14 27/13 27/21 38/6 49/2 51/14 52/8 53/19 54/8 54/24 57/16 64/11 64/14 72/4 73/3 73/19 77/12
doesn't [19] 6/5 6/5 26/22 35/3 35/16 42/20

53/3 53/19 56/12 56/13 58/22 61/10 64/7 64/10 64/15
doing [6] 6/23 42/5 42/8 42/23 58/7 77/19
DOJ [1] 25/2
don't [80] 4/25 7/11 13/15 22/20 25/18 26/5 30/9 31/7 32/12 33/14 35/5 37/4 38/11 38/14 38/15 38/16 39/1 39/3 39/14 39/19 40/9 40/14 41/6 41/7 41/12 41/13 41/18 41/20 43/4 45/25 45/25 46/5 46/10 47/1 47/12 48/17 48/18 48/23 49/1 49/12 51/5 51/8 52/22 53/8 53/18 55/9 55/16 56/1 56/3 56/4 57/7 57/10 58/8 59/15 60/21 62/6 65/8 66/17 66/19 66/24 67/19 68/3 68/3 68/12 68/25 69/22 70/11 70/16 72/8 72/22 73/5 73/11 73/17 74/6 75/12 76/6 76/12 76/23 77/3 77/10
done [5] 11/13 32/16 35/4 46/20 66/7
door [1] 48/2
doubt [6] 22/17 34/2 50/9 55/21 56/5 71/5
down [2] 17/5 48/22
dozen [1] 55/24
dozens [1] 56/25
Dr. [66] 4/18 4/20 7/17 7/25 13/7 13/21 14/19 15/4 16/9 17/10 17/18 18/12 18/21 19/6 19/8 19/25 20/8 20/13 20/20 20/23 21/17 21/18 21/25 22/23 25/3 25/9 30/1 31/14 31/7 31/19 33/22 34/9 37/7 37/17 38/7 39/20 44/9 45/15 45/22 46/15 47/23 48/5 48/18 49/7 49/24 55/2 55/15 55/22 55/25 56/5 56/20 56/25 57/10 57/18 58/2 58/17 58/24 59/10 62/12 68/19 70/17 70/19 72/17 72/23 73/6 77/17
Dr. Navarro [51] 4/18 4/20 7/17 13/7 13/21 14/19 15/4 16/9 17/10 17/18 18/21 19/6 19/8 19/25 20/23 21/18 31/14 31/17 31/19 33/22 34/9 37/7 37/17 38/7 39/20 44/9 45/15 45/22 46/15 47/23 48/18 49/7 49/24 55/15 55/25 57/10 58/2 58/17 58/24 59/10 62/12 68/19

72/23 73/6 77/17
Dr. Navarro's [15] 7/25 18/12 20/8 20/13 20/20 21/17 25/3 48/5 55/2 55/22 55/25 56/20 56/25 57/18 72/17
draw [1] 54/14
driven [1] 64/19
dropping [1] 52/13
due [3] 47/21 72/4 78/25
due-process [1] 47/21
duties [2] 29/22 29/24
duty [5] 4/22 6/14 6/24 14/14 25/10
duty-bound [1] 25/10

**E**

E-i-s-l-e-r [1] 10/20
EARTH [1] 2/2
Edmund [1] 2/14
effect [2] 23/20 48/20
effort [1] 11/4
Eisler [1] 10/19
either [19] 26/5 28/19 32/12 35/6 41/14 46/21 49/14 52/10 55/10 58/6
either way [1] 49/14
elaborate [1] 68/15
element [5] 22/16 24/15 24/15 62/22 63/2
elements [3] 43/14 62/22 63/2
elicited [1] 9/7
Elizabeth [2] 1/13 3/10
Elizabeth Aloi [1] 3/10
elizabeth.aloi [1] 1/18
else [3] 65/21 76/6 77/25
Email [6] 1/16 1/17 2/5 2/9 2/13 2/16
embodied [1] 26/18
enabled [1] 15/23
end [2] 11/17 39/4
ends [1] 79/4
enjoy [1] 7/11
enough [11] 3/20 10/10 10/10 11/13 11/20 11/21 16/20 47/22 47/22 51/16 71/8
entire [1] 38/8
entirely [3] 33/5 40/3 62/11
entitled [5] 15/12 38/21 59/13 69/10 73/6
entitlement [1] 69/18
entrapment [12] 37/25 39/7 39/15 39/24 41/24 42/14 42/24 43/15 66/1 77/7 77/12 77/18
EPA [1] 44/20
equal [1] 14/15
error [3] 5/10 5/18 7/17
essentially [3] 4/12 7/15 16/21
establish [4] 4/21 4/21

established [1] 41/15
establishing [1] 65/7
estoppel [13] 37/13 37/25 39/7 39/15 39/24 41/24 42/14 42/25 43/15 66/1 77/7 77/12 77/18
et [2] 8/14 9/12
et cetera [2] 8/14 9/12
evaluate [1] 25/22
evaluated [1] 36/13
evaluating [1] 12/4
evaluation [1] 32/2
Evan [2] 5/23 50/2
Evan Corcoran [1] 50/2
even [13] 12/25 17/1 29/17 29/19 32/23 41/20 52/17 66/13 68/5 69/24 72/21 75/10 75/16
evening [1] 13/24
event [1] 20/18
events [1] 30/3
ever [5] 36/22 40/13 53/17 58/13 61/14
every [1] 64/8
everybody [4] 24/15 78/8 78/13 79/9
everybody's [1] 21/22
everyone [5] 3/6 3/16 4/5 57/2 65/21
everything [1] 41/4
evidence [59] 5/21 8/3 8/21 8/25 12/15 12/18 12/23 13/6 14/19 16/3 16/7 16/11 17/3 17/6 18/11 18/14 18/17 18/20 18/23 19/7 21/24 22/24 25/1 34/24 35/2 37/20 38/3 39/9 41/25 42/21 43/7 43/9 43/11 43/13 43/14 47/9 47/17 49/9 49/15 49/20 49/22 51/7 54/13 54/18 54/25 54/25 55/23 56/24 57/14 57/16 58/18 58/19 60/9 60/24 61/6 64/23 66/3 67/24 70/5
evidence was [1] 49/15
evidentiary [13] 4/10 17/8 18/6 19/3 22/25 31/2 31/7 31/20 41/11 41/13 41/13 55/16 64/25
exactly [1] 36/7
examination [1] 36/3 54/2 54/4 56/21
examine [1] 62/10
example [8] 8/4 15/2 41/18 44/15 57/9 63/12 69/14
exchanged [1] 49/7
exclude [5] 39/9 43/24 78/15 78/25 79/3
excluded [1] 39/10

**E**

**exclusion** [1] 79/8
**excuse** [5] 4/24 8/11
16/2 16/21 44/10
**excused** [1] 11/13
**executive** [74] 4/13
4/14 4/19 4/22 6/1 6/7
6/11 6/15 6/22 7/7 7/19
7/25 8/1 8/6 10/1 10/5
10/10 11/5 11/9 11/9
11/10 12/5 13/21 14/13
15/7 15/23 16/20 19/10
19/24 20/4 20/11 20/14
20/20 20/24 21/5 21/9
21/13 24/24 25/2 25/9
25/16 26/24 27/16
27/24 29/1 29/4 31/22
31/24 32/18 32/21
34/15 44/12 48/6 48/22
49/24 54/7 55/23 57/2
57/3 57/5 58/4 58/8
58/22 59/1 59/4 59/19
59/21 67/25 68/6 70/1
70/21 70/22 72/13 75/4
**Exhibit** [1] 48/5
**Exhibit A** [1] 48/5
**exist** [1] 39/9
**existed** [1] 14/3
**exists** [2] 14/8 14/19
**expect** [1] 13/15
**expectation** [1] 65/25
**experts** [1] 69/4
**explain** [3] 67/12 69/6
75/2
**explanation** [1] 24/21
**explore** [1] 37/5
**extent** [8] 4/15 14/20
21/15 21/16 24/3 30/5
34/1 34/3

**F**

**F.2d** [6] 8/15 10/18
10/19 10/20 10/22 12/8
**F.Supp** [2] 5/14 9/12
**F.Supp.3d** [1] 9/15
**fabricated** [10] 47/4
50/1 50/4 56/2 56/4
56/5 56/8 56/16 56/19
56/25
**fabrication** [1] 55/21
**face** [2] 16/22 63/3
**facie** [3] 13/2 17/2
41/19
**fact** [29] 7/12 10/9
12/18 13/3 13/7 16/3
16/8 17/11 21/5 23/6
25/6 25/8 26/23 31/9
31/9 38/4 38/12 45/17
47/3 48/10 48/12 50/6
53/8 57/2 64/11 64/19
64/25 73/7 77/17
**fact-driven** [1] 64/19
**factor** [1] 40/3
**facts** [14] 5/12 5/19
27/2 28/20 32/22 34/4
35/8 40/5 61/17 62/4
64/19 65/17 66/1 74/10
**factual** [6] 7/21 23/2

69/19
**failed** [2] 35/2 61/9
**failure** [1] 40/21
**fair** [6] 47/22 47/22
51/16 71/8 77/5 77/16
**Fairfax** [1] 2/7
**faith** [6] 10/11 10/13
11/19 18/24 48/11
48/14
**falls** [1] 8/21
**familiar** [1] 71/2
**fanciful** [1] 37/17
**fans** [1] 57/4
**far** [4] 19/4 29/3 45/4
59/17
**fashion** [1] 44/5
**February** [3] 76/11
76/13 77/24
**Federal** [1] 4/24
**feel** [1] 75/6
**few** [2] 44/3 59/21
**Fields** [1] 10/17
**Fifth** [2] 17/19 17/23
**Fifth Amendment** [1]
17/19
**fight** [1] 30/7
**figure** [4] 40/10 40/15
71/15 77/2
**filed** [1] 3/22
**files** [1] 76/10
**finding** [1] 31/2
**findings** [1] 23/2
**finds** [1] 42/13
**fine** [2] 30/16 64/4
**first** [17] 3/21 3/21 4/9
6/4 7/17 10/9 12/14
12/24 13/20 14/18
15/10 18/5 28/16 34/11
36/10 68/21 78/25
**first place** [1] 12/24
**five** [2] 46/23 71/10
**flag** [1] 31/24
**flagged** [2] 29/13 30/13
**fleshed** [1] 73/1
**focus** [1] 21/11
**focused** [1] 21/13
**folks** [1] 76/20
**follow** [2] 20/13 48/18
**follow-up** [1] 48/18
**followed** [1] 9/10
**following** [2] 8/15 46/7
**follows** [1] 77/10
**footnote** [1] 6/16
**foreclose** [1] 61/10
**foreclosed** [1] 41/24
**foregoing** [1] 80/3
**forgive** [1] 28/22
**formal** [4] 12/16 12/23
15/1 28/8
**former** [27] 7/19 10/4
15/7 23/22 27/5 27/14
27/23 27/24 28/3 28/4
46/25 47/7 48/21 48/25
55/24 57/4 67/16 68/6
69/1 69/25 70/22 70/22
72/7 72/7 72/8 74/5
75/4

**forward** [18] 8/2 8/20
9/1 12/15 12/18 14/7
16/1 16/2 19/7 19/16
21/17 35/3 36/18 41/18
41/25 43/22 75/23 78/3
**found** [5] 8/14 13/6
14/2 33/6 34/25
**free** [1] 75/6
**freestanding** [2] 6/11
7/4
**Friday** [1] 43/20
**front** [1] 19/11
**full** [5] 6/19 31/12
31/12 63/16 73/23
**fully** [3] 6/1 55/1 71/2
**fundamental** [1] 33/20
**fundamentally** [1]
71/23
**further** [4] 3/24 4/7 4/8
7/8

**G**

**game** [1] 11/16
**Gaudin** [1] 24/16
**gave** [1] 39/6
**gentlemen** [1] 74/19
**George** [1] 20/6
**get** [23] 17/25 22/23
24/5 30/8 35/3 35/24
37/12 39/2 39/4 40/20
40/22 42/7 43/12 43/15
44/17 46/3 47/20 53/14
53/19 62/10 73/17
74/25 76/12
**gets** [9] 18/3 30/21
37/7 38/7 39/16 39/21
47/4 47/16 62/7
**getting** [1] 28/6
**give** [4] 33/11 39/13
41/15 71/6
**given** [7] 16/18 35/16
36/18 51/17 59/23
60/24 77/21
**given up** [1] 51/17
**gives** [1] 6/23
**glaring** [1] 19/15
**Glen** [1] 2/7
**gmail.com** [1] 2/13
**go** [9] 4/9 39/20 45/24
47/18 48/21 51/6 56/11
71/13 74/15
**go ahead** [1] 4/9
**go home** [1] 74/15
**goes** [10] 10/17 23/25
42/23 50/18 53/10
54/22 57/6 71/21 71/22
71/23
**going** [25] 8/20 9/1
19/5 23/13 26/12 29/10
30/20 36/5 36/7 40/10
40/11 41/7 43/12 50/21
50/22 51/13 54/20
55/13 56/11 56/20
58/15 58/17 71/16
77/17 77/23
**gone** [1] 66/8
**good** [13] 3/5 3/7 3/15

3/18 5/10 5/12 7/21 11/6
11/15 11/20 12/1 13/2
13/4 13/5 13/6 14/9
14/21 15/23 16/1 16/2
22/22 22/15 23/17 23/19
23/24 24/21 26/2 26/2
29/3 30/19 32/8 32/14
35/1 35/2 35/13 35/17
35/22 36/15 36/22
42/6 42/25 43/8 43/19
44/1 44/14 45/5 47/16
50/12 50/25 53/2 54/17
57/8 58/9 61/14 62/18
62/22 63/15 64/9 64/13
69/1 70/3 72/3 72/9
75/24
**hasn't** [4] 32/19 38/18
51/3 51/15
**Hatch** [1] 29/20
**have** [121]
**haven't** [2] 46/25 51/16
**having** [8] 11/13 11/22
19/13 30/8 51/6 58/13
65/19 67/1
**he** [108]
**he said** [1] 31/13
**he'd** [1] 15/11
**he's** [14] 7/20 7/23
30/20 36/1 37/24 38/21
40/10 41/7 44/15 53/22
62/2 65/9 72/17 77/19
**hear** [9] 21/21 23/11
43/9 45/14 46/15 46/15
59/17 71/15 76/7
**heard** [5] 3/24 40/14
55/14 66/11 72/20
**hearing** [17] 4/10 17/8
17/9 17/10 18/7 18/15
18/16 19/3 22/25 31/2
31/7 31/20 35/10 41/11
41/13 46/18 66/16
**hearings** [1] 41/14
**hears** [1] 46/12
**hearsay** [3] 45/19 46/6
46/11
**heavier** [1] 9/20
**held** [5] 7/10 11/6
15/20 43/22 72/11
**Helstoski** [3] 12/8 14/1
14/5
**hence** [1] 19/2
**Henry** [1] 14/5
**Henry Helstoski** [1]
14/5
**her** [2] 29/24 45/2
**here** [51] 3/18 5/16
9/18 9/21 11/19 12/12
13/4 14/12 15/17 17/4
20/25 24/18 25/14
25/21 26/11 27/2 27/9
28/7 28/9 28/16 28/20
30/15 32/6 32/8 33/1
34/1 34/19 34/23 35/7
39/5 43/13 45/3 47/12
47/19 54/20 56/7 58/20
60/2 61/18 63/19 63/22
64/19 64/20 65/6 66/16

18/24 48/11 48/14 67/7
67/10 67/11
**good morning** [4] 3/5
3/15 3/17 67/7
**good-faith** [6] 10/11
10/13 11/19 18/24
48/11 48/14
**Gorsuch** [3] 44/20
44/24 44/25
**got** [6] 22/23 36/3
65/21 66/23 71/10
76/20
**government** [33] 1/13
3/10 9/3 12/10 13/2
13/4 13/5 17/1 22/16
22/20 23/11 39/8 39/25
42/11 42/17 43/6 43/19
44/14 47/4 49/16 55/20
58/5 58/9 62/18 67/6
67/9 71/18 72/15 76/12
77/1 77/16 77/19 77/22
78/24
**government's** [13] 4/3
16/12 23/7 25/14 38/7
45/9 47/5 47/14 47/19
49/12 60/4 75/2 76/10
**grand** [8] 8/11 8/13
12/11 13/4 14/12 34/25
47/9 47/16
**grand jury** [1] 8/11
**grilled** [1] 14/6
**grist** [1] 36/3
**guess** [7] 41/22 70/15
74/22 77/4 77/10 78/22
78/24
**guidance** [1] 37/16

**H**

**had** [66] 4/22 5/25 6/10
8/18 10/11 12/16 12/19
12/21 13/7 14/12 15/11
15/11 17/7 17/11 17/15
17/19 18/2 18/2 20/3
20/10 20/23 21/5 21/14
23/17 24/10 24/23 25/2
28/17 30/2 30/5 30/22
31/2 34/4 34/19 36/21
37/8 38/4 38/18 41/3
41/4 42/1 42/2 43/5
48/6 49/18 50/7 50/11
54/7 60/24 61/23 62/8
62/17 63/3 65/10 68/6
68/7 68/8 68/9 68/12
68/19 69/18 69/25
71/19 74/4 75/4 75/7
**hairs** [2] 66/16 69/22
**hands** [1] 20/15
**hang** [5] 4/5 33/13
38/24 62/5 66/15
**happen** [3] 17/14 21/18
55/20
**happened** [1] 51/3
**happens** [2] 60/8 60/11
**happy** [4] 3/25 4/3 44/5
49/14
**hare** [1] 11/16
**Harrington** [1] 49/7
**has** [68] 4/1 4/12 4/16

**H**

here... [6]  67/2 67/15
69/5 71/13 74/8 74/22
here for [1]  60/2
Here's [1]  60/21
Hey [1]  52/11
Hi [1]  67/8
high [1]  44/17
him [31]  6/8 7/18 8/17
8/22 9/4 9/8 10/5 11/21
11/22 15/23 17/13
20/10 27/12 35/24 40/8
47/17 52/21 54/1 54/23
56/21 56/21 57/21
57/22 58/1 60/13 60/17
60/19 62/10 62/17
68/13 71/20
himself [2]  32/15 66/12
his [46]  4/21 5/25 6/1
6/23 7/1 8/20 10/1
12/19 13/25 16/4 16/5
17/19 17/20 17/22
18/13 20/10 20/14
20/15 21/25 25/3 27/18
30/1 30/4 38/17 38/19
39/7 39/17 40/18 40/20
40/22 41/3 42/24 47/21
48/1 48/2 48/2 48/3
48/5 48/9 48/11 48/25
50/2 53/22 55/4 56/10
62/24
hold [4]  4/20 22/25
holder [3]  8/6 9/22
27/19
holding [2]  4/17 7/13
home [1]  74/15
honor [64]  3/7 13/12
14/10 14/16 15/3 15/9
15/14 18/5 18/8 19/4
19/17 19/21 20/5 23/15
24/22 25/10 25/13 27/2
27/19 28/11 29/12
30/11 31/1 31/23 36/9
37/18 38/1 38/13 39/5
39/23 40/17 42/12
43/10 43/18 45/25
46/17 47/2 50/15 51/19
52/9 54/1 59/25 65/3
65/13 65/20 65/22 66/6
67/1 67/7 68/14 69/21
70/18 70/25 71/12
73/19 74/1 75/1 75/18
75/21 76/18 76/22 78/5
78/9 78/15
Honor's [4]  13/16
46/19 46/23 55/19
HONORABLE [2]  1/10
3/3
honored [1]  14/9
hook [1]  40/5
hope [1]  76/22
Hopefully [1]  3/20
host [1]  29/2
hounds [1]  11/16
House [8]  14/7 20/22
22/5 22/8 22/12 24/1
26/23 44/18
House's [1]  14/2

**I**

I apologize [1]  52/13
I believe [2]  67/15
69/22
I don't [3]  26/5 57/7
57/10
I had [1]  30/22
I haven't [1]  51/16
I just [1]  37/15
I know [4]  27/12 28/23
29/3 30/17
I mean [7]  27/9 28/24
36/2 36/25 37/12 37/15
64/8
I should [1]  4/18
I think [18]  11/15 13/19
16/16 18/5 18/15 18/17
19/23 21/17 22/2 24/17
24/18 25/15 28/12
29/13 54/11 55/18
63/18 66/20
I thought [2]  20/1
66/18
I understand [7]  9/18
22/6 22/10 26/16 27/6
28/24 29/8
I want [1]  16/13
I will [1]  6/4
I'll [10]  7/8 21/21 24/4
43/8 44/3 59/15 77/21
77/22 78/7 78/8
I'm [44]  9/21 18/3 23/4
23/11 24/11 26/10
30/20 31/8 32/7 33/18
35/10 35/10 36/5 37/5
37/11 40/10 40/15 41/2
46/9 46/15 50/15 51/8
54/20 56/11 56/18
57/13 59/9 60/15 60/22
60/23 62/6 61/10 66/2
66/16 66/16 66/20
70/14 70/18 70/25
71/10 71/17 73/22 78/5
78/20
I'm sorry [2]  51/8
60/15
I've [12]  13/6 15/20
16/18 21/23 39/12 41/6
43/5 46/1 51/25 52/2
72/20 75/25
idea [4]  14/7 44/21
58/15 58/16
identifiable [1]  57/4

identifies [1]  7/6
identify [1]  6/21
III [2]  2/6 53/19
immune [5]  15/25 62/2
64/3 70/23 75/17
immunity [20]  7/11 8/1
10/6 22/5 33/7 33/10
34/14 36/10 62/24
65/18 67/21 68/4 68/13
69/11 69/18 72/10
72/23 73/7 73/8 74/10
immunize [1]  16/21
immunized [1]  60/19
immunizes [3]  60/7
60/13 63/25
impact [1]  69/24
impeach [1]  56/21
implicated [1]  14/14
implicates [1]  46/11
implications [1]  74/3
important [2]  69/6 70/7
improperly [1]  12/10
inaccurate [1]  39/25
inadequacy [1]  47/18
inapplicable [1]  28/8
incidentally [1]  52/21
including [3]  45/21
54/1 57/3
incorrect [2]  7/23 40/7
incredulity [1]  14/2
incredulous [1]  58/12
independent [2]  6/11
22/24
indicate [1]  8/22
indicted [2]  9/4 19/16
indictment [8]  12/7
15/19 15/22 17/1 19/15
21/7 21/8 47/16
individual [1]  41/3
individually [1]  66/24
individuals [2]  47/10
58/25
indulge [1]  68/21
indulgence [4]  42/9
67/3 71/1 71/9
inextricably [1]  18/18
infer [1]  57/9
information [12]  6/22
7/2 7/6 8/17 8/19 14/24
25/20 28/18 29/7 32/4
42/21 63/4
initial [4]  7/18 13/1
17/2 22/21
initially [1]  17/2
inquiries [1]  64/19
inquiry [3]  10/15 40/3
63/5
insinuation [1]  21/4
insofar [4]  23/21 23/23
44/23 59/2
instance [1]  10/9
instances [1]  58/6
instead [4]  13/1 13/24
17/22 42/18
instructed [3]  18/20
45/7 62/15

instruction [2]  24/10
70/5
instructions [2]  24/18
36/20
insufficient [1]  43/14
intend [1]  77/23
intending [1]  44/7
intention [2]  17/25
74/21
intentional [2]  11/12
40/19
interbranch [1]  11/25
interested [1]  75/22
interesting [1]  46/12
interests [1]  79/5
interlocutor [1]  55/13
interlocutory [1]  5/3
5/7 51/11 51/21 51/25
52/19 58/3
intermediary [1]  45/18
internal [1]  34/12
interpret [1]  35/8
interpretation [1]  40/7
interpreted [1]  62/22
interrupt [2]  19/19
19/20
intertwined [1]  18/18
intervening [1]  46/23
intimated [1]  17/24
investigate [3]  26/19
26/19 63/14
investigated [1]  45/10
investigation [11]  8/13
13/5 24/12 30/19 35/1
47/5 47/15 47/19 64/22
65/10 72/22
invitation [1]  11/16
invited [1]  35/1
invocation [1]  90
invoke [27]  6/7 6/11
6/15 6/24 11/5 13/3
15/5 15/12 16/5 16/6
17/13 17/22 18/21
18/24 19/14 20/23
33/17 37/9 45/18 46/4
49/24 50/7 57/1 62/9
66/24 68/9 68/19
invoked [48]  4/19 8/9
10/9 10/12 11/20 12/19
13/7 14/5 16/3 16/8
18/2 18/13 19/9 21/5
21/14 25/22 29/1 31/22
31/25 32/18 33/3 36/21
37/9 39/19 44/11 47/8
48/6 48/10 48/11 48/12
49/18 50/7 54/7 55/10
57/8 57/9 58/4 58/5
58/9 58/15 58/16 59/20
59/22 60/9 60/16 65/16
68/6 70/1
invokes [1]  57/2
invoking [2]  55/23 57/5
involve [4]  18/20 50/21
50/22 76/1
involved [2]  12/9 32/2
49/8

involving [1]  69/1
irony [1]  7/8
irrelevant [1]  34/23
irrespective [1]  14/4
Irving [2]  2/2 3/11
is [228]
isn't [5]  29/25 31/9
41/16 52/23 53/20
issue [48]  5/13 19/7
19/9 19/11 23/5 24/7
24/9 24/12 24/16 31/9
31/9 31/20 31/21 37/13
44/6 44/7 44/8 44/9
44/11 45/9 45/12 47/3
49/13 50/16 51/11
51/23 52/1 52/11 53/10
54/9 54/24 57/6 58/14
62/24 63/15 63/20 64/5
64/9 64/15 70/4 70/8
71/19 71/24 71/25 72/1
72/25 77/6 77/6
issued [6]  5/7 27/4
32/11 63/24 67/17
67/18
issues [14]  4/3 5/9
5/17 17/4 30/13 30/14
45/19 45/20 53/25
63/13 65/4 68/22 76/1
79/7
it [165]
it's [44]  6/18 6/19
11/20 15/10 15/21
15/25 16/4 16/5 17/3
17/8 17/13 17/21 19/14
19/15 22/9 23/4 23/16
24/14 24/15 29/8 31/12
32/14 34/14 34/15
36/17 38/19 46/2 47/19
48/9 48/10 49/16 49/23
53/13 53/24 54/9 56/16
62/5 64/5 64/5 65/5
66/17 70/11 75/10
75/12
its [8]  4/13 4/17 13/4
8/19 18/16 36/20 43/20 63/3
63/3
itself [2]  4/2 17/14
IV [1]  2/2

**J**

Jackson [9]  6/13 6/13
7/5 7/5 7/9 7/9 26/8
26/8 26/12
Jackson's [1]  6/20
January [5]  1/5 5/22
30/3 76/11 80/7
January 23rd [1]  5/22
January 6th [1]  30/3
jirving1 [1]  2/5
job [1]  35/4
job done [1]  35/4
John [7]  1/13 2/2 2/6
3/10 3/11 3/11 67/9
John Crabb [2]  3/10
67/9
John Irving [1]  3/11
John Rowley [1]  3/11
John.D [1]  1/17

**J**

john.rowley [1] 2/9
joking [1] 71/10
JPROWLEY [1] 2/6
jprowleylaw.com [1] 2/9
Jr [1] 2/14
judge [9] 1/10 7/5 7/9 26/8 28/2 53/19 54/17 64/11 72/21
Judge Jackson [3] 7/5 7/9 26/8
judgment [1] 52/10
judgments [1] 54/13
jury [49] 8/11 8/13 12/11 13/4 14/12 23/5 23/5 24/8 24/16 24/18 25/22 26/3 34/25 36/1 36/15 36/20 39/4 41/15 43/16 44/7 47/9 47/16 47/20 49/12 51/7 53/9 53/11 53/18 53/23 54/14 54/18 57/9 60/10 60/16 60/17 61/22 62/12 64/12 68/5 69/19 69/25 70/6 70/10 72/19 73/5 73/15 74/4 74/12 78/1
just [43] 4/8 7/8 13/12 15/16 16/18 16/23 23/19 27/3 27/9 28/15 29/13 32/23 33/6 35/12 36/6 37/5 37/15 40/10 40/15 41/19 44/3 44/17 44/23 46/10 50/5 51/3 52/11 64/21 67/12 68/15 68/16 70/4 71/14 71/14 72/20 74/6 74/14 75/1 75/15 75/18 76/12 76/23 78/7
justice [24] 5/5 5/6 6/13 6/13 6/20 7/5 7/9 22/10 26/8 26/11 26/12 27/13 27/22 33/9 33/12 34/8 47/7 53/2 53/17 64/13 65/7 72/2 73/3 79/4
Justice Jackson [4] 7/5 7/9 26/8 26/12
Justice Jackson's [1] 6/20
Justice's [5] 22/3 29/22 30/18 35/21 66/17
Justices [1] 14/1

**K**

K. [1] 3/9
keep [1] 68/17
Kellyanne [3] 29/19 66/25 68/17
Kellyanne Conway [3] 29/19 66/25 68/17
Kennedy [1] 15/1
Kennedy's [1] 14/25
kids [1] 56/2
kind [3] 9/17 61/3 61/8
kindred [1] 77/14

know [29] ARM 1 Doc
22/20 27/12 28/23 29/3
29/17 29/25 29/25 30/7
30/9 30/17 33/7 36/3
36/7 37/4 37/12 37/13
37/15 37/16 37/22
38/12 39/15 40/9 40/14
41/6 41/7 41/17 43/9
44/13 45/25 45/25 46/2
46/3 46/10 47/1 47/13
48/17 48/18 49/1 49/14
53/13 53/18 55/9 55/11
55/11 55/11 55/16 56/3
56/4 59/18 62/1 62/6
63/15 66/15 68/18 74/9
74/21 76/25
knowing [1] 58/13
knowledge [1] 30/4

**L**

L-i-c-a-v-o-l-i [1] 10/21
laboring [1] 76/21
lack [1] 21/9
lacked [2] 61/4 62/18
laid [1] 50/3
landscape [1] 69/7
last [10] 13/24 27/10 28/8 29/18 31/13 37/24 45/10 46/18 47/24 77/4
late [2] 17/13 53/24
later [1] 9/4
law [23] 2/2 2/6 2/11 2/14 5/12 5/19 7/24 16/18 24/7 24/9 24/12 24/24 24/25 28/14 32/12 35/19 39/25 40/8 40/23 61/12 63/1 64/6 66/6
lawful [2] 23/25 25/4
lawsuit [1] 34/22
lawyer [3] 39/17 45/11 58/23
learned [1] 72/21
least [10] 4/9 9/22 16/24 24/14 28/13 29/9 31/16 37/23 72/17 78/24
leave [4] 7/12 70/16 70/19 74/1
left [1] 41/6
legal [18] 4/22 6/14 6/24 31/10 31/11 37/11 39/14 50/24 50/24 52/11 66/22 69/24 70/8 73/6 73/11 73/13 74/3 75/3
legally [1] 25/9
legislative [1] 8/19
Lest [1] 50/9
let [14] 4/8 12/13 21/20 26/4 27/9 43/8 45/13 51/5 51/9 51/21 64/21 64/21 68/11 76/24
let's [8] 13/11 15/21 24/14 56/7 70/16 70/19 71/14 76/11
let's see [1] 76/11

lement [1] 5/18/29/302/30/Page 87 of 92
6/10 6/17 35/3 35/5
45/12 46/22 47/3 50/1
50/2 50/9 56/2 56/3
56/8 56/19 66/12 66/14
letters [4] 33/16 59/3
59/7 66/4
level [1] 34/13
Licavoli [2] 10/21
18/19
lie [1] 44/23
light [1] 18/10
like [13] 36/8 38/6
40/11 40/16 40/16 41/1
44/6 51/14 68/2 69/3
69/4 73/8 77/8
liked [1] 50/6
likely [1] 56/19
limine [2] 43/24 78/23
limited [2] 26/20 47/10
line [2] 9/16 10/12
lines [1] 35/19
listened [1] 13/25
litigate [1] 39/6
litigation [3] 24/1
52/25 53/21
little [2] 44/14 73/1
LLC [1] 2/2
log [2] 36/12 68/8
long [1] 25/5
longer [1] 59/8
look [15] 33/23 34/17
36/8 38/6 40/11 40/16
43/4 51/14 58/5 64/8
74/12 74/21 77/4 77/8
78/3
looked [2] 34/25 40/13
looking [3] 18/22 31/5
37/18
looks [1] 41/1
lot [1] 76/20
Lotus [1] 13/24
loud [1] 51/20
lunch [1] 35/11

**M**

made [18] 5/8 5/10
5/17 5/18 7/14 11/14
12/16 17/7 18/7 25/3
31/2 39/6 42/18 48/19
49/18 53/17 60/12 70/3
make [17] 9/24 9/25
11/4 12/13 13/2 13/12
14/22 15/10 21/8 22/17
23/2 44/3 54/13 62/13
64/17 73/18 76/13
makes [2] 10/13 11/2
making [2] 60/22 60/23
malpractice [1] 45/21
many [5] 14/1 30/6
31/25 45/20 50/14
material [1] 14/12
materials [1] 12/11
matter [7] 25/23 35/16
39/14 41/13 55/16 73/6
80/4
matters [4] 27/8 28/4
36/17 55/9

**M**

14/13 15/25 19/8 19/20
20/2 23/9 32/11 34/6
36/9 40/13 40/14 42/19
42/20 50/13 51/21
52/21 53/4 53/14 53/14
59/25 66/21 66/22
68/14 68/15 70/13
73/23 75/18
maybe [9] 20/1 53/13
60/22 62/6 66/15 70/8
70/14 70/15 73/16
McGahn [3] 6/12 7/3
7/9
McKennett [1] 2/10
MD [1] 2/12
me [61] 4/8 4/25 8/11
12/13 13/23 16/2 16/7
17/8 17/13 19/20 21/20
22/25 25/24 26/4 26/5
26/11 27/9 28/22 29/9
30/23 31/20 32/14 33/8
34/7 35/18 35/23 37/9
37/23 38/10 39/18
44/10 45/13 46/4 46/23
53/8 54/21 55/12 59/16
60/24 62/8 64/21 64/21
65/7 68/11 68/16 68/19
68/21 69/9 72/12 72/25
73/3 73/22 73/24 74/25
75/7 75/10 75/13 75/15
76/15 76/25 78/12
me know [1] 76/25
me that [1] 73/24
Meadows [7] 33/15
33/22 33/24 45/7 57/8
59/2 66/11
mean [42] 16/12 19/25
24/6 25/25 27/9 28/24
29/6 33/18 36/2 36/5
36/25 37/12 37/15
38/24 38/25 41/6 41/17
43/4 46/1 46/2 47/15
50/23 51/8 51/12 53/10
53/22 54/8 55/6 56/1
57/7 57/7 61/15 64/8
64/10 67/25 69/22
70/13 70/13 74/6 74/8
75/9 77/5
means [3] 9/15 29/21
62/16
meant [2] 61/4 74/11
mechanical [1] 2/23
meet [1] 42/8
MEHTA [2] 1/10 3/4
Member [1] 14/4
memorandum [1] 3/23
Merit [1] 2/18
met [7] 13/4 17/3 38/17
62/18 73/15 73/15
73/16
might [3] 18/8 55/20
55/21
mind [6] 18/8 46/6 46/7
46/10 55/2 55/4
minimum [2] 20/1
35/21
minutes [1] 71/10

misconduct [1] 47/21
misleading [1] 44/15
misrecollecting [1]
20/3
misspoke [1] 34/6
mistake [3] 15/16
40/21 66/6
mistaken [2] 40/22
41/4
misunderstand [1]
5/16
misunderstood [1] 5/8
mixed [1] 70/3
moment [8] 16/14 59/9
67/4 67/23 68/24 70/20
71/5 75/18
momentarily [1] 16/11
Monday [2] 42/4 50/20
month [1] 76/2
months [1] 59/21
more [5] 9/13 21/13
39/24 42/13 44/4 44/9 44/13
58/23 65/17 69/2 70/14
73/1 74/12 76/24
morning [7] 3/5 3/7
3/15 3/17 3/19 67/7
70/3
mortgage [1] 30/2
most [3] 44/16 69/21
76/17
motion [19] 3/22 3/24
4/1 4/1 4/23 5/20 7/15
12/14 12/17 13/9 15/18
16/24 17/15 17/16
17/20 17/24 21/12
36/18 78/23
motions [2] 19/17
21/12
moved [2] 39/8 43/24
moving [1] 75/22
Mr. [44] 3/17 3/22 4/12
4/16 4/17 6/6 6/10
13/23 14/6 15/15 17/7
22/22 27/5 27/10 28/2
28/14 28/18 29/18
31/13 33/2 33/15 33/16
33/21 33/23 33/24 34/4
40/4 44/2 45/13 56/9
56/14 58/20 59/3 66/11
66/11 66/13 67/8 67/17
67/18 68/7 69/1 71/11
74/24 76/14
Mr. Brand [2] 13/23
14/6
Mr. Clark [1] 59/3
Mr. Corcoran [2] 56/9
66/13
Mr. Crabb [3] 67/8
71/11 74/24
Mr. Cuccinelli [1]
58/20
Mr. Hulser [2] 27/10
28/2
Mr. Hulser's [1] 34/4
Mr. Meadows [3] 33/15
33/24 66/11
Mr. Navarro [15] 3/17
3/22 4/12 4/16 4/17 6/6
6/10

**M**

Mr. Navarro... [9] 6/10
27/5 28/14 28/18 33/2
40/4 56/14 68/7 69/1
Mr. Navarro's [2] 67/17
67/18
Mr. Scavino [4] 33/16
33/21 33/23 66/11
Mr. Woodward [8]
15/15 17/7 22/22 29/18
31/13 44/2 45/13 76/14
Ms. [2] 25/12 49/7
Ms. Aloi [1] 25/12
Ms. Harrington [1]
49/7
much [9] 32/16 35/5
46/10 58/23 59/15 62/6
74/24 76/14 76/18
must [3] 11/17 22/17
68/1
mustn't [1] 41/22
my [19] 9/24 13/25
15/20 15/25 21/20
22/21 24/5 27/21 30/17
41/3 41/23 43/8 45/21
46/17 53/1 56/2 56/17
71/21 74/21

**N**

name [2] 50/2 56/17
napkin [1] 53/14
narrow [2] 8/11 12/3
nauseam [1] 14/6
NAVARRO [68] 1/6 3/9
3/17 3/22 4/12 4/16
4/17 4/18 4/20 6/6 6/10
7/17 13/7 13/21 14/19
15/4 16/9 17/10 17/18
18/21 19/6 19/8 19/25
20/23 21/18 21/25
22/23 25/9 27/5 28/14
28/18 30/1 31/14 31/17
31/19 33/2 33/22 34/9
37/7 37/17 38/7 39/20
40/4 44/9 45/15 45/22
46/15 47/23 48/18 49/7
49/24 55/15 56/5 56/14
57/10 58/2 58/17 58/24
59/10 62/12 68/7 68/19
69/1 70/17 70/19 72/23
73/6 77/17
Navarro's [17] 7/25
18/12 20/8 20/13 20/20
21/17 25/3 48/5 55/2
55/22 55/25 56/20
56/25 57/18 67/17
67/18 72/17
necessarily [4] 38/23
38/25 64/10 70/11
necessary [2] 50/23
55/1
need [14] 3/19 4/21
22/5 31/7 42/16 45/17
45/20 69/13 69/23 73/1
73/25 74/24 76/24
78/15
needed [1] 43/22
needs [7] 24/16 34/17

72/25 77/8
negotiate [2] 15/7
16/15
negotiating [1] 21/3
never [10] 11/15 12/21
19/12 26/2 36/15 40/14
42/25 51/4 51/25 62/1
nevertheless [2] 9/21
57/5
new [3] 5/21 9/14 19/8
New York [1] 9/14
news [1] 74/18
next [2] 21/21 78/6
night [1] 38/8
Nixon [1] 6/23
no [63] 1/4 3/8 4/4 4/7
4/8 5/18 5/19 7/20 7/23
9/7 12/1 12/12 12/18
12/23 13/6 13/20 14/8
14/18 15/11 15/16 16/7
16/18 16/18 17/3 20/5
20/11 21/3 23/8 28/8
28/16 30/15 34/2 34/24
34/24 36/2 37/1 37/20
38/24 38/24 40/4 42/2
43/11 43/13 52/2 52/3
55/8 55/18 57/11 60/5
61/6 61/12 61/19 61/19
62/5 62/5 62/5 62/17
65/19 66/2 66/3 66/5
72/15 78/7
no invocation [1] 23/8
nobody [3] 36/22
61/14 65/21
not [207]
notable [2] 6/4 6/9
note [3] 7/8 16/23 24/4
noted [1] 34/25
nothing [4] 41/3 65/17
66/5 78/22
notice [5] 13/18 39/7
39/13 77/18 77/23
notion [4] 7/24 18/18
37/15 44/15
notwithstanding [1]
26/9
now [26] 6/12 10/11
14/10 17/17 18/25 20/8
22/25 24/14 26/8 28/6
30/10 35/18 38/11
40/13 46/22 50/20
53/18 56/2 57/1 66/16
66/21 70/16 72/20
76/24 77/15 77/21
nuanced [1] 68/22
nuances [1] 71/3
number [3] 3/19 19/23
34/21
NW [4] 1/15 2/3 2/15
2/20

**O**

object [1] 46/24
obligated [1] 25/10
obligation [13] 5/25
6/11 7/4 7/5 13/2 13/20
14/18 15/6 15/11 15/11

observation [3] 11/14
17/24 17/25
observations [2] 14/22
44/3
observe [1] 18/6
observed [4] 7/6 19/1
45/5 54/1
obtained [1] 46/22
obvious [1] 46/20
obviously [2] 4/2 13/16
occurred [2] 5/12
48/19
occurs [3] 20/12 20/20
51/1
off [10] 23/14 36/10
40/4 42/11 43/4 47/18
61/20 67/6 68/23 69/5
offense [1] 77/12
offenses [1] 12/9
offer [2] 8/25 42/20
office [1] 1/14 20/23
officer [1] 47/24
official [19] 2/19 22/9
22/9 22/14 27/8 27/14
28/4 28/4 28/15 29/8
29/10 29/11 29/22
29/24 30/9 33/3 34/13
40/1 69/16
official acts [1] 22/14
officials [2] 29/14
34/15
oh [1] 24/10
okay [22] 3/18 4/7 4/8
13/11 17/6 25/11 27/20
28/5 30/16 35/9 37/3
43/25 59/24 69/8 70/13
71/8 71/8 72/25 74/14
74/20 76/8 77/24
OLC [24] 26/9 29/17
33/5 34/10 35/8 37/14
37/16 37/21 37/25 38/8
38/9 39/19 40/4 40/13
40/14 42/24 43/1 66/19
66/24 67/3 68/17 68/23
69/2 71/3
OLC's [3] 26/14 35/17
69/6
once [1] 43/9
one [32] 5/25 9/24 12/1
12/13 13/12 17/24
19/10 19/14 19/23 24/7
31/17 36/13 41/11 43/5
47/6 50/23 51/20 51/20
53/1 54/6 57/2 60/5
61/23 65/24 65/24
71/18 72/1 72/1 73/16
74/7 76/22 77/14
only [13] 4/21 5/21
11/17 15/4 20/19 24/20
31/15 34/15 35/2 39/3
39/16 65/20 75/11
open [1] 41/6
opening [1] 48/2
opine [4] 32/6 35/8
52/11 67/2
opined [1] 32/8
opining [1] 32/7

opinion [3] 36/22 36/22
29/18 40/14 43/1 67/2
67/3 68/18
opinions [15] 26/9
33/5 37/14 37/16 37/21
37/25 38/8 38/9 39/19
40/4 42/24 43/19 66/19
66/24 71/3
opportunity [12] 17/14
17/15 36/18 49/11
56/24 59/23 60/18 68/2
69/3 69/23 74/12 76/9
oppose [2] 44/4 49/12
opposite [1] 41/20
opposition [1] 8/25
oral [1] 77/17
order [15] 5/4 5/7 9/6
30/13 31/24 41/23 42/1
42/12 43/22 46/23 52/7
52/8 60/3 63/14 69/17
other [18] 14/15 20/2
28/24 31/8 31/17 33/25
35/11 35/25 37/22 42/7
52/23 55/24 58/3 58/6
65/13 69/14 76/20 77/6
others [10] 30/6 48/8
55/7 55/10 57/8 57/23
57/25 58/17 59/6 59/10
otherwise [2] 21/4
55/21
ought [4] 14/14 20/24
35/18 35/23
our [31] 4/1 13/19
14/13 14/18 14/22 15/9
21/12 21/12 23/15
23/16 23/17 23/20
24/21 24/24 24/24
32/19 33/4 34/25 44/22
47/4 49/17 49/23 50/24
50/24 64/18 64/20
65/25 67/13 69/24
72/21 76/3
out [25] 6/19 13/2
14/10 15/3 17/6 17/17
21/13 22/17 24/21
25/24 30/2 35/11 36/6
40/10 40/15 45/14 50/3
51/20 54/8 70/17 70/19
71/15 71/25 73/1 77/2
outcome [1] 72/12
outlined [1] 42/1
outset [2] 18/6 38/21
outside [1] 5/9 5/17
outweigh [1] 79/5
over [8] 20/12 25/15
34/12 48/4 52/24 66/20
70/12 76/20
overcome [3] 45/19
45/21 46/5
override [1] 29/4
overruled [1] 24/13
oversight [1] 21/19
overturned [1] 63/8
own [3] 21/17 30/1
48/5

**P**

page [1] 42/13

page 34 [1] 42/13
paid [1] 13/17
parameters [3] 23/12
40/15 70/4
Park [1] 2/15
parse [1] 37/14
part [9] 6/14 6/24 18/15
20/8 33/15 63/12 66/2
67/13 69/21
particular [4] 43/1
63/14 71/4 73/12
particularly [1] 6/9
parties [3] 5/10 71/15
79/6
party [4] 5/8 11/7 26/2
63/24
past [2] 61/7 62/23
patently [2] 5/8 5/16
patience [1] 4/6
pausing [1] 70/25
Pebble [1] 2/11
pending [1] 78/23
Pennsylvania [1] 2/3
people [6] 31/15 32/17
58/19 65/22 66/5 66/8
percent [1] 26/4
perhaps [5] 9/19 20/17
53/1 60/22 72/7
period [2] 31/12 71/6
permission [2] 31/4
46/20
permit [1] 25/1
permits [1] 71/24
permitted [4] 8/22 8/25
40/12 40/18
person [8] 3/13 7/24
60/7 64/3 72/6 72/6
72/7 72/9
person's [2] 10/13
27/25
personal [1] 8/17
persuasion [2] 8/21
9/1
pertinency [4] 24/11
24/17 24/23 71/22
pertinent [2] 24/12
63/4
PETER [3] 1/6 3/9
48/21
Peter K. Navarro [1]
3/9
phone [1] 47/6
pick [1] 78/6
piercing [1] 52/20
place [2] 7/18 12/24
placed [1] 47/6
places [1] 9/22
placing [2] 8/6 8/25
Plaintiff [1] 1/4
played [2] 21/13 24/21
pleading [2] 75/2 76/3
pleadings [1] 21/19
please [3] 3/5 52/11
75/19
plenty [3] 28/25 36/3
66/22
PLLC [1] 2/6
podcast [1] 58/7

**P**

**Poindexter [1]** 11/24
**point [17]** 6/6 13/13
14/13 17/5 17/9 17/19
29/13 30/17 31/20 40/1
42/3 42/3 51/14 53/1
53/12 55/19 70/2
**pointed [1]** 17/17
**points [4]** 14/10 15/3
42/1 54/8
**policy [1]** 25/3
**portion [1]** 4/9
**position [69]** 5/24
13/23 14/2 16/10 22/3
22/6 23/7 23/15 23/16
23/19 23/24 24/23
24/24 25/14 25/16
26/13 26/14 26/17
27/14 27/22 28/7 28/8
28/25 29/19 29/23
30/18 32/19 32/20
33/12 33/21 35/7 35/17
37/4 37/5 37/6 37/17
44/24 45/24 46/18
46/18 49/17 49/17
49/23 50/3 50/24 50/24
51/1 53/2 64/13 64/16
64/17 64/18 64/20
66/17 66/18 67/13
67/18 67/20 69/6 69/14
69/15 69/24 71/2 72/4
73/2 74/9 75/3 75/9
75/14
**possession [1]** 8/20
**possibility [4]** 9/2 18/8
37/6 72/18
**possible [2]** 8/13 9/11
**post [1]** 24/15
**posture [1]** 33/4
**potential [6]** 16/13
18/7 23/4 25/15 35/12
40/12
**potentially [8]** 21/19
23/13 29/7 31/11 50/22
54/21 64/12 78/24
**potentially, [1]** 76/16
**potentially, still [1]**
76/16
**power [1]** 64/15
**powers [3]** 22/7 26/17
72/5
**precedent [1]** 34/10
**precise [2]** 7/21 42/13
**precisely [1]** 48/17
**preclude [1]** 43/7
**precludes [2]** 20/14
48/22
**predicate [4]** 31/21
35/22 69/19 72/12
**predicated [1]** 73/8
**prejudiced [1]** 21/18
**premise [1]** 61/12
**prepare [1]** 42/19
**prepared [4]** 31/18
32/22 49/5 67/2
**preparing [1]** 43/20
**preponderance [1]**
8/21

**preprogrammed [1]** 56/14
**present [7]** 17/16 27/5
31/15 33/1 36/5 67/24
69/24
**presentation [2]** 40/25
43/20
**presented [5]** 5/9
12/24 14/12 17/14
18/17
**presents [3]** 5/21 7/21
9/2
**President [89]**
**President Trump [2]**
4/19 75/5
**President Trump's [1]**
5/24
**President's [13]** 5/22
6/15 6/25 12/22 16/6
30/5 45/5 45/8 49/10
55/3 55/6 57/14 57/19
**Presidential [5]** 7/10
12/3 12/24 22/4 64/16
**presiding [1]** 3/4
**press [1]** 49/6
**presumably [1]** 56/10
64/8
**presumptively [1]**
23/25
**pretend [2]** 68/23 69/5
**pretrial [17]** 1/9 3/18
36/17 38/19 38/20
42/18 43/7 60/6 60/12
62/2 69/13 69/17 73/4
73/14 77/9 78/19 78/23
**pretty [3]** 17/21 35/18
73/9
**Prettyman [1]** 2/20
**preview [1]** 21/20
**previously [1]** 5/7
**prima [3]** 13/2 17/2
41/19
**principles [1]** 6/2
**privilege [122]**
**privilege's [1]** 14/20
**privileged [1]** 8/23
**probably [4]** 46/13
74/18 75/13 77/16
**procedural [1]** 14/11
**procedure [2]** 4/25 9/9
**proceed [1]** 59/19
**proceeding [4]** 14/17
16/17 33/24 35/17
**proceedings [5]** 1/9
2/23 3/14 79/11 80/4
**process [5]** 5/18 7/11
29/15 47/21 51/6
**produce [2]** 22/13
71/20
**produced [1]** 2/23
**proffer [9]** 13/21 14/19
18/16 39/1 39/3 42/14
42/17 43/23 77/9
**proffered [1]** 55/1
**proffering [1]** 59/11
**profusely [1]** 52/13
**progeny [1]** 18/19
**proof [3]** 13/1 61/10
62/19

60/10 71/7
**properly [1]** 63/3
**propose [1]** 22/22
**proposed [1]** 24/17
**proposing [1]** 55/12
**proposition [2]** 6/14
11/1
**propriety [1]** 37/11
**prosecute [5]** 33/9
33/15 33/19 35/19 45/2
**prosecute her [1]** 45/2
**prosecuted [5]** 10/3
33/13 34/6 36/23 61/15
**prosecution [10]** 9/8
12/1 24/19 28/1 44/22
60/7 60/13 62/3 62/25
70/24
**prosecutor [2]** 65/6
72/20
**protected [1]** 12/10
**protective [1]** 32/1
**prove [2]** 22/17 59/23
**provide [10]** 14/23
25/19 25/21 35/1 36/12
37/16 68/7 77/18 77/19
77/23
**provides [1]** 64/6
**providing [1]** 70/23
**proving [1]** 71/18
**provision [2]** 36/11
62/22
**public [5]** 39/7 39/13
49/2 77/12 79/5
**pull [1]** 24/4
**punish [1]** 23/22
**purpose [2]** 17/9 17/10
31/8
**purposes [1]** 36/13
**put [20]** 12/10 23/5
24/14 25/4 26/3 30/12
35/2 36/18 38/19 41/25
43/13 44/7 45/22 49/11
51/6 56/17 58/18 58/19
59/19 77/3
**puts [2]** 11/6 60/9
**putting [2]** 36/6 59/17

**Q**

**qualified [1]** 34/12
**query [2]** 50/23 51/5
**question [42]** 7/1
12/21 14/4 14/21 17/7
24/6 24/24 24/25 26/6
26/10 27/10 27/21 39/3
46/2 46/6 49/9 51/14
52/23 53/9 54/21 61/1
61/24 63/20 64/5 64/22
65/16 65/16 65/18 68/9
68/9 69/3 69/9 69/19
70/4 70/15 71/4 71/23
72/19 73/13 74/3 75/12
77/7
**questions [5]** 3/25
28/12 38/12 65/24 73/7
**quibble [1]** 47/12
**quite [3]** 6/19 52/2
60/21

56/2
**quoting [1]** 5/13

**R**

**raise [4]** 37/23 38/21
54/24 61/8
**raised [3]** 4/4 40/1
62/24
**raising [1]** 61/11
**ramifications [2]** 70/9
75/3
**rather [3]** 10/2 12/17
76/1
**rationale [1]** 26/16
**Re [3]** 8/5 8/13 9/11
**reaching [1]** 65/18
**reaction [1]** 21/22
**read [3]** 4/2 28/15 67/1
**readily [1]** 57/3
**reading [2]** 38/8 38/9
**really [3]** 20/19 21/11
53/9
**Realtime [1]** 2/19
**reason [9]** 5/20 16/18
22/2 33/15 46/20 50/13
65/8 72/1 72/2
**reasonable [5]** 4/21
18/2 18/13 22/17 71/19
**reasonably [3]** 15/5
18/1 19/8
**reasoned [1]** 51/2
**reasoning [2]** 5/10
22/6
**reasons [3]** 13/9 30/13
50/14
**receive [1]** 59/7
**received [4]** 14/25 59/3
65/19 66/5
**receiving [1]** 64/3 78/3
**recently [1]** 9/13
**recess [2]** 78/14 79/10
**recipient [2]** 63/25
65/14
**reconsider [1]** 4/13
**reconsideration [7]**
3/22 4/23 5/1 5/6 7/15
13/10 52/4
**record [14]** 13/13
15/10 18/16 18/22
23/14 28/16 32/18
33/23 37/20 42/11 44/1
51/14 67/6 80/3
**recorded [1]** 2/23
**records [10]** 8/11 8/18
10/2 11/10 11/10 12/4
12/4 14/21 22/13 30/2
**reelected [1]** 30/8
**referring [1]** 68/17
**reflect [1]** 77/16
**refusal [4]** 11/12 23/24
25/3 27/25
**refused [2]** 13/8 43/2
**refuses [1]** 27/15
**refusing [1]** 23/22
**Registered [1]** 2/18
**rejected [1]** 7/16
**relates [1]** 25/16

**relating [1]** 29/9
**relatively [1]** 13/17
**release [1]** 49/6
**relevant [4]** 47/19 55/4
57/15 59/10
**reliance [1]** 42/24
**relied [3]** 37/21 38/4
43/1
**rely [2]** 43/17 43/19
**remarkable [1]** 49/16
**reminder [1]** 78/18
**repeated [2]** 20/13
**replete [1]** 18/22
**reply [3]** 77/1 77/1 77/3
**report [1]** 20/17
**Reporter [4]** 2/18 2/18
2/19 2/19
**represent [5]** 18/25
54/5 54/11 66/13 69/5
**representation [3]**
19/2 20/22 48/20
**representative [3]** 47/6
55/13 71/5
**Representatives [1]**
24/2
**represented [3]** 13/5
42/25 58/24
**request [9]** 4/10 4/11
16/25 17/7 18/5 18/15
19/2 31/3 49/13
**requested [1]** 12/4
**require [4]** 7/1 9/25
52/8 77/11
**required [8]** 9/5 10/6
10/8 10/14 11/24 15/12
18/3 23/2
**requirement [1]** 15/4
**requires [5]** 5/5 5/6
39/24 39/25 52/6
**researched [1]** 52/2
**resolution [2]** 11/24
20/16
**resolve [4]** 14/15 15/8
53/9 60/19
**resolved [4]** 14/21
29/16 50/25 73/4
**resolving [1]** 50/19
**respect [20]** 3/23 4/13
5/3 6/7 6/20 13/21 16/8
19/5 21/25 27/24 29/11
32/9 33/21 37/9 49/3
49/4 49/6 51/12 54/21
69/16
**respond [6]** 10/14
41/10 59/25 71/6 76/10
**responded [2]** 6/3
19/25
**response [4]** 4/3 20/8
20/11 30/23
**responsibility [2]** 60/5
61/17
**rest [1]** 13/24
**rests [1]** 13/1
**retroactive [1]** 35/3
**reverse [1]** 4/17
**review [2]** 5/3 76/2
**reviewed [1]** 13/6
**revise [1]** 18/8

**R**

**Ridge [1]** 2/11
**right [67]** 3/15 3/21 4/7 9/7 19/22 21/1 23/4 24/11 24/13 28/5 29/19 30/2 30/11 32/3 33/17 34/7 35/13 35/14 35/20 36/23 37/4 38/2 38/5 39/11 40/2 40/7 40/8 43/3 43/9 43/19 45/6 45/18 46/4 46/6 48/23 49/18 50/1 50/24 53/18 53/23 54/13 56/16 57/12 57/23 57/24 58/11 58/23 59/5 61/5 62/9 62/13 63/9 63/10 63/11 64/6 64/12 66/15 66/21 70/16 71/13 73/21 75/13 76/23 77/4 77/25 78/2 78/10
**rightly [1]** 72/3
**rights [1]** 47/21
**rise [4]** 3/2 3/3 6/24 78/11
**RMR [2]** 80/2 80/8
**road [2]** 2/15 17/5
**Rockville [1]** 2/12
**room [4]** 39/18 46/12 46/14 74/19
**Rowley [2]** 2/6 3/11
**rule [14]** 4/9 4/24 15/18 16/25 17/15 17/16 19/6 23/1 26/5 52/4 60/25 61/7 61/8 61/10
**Rule 12 [9]** 15/18 16/25 17/15 17/16 23/1 60/25 61/7 61/8 61/10
**ruled [2]** 26/8 44/5
**rules [7]** 4/25 5/3 52/5 63/13 63/13 71/22 77/11
**ruling [8]** 4/13 9/24 18/9 18/10 19/1 48/14 52/16 52/19

**S**

**S-l-o-u-g-h [1]** 5/14
**said [28]** 7/14 8/12 8/15 16/4 20/1 20/1 27/12 28/2 31/13 37/7 37/23 43/21 43/22 45/1 45/17 48/17 49/1 50/5 50/5 50/6 50/7 53/18 56/11 58/9 67/23 69/4 71/17 77/14
**salient [2]** 29/13 67/15
**same [10]** 7/15 9/9 11/1 16/5 32/17 42/23 16/12 48/12 54/20 55/7
**save [1]** 57/2
**say [53]** 4/18 6/4 6/5 6/5 11/21 16/19 16/24 17/11 22/11 28/2 28/20 30/20 30/21 32/22 34/4 34/8 35/25 39/2 40/10 40/12 41/7 41/10 42/23 45/16 46/3 47/2 48/21 50/4 50/5 50/10 50/10

**separate [1]** 18/14
**separation [3]** 22/7 26/17 72/5
**serve [2]** 4/15 50/17
**session [1]** 3/3
**set [4]** 40/5 43/21 62/4 65/25
**setting [1]** 9/23 24/6
**several [1]** 70/3
**she [3]** 29/23 49/7 68/18
**short [1]** 13/18
**should [17]** 4/18 8/22 8/24 9/4 11/3 15/6 21/16 33/17 39/10 40/18 42/17 43/6 43/23 50/5 55/15 62/2 73/5
**shouldn't [2]** 35/15 45/24
**show [22]** 7/12 8/7 10/8 15/4 15/12 17/2 18/12 18/15 22/24 29/23 40/18 40/21 65/19 65/22 66/10 66/18 66/19 66/23 66/25 66/25 69/11 72/10
**showed [4]** 65/15 65/23 66/21 66/22
**showing [6]** 8/24 10/1 38/21 42/2 72/11 72/24
**side [2]** 26/5 74/19
**significant [1]** 5/11
**similar [1]** 55/8
**Similarly [1]** 43/13
**simple [2]** 70/11 73/9
**simplifying [1]** 62/6
**simply [3]** 12/2 31/21 66/6
**since [5]** 5/12 8/16 8/17 8/19 9/5
**Sinclair [4]** 10/24 24/4 24/10 24/20
**sir [1]** 3/17
**sitting [1]** 27/14
**situation [3]** 27/13 61/15 68/25
**situations [2]** 29/14 65/13
**six [1]** 62/10
**skeptical [1]** 49/22
**skepticism [1]** 13/22
**skills [1]** 51/18
**Slough [1]** 5/14
**so [104]**
**some [38]** 7/4 7/8 8/2 9/19 13/2 14/14 15/6 16/1 16/12 16/2 17/2 17/4 21/15 29/9 29/11 32/9 32/10 35/18 35/24 41/19 44/6 45/18 47/21 51/13 52/24 53/12 55/12 55/13 58/3 60/24 65/1 70/4 71/6 75/25 76/1 77/8 77/15 77/21
**somebody [9]** 16/21 35/20 37/13 39/15 44/14

**separate**

**somehow [1]** 37/15
**someone [3]** 7/25 22/16 37/16
**someone's [1]** 29/22
**something [11]** 22/19 24/16 38/19 40/16 48/3 67/22 69/13 69/17 74/11 76/10 76/12
**somewhat [2]** 28/13 70/8
**somewhere [1]** 28/6
**sorry [6]** 24/11 51/8 60/15 70/18 78/5 78/20
**sort [9]** 7/4 13/23 18/18 52/13 63/23 70/8 71/14 77/9 77/14
**sought [5]** 10/2 29/4 32/4 36/11 63/4
**sought-after [1]** 10/2
**sound [1]** 56/1
**Southern [1]** 9/13
**speak [3]** 4/2 33/7 68/23
**speaking [3]** 60/8 66/3 75/6
**speaks [3]** 62/24 63/2 66/1
**specific [2]** 42/1 52/4
**specifically [6]** 4/16 48/13 48/16 69/2 77/11 79/6
**speech [6]** 8/10 9/18 9/20 12/10 14/3 14/11
**speedy [3]** 78/16 79/4 79/6
**Speedy Trial Act [2]** 78/16 79/4
**spent [1]** 38/8
**spin [1]** 25/24
**spirits [1]** 77/14
**split [1]** 69/22
**splitting [1]** 66/16
**spoke [1]** 45/15
**spoken [2]** 46/25 58/14
**stage [3]** 61/7 61/8 61/10
**stand [19]** 17/18 22/23 30/9 30/22 35/24 36/4 37/7 38/7 39/2 39/14 39/16 39/21 42/7 42/18 45/22 46/3 59/20 62/7 69/5
**standard [7]** 4/24 5/1 5/2 5/5 18/9 43/23 59/15
**standing [3]** 32/10 65/6 74/8
**stands [6]** 6/13 11/1 78/14 79/10
**stanley [5]** 2/10 2/14 2/17 3/11 3/12
**Stanley Brand [1]** 3/11
**Stanley Woodward [1]** 3/12
**stanleymbrand [1]** 2/13
**start [2]** 43/21 71/11

**starts [1]** 42/4
**state [7]** 28/13 40/23 46/6 46/7 46/9 55/2 55/4
**stated [1]** 6/2
**statement [1]** 39/25
**statements [1]** 55/22
**states [24]** 1/1 1/3 1/10 3/8 5/13 5/23 6/23 8/24 10/18 10/19 10/20 10/22 10/24 11/25 11/23 12/7 24/1 24/1 30/23 42/12 47/8 50/11 64/24 72/6
**Station [1]** 2/7
**status [2]** 67/16 67/17
**statute [2]** 23/21 26/25
**stenography [1]** 2/23
**still [7]** 27/13 36/12 68/7 68/8 68/9 72/24 76/16
**stood [1]** 72/3
**stop [1]** 31/13
**Street [1]** 1/15
**subcommittee [4]** 32/10 37/9 63/14 63/17
**subject [9]** 6/22 7/7 27/16 28/1 28/19 65/1 65/12 70/24 72/24
**submission [1]** 5/12
**submissions [1]** 78/3
**submit [5]** 19/15 21/8 55/7 56/23 76/2
**submitted [1]** 78/8
**subpoena [42]** 6/3 6/8 8/10 8/11 10/15 11/15 12/3 12/19 15/24 16/9 20/2 20/10 21/25 23/23 27/4 29/7 30/24 32/9 32/9 32/13 36/11 37/10 43/2 44/21 46/18 46/24 62/17 63/2 63/3 63/11 63/21 63/23 63/25 64/2 64/9 64/15 67/17 67/18 68/7 69/16 71/20 71/24
**subpoenas [5]** 44/6 50/17 50/20 65/15 70/21
**subsequent [1]** 9/8
**such [3]** 6/20 9/5 41/10
**sufficiency [1]** 47/13
**sufficient [5]** 11/21 19/2 47/17 54/9 54/14
**suggest [4]** 9/16 37/20 41/9 42/20
**suggested [2]** 9/9 30/19
**suggesting [4]** 21/16 37/14 57/7 57/13
**suggestion [2]** 21/4 42/16
**suggests [4]** 6/10 10/11 42/17 46/23
**Suite [1]** 2/3
**summarize [1]** 71/14
**summon [1]** 22/15
**Sunday [1]** 62/11
**support [6]** 7/24 8/3

**Select [17]** 6/8 11/3 12/20 16/9 19/12 19/19 19/24 20/6 20/21 21/3 29/2 29/3 30/24 32/17 43/2 58/21 58/25
**Select Committee [2]** 12/20 19/24
**Select Committee's [1]** 6/8
**selection [1]** 78/1
**self [8]** 38/25 39/1 39/2 41/17 41/19 43/7 43/12 54/17
**self-defense [8]** 38/25 39/1 39/2 41/17 41/19 43/7 43/12 54/17
**senior [20]** 5/25 7/10 7/19 10/4 22/5 22/8 22/12 23/22 26/15 26/23 27/24 34/13 44/16 53/4 55/24 64/16 69/15 70/21 70/22 72/5
**senior-level [1]** 34/13
**sense [3]** 7/20 56/8 73/18
**sensitive [1]** 6/21 7/6

**56/12 56/12 56/13
56/14 58/8 62/7 64/22
66/6 66/16 66/23 66/24
68/11 72/20 74/8 74/11
75/25 76/23 77/10
saying [11]** 14/8 30/20 31/8 33/17 35/10 35/12 41/2 45/14 48/13 48/16 71/15
**says [13]** 28/23 30/22 37/8 38/8 39/16 39/22 43/6 54/17 58/5 62/8 63/12 66/14 72/15
**says that [1]** 39/22
**Scavino [1]** 33/16 33/21 33/23 45/7 57/9 59/2 66/11
**scenario [2]** 7/21 58/23
**schedule [1]** 77/2
**scintilla [1]** 54/18
**scope [5]** 12/3 47/5 52/23 55/2 55/5
**Sealed [1]** 8/5
**seat [2]** 71/11 71/11
**seated [1]** 3/5
**SEC [1]** 9/14
**second [5]** 4/5 6/9 12/25 28/17 36/15
**Section [1]** 28/1
**Section 192 [1]** 28/1
**secure [1]** 12/11
**see [6]** 17/4 38/21 50/18 76/11 78/2 78/2
**seeking [4]** 15/18 15/22 28/18 29/7
**seem [1]** 73/3
**seems [11]** 17/13 26/11 31/20 35/18 35/23 38/10 54/21 69/9 72/12 72/17 72/25
**seen [2]** 51/25 57/1

**S**

support... [4] 43/14
54/18 61/12 69/12
supports [1] 32/12
suppose [2] 22/25
41/10
Supreme [4] 10/23
11/14 14/1 63/8
Supreme Court [3]
11/14 14/1 63/8
Supreme Court's [1]
10/23
sure [15] 18/3 23/10
28/22 36/5 36/22 37/11
42/10 46/9 46/15 50/15
58/10 59/9 67/5 76/4
79/1
surrounding [1] 30/3
suspect [1] 33/15

**T**

table [1] 61/20
tactic [1] 47/15
take [10] 27/13 27/22
40/4 45/9 47/3 49/16
55/18 73/25 75/9 76/18
taken [7] 6/19 17/18
26/17 30/2 45/23 53/2
64/13
takes [2] 36/4 61/19
talk [11] 4/10 16/10
16/13 21/21 23/12 30/1
49/14 55/11 55/15
59/11 77/25
talked [5] 31/13 63/13
75/15 77/5 79/7
talking [5] 15/17 15/19
15/21 45/16 58/7
tantamount [1] 68/4
tell [13] 33/8 34/7
47/25 51/22 59/21
68/16 73/15 73/22
73/23 75/7 75/10 75/13
75/15
telling [3] 36/2 62/13
68/19
terms [3] 15/17 16/12
16/15
terribly [1] 59/10
territory [1] 36/25
testifies [4] 51/23 58/3
58/3 60/16
testify [17] 9/3 11/17
17/11 17/21 18/1 22/13
32/16 34/18 34/20
40/20 40/22 47/23 48/1
48/22 52/21 54/6 71/20
testifying [2] 17/20
20/15
testimonial [19] 7/11
8/1 10/6 22/4 26/6 33/7
33/10 34/14 36/10
65/18 67/20 68/4 68/13
69/11 72/9 72/23 73/7
73/8 74/10
testimonially [1] 15/25
testimony [23] 7/1
8/23 9/4 9/5 9/7 10/2

25/3 29/4 42/19 45/3
45/12 48/5 55/25 56/20
56/25 57/19 57/19 64/3
70/23
than [4] 9/21 39/24
50/8 59/14
Thank [15] 4/6 15/14
25/13 51/19 71/9 71/12
74/1 74/17 75/21 76/5
78/9 78/12 78/13 78/18
79/9
Thank you [9] 4/6
15/14 25/13 74/1 75/21
76/5 78/9 78/12 79/9
Thanks [1] 78/4
that [527]
that's [76] 3/21 6/16
10/19 15/19 17/24
19/22 20/8 21/25 22/16
22/19 24/13 24/16
24/17 26/18 28/24
30/11 30/16 32/3 32/5
32/7 35/14 36/16 37/3
37/10 37/22 38/10
40/25 41/7 41/7 43/3
43/16 44/17 45/16
46/13 46/20 47/11 48/3
48/23 50/23 53/5 53/5
53/8 53/9 54/6 55/17
56/6 57/18 59/2 59/12
60/1 61/9 61/24 63/6
64/4 64/11 64/16 64/17
64/18 65/8 66/14 67/22
68/3 68/20 69/2 71/25
72/19 72/25 73/2 73/9
73/13 73/15 73/20
74/22 75/12 75/14 76/7
their [12] 20/21 37/6
41/21 45/8 53/5 53/5
56/6 56/21 60/25 61/9
65/15 65/23
them [11] 22/16 26/2
33/20 38/4 39/9 39/18
50/18 59/3 61/9 61/10
73/9
then [31] 4/8 4/10 4/11
7/5 10/20 10/23 14/4
15/3 20/12 21/7 25/4
27/21 29/15 37/12
37/12 50/17 51/22
55/14 59/19 60/10
60/25 61/22 62/1 63/25
69/9 69/9 71/15 73/16
75/15 76/9 76/24
there [135]
there's [28] 4/7 4/8
5/19 7/8 7/23 8/8 10/21
10/23 12/12 15/16 16/7
21/15 22/3 34/24 37/24
41/15 43/11 43/13
47/17 53/16 55/8 55/12
61/12 66/3 66/5 66/22
67/20 78/22
therefore [11] 10/6
14/9 16/22 26/20 27/1
40/20 61/5 61/19 70/9
70/23 72/23

24/18 28/20 29/21
30/12 30/14 34/4 35/8
36/17 36/23 37/15
38/12 53/4 53/4 53/25
58/6 58/19 64/19 64/19
65/3 65/17 65/25 68/21
74/10 76/1 78/19 78/21
79/7
they [65] 7/12 19/25
20/1 20/10 20/10 28/15
28/18 33/6 33/16 35/2
37/4 37/4 39/2 39/3
39/4 39/9 39/9 41/20
43/22 43/23 44/25
45/11 49/20 50/20
50/21 53/4 53/14 53/18
56/2 56/3 56/4 56/5
56/19 58/12 59/3 60/18
60/24 61/7 61/9 61/13
61/24 62/1 62/13 62/15
62/17 63/9 63/10 63/18
64/2 65/23 65/23 65/23
66/21 66/22 67/25 72/8
72/10 72/10 73/7 73/11
73/16 73/16 77/14
77/22 77/23
they'll [1] 61/24
they're [5] 36/5 49/17
56/19 56/20 58/10
they've [2] 45/10 66/23
thing [10] 6/9 9/24
12/13 37/22 41/10
54/20 60/21 73/9 74/7
77/4
things [5] 3/19 3/21
19/23 31/6 36/9
think [83]
thinking [3] 21/20 38/9
51/20
thinks [3] 22/20 23/11
64/9
third [5] 8/12 8/15 9/10
12/8 63/24
Third Circuit [4] 8/12
8/15 9/10 12/8
third-party [1] 63/24
this [125]
This is [1] 3/8
Thompson [1] 8/5
thorough [2] 13/16
51/2
thoroughly [1] 45/10
thoroughness [1]
47/14
those [17] 7/16 8/23
13/9 17/4 28/12 29/14
37/14 38/9 47/10 50/19
57/3 58/6 58/17 59/7
63/18 63/19 67/21
though [2] 20/16 29/20
thought [7] 19/10 20/1
21/23 22/21 33/9 46/1
66/18
three [2] 41/25 76/15
three weeks [1] 76/15
through [8] 18/11 20/6
20/23 32/16 37/18 51/6

tied [1] 20/15
tiering [1] 73/20
time [37] 3/20 13/17
16/5 17/18 21/2 27/4
27/10 29/18 31/13
37/21 37/24 44/4 45/11
47/24 49/13 50/11
54/12 55/14 56/14
59/16 64/2 64/8 66/14
67/17 67/18 71/6 74/24
75/7 76/14 76/18 76/24
77/21 78/15 78/25 79/3
79/7 79/8
times [1] 70/3
timing [1] 19/4
Title [1] 8/14
titled [1] 80/4
today [9] 32/6 33/12
59/21 64/18 64/20 67/2
74/8 76/11 79/7
together [1] 27/11
told [10] 17/12 30/23
37/8 39/12 39/18 41/4
43/16 46/4 62/8 65/7
too [6] 17/13 43/19
46/13 53/24 60/23 62/6
topics [1] 29/2
totally [1] 34/23
touched [1] 77/6
tradition [1] 11/8
transcript [4] 1/9 2/23
17/22 80/3
transcription [1] 2/23
transcripts [1] 57/1
treated [1] 11/15
tree [1] 73/20
trial [37] 12/3 18/17
18/19 22/1 23/13 36/7
37/6 40/11 40/17 40/25
41/14 41/15 41/21 42/4
42/21 43/20 43/21
45/24 46/24 47/11
47/15 50/16 50/17
50/19 50/25 53/23
59/14 60/8 61/11 61/20
74/22 75/24 76/15
76/17 78/16 79/4 79/6
tried [2] 9/5 75/25
trigger [2] 15/6 78/24
true [8] 17/17 24/19
41/20 42/23 62/11 63/6
68/3 69/4
Trump [7] 4/19 8/5
21/5 48/21 67/19 74/5
75/5
Trump's [2] 5/24 67/16
truth [2] 36/2 62/13
try [2] 42/8 67/12
trying [4] 30/8 37/5
40/10 40/15
turn [2] 52/5 64/22
turned [1] 52/24
two [10] 15/3 17/25
19/23 31/5 31/15 39/18
47/10 55/24 58/25
76/15
type [1] 34/13

U.S [1] 1/14
U.S. [1] 10/24
U.S.C [1] 9/11
U.S.C. [2] 9/12 10/25
ultimate [1] 26/6
ultimately [5] 5/23 7/13
64/11
unable [1] 14/23
unawares [1] 49/17
uncharted [1] 36/25
unconstitutional [1]
23/21
under [20] 4/24 18/19
19/13 22/11 25/2 25/18
26/25 27/17 28/1 32/20
32/25 34/4 34/7 34/10
35/13 51/11 51/23
67/21 78/16 79/4
underestimating [1]
51/18
understand [18] 9/18
22/6 22/10 26/16 27/6
28/24 29/6 29/8 37/3
48/14 51/1 52/22 55/1
60/22 70/2 73/2 75/23
75/25
understanding [4]
41/23 48/6 48/10 48/16
understands [3] 13/20
15/9 23/16
understood [7] 15/15
41/22 55/7 58/25 67/22
74/13 74/16
undoubtedly [1] 30/4
unequivocally [2]
49/24 58/9
unfortunately [1] 6/18
uninterrupted [1]
10/12
UNITED [22] 1/1 1/3
1/10 3/8 5/13 6/23 8/24
10/18 10/19 10/20
10/22 10/24 10/25
11/23 12/7 24/1 24/1
30/23 47/8 50/11 64/24
72/6
United States [15]
5/13 10/18 10/19 10/20
10/22 10/24 10/25 12/7
24/1 24/1 30/23 47/8
50/11 64/24 72/6
unless [2] 26/11 41/24
unprecedented [2]
36/19 36/24
unring [1] 23/18
until [2] 78/25 79/1
up [28] 7/12 7/21 17/11
18/1 22/23 29/23 35/24
40/20 40/22 42/7 48/18
51/17 54/16 58/5 61/9
62/10 64/17 64/22 65/6
65/15 65/19 65/22
65/23 66/10 66/18
72/10 72/11 72/24
upon [8] 8/1 13/6
17/21 26/17 27/15
37/25 73/8 77/7

**U**

**us [2]** 51/22 71/6
**usdoj.gov [2]** 1/17
1/18
**use [4]** 8/16 9/3 56/4
56/18
**used [2]** 9/8 9/13 23/21
**useful [1]** 8/8
**utterly [1]** 35/2

**V**

**vacate [1]** 74/22
**vacated [1]** 75/24
**valid [2]** 9/7 60/6
**validity [1]** 36/16
**validly [1]** 63/24
**various [1]** 66/4
**veracity [2]** 55/21
55/24
**verizon.net [1]** 2/5
**versus [12]** 3/9 5/13
6/23 9/14 10/17 10/18
10/20 10/21 10/24
10/25 11/23 12/7
**very [15]** 13/16 16/10
20/6 27/10 30/13 45/23
45/23 50/8 51/2 56/14
56/18 56/19 65/3 68/22
68/22
**vet [1]** 79/7
**view [15]** 4/1 13/16
15/20 15/25 30/24
32/25 38/7 40/8 41/12
53/5 53/6 69/10 70/20
71/17 71/21
**vindicate [1]** 9/6
**violate [1]** 22/7
**violates [1]** 47/21
**violation [1]** 29/20
**violations [2]** 8/14 9/11
**Virginia [1]** 2/8
**vis [2]** 58/18 58/18
**vis-à-vis [1]** 58/18
**vote [2]** 63/15 63/16
**vs [1]** 1/5

**W**

**wait [2]** 78/7 78/12
**waive [3]** 16/4 53/22
78/17
**waived [1]** 14/8
**waiving [1]** 53/22
**want [23]** 9/24 15/10
16/13 18/11 21/21
22/19 23/12 30/9 36/7
37/22 43/4 47/12 47/18
56/1 59/15 68/18 68/23
69/5 76/9 76/14 77/4
77/25 78/5
**wanted [4]** 38/5 44/25
50/10 74/14
**wants [1]** 77/1
**warrants [1]** 79/8
**was [177]**
**was not [1]** 72/16
**was some [1]** 65/1
**Washington [5]** 1/5
1/15 2/4 2/15 2/21

**watch [2]** 29/7 29/9
29/10 30/1 31/18 33/10
45/6 45/17 58/5 58/15
58/16 63/16 69/15
69/16 75/17
**watching [1]** 13/24
**WATER [1]** 2/2
**way [18]** 10/17 15/2
17/6 23/18 24/14 24/20
28/19 32/17 37/14
44/13 44/20 47/2 48/24
49/14 51/20 54/7 59/18
73/22
**ways [3]** 9/15 31/25
62/10
**we [122]**
**we'd [4]** 16/10 18/10
44/6 54/9
**we'll [14]** 16/10 17/4
41/10 50/17 50/17
50/18 53/25 59/19
71/15 74/22 76/12
76/18 78/2 79/3
**we're [16]** 3/18 15/19
15/21 28/6 35/7 37/1
44/4 49/14 51/22 58/12
59/12 60/1 61/7 67/19
71/16 74/12
**we've [7]** 4/2 45/23
49/18 51/3 63/13 77/5
79/7
**weekend [1]** 48/4
**weeks [3]** 20/13 76/15
76/15
**weigh [3]** 51/6 51/9
51/11
**welcome [1]** 49/11
**well [10]** 6/18 17/18
32/19 33/2 38/18 41/9
42/6 47/13 54/24 78/22
**went [2]** 29/1 29/14
**were [25]** 8/18 8/19
12/4 16/11 21/11 27/8
27/10 27/18 28/12
28/15 28/18 28/25 30/6
31/1 31/15 33/2 33/19
38/3 65/22 67/24 68/5
69/14 69/15 69/25 74/4
**weren't [2]** 44/6 67/2
**what [106]**
**what's [1]** 53/12
**whatever [1]** 58/7
**when [16]** 6/2 6/25 7/6
9/17 11/9 14/13 24/4
31/13 42/4 51/12 56/17
58/2 58/2 62/1 68/11
78/2
**where [11]** 5/11 15/22
16/25 34/13 50/18 52/5
52/16 63/8 68/9 71/13
71/14
**whether [64]** 4/14 5/6
5/8 7/13 12/4 12/22
14/4 17/4 18/11 18/20
19/7 19/9 21/14 23/6
24/11 26/1 26/1 30/7
31/4 33/19 34/12 36/20
37/4 37/6 37/10 38/12

**which [45]** 8/9 8/9 8/14
8/18 8/19 8/23 9/25
11/1 11/11 11/16 11/24
13/16 14/1 16/13 23/1
26/6 29/16 29/20 31/2
32/25 37/23 40/7 43/6
44/8 44/20 45/23 47/4
48/24 49/7 50/6 50/7
52/20 53/1 53/17 55/22
58/7 63/7 64/2 65/14
65/20 66/1 70/20 73/8
74/18 75/16
**while [3]** 13/22 25/18
76/21
**whiny [1]** 56/1
**White [7]** 13/24 20/22
22/5 22/8 22/12 26/23
44/18
**White House [5]** 20/22
22/5 22/8 22/12 26/23
**who [16]** 7/24 14/23
27/14 37/17 44/20 45/7
45/15 45/15 51/23 57/3
58/24 58/25 59/6 66/13
72/9 76/21
**who's [4]** 7/25 32/16
46/14 55/13
**whoever [1]** 40/8
**whole [2]** 29/2 47/4
**whose [2]** 45/11 57/1
**why [24]** 35/15 36/16
36/17 45/23 47/11 49/7
53/18 53/19 56/3 56/4
56/24 58/18 60/17
60/22 61/21 62/6 68/16
68/18 68/20 73/2 75/16
76/12 76/23 77/3
**wife [1]** 13/25
**will [26]** 5/20 6/4 9/2
9/3 13/10 18/19 21/17
23/5 23/18 41/8 41/10
47/2 48/3 59/16 62/1
62/10 62/12 62/13
62/15 68/20 68/21 75/2
76/1 76/9 76/17 78/17
**willful [1]** 40/18
**William [3]** 2/18 80/2
80/8
**willing [1]** 25/1
**wisely [1]** 13/23
**wish [1]** 3/23
**wished [1]** 11/5
**wishes [1]** 59/18
**withholding [1]** 6/21
**within [1]** 73/12
**without [9]** 25/20
42/13 46/19 58/13
58/20 58/21 65/17

**witness [9]** 11/17
22/23 30/21 31/16
35/24 35/25 36/4 39/16
39/21
**witnesses [2]** 29/1
42/7
**won't [3]** 43/15 43/16
73/25
**WOODWARD [12]** 2/11
2/14 2/14 3/12 15/15
17/7 22/22 29/18 31/13
44/2 45/13 76/14
**word [2]** 40/14 56/4
**words [9]** 28/24 31/8
34/4 35/11 52/23 55/6
55/8 56/18 69/14
**works [1]** 46/15
**world [1]** 70/20
**would [112]**
**wouldn't [4]** 36/10
44/4 46/19 59/20
**write [4]** 56/9 56/9
56/17 56/18
**writes [1]** 6/12
**writing [2]** 58/6 74/25
**written [2]** 34/19 53/13
**wrong [6]** 11/7 12/25
15/25 51/22 62/20
73/23
**wrongly [1]** 72/3
**wrote [4]** 6/13 43/5
50/2 56/10

**Y**

**Yeah [5]** 35/5 38/16
47/22 52/6 79/2
**years [3]** 26/9 53/6
72/3
**yes [21]** 11/8 14/10
25/4 28/2 28/5 28/10
28/11 29/12 31/23 38/1
38/20 39/5 43/10 43/18
48/4 50/15 54/15 68/16
69/21 75/6 75/20
**yesterday [1]** 58/20
**yet [3]** 41/9 51/15 52/4
**York [1]** 9/14
**you [146]**
**you know [1]** 16/18
**you mean [1]** 25/25
**you'll [3]** 28/22 76/15
76/24
**you're [17]** 31/5 35/12
36/23 37/14 43/12
43/21 45/16 51/18
55/12 56/16 57/7 58/6
59/11 65/6 65/6 68/19
76/21
**you've [9]** 16/4 22/23
29/13 32/23 33/13 36/3
71/10 75/7 76/20
**your [94]**
**Your Honor [60]** 3/7
13/12 14/10 14/16 15/3
15/9 15/14 18/5 18/8
19/4 19/17 19/21 20/5
23/15 24/22 25/13 27/2

27/19 28/11 29/12
30/1 31/1 31/23 36/9
37/18 38/1 38/13 39/5
39/23 40/17 42/12
43/10 43/18 45/25
46/17 47/2 50/15 51/19
52/9 54/1 59/25 65/3
65/13 67/1 67/7 68/14
69/21 70/18 70/25
71/12 73/19 74/1 75/1
75/18 75/21 76/18
76/22 78/5 78/9 78/15
**Your Honor's [3]** 13/16
46/19 46/23
**Your Honor's point [1]**
55/19
**yourself [2]** 17/17
28/14

**Z**

**Zaremba [3]** 2/18 80/2
80/8