UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 22-cr-200 |
| v. : | |
| : | |
| PETER K. NAVARRO, : | |
| : | |
| Defendant. : | |

**UNITED STATES' SUPPLEMENTAL BRIEFING ON DUE PROCESS**

The Court has inquired as to whether there would be any due process concerns arising from the prosecution of the Defendant for Count Two of the Indictment, charging willful default for failing to respond to a Congressional subpoena for testimony, if the evidence were to show that former President Trump directed the Defendant not to testify at all, based upon the doctrine of testimonial immunity of close presidential advisers, at a time before the Department of Justice publicly articulated its view (in the Statement of Interest in *Meadows v. Pelosi,* 21-cv-3127) about the qualified (rather than absolute) nature of that immunity in cases of advisors to *former* Presidents.

It bears emphasizing that this hypothetical has no applicability to this case. Defendant Navarro has offered no evidence that former President Trump ever instructed him to invoke testimonial immunity in response to the subpoena of the House of Representatives Select Committee to Investigate the January 6th Attack on the U.S. Capitol ("the Committee"), let alone to invoke such immunity with respect to testimony unrelated to his official duties as a close presidential advisor.[1]  And even if the Defendant were able to demonstrate that the former

---

[1] Indeed, the January 23, 2023, letter from former President Trump's counsel to defendant Navarro appears to stand only for the proposition that, had he been consulted, President Trump would have directed defendant Navarro to assert executive privilege over the Defendant's communications with the former President. *See* ECF No. 71-1.

President issued him such a directive, he did not convey that fact to the Committee to give it the opportunity to consider that immunity claim (particularly in light of the determination by the sitting President, on behalf of the Presidency, that defendant Navarro should testify). *See Hutcheson v. United States*, 369 U.S. 599, 608-611 (1962) (stating that a constitutional objection "must be adequately raised before the inquiring committee if [it] is to be fully preserved for review in this Court. To hold otherwise would enable a witness to toy with a congressional committee in a manner obnoxious to the rule that such committees are entitled to be clearly apprised of the grounds on which a witness asserts a right of refusal to answer." (internal citations omitted)). This failure, alone, ends the analysis of the hypothetical scenario presented, and the Court need not reach the next level of the hypothetical scenario: what due process impact, if any, would there be of a prosecution *after* a properly raised and adjudicated immunity instruction before the relevant congressional committee.

But even assuming arguendo that the former President has invoked testimonial immunity on behalf of the Presidency, and the Defendant had communicated as much to the Committee, as directed by the former President, there would be no due process concern with the current prosecution under Count Two for violation of 2 U.S.C.§ 192.[2]

To be sure, as this court has previously noted, due process can be a valid defense to criminal prosecution "when a criminal defendant 'reasonably relied on statements made by a government official charged with interpreting, administering, or enforcing the law defining the offense and those statements actively misled the individual to believe that his or her conduct was legal.'" *United States v. Navarro*, No. 22-CR-200 (APM), 2023 WL 371968, at *14 (D.D.C. Jan.

---

[2] As the Court acknowledged at the hearing, this question about a hypothetical assertion of testimonial immunity has no bearing on Count One of the indictment, which charges the Defendant with failing to comply with a subpoena to provide documents to the Committee.

19, 2023) (quoting *United States v. Chrestman*, 525 F. Supp. 3d 14, 29–30 (D.D.C. 2021)).  This is, however, "a 'narrowly tailored defense, available in very limited circumstances.'" *Id.* (quoting *Chrestman*, 525 F. Supp. 3d at 30).  As this court explained:

> To successfully assert an entrapment by estoppel defense, a defendant bears the burden of proving (1) "that a government agent actively misled him about the state of the law defining the offense," (2) "that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense," (3) "that the defendant actually relied on the agent's misleading pronouncement in committing the offense," and (4) "*that the defendant's reliance was reasonable* in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation."

*Id.* at 31 (*quoting United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)) (emphasis added).

So, for instance, it could raise due process concerns if the Department of Justice were to prosecute a current presidential aide for complying with a directive of the incumbent President to assert executive privilege or immunity on behalf of the Presidency.  *See Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 134 n.34 (1984) ("[T]here could be a serious due process problem if such an official were subjected to criminal penalties for obeying an express Presidential order, an order which was accompanied by advice from the Attorney General that compliance with the Presidential directive was not only consistent with the constitutional duties of the Executive Branch, but also affirmatively necessary in order to aid the President in the performance of his constitutional obligations to take care that the law was faithfully executed.").

As we have previously explained, however, there would be no such due process concerns if the Defendant had relied upon a "directive" by a *former* President, because it is not reasonable for such a former official to rely upon that former official's view of the law, particularly when the incumbent President has determined that the official *should* testify, and because a former President lacks any supervisory or other governmental authority to direct a person not to comply with a

subpoena.

Nor would it have been reasonable for the Defendant to rely upon any previous writings of the Office of Legal Counsel ("OLC") as grounds to justify his categorical refusal to testify in these circumstances. The Department has not once taken the position that a proper invocation of either executive privilege or testimonial immunity by a former President can itself justify a former official's complete non-compliance with a congressional subpoena and thereby preclude prosecution of that person for contempt of Congress under Section 192. For reasons we have previously explained, *see* ECF No. 79 at 10-13, the rationales underlying the relevant OLC opinions, particularly the germinal 1984 Olson Opinion, that Section 192 does not apply where the incumbent President has invoked executive privilege or testimonial immunity, do not apply to similar assertions made by a former President.

OLC opinions have repeatedly made clear that testimonial immunity of *any* sort, absolute or qualified, applies only with respect to questions seeking information from a close presidential adviser concerning "matters that occur[red] during the course of discharging [the adviser's] official duties." *Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. 5, 7 (July 15, 2014); *see also id.* at 16 ("Consistent with [OLC] precedents, we likewise conclude that Mr. Simas has absolute immunity from compulsion to testify before Congress *about his service to the President in the Office of Political Strategy and Outreach*") (emphasis added); Memorandum for John W. Dean III, Counsel to the President, from Ralph E. Erickson, Assistant Attorney General, Office of Legal Counsel, Re: *Appearance of Presidential Assistant Peter M. Flanigan Before a Congressional Committee* at 2-3 (Mar. 15, 1972) (https://www.justice.gov/file/1543196/download) (recounting historical instances in which close presidential advisors have appeared and testified before

congressional committees about their private affairs).  Therefore, as we have explained in our previous briefs, *see* ECF No. 79 at 16; ECF No. 82 at 4, even assuming for the sake of argument that the White House Director of Trade and Manufacturing could in some circumstances qualify for testimonial immunity when asserted by an incumbent President, no President, current or former, would have the authority to make a categorical invocation of testimonial immunity respecting (at a minimum) the vast majority of the testimony the Committee sought from the Defendant, which concerned matters that did not involve the discharge of his official duties in that governmental role.  If former President Trump had directed Defendant not to testify about such unofficial matters, Defendant's reliance upon that directive could not possibly have been objectively reasonable.  That alone is sufficient reason to conclude that the current prosecution under Count Two raises no due process concerns.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:    */s/Elizabeth Aloi*
        John Crabb
        Elizabeth Aloi (D.C. Bar No. 1015864)
        Assistant United States Attorneys
        United States Attorney's Office
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7212 (Aloi)
        elizabeth.aloi@usdoj.gov