# EXHIBIT 2-B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | Criminal No. 1:22-cr-00200-APM |
| v. ) | |
| ) | |
| PETER K. NAVARRO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**STIPULATION REGARDING THE HEARING
AND TRIAL TESTIMONY OF ELIZABETH HARRINGTON**

The Government and Defendant Peter K. Navarro, by and through their respective counsel, hereby stipulate and agree that if Elizabeth Harrington were called as a witness at the evidentiary hearing scheduled by the Court for August 28, 2023, and trial scheduled for September 5, 2023, she would testify as follows:

Testimony of Elizabeth Harrington

1. I am currently employed as a spokesperson for the Donald J. Trump for President 2024 campaign and have held that position since November 15, 2022. Prior to that, beginning in mid-June 2021, I worked as a spokesperson for the Save America Political Action Committee ("Save America"). As spokesperson for President Trump, I conduct television and radio interviews and prepare and publish press statements on his behalf. I interacted with employees of President Donald J. Trump's Administration, including with many of his former senior presidential aides, and I continued to do so to a lesser extent after the conclusion of the President Trump's term in January 2021.

2. I met Peter Navarro in 2021 through political circles after he was serving as a senior advisor to President Trump, and interacted with him by virtue of my position with Save America.

I spoke with him sporadically when he called me about a variety of subjects after the conclusion of President Trump's Administration.

3. In September 2021, I knew because of my position with Save America, and as a result of numerous reports in the media, that the January 6th Committee had issued subpoenas to President Trump's senior presidential aides, Mark Meadows, Dan Scavino, Kash Patel, and Steve Bannon, for deposition testimony and the production of documents. I also recall that during that same period President Trump publicly announced that he had instructed those presidential aides to assert executive privilege in response to the subpoenas. I was aware that President Trump considered the January 6th Committee, which was run by Democrat House members and their staffs, to be engaged in an unfair and aggressive partisan attack on his former Administration and him personally.

4. I also recall that around the same time that the January 6th Committee issued its subpoenas to Mark Meadows et al., the Select Subcommittee on the COVID-19 Pandemic was also issuing subpoenas to former Trump Administration officials for testimony and documents. The House COVID-19 Subcommittee, like the January 6th Committee, was run by the Democrat party, which at that time was the ruling majority in the House of Representatives. The Committees were functioning on similar timelines and simultaneously issuing subpoenas for matters that had occurred during the Trump Administration.

5. In November 2021, weeks after the January 6th Committee issued its subpoenas to Mark Meadows, et al, the COVID-19 Subcommittee served Dr. Navarro with a subpoena for testimony and documents. In response, President Trump instructed me to draft a statement for release to the media. He then issued the statement which publicly instructed Dr. Navarro to "protect executive privilege" and not comply with the subpoena. *Defense Ex 1* is a copy of the instruction

that was published in the media. I know that President Trump considered the Congressional Committees to be mounting a simultaneous attack on his Administration and him personally. Dr. Navarro obeyed President Trump's instructions and notified the Subcommittee that he was unable to comply with its subpoena. It is my understanding that the House of Representatives dropped the matter and made no attempt to enforce the subpoena.

6. A few months later in early February 2022, I learned that the January 6th Committee had issued a subpoena to Dr. Navarro, like it had to Mark Meadows, et al. I do not recall if I first learned about the subpoena from the media, but on February 9, 2022, Dr. Navarro called me on my cell phone to say that he had been served. During the call, he told me that he intended to issue a public statement about the subpoena and wanted to let President Trump know before he issued it. Dr. Navarro reminded me that President Trump had previously instructed him to assert executive privilege in response to the COVID-19 Subcommittee's subpoena (which I already knew), and that he understood he should do the same for this subpoena.

7. My phone conversations with Dr. Navarro occurred more than a year and one-half ago and my recollection is not entirely clear, but I recall that he told me he believed that President Trump did not want him to cooperate with either of the Congressional Committees which were then attempting to use his former presidential aides to attack him and his Administration. I knew from my position with Save America, and from public reports, that the Democrat majority of the House of Representatives had populated the January 6th Committee with partisans who seemed to have no interest in conducting a balanced investigation. So, it certainly followed that President Trump expected Dr. Navarro to also "protect executive privilege" with respect to this new subpoena.

7. After our phone call on February 9, 2022, Dr. Navarro sent an email to me with the statement he planned to issue to the media that day and asked me to share it with President Trump. (*Defense Ex. 7*). The statement said in part that "President Trump has invoked Executive Privilege; and it is not my privilege to waive. They [the January 6th Committee] should negotiate any waiver of the privilege with the President and his attorneys directly, not through me." Later that day, Dr. Navarro publicly issued his statement, and it was reported in the media.

8. Upon receiving Dr. Navarro's statement, I sent it by email to Margo Martin and Molly Michaels, two of President Trump's administrative aides. (*Defense Ex. 7.1*). This was the standard procedure I used to route email messages and other information to President Trump. I would send emails to Ms. Martin and Ms. Michaels, they would print them and affix a note on them to President Trump's attention, and then place them on his desk for him to read. I do not know whether President Trump read the press statement before Dr. Navarro issued it publicly. It was during this same time that the Mar-a-Lago boxes issue was taking President Trump's attention from other matters, and I do not know whether Dr. Navarro and President Trump directly discussed the press statement.

Dated: August __2023

Respectfully Submitted,

E&W Law, LLC

_____
John S. Irving (D.C. Bar No. 460068)
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
Telephone: (301) 807-5670
Email: john.irving@earthandwatergroup.com

SECIL LAW PLLC

_____
John P. Rowley, III  (D.C. Bar No. 392629)
1701 Pennsylvania Ave., N.W., Suite 200
Washington, D.C. 20006
Telephone: (202) 417-8652
Email: jrowley@secillaw.com


BRAND WOODWARD LAW, LP

_____
Stan M. Brand (D.C. Bar No. 213082)
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel to Dr. Peter K. Navarro*



MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:_____
John D. Crabb
Elizabeth Aloi (D.C. 1015864)
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7212 (Aloi)
elizabeth.aloi@usdoj.gov

*Counsel for the United States of America*